E O D   JAN 2 9 2001

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| In re: | } | Chapter 11 |
| | } | |
| OUTBOARD MARINE | } | |
|   CORPORATION, et al., | } | |
| | } | Case No. 00-37405 |
| | } | |
| | } | |
| Debtors. | } | Jointly Administered |

## AGREED FINAL ORDER GRANTING CERTAIN ADEQUATE PROTECTION RELIEF TO THE PREPETITION LENDERS

OUTBOARD MARINE CORPORATION, a Delaware corporation ("OMC"),

OMC ALUMINUM BOAT GROUP, INC., a Delaware corporation, OMC FISHING BOAT

GROUP, INC., a Delaware corporation, OMC LATIN AMERICA/CARIBBEAN, INC., a

Delaware corporation, OMC RECREATIONAL BOAT GROUP, INC., a Delaware corporation,

OUTBOARD MARINE TRANSPORTATION CORPORATION, a Delaware corporation,

OMCEMA, Inc., a Delaware corporation, OMC NEVADA, INC., a Nevada corporation,  and

RECREATIONAL BOAT GROUP LIMITED PARTNERSHIP, a Delaware limited partnership

each as a debtor and debtor-in-possession in these cases (each a "Debtor," and collectively the

"Debtors"), having filed with this Court voluntary petitions (each a "Petition," and collectively

the "Petitions") for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§

101, et seq. (the "Code"), in the United States Bankruptcy Court for the Northern District of

Illinois, Eastern Division on December 22, 2000 (the "Petition Date"); and having filed a Motion

on December 22, 2000 pursuant to 11 U.S.C. §§ 364(c) and (d) (the "Motion") for entry of an

interim order and proposed final order to provide certain relief to (i) Bank of America N. A.

("BOA"), as agent (in such capacity, the "Prepetition Agent") for certain lenders (the

"Prepetition Lenders") under that certain Amended and Restated Loan and Security Agreement

dated as of January 6, 1998 by and among certain of the Debtors, the Prepetition Agent and the

Prepetition Lenders (as restated, amended or modified from time to time, the "Prepetition Credit

Agreement") in consideration for the Prepetition Lenders' consent to the imposition of a priming

lien, in connection with the Debtors' Emergency Motion For Interim and Final Orders Pursuant

to 11 U.S.C. §§ 105, 362, and 364 (i) Authorizing Postpetition Financing, (ii) Granting Liens and

Superpriority Claims, and (iii) Scheduling a Final Hearing Pursuant to Fed. R. Bankr. P. 4001

(the "DIP Financing Motion"), upon prepetition collateral securing payment of the claims of the

Prepetition Lenders;

       Counsel for the Debtors and counsel for the Prepetition Agent having consented

to the entry of this Order; and notice of the Agreed Interim Order (as defined below) having been

given to each of the Prepetition Lenders, to the Debtors' twenty (20) largest unsecured creditors,

to the United States Trustee for the Northern District of Illinois, Eastern Division, to the

Creditors Committee (defined below) and to any other parties entitled to notice under

Bankruptcy Rule 4001(b), and such notice being appropriate under the circumstances:

       THE COURT HAS BEEN ADVISED THAT THE DEBTORS AND THE

PREPETITION AGENT HAVE STIPULATED TO THE FOLLOWING:

    A.    On December 22, 2000 (the "Petition Date"), the Debtors filed petitions for relief

under Chapter 11 of the Code. Pursuant to sections 1107 and 1108 of the Code, the Debtors have

retained possession of their property and are authorized thereby, as debtors-in-possession, to

continue the operation and management of their businesses.

B.      On December 28, 2000, the United States Trustee appointed an official committee

of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors

Committee").

C.      Prior to the Petition Date, certain of the Debtors, the Prepetition Agent and the

Prepetition Lenders were parties to the Prepetition Credit Agreement.  The Prepetition Credit

Agreement, and all documents and instruments executed in connection therewith are hereinafter

collectively referred to as the "Prepetition Agreements".

D.      Pursuant to the Prepetition Agreements, in consideration of the loans and other

financial accommodations extended to the Debtors under such agreements, and to secure the

payment and performance of the Debtors' obligations under the Prepetition Agreements, the

Debtors granted the Prepetition Agent for the ratable benefit of the Prepetition Lenders security

interests in and liens on certain of the Debtors' property (including, without limitation, the

Debtors' accounts, contract rights, chattel paper, instruments, general intangibles (including

without limitation, trademarks and tradenames, patents and copyrights, and specifically including

without limitation those listed in Schedule 7.1(z) of the Prepetition Credit Agreement), licenses,

inventory (including without limitation, finished goods, work-in-process and raw materials),

investment property (including without limitation, securities, security entitlements and securities

accounts, but excluding capital stock in any subsidiary of OMC or any of its subsidiaries owned

by OMC or any of the other "Loan Parties" under the Prepetition Credit Agreement), books and

records, and deposit accounts and all cash deposited with any clearing bank, the Prepetition

Agent or any Prepetition Lender or any affiliate or subsidiary thereof, respectively, and all

proceeds and products of any of the foregoing (collectively, the "Prepetition Collateral").

3

E.      The Prepetition Agent and the Debtors agree that the Prepetition Agent duly

perfected its security interests in and upon the Prepetition Collateral by filing financing

statements and taking certain other actions.  The Prepetition Agent and the Debtors agree that the

Prepetition Agent has a valid, perfected, enforceable, and non-avoidable first priority lien upon

and security interests in the Prepetition Collateral.

F.      On the Petition Date, the Debtors were indebted to the Prepetition Lenders in the

aggregate principal amount of not less than $125 million pursuant to the Prepetition Agreements,

plus interest, fees, costs, expenses, and other amounts owing or accrued as of the Petition Date

under or in connection with the Prepetition Agreements  (collectively referred to hereinafter as

the "Prepetition Indebtedness").

G.      On the Petition Date, the Debtors filed the DIP Financing Motion seeking

authority to enter into a debtor-in-possession financing facility (the "DIP Facility") in order to

borrow money from BOA and certain other lenders (the "DIP Lenders") pursuant to the terms of

the term sheet attached thereto (the "DIP Term Sheet").  As more fully set forth in the DIP

Financing Motion, the DIP Lenders are only prepared to loan money to the Debtors if they are,

among other things, granted liens and security interests in the Prepetition Collateral which liens

and security interests are superior in priority to the liens and security interests held by the

Prepetition Lenders.

H.      As more fully set forth in the Consent Letter attached hereto as Exhibit A, the

Prepetition Lenders are prepared to consent to the imposition of priming liens in favor of the DIP

Lenders on the Prepetition Collateral to the extent set forth in the DIP Financing Motion, the

final DIP financing order (the "Final DIP Order") and the Amended and Restated DIP Term

4

Sheet (attached as Exhibit 1 to the Final DIP Order); provided that the Court (a) authorizes the

Debtors, pursuant to sections 361, 363, and 364 of the Code, to grant to the Prepetition Agent

(for the benefit of all Prepetition Lenders and to the extent that such Prepetition Lenders' liens on

the Prepetition Collateral are valid, perfected, enforceable and non-avoidable) replacement

security interests in and liens upon all property of the Debtors and their estates, whether now

existing or hereafter acquired or arising and wherever located, (b) authorizes and directs the

Debtors pay to the Prepetition Lenders interest accruing under the Prepetition Agreements as

provided for in the Final DIP Order, (c) affords the Prepetition Lenders the other relief

prescribed in this Order, and (d) enters the Final DIP Order and approves the DIP Facility,

including, without limitation, the Amended and Restated DIP Term Sheet, in form and substance

satisfactory to the Prepetition Agent.

I.      On December 26, 2001, the Court entered the Agreed Interim Order And

Proposed Final Order Granting Certain Adequate Protection Relief To The Prepetition Lenders

(the "Agreed Interim Order") and the Interim Order Approving Postpetition Financing And

Granting Liens And Super Administrative Priority Pursuant To 11 U.S.C. §§ 364(c) and (d, And

Modifying The Automatic Stay And Scheduling A Final Hearing.

J.      On January 16, 2001, the Creditors Committee filed a Limited Objection Of The

Official Committee Of Unsecured Creditors To The Proposed Final Adequate Protection And

Financing Orders (the "Objection").

K.      In order to Resolve the Objection, the Debtors, the Creditors Committee and DIP

Lenders have amended the terms of the DIP Term Sheet as set forth in Exhibit 1 to the Final

Order (the "Amended and Restated DIP Term Sheet") and have agreed to the terms of this Order as set forth herein.

BASED UPON THE MOTION, THE RECORD BEFORE THE COURT, AND THE COMBINED CONSENT OF THE DEBTORS AND THE PREPETITION AGENT TO THE ENTRY OF THIS ORDER, THE COURT FINDS, AS FOLLOWS:

i)      The Debtors have adequate notice under the circumstances to (i) the Prepetition Lenders, (ii) the twenty (20) largest unsecured creditors of the Debtors, (iii) the United States Trustee for the Northern District of Illinois, Eastern Division, (iv) the Creditors Committee, and (v) any other persons entitled to notice under Bankruptcy Rule 4001(b).

ii)     A need exists for the Debtors to borrow funds and seek other financial accommodations from the DIP Lenders in order to fund the orderly windown of their operations and the sale of their assets.

iii)    The Debtors are presently unable to obtain unsecured credit allowable under section 503(b)(1) of the Code as an administrative expense or unsecured credit allowable under sections 364(a) or 364(b) of the Code. The only source of secured credit available to the Debtors will be the DIP Facility. The Debtors require funds from the DIP Facility in order to preserve their assets and achieve maximum value for their creditors. The Prepetition Agent will not agree to priming of its liens and security interest in the Prepetition Collateral on terms less favorable than those contained in this Order.

iv)     Good cause has been shown for the entry of this Order. Among other things, entry of this Order will facilitate the funding of the orderly windown of the Debtors' operations and sales of their assets. In consideration for the consents provided herein and to the imposition of priming liens, the Prepetition Agent, for the benefit of the Prepetition Lenders, is

6

entitled to the relief set forth in this Order. The protections afforded the Prepetition Lenders'

interests herein are fair under the circumstances.

v) The Prepetition Agent and the Debtors have negotiated the terms and

conditions of this Order in good faith and at arms-length and have offered sufficient evidence of

the Prepetition Agent's good faith in agreeing to this Order.

ACCORDINGLY, IT IS HEREBY ADJUDGED, ORDERED AND DECREED

THAT:

1. As adequate protection against the diminution of value of the Prepetition

Lenders' interests in the Prepetition Collateral, the Prepetition Lenders are hereby granted,

pursuant to sections 361, 363 and 364 of the Code, valid, perfected, and enforceable security

interests in and liens upon all property of the Debtors and their estates, whether now existing or

hereafter acquired or arising and wherever located, and all proceeds, rents, products, or profits

thereof (collectively, the "Postpetition Collateral"). The security interests in and liens on the

Postpetition Collateral shall (i) at all times be senior to the rights of the Debtors and any

successor trustee in these or any subsequent proceedings under the Code, (ii) be subordinate only

to (1) the liens and security interests granted to the DIP Lenders in connection with the DIP

Facility, (2) the "Carve-Out" as defined in the DIP Term Sheet, and (3) valid, enforceable and

non-avoidable liens and security interests existing as of the Petition Date.

2. The security interests and liens herein granted (i) are and shall be in

addition to all security interests, liens, and rights of set-off existing in favor of the Prepetition

Lenders on the Petition Date, (ii) are and shall be valid, perfected, enforceable, and effective as

of the date of commencement of the present proceedings without any further action by the

Debtors or the Prepetition Agent and without the execution, filing, or recordation of any

financing statements, security agreements, mortgages, or other documents; and (iii) shall secure

payment of the Prepetition Indebtedness in an amount equal to any diminution in value of the

Prepetition Lenders' interest in the Prepetition Collateral (the "Adequate Protection Obligation")

which occurs during the pendency of the Debtors' bankruptcy cases, whether such diminution is

a consequence of (a) the Debtors' use of the Prepetition Collateral, (b) the Debtors' incurring of

obligations under the DIP Facility (which obligations will be secured by priority liens on the

Prepetition Collateral), (c) economic depreciation of the Prepetition Collateral, or (d) otherwise.

     3.    Subject to the last three sentences of this paragraph 3, the Adequate

Protection Obligation shall also be afforded status as an administrative priority claim equivalent

in priority to a claim under section 364(c)(1) of the Code, and, as such, except as provided in the

last sentence of this paragraph 3, having priority over all other costs and expenses of the kind

specified in, or ordered pursuant to, sections 105, 326, 330, 331, 503(b), 507(a), or 507(b), or

any other section of the Code and shall at all times be senior to the rights of the Debtors, and any

successor trustee in this or any subsequent proceedings under the Code; provided, however, the

priority claim granted the Prepetition Lenders in this paragraph shall be subordinate to (i) the

administrative priority claim granted the DIP Lenders pursuant to section 364(c)(1) of the Code

in the Final DIP Order, and (ii) the Carve-Out, as defined in the Amended and Restated DIP

Term Sheet.  The Creditors Committee, for itself and any Chapter 7 trustee appointed in this

case, expressly reserves the right to challenge the priority, as a matter of law, of the Section

364(c)(1) priority claim granted to the Prepetition Lenders hereunder relative to the

administrative priority claims of a Chapter 7 liquidation, and the entry of this Order is without

prejudice to such reservation of (and the Prepetition Lenders' right to challenge) such rights.

Moreover, nothing contained herein shall (1) impair the rights (if any) of parties-in-interest (with

standing under applicable law) to assert that charges under Section 506(c) or Section 552 of the

Code should be imposed against proceeds that are (a) realized from the disposition of the

Prepetition Collateral or Postpetition Collateral and (b) otherwise payable to the Prepetition

Lenders in order to repay monies borrowed from the DIP Lenders (or to satisfy other

administrative priority claims incurred by the Debtors), or (2) limit in any way the right of the

Prepetition Lenders to contest such assertions.  Finally, as it pertains to proceeds of avoidance

actions, including, without limitation, those arising under sections 544, 545, 547, 548, 549, 550

and 553 of the Bankruptcy Code, the priority accorded under this paragraph 3 shall be equivalent

in priority to a claim allowed under section 503(b)(1)(A) of the Bankruptcy Code, or such higher

priority as may be awarded to any other entity in respect of such proceeds, provided, however,

that such claim shall be subordinate to the administrative priority claim granted to the DIP

Lenders pursuant to the Final DIP Order.

   4.  Additionally, as adequate protection of, and consideration for,

relinquishing any set-off rights it may have with respect to balances as of the Petition Date in

deposit accounts at Bank One, NA ("Bank One"), a Prepetition Lender but not a DIP Lender,

Bank One shall be and hereby is granted a superpriority claim pursuant to Bankruptcy Code §

364(c)(1) to the extent it would, as of the Petition Date, have had valid, non-avoidable setoff

rights against the Debtors under applicable non-bankruptcy law and the Bankruptcy Code,

independent of its rights and remedies as a Prepetition Lender under the Prepetition Agreements.

Any such superpriority claim shall (a) be junior to (i) the superpriority claims granted pursuant to

this Order to the DIP Agent and the DIP Lenders in respect of the DIP Facility and (ii) the

Carve-Out, and (b) subject to the following sentence, be on a parity with the administrative

priority claim afforded the Adequate Protection Obligation.  If and to the extent that the

Prepetition Lenders establish that they held an interest as to all or part of such balances that was superior to all or part of any setoff rights of Bank One with respect to such balances, then (and to the extent of such superior interest) the priority claim accorded to Bank One shall be subordinate in priority to the priority claim accorded to the Adequate Protection Obligation.

      5.    As additional protection for the interests of the Prepetition Lenders and in further consideration for the Prepetition Lenders' consent to the imposition of priming liens, (a) the Debtors shall pay to the Prepetition Lenders (other than with respect to Tranche B under the Prepetition Credit Agreement) from the proceeds of Prepetition Collateral (i) on a monthly basis as provided in the Prepetition Agreements, interest accruing on the Prepetition Indebtedness at the non-default rate prescribed in the Amended and Restated DIP Term Sheet, (ii) as and when required to be paid under the Prepetition Credit Agreement (and otherwise upon request), all reasonable fees and expenses for which the Prepetition Lenders (or the Prepetition Agent) are entitled to receive reimbursement pursuant to the terms of the Prepetition Agreements and all fees and expenses incurred in connection with or in preparation for the Debtors' bankruptcy proceedings (including, without limitation, fees and expenses arising in connection with the negotiation and preparation of this Order) to the extent such parties were entitled to receive such category of fee or expense pursuant to the Prepetition Agreements; provided, however, that the Debtors' payment of such interest, fees and expenses (but not the Debtors' agreement to pay a higher rate of interest) shall be provisional in nature pending the allowance of such claims pursuant to Section 506(b) of the Code, and (iii) the DIP Lenders shall not agree to increase the Total DIP Commitment (as defined in the DIP Term Sheet) above $19,500,000 without the consent of each Prepetition Lender.

6.     If the Prepetition Agent hereafter request the Debtors to execute and

deliver to the Prepetition Agent financing statements, mortgages, or other instruments or

documents considered by the Prepetition Agent to be necessary or desirable to further evidence

the perfection of the liens and security interests granted in this Order, the Debtors are hereby

authorized to execute and deliver those financing statements, instruments, and documents.

Nothing in this Order shall in any way restrict the scope of the Prepetition Agent's prepetition

liens, security interests, mortgages, rights of set-off or claims with respect to the Prepetition

Indebtedness or the Prepetition Collateral, and the Prepetition Agent's liens on and security

interests in the Prepetition Collateral shall extend to the fullest extent permitted by section 552(b)

of the Code.

7.     The Prepetition Agent is authorized to collect upon, convert to cash, and

endorse checks, drafts, instruments, and other forms of payment now or hereafter coming into its

possession as collateral or proceeds of collection of the Prepetition Collateral, and to apply,

during the term of this Order, all proceeds of collections of Prepetition Collateral now or

hereafter coming into the Prepetition Agent's possession in accordance with the Amended and

Restated DIP Term Sheet.

8.     During the term of this order, the Debtors shall provide to the Prepetition

Agent and the Creditors Committee (i) the reports and information specified in the Amended and

Restated DIP Term Sheet at the times such reports and information are required to be provided to

the agent for the DIP Lenders, and (ii) access to the Debtors' books, records and management

personnel upon reasonable request during normal business hours.

9.     Nothing contained in this Order shall be deemed a finding with respect to

adequate protection (as that term is defined in section 361 of the Code) of the interests of the

Prepetition Lenders. Without limiting the foregoing in any respect, the Prepetition Lenders may,

at any time, request the Court to increase the payments to or other protections for the benefit of

the Prepetition Lenders as a condition to the continued use by the Debtors of the Prepetition

Collateral. Notwithstanding QIP's consent to the entry of this Order, nothing contained herein

shall be deemed, nor construed to be a waiver, limitation, modification or impairment, in any

manner whatsoever, of QIP's rights to accrue and/or seek the allowance and payment of

postpetition interest, costs, fees and any and all other charges arising under or related to any and

all applicable prepetition agreements between QIP and one or more of the Debtors, that certain

Junior Participation Agreement dated October 10, 2000 between QIP and the Prepetition

Lenders, and/or any other Prepetition Agreements, and any and all such rights are hereby

expressly preserved. Without limiting the foregoing in any respect, nothing herein shall (i) limit

the rights of QIP, at any time, to request the Court to direct the Debtors to remit payments or

provide other protections, to QIP as a condition to the continued use by the Debtors of the

Prepetition Collateral, (ii) confer upon QIP standing that it does not otherwise enjoy to make

such requests, or (iii) limit the rights of the Debtors, the Prepetition Lenders, or any other parties

to oppose such requests on any grounds.

10.    The automatic stay provisions of section 362 of the Code are hereby

vacated as to the Prepetition Agent to the extent necessary to implement the terms of this Order.

11.    The subject of this Order is a "core" proceeding within the meaning of 28

U.S.C. § 157. This Order is immediately applicable and valid and fully effective upon its entry.

12.    This Order may be extended by agreement among the Debtors, the DIP

Lenders, the DIP Agent, the Prepetition Agent, the Prepetition Lenders, the Creditors Committee

and with approval by the Court upon two (2) days notice to parties in interest.

12

Dated: January 25, 2001



United States Bankruptcy Judge

Consented to:

OUTBOARD MARINE CORPORATION,
OMC ALUMINUM BOAT GROUP, INC.,
OMC FISHING BOAT GROUP, INC.,
OMC LATIN AMERICA/CARIBBEAN, INC.,
OMC RECREATIONAL BOAT GROUP, INC.,
OUTBOARD MARINE TRANSPORTATION CORPORATION,
OMCEMA, INC.
OMC NEVADA, INC., and
RECREATIONAL BOAT GROUP LIMITED PARTNERSHIP,

DEBTORS

By: _____
One of their Attorneys

SKADDEN, ARPS, SLATE, MEAGHER & FLOM (ILLINOIS)
David Kurtz
Mark A. McDermott
333 W. Wacker Drive, Suite 2100
Chicago, IL 60606
Telephone  (312) 407-0411
Telecopier  (210) 407-0700

Attorneys for Debtors and
Debtors in Possession

BANK OF AMERICA N.A.
as Prepetition Agent

By:_____
One of its Attorneys

SIDLEY & AUSTIN
Larry J. Nyhan
Matthew A. Clemente (ARDC # 6255757)
Bank One Plaza
Chicago, IL 60603
Telephone  (312) 853-7000
Telecopier  (312) 853-7036

January 25, 2001 (10:25AM)

## **EXHIBIT A**

Consent Letter

CONSENT LETTER
January 24, 2001

Reference is made to that certain Amended and Restated Loan and Security Agreement by and among the Borrowers party thereto, Bank of America, N.A. ("BOA") in its contractual capacity as Agent (the "Prepetition Agent") and as a lender, and the other lenders from time to time party thereto (collectively, the "Prepetition Lenders"), dated as of January 6, 1998 (as amended, restated or supplemented from time to time, the "Prepetition Credit Agreement" and collectively, with all documents executed in connection therewith, the "Prepetition Agreements"). Certain of the Prepetition Lenders (the "DIP Lenders") and BOA, as agent (the "DIP Agent") have agreed to provide the Borrowers with a debtor in possession financing facility (the "DIP Facility") in accordance with that certain term sheet attached hereto as Annex 1 (the "DIP Term Sheet"). Capitalized terms used herein but not defined herein shall have the meanings assigned to such terms in the DIP Term Sheet. To the extent any provision of this agreement is inconsistent with any provision of the Prepetition Agreements or the DIP Term Sheet, the provisions of this agreement shall control and supersede the provisions of the Prepetition Agreements and the DIP Term Sheet.

To induce the DIP Lenders to extend the DIP Facility, the undersigned Prepetition Lenders hereby agree as follows:

- The Prepetition Lenders consent to the priming of the Prepetition Liens by those liens granted to secure payment of obligations under the DIP Facility up to a maximum principal amount of $19,500,000. The Prepetition Agent is hereby authorized to consent to entry of that certain Agreed Adequate Protection Order, a copy of which is attached hereto as Annex II.

- If and to the extent the DIP Collateral proves to be insufficient to satisfy in full the DIP Loans, the Prepetition Lenders shall remit to the DIP Agent for the benefit of the DIP Lenders any and all collateral proceeds paid to the Prepetition Lenders subsequent to the Petition Date until the DIP Facility, excluding the amount, if any of incremental default interest (i.e. the 2% spread between Non-Default Rate and the default rate of interest) ("Incremental Default Interest") and the Closing Fee has been paid in full (the "Adjusted DIP Facility"); provided, however, that the Prepetition Lenders will be under no obligation to remit such collateral proceeds to the DIP Agent to the extent that the unpaid portion of the Adjusted DIP Facility equals or is less than the sum of (a) the amount of the Closing Fee actually paid to and retained by the DIP Lenders, plus (2) the Incremental Default Interest actually paid to and retained by the DIP Lenders in respect of the DIP Loans.

- The undersigned Prepetition Lenders who are also DIP Lenders agree that they will not, without the written consent of each Prepetition Lender, make additional principal advances under the DIP Facility if, after giving effect to such advances, the then outstanding principal balance of the DIP Facility would exceed $19,500,000.

- The DIP Agent shall provide to each Prepetition Lender any and all reports, budgets, notices, financial statements, and other material information received by the DIP Agent from the Debtors and distributed to the DIP Lenders pursuant to the DIP Term Sheet.

- Each Prepetition Lender shall have the independent right to contest the allocation of proceeds of the Debtors' assets among the various categories of collateral defined in the DIP Term Sheet provided that any Prepetition Lender shall raise any such objection in the Bankruptcy Court.

   The terms of this agreement shall not be modified except as by writing signed by all parties hereto.

   This agreement may be executed in one or more counterparts, each of which shall be considered an original counterpart and shall become binding when the DIP Agent, the Prepetition Agent and each of the DIP Lenders and Prepetition Lenders has executed one counterpart. Each of the parties hereto agrees that a signature transmitted via facsimile transmission shall be effective to bind the party so transmitting its signature.

2

** TOTAL PAGE.03 **

Acknowledged and Agreed as of the date set forth above.

BANK OF AMERICA, N.A
in its capacity as DIP Agent and Prepetition
Agent

By: _____
Name: LAWRENCE J. CANNARIATI
Title: Vice President

THE CIT GROUP/BUSINESS CREDIT, INC.
in its capacity as a DIP Lender and Prepetition
Lender

By: _____
Name: _____
Title: _____

TRANSAMERICA BUSINESS
CREDIT CORPORATION
in its capacity as a DIP Lender and Prepetition
Lender

By: _____
Name: _____
Title: _____

BANK OF AMERICA, N.A.
in its capacity as a DIP Lender and Prepetition
Lender

By: _____
Name: LAWRENCE J. CANNARIATI
Title: Vice President

FLEET CAPITAL CORPORATION,
in its capacity as a DIP Lender and Prepetition
Lender

By: _____
Name: _____
Title: _____

AMERICAN NATIONAL BANK AND
TRUST COMPANY OF CHICAGO
in its capacity as a Prepetition Lender

By: _____
Name: _____
Title: _____

3

Acknowledged and Agreed as of the date set forth above.

BANK OF AMERICA, N.A
in its capacity as DIP Agent and Prepetition
Agent

By:_____
Name:_____
Title:_____

THE CIT GROUP/BUSINESS CREDIT, INC.
in its capacity as a DIP Lender and Prepetition
Lender

By: _Alan R. Schnacke_____
Name: _Alan R. Schnacke_____
Title: _Assistant Vice President_

TRANSAMERICA BUSINESS
CREDIT CORPORATION
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

BANK OF AMERICA, N.A.
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

FLEET CAPITAL CORPORATION,
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

AMERICAN NATIONAL BANK AND
TRUST COMPANY OF CHICAGO
in its capacity as a Prepetition Lender

By:_____
Name:_____
Title:_____

3

Acknowledged and Agreed as of the date set forth above.

BANK OF AMERICA, N.A
in its capacity as DIP Agent and Prepetition
Agent

By:_____
Name:_____
Title:_____

THE CIT GROUP/BUSINESS CREDIT, INC.
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

TRANSAMERICA BUSINESS
CREDIT CORPORATION
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

BANK OF AMERICA, N.A.
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

FLEET CAPITAL CORPORATION,
in its capacity as a DIP Lender and Prepetition
Lender

By: _____
Name: _Patrick M Sloane II____
Title: _Vice President_____

AMERICAN NATIONAL BANK AND
TRUST COMPANY OF CHICAGO
in its capacity as a Prepetition Lender

By:_____
Name:_____
Title:_____

3

Acknowledged and Agreed as of the date set forth above.

BANK OF AMERICA, N.A
in its capacity as DIP Agent and Prepetition
Agent

By:_____
Name:_____
Title:_____

BANK OF AMERICA, N.A.
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

THE CIT GROUP/BUSINESS CREDIT, INC.
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

FLEET CAPITAL CORPORATION,
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

TRANSAMERICA BUSINESS
CREDIT CORPORATION
in its capacity as a DIP Lender and Prepetition
Lender

By: _Ari Kaplan_____
Name: _Ari Kaplan_____
Title: _Vice President_____

AMERICAN NATIONAL BANK AND
TRUST COMPANY OF CHICAGO
in its capacity as a Prepetition Lender

By:_____
Name:_____
Title:_____

3

Acknowledged and Agreed as of the date set forth above.

BANK OF AMERICA, N.A
in its capacity as DIP Agent and Prepetition
Agent

By:_____

Name:_____

Title:_____

BANK OF AMERICA, N.A.
in its capacity as a DIP Lender and Prepetition
Lender

By:_____

Name:_____

Title:_____

THE CIT GROUP/BUSINESS CREDIT, INC.
in its capacity as a DIP Lender and Prepetition
Lender

By:_____

Name:_____

Title:_____

FLEET CAPITAL CORPORATION,
in its capacity as a DIP Lender and Prepetition
Lender

By:_____

Name:_____

Title:_____

TRANSAMERICA BUSINESS
CREDIT CORPORATION
in its capacity as a DIP Lender and Prepetition
Lender

By:_____

Name:_____

Title:_____

AMERICAN NATIONAL BANK AND
TRUST COMPANY OF CHICAGO
in its capacity as a Prepetition Lender

By: _Michael Hayes_

Name: _Michael Hayes_

Title: _VP_

# ANNEX 1

DIP Term Sheet

**EXECUTION COPY**

## Amended and Restated DIP Term Sheet

Outboard Marine Corporation, a Delaware corporation ("OMC"), OMC Aluminum Boat Group, Inc., a Delaware corporation ("OMC Aluminum"), OMC Fishing Boat Group, Inc., a Delaware corporation ("OMC Fishing"), OMC Latin America/Caribbean, Inc., a Delaware corporation ("OMC Latin America"), OMC Recreational Boat Group, Inc., a Delaware corporation ("OMC Boat Group"), Outboard Marine Transportation Corporation, a Delaware corporation ("OMC Transportation"), OMCEMA, Inc., a Delaware corporation ("OMCEMA"), OMC Nevada, Inc., a Nevada corporation ("OMC Nevada") and Recreational Boat Group Limited Partnership, a Delaware limited partnership ("Recreational Boat Group L.P."), and certain of their subsidiaries (collectively, the "Loan Parties") have filed petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). Bank of America, N.A., a national banking association and successor in interest to Bank of America, N.A., formerly NationsBank, N.A., successor in interest to NationsBank of Texas, N.A., in its capacity as agent for the prepetition senior lenders ("BOA"), and certain of the senior lenders hereby agree to extend to the Loan Parties, as debtors and debtors-in-possession, on or before December 31, 2000, a senior secured superpriority debtor-in-possession credit facility in the amount specified below (the "DIP Loans"), subject to the terms and conditions of this term sheet ("Term Sheet"). Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in that certain Amended and Restated Loan and Security Agreement by and among the Borrowers party thereto, OMC Boat Group, BOA as Agent (the "Prepetition Agent") for the lenders specified therein (the "Prepetition Lenders") and the Prepetition Lenders, dated as of January 6, 1998, (as from time to time amended, modified or waived (the "Prepetition Credit Agreement"). The Prepetition Credit Agreement, together with all instruments and documents executed in connection therewith, shall be referred to collectively as the "Prepetition Credit Documents."

## Terms and Conditions for Priming Credit Loan[1]

| | |
|---|---|
| Borrowers: | OMC, OMC Aluminum, OMC Fishing, OMC Latin America, OMC Boat Group, OMC Transportation, OMCEMA, OMC Nevada, and Recreational Boat Group, L.P., as Debtors-In-Possession in cases (the "Cases") pending under Chapter 11 of the Bankruptcy Code (each in such capacity, a "Borrower" or |

---

[1]     The terms and conditions for the extension of credit described herein are dependent upon, among other things, authorization and approval by the Bankruptcy Court. The terms and conditions with respect to such commitments are mutually dependent on each other and no lender shall be obligated to extend credit unless agreement with the Debtors and approval by the Bankruptcy Court is obtained with respect to such terms and conditions as a whole.

"Debtor" and collectively, the "Borrowers" or the "Debtors"). Each of the Borrowers shall be jointly and severally liable to repay any and all indebtedness incurred under the DIP Loan Agreement (as defined below).

| | |
|---|---|
| Guarantors: | All subsidiaries of the Borrowers that are non-Debtors, provided that no foreign subsidiary of the Borrowers shall be required to execute a guaranty of the obligations of the Debtors hereunder to the extent that (i) such guaranty would result in adverse tax consequences for any Debtor, (ii) such guaranty would violate applicable local law, (iii) such foreign subsidiary or its directors or officers are advised by legal counsel that the provision of such guaranty could result in personal liability to the directors and officers of such subsidiary or (iv) the DIP Agent shall determine, in the exercise of its reasonable discretion, that the costs involved in procuring a guaranty from such foreign subsidiary exceed the incremental benefits afforded to the DIP Agent and the DIP Lenders through the procurement of such guaranty. |
| Agent: | BOA (the "DIP Agent"). |
| Lenders: | The financial institutions listed under the column "DIP Lenders" on Schedule I attached hereto (collectively, the "DIP Lenders"). |
| Commitments: | The DIP Loans shall consist of a credit facility (the "DIP Facility") with a maximum commitment of up to $19,500,000 (the "Total DIP Commitment"). The full Retention Program Amount (defined below) together with all Accrued Professional Fees (defined below) shall at all times be reserved against the Total DIP Commitment. The DIP Loans shall be funded by the DIP Lenders in accordance with their respective commitments as reflected in Schedule I attached hereto and pursuant to and solely in accordance with the Budget (as defined herein). |
| DIP Loans: | The DIP Loans shall be advanced weekly based upon, and solely in accordance with, the Budget (defined below). |
| Use of Proceeds: | The proceeds of the DIP Facility shall be used by the Debtors, in accordance with the terms of the postpetition financing agreement described herein (the "DIP Loan Agreement") (i) to fund expenses incident to the Debtors' efforts to preserve and sell assets in accordance with, but limited to, the weekly cumulative amounts set forth in the Budget (as defined below) for the then current week, and (ii) to pay all fees as provided under the DIP Loan Agreement (whether incurred before or after the date of the commencement of the Cases (the "Petition Date")). |

2

| | |
|---|---|
| Employee Retention Program: | The costs and expenses associated with the Borrowers' employee retention bonus program approved by the Bankruptcy Court, not to exceed $2.5 million in aggregate ("Retention Program Amount") shall, notwithstanding the occurrence of a Default or an Event of Default (and to the extent that such sums have not already been borrowed), be made available to the Debtors upon their request for the sole purpose of funding such Retention Program Amounts. |
| Budget: | Not later than the third business day of each week (and not later than the Closing Date with respect to the Budget to be delivered with respect to the week in which the Closing Date occurs) the Borrower shall provide to the DIP Agent, each DIP Lender and the Official Committee of Unsecured Creditors (the "Committee") (i) a copy of a budget (such budget, with modifications approved from time to time by the Required DIP Lenders (defined below), the "Budget"), in form and substance satisfactory to the DIP Agent and the Required DIP Lenders, reflecting on a line-item basis anticipated weekly cash receipts and expenditures for the succeeding six months, (ii) a copy of a variance report (the "Variance Report") reflecting on a line-item basis the actual cash receipts and disbursements for the preceding week and the percentage variance of such actual results from those reflected in the Budget for the preceding week, and a written explanation of such variance, and (iii) a statement that discloses the cumulative professional fees and expenses that have been accrued, but not paid, since the inception of the cases in accordance with the Budget (such cumulative sum, the "Accrued Professional Fees"). |
| Term: | All DIP Loans shall be repaid in full and the Total DIP Commitment shall terminate at the earliest to occur of (i) May 31, 2001 (the "Maturity Date"), (ii) the Termination Date (as defined below), (iii) the effective date of a plan of reorganization, and (iv) when the Total DIP Commitment has been reduced to zero. |
| Interest Rates and Payment Dates: | The non-default rate of interest with respect to each DIP Loan shall be the Base Rate plus 3.75% (the "Non-Default Rate").

The default rate of interest with respect to each DIP Loan after the occurrence of an Event of Default shall be the Non-Default Rate plus 2%.

Interest on the DIP Loan shall be payable in cash, monthly in arrears. Interest on the Prepetition Revolving Credit Loans shall accrue at the Base Rate plus 3.75% and shall be payable from the proceeds of Prepetition Collateral as provided below. The Prepetition Lenders' entitlement to postpetition interest (but not the |

3

rate at which such interest accrues) will remain subject to determination under Section 506(b) of the Bankruptcy Code.

Closing Fee:      A $1,000,000 closing fee (the "Closing Fee"), fully earned as of the Closing Date, shall be paid on the Closing Date to the DIP Agent for the ratable benefit of the DIP Lenders.

Commitment Fee:      0.375% per annum of the unutilized Total DIP Commitment, payable monthly in arrears, to the DIP Agent for the account of the DIP Lenders.

Nature of Fees:      Non-refundable under all circumstances.

Collateral and Priority:      All obligations of the Debtors to the DIP Lenders and the DIP Agent, including, without limitation, all principal and accrued interest, costs, fees and expenses (collectively, the "DIP Obligations") shall be:

(a) Secured (subject to the Carve-Out (defined below)), pursuant to section 364(c)(2), of the Bankruptcy Code by a first priority, fully perfected security interest, in all of the existing and after acquired real and personal, tangible and intangible, assets of the Borrowers not subject to a perfected, non-avoidable lien or other encumbrance as of the Petition Date, including, without limitation, all cash, cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable and specifically including the stock of each Debtor's subsidiaries, but limited to 65% of the stock in any foreign subsidiaries of the Debtors), equipment, fixtures, real property interests, franchise rights, patents, tradenames, copyrights, intellectual property, general intangibles, investment property and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, but excluding avoidance actions under the Bankruptcy Code (collectively, the "Postpetition DIP Collateral");

(b) Secured, pursuant to section 364(d)(1), by a fully perfected security interest senior in priority to all liens of the Prepetition Lenders existing as of the Petition Date in all Collateral existing as of the Petition Date (the "Prepetition DIP Senior Collateral");

(c) Secured, pursuant to section 364(c)(3), by a fully perfected security interest in all property other than the Collateral (the "Prepetition DIP Junior Collateral") that is subject to valid and

4

non-avoidable liens as of the Petition Date which security interest shall be junior in priority to such valid and non-avoidable liens (the Postpetition DIP Collateral, Prepetition Senior DIP Collateral and the Prepetition DIP Junior Collateral shall be referred to collectively as the "DIP Collateral");

(d)   Accorded administrative priority status under section 364(c)(1) of the Bankruptcy Code, having a superpriority over any and all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code ("Superpriority Claims"), subject only to the Carve-Out; provided, however, that as it pertains to proceeds of avoidance actions, the priority accorded to the DIP Lenders (and to the Prepetition Lenders pursuant to the Adequate Protection provision below) shall be equivalent in priority to a claim allowed under section 503(b)(1)(A) of the Bankruptcy Code, or such higher priority as may be awarded to any other entity in respect of such proceeds.

(e)   Joint and several among the Borrowers; and

(f)   Guaranteed by all non-Debtor subsidiaries of the Borrowers, subject to the "Guarantors" provisions above.

All DIP Collateral shall be free and clear of other liens, claims and encumbrances, except for (1) those liens granted in favor of the Prepetition Agent and the Prepetition Lenders pursuant to the Prepetition Credit Agreement, and (2) the Permitted Liens.

The foregoing liens on the Postpetition DIP Collateral and the administrative priority claim shall be subject to a carve-out (the "Carve-Out") for (i) following termination of the Total DIP Commitment as provided for herein as the result of a Default or an Event of Default (as each such term will be defined in the DIP Credit Agreement), the payment of allowed professional fees and disbursements incurred by the professionals retained, pursuant to Bankruptcy Code §§ 327 or 1103(a), by the Debtors and the Committee in an aggregate amount not to exceed $750,000 (plus Accrued Professional Fees incurred prior to such termination to the extent such fees are subsequently allowed) and (ii) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court; provided, however, neither the Carve-Out nor the Budget shall include professional fees and disbursements incurred in connection with asserting any claims or causes of action against either the Prepetition Lenders, the Prepetition Agent, the DIP Lenders or the DIP Agent and/or challenging or raising any defense to the obligations under the

5

Prepetition Credit Agreement or the DIP Loans or any lien of the Prepetition Agent, the Prepetition Lenders, the DIP Agent or the DIP Lenders. As long as no Default or Event of Default shall have occurred and be continuing, the Debtors shall be permitted to pay Budgeted compensation and reimbursement of expenses, allowed and payable under Bankruptcy Code §§ 330 and 331, as the same may be payable, and the amount so paid shall not reduce the Carve-Out.

| | |
|---|---|
| Distribution Priorities: | If any Debtor receives cash proceeds from the sale or other disposition of Postpetition DIP Collateral, such proceeds shall be paid to the DIP Agent, when and as received, and shall be applied against the DIP Loans (or released to the Debtors, as the case may be) as follows: first to the payment of all fees and expenses owing to the DIP Agent, second to the payment of accrued interest and fees owing in respect of the DIP Loan, third, released to the Debtors to fund expenses in accordance with the Budget provided that the undrawn portion of the Total DIP Commitment shall be permanently reduced, dollar for dollar, to the extent that such proceeds are released to the Debtors, fourth, after the undrawn portion of the Total DIP Commitment has been eliminated, to the payment of principal and all other amounts owing in respect to the DIP Loan until the DIP Loan has been paid in full and all DIP Commitments have been terminated, and fifth to the payment of any unpaid Adequate Protection Obligations (defined below) until all Adequate Protection Obligations have been paid in full. |

If any Debtor receives cash proceeds from the sale or other disposition of Prepetition Senior DIP Collateral (or any net proceeds from the Prepetition Junior DIP Collateral remaining after the senior liens on such collateral are satisfied), such proceeds shall be paid to the DIP Agent, when and as received, and shall be applied against the Prepetition Revolving Credit Loans and the DIP Loan as follows: first to the payment of all fees and expenses owing to the Prepetition Agent in respect of the Prepetition Revolving Credit Loans, second to the Prepetition Agent in respect of the Prepetition Revolving Credit Loans and fees up to an amount equal to all interest accrued in respect of Tranche A Revolving Credit Loans (or to be deposited into a reserve for payment of interest accruing in respect of Tranche A Revolving Credit Loans); third, to the Prepetition Agent in respect of the Prepetition Revolving Credit Loans up to an amount equal to all principal owing in respect of Tranche A Revolving Credit Loans, including all reimbursement obligations in respect of undrawn Letter of Credit Obligations, to be applied by the Prepetition Agent

in a manner consistent with the Prepetition Credit Documents; <u>fourth</u> to the payment of accrued interest and fees owing in respect of the DIP Loan, <u>fifth</u>, released to the Debtors to fund expenses in accordance with the Budget provided that the undrawn portion of Total DIP Commitment shall be permanently reduced, dollar for dollar, to the extent that such proceeds are released to the Debtors, <u>sixth</u>, after the undrawn portion of the Total DIP Commitment has been eliminated, to the payment of principal and all other amounts owing in respect of the DIP Loan until the DIP Loan has been paid in full and all DIP Commitments have been terminated, <u>seventh</u>, to the Prepetition Agent in respect of the Prepetition Revolving Credit Loans to be applied in a manner consistent with the Prepetition Credit Documents.

If and to the extent the DIP Collateral proves to be insufficient to satisfy in full the DIP Loans, the holders of the Revolving Credit Loans shall be obligated to return to the DIP Lenders each such holder's pro rata share of proceeds or payments received by such holders from and after the Petition Date until such time as the DIP Loans have been paid in full.

| | |
|---|---|
| Closing Date: | The date upon which all conditions precedent to the making of the initial extension of credit are satisfied (the "Closing Date"). |
| Fees and Expenses: | The Borrowers shall pay all reasonable costs and expenses of the DIP Agent and DIP Lenders (including fees and expenses of the DIP Agent's legal and financial advisors) relating to the negotiation, documentation and administration of the DIP Loan Agreement and the enforcement of the DIP Agent's and the DIP Lenders' rights under and in respect of the DIP Loan Agreement. The Committee will be afforded an opportunity to review, subject to appropriate redactions for privileged materials, charges of the DIP Lenders' professionals that are reimbursed by the Debtors. |
| Conditions to Each Extension of Credit: | The DIP Loan Agreement shall contain conditions precedent to each extension of credit after the date hereof required by the DIP Agent, including, without limitation: |

(a) The Borrowers shall have executed the DIP Loan Agreement and all other documentation with respect thereto, satisfactory in all respects to the DIP Agent and the DIP Lenders, on the earlier of (i) January 26, 2001, or (ii) such other date which the DIP Agent shall agree to in writing.

(b) No Default or Event of Default shall exist.

7

(c)  All representations and warranties shall be true and correct in all material respects as of the date of each extension of credit.

(d) An order of the Bankruptcy Court granting final approval of the DIP Loan Agreement (the "Final Order") shall have been entered in form and substance satisfactory to the DIP Agent and the DIP Lenders, and shall be in full force and effect and shall not have been stayed, reversed, vacated or otherwise modified.

(e) The Debtors are continuing to employ their reasonable best efforts to prosecute the Disposition Plan (as defined in the Interim Order).

(f)  Payment of all fees, costs, expenses and other amounts then due and payable to the DIP Agent, including, without limitation, internal fees, costs and expenses.

(g) On or before January 31, 2001, the Debtors shall have directed State Street Bank & Trust, in its capacity as depository agent pursuant to that certain Depository Agreement dated as of May 27, 1998 to remit to the Agent on a provisional basis and subject to Bankruptcy Code § 506(b) the $5.3 million on deposit in accounts FD4426 and FD4427 at State Street Bank & Trust to be applied for the ratable benefit of the Prepetition Lenders.

**Representations and Warranties:**

Those representations and warranties as are customary or appropriate in the context of the proposed DIP Loan Agreement and acceptable to the DIP Agent and the DIP Lenders.

**Admissions and Acknowledgments:**

In addition to, and without limiting the foregoing, each of the Borrowers shall expressly represent, warrant and acknowledge in the DIP Loan Agreement each of the following, subject to the rights of the Committee:

(a) That each of the prepetition agreements executed and delivered by such Borrower in connection with the Prepetition Credit Agreement, including but not limited to each of the Prepetition Credit Documents to which such Borrower is a party, is valid and enforceable by the Prepetition Agent and the Prepetition Lenders against such Borrower;

(b) That such Borrower shall not dispute the validity or enforceability of any of the Prepetition Credit Documents or

8

any of its obligations thereunder, or the validity, priority, enforceability, scope or extent of any charge, lien, security interest or any other encumbrance of the Prepetition Agent and the Prepetition Lenders in, on or against any of the Collateral in the Cases or in any other judicial, administrative or other proceeding;

(c) That such Borrower shall not challenge or dispute the validity of any of the obligations under the Prepetition Credit Agreement, and that, as of the Petition Date, the Borrowers were liable to the Prepetition Agent and the Prepetition Lenders in the aggregate principal amount of approximately $125,000,000, inclusive of Letter of Credit Obligations, plus approximately $570,000 in accrued and unpaid interest thereon, plus fees, costs and expenses incurred in connection with the obligations under the Prepetition Credit Agreement as provided in the Prepetition Credit Documents;

(d) That by reason of the Prepetition Credit Documents, the obligations under the Prepetition Credit Agreement are secured by first-priority, non-avoidable, perfected, valid and enforceable liens on and security interests in all of such Borrower's right, title and interest in and to the Collateral.

Affirmative Covenants:   The DIP Loan Agreement shall contain affirmative covenants required by the DIP Agent, including, without limitation: (i) delivery of statement of cash receipts and disbursements which statement shall include separate line items for collections on Collateral, including accounts receivable, and collections from the sale or disposition of Postpetition DIP Collateral, weekly Budgets and Variance Reports, officers certificates, monthly reporting packages and other information requested by the DIP Agent, (ii) delivery weekly of a report on collateral composition, including a breakdown of collateral between Postpetition DIP Collateral and Collateral, (iii) delivery weekly of a status report on sales of collateral, including a breakdown of collateral to be sold between Postpetition DIP Collateral and Collateral, (iv) payment of all postpetition taxes and other obligations, (v) notices of defaults, litigation and other material events, (vi) weekly accounts receivable aging report for the preceding week, (vii) collection of the following percentages (on a cumulative basis) of gross receivables of the Debtors existing as of the Petition Date (1) 2.5% by January 31, 2001, (2) 5% by February 28, 2001, (3) 10% by March 31, 2001, (4) 15% by April 30, 2001, and (5) 35% by May 31, 2001 (the "Receivables Covenant"), and (viii) by no later than February 9, 2001, the Debtors shall provide the DIP Lenders and the Prepetition Lenders with a plan with respect to disposition

of the Segregated Funds (defined below). In addition, the Debtors shall provide the Agent by not later than February 2, 2001 all information concerning the Debtors' historical warranty claim experience, as well as warranty insurance information, as the Agent may reasonably request.

Negative Covenants: The DIP Loan Agreement shall contain negative covenants required by the DIP Agent, including, without limitation, on: (i) liens, (ii) capital expenditures, (iii) payment of certain prepetition claims in accordance with the first day motions filed in the Cases, and (iv) the existence of any claims entitled to a superpriority under § 364(c)(1) of the Bankruptcy Code other than the Superpriority Claims of the DIP Lenders and the Prepetition Lenders. Additionally, OMC will not permit its wholly owned subsidiary, OMC Development Inc., to use, transfer or commingle the $14,064,544.19 plus interest accruing thereon (the "Segregated Funds") held by OMC Development, Inc. at Chase Manhattan Bank in the United States without advance written notice to the Agent and the Committee and, in the absence of the consent of both the Agent and the Committee to any such proposed action, an order from the Bankruptcy Court.

Allocation of Sale Proceeds: Prior to filing a pleading in the Cases seeking to approve a proposed sale, the Debtors shall provide the DIP Agent and the DIP Lenders a good faith estimate of the allocation of the purchase price consideration among the assets being sold between Postpetition DIP Collateral and Collateral. Any disputes over such allocation shall be resolved by the Bankruptcy Court in the ordinary course of administration of the Cases.

Events of Default: The DIP Loan Agreement shall contain Events of Default required by the DIP Agent, including, without limitation: (i) the entry of an order dismissing any of the Cases or converting any of the Cases to a Chapter 7 case, (ii) the entry of an order appointing a Chapter 11 trustee in any of the Cases, (iii) the entry of an order granting any other claim superiority status or a lien equal or superior to that granted to the DIP Agent and the DIP Lenders, (iv) the entry of an order staying, reversing, vacating or otherwise modifying the DIP Loan Agreement, the Interim Order or the Final Order without the prior written consent of the DIP Agent and the DIP Lenders, (v) the entry of an order in any of the Cases appointing an examiner having enlarged powers beyond those set forth under § 1106(a)(3) and (4) of the Bankruptcy Code, (vi) the failure of any of the Borrowers to pay (A) interest or fees when due and such default shall continue for two business days or (B) principal when due, (vii) the failure of any of the Borrowers to comply with any negative covenants, (viii) breach of the Receivables Covenant, (ix)

10

the failure of any of the Borrowers to perform or comply with any other term or covenant and such default shall continue unremedied for a period of 10 days, (x) any representation or warranty by any of the Borrowers shall be incorrect or misleading in any material respect when made; and (xi) an unfavorable variance in the Budget tested on (a) a weekly basis of 15% in total expenses; or (b) a cumulative basis of 10% in total expenses.

Remedies:   Upon the occurrence of an Event of Default other than an Event of Default set forth above in (ii) and (v), the Required DIP Lenders (as defined below) upon three business days written notice to the Debtors, the United States Trustee and the Committee appointed in the Cases may (a) terminate the Total DIP Commitments (the date of any such termination, the "Termination Date", and any notice to the Debtors declaring such a termination, a "Termination Notice"), (b) declare the obligations in respect of the DIP Loan Agreement to be immediately due and payable, (c) enjoin and prohibit each of the Debtors from using any cash collateral (other than to pay any DIP Obligations), (d) set off immediately any and all amounts in any cash collateral account and exercise all rights and remedies under the DIP Loan Agreement and the Interim Order or Final Order, as applicable. With respect to an Event of Default set forth in (ii) and (v) above, the remedies shall be limited to those described in (a) and (c) in the immediately preceding sentence. The DIP Lenders shall have other customary remedies under the DIP Loan Agreement.

Financial and Other
Reporting Requirements:   Each of the Borrowers shall provide all information reasonably requested by the DIP Agent.

Required DIP Lenders:   "Required DIP Lenders" shall mean, as of any date of determination, DIP Lenders who in the aggregate hold at least 61% of the Total DIP Commitment (which, if terminated, shall be deemed outstanding in the amounts outstanding immediately prior to such termination).

100% approval of the DIP Lenders shall be required to do the following: (a) extend the Maturity Date, (b) change the interest rate, or (c) increase the Total DIP Commitment beyond $19,500,000. All other actions relative to the DIP Loans may be accomplished with the consent of the Required DIP Lenders.

Adequate Protection:   To protect the Prepetition Lenders from any diminution in the value of Collateral available to satisfy the Prepetition Lenders' claims resulting from (i) the Debtors' use of such collateral, and (ii) the priming of the liens securing the obligations under the

11

Prepetition Credit Agreement by the liens granted to secure the DIP Loans, the Debtors shall (a) grant to the Prepetition Lenders replacement liens on all DIP Collateral which liens will be subordinate in priority only to (i) the liens granted to secure the DIP Loans and the Carve-Out (with respect to the Postpetition DIP Collateral only), and (ii) valid, non-avoidable liens existing on the Petition Date, (b) grant to the Prepetition Lenders Superpriority Claims subject only to the Carve-Out and the Superpriority Claim granted in favor of the DIP Loans, and (c) reimburse the Prepetition Agent, on a monthly basis, for professional fees and expenses incurred by the Prepetition Agent in connection with the Cases, which reimbursement shall be provisional in nature pending allowance under section 506(b) of the Code. The foregoing replacement liens and Superpriority claim shall secure payment of the Obligations in an amount equal to the diminution in value of the Collateral available to the Prepetition Lenders from and after the Petition Date (such amount, the "Adequate Protection Obligations"), whether such diminution results from (i) the Debtors' use of such collateral, or (ii) the priming of the liens securing the Obligations under the Prepetition Credit Agreement by the liens granted to secure the DIP Loans

**Release:**

In consideration for the DIP Loans, each of the Borrowers on behalf of itself and each of its successors and assigns (collectively, the "Releasors"), but without prejudice to the rights of the Committee or other party-in-interest to assert claims on behalf of the Debtors' estates, shall forever release, discharge and acquit the DIP Agent, each of the DIP Lenders, the Prepetition Agent, and each of the Prepetition Lenders (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations (collectively, "Claims"), of every type, including, without limitation, any so-called "lender liability" claims or defenses, which occurred on or prior to the date hereof with respect to any of the Borrowers, the Obligations under the Prepetition Credit Agreement, the Prepetition Credit Documents, the DIP Loans or the DIP Loan Agreement.

**Counterparts:**

This Term Sheet may be executed in one or more counterparts, each of which shall be considered an original counterpart and shall become binding when the DIP Agent and each of the Debtors and DIP Lenders has executed one counterpart. Each of the parties hereto agrees that a signature transmitted via facsimile transmission shall be effective to bind the party so transmitting its signature.

**Intended Third Party**

12

| | |
|---|---|
| Beneficiaries: | The parties hereto intend that the Prepetition Agent and the Prepetition Lenders be the beneficiaries of the following provisions of this Term Sheet without prejudice to their rights under the Prepetition Credit Agreement, the Consent Letter, the Final DIP Order, the Agree Final Order Granting Certain Adequate Protection Relief To the Prepetition Lenders or any other order entered in the Cases or any other agreement: (i) subsection (g) of the section titled "Conditions to Each Extension of Credit", (ii) subsection (viii) of the section titled "Affirmative Covenants", (iii) the last sentence of the section titled "Affirmative Covenants", (iv) the last sentence of the section titled "Negative Covenants", (v) the section titled "Distribution Priorities", (vi) the section titled "Adequate Protection", and (vii) the section titled "Release". Furthermore, the provisions identified in (i) through (iv) above cannot be discharged by agreement of the parties hereto or modified in any material manner without the written consent of the Prepetition Agent and the Prepetition Lenders. |
| Governing Law: | Texas, except as governed by the Bankruptcy Code. |

The preceding summary of proposed terms and conditions is not intended to be all-inclusive. Any terms and conditions that are not specifically addressed above would be subject to future negotiations with the Debtors, and comprehensive documentation of the transaction that is acceptable to each DIP Lender will have to be prepared.

IN WITNESS WHEREOF, the DIP Agent, the DIP Lenders and the Borrowers each has caused this Term Sheet to be executed and delivered by their duly authorized officers as of this 25th day of January, 2001.

BORROWERS

OUTBOARD MARINE CORPORATION

By:_____
Name:_____
Title:_____

OMC ALUMINUM BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

OMC FISHING BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

OMC LATIN AMERICA/CARIBBEAN, INC.

By:_____
Name:_____
Title:_____

OMC RECREATIONAL BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

RECREATIONAL BOAT GROUP LIMITED PARTNERSHIP

By:_____
Name:_____
Title:_____

DIP AGENT

BANK OF AMERICA, N.A
in its capacity as DIP Agent

By:_____
Name:_____
Title:_____

DIP LENDERS

BANK OF AMERICA, N.A.
in its capacity as a DIP Lender

By:_____
Name:_____
Title:_____

FLEET CAPITAL CORPORATION

By:_____
Name:_____
Title:_____

THE CIT GROUP/BUSINESS CREDIT, INC.

By:_____
Name:_____
Title:_____

TRANSAMERICA BUSINESS CREDIT CORPORATION

By:_____
Name:_____
Title:_____

OUTBOARD MARINE TRANSPORTATION
CORPORATION

By:_____
Name:_____
Title:_____

OMCEMA, INC.

By:_____
Name:_____
Title:_____

OMC NEVADA, INC.

By:_____
Name:_____
Title:_____

15

## SCHEDULE I

| **DIP LENDER** | **COMMITMENT** |
| --- | --- |
| BANK OF AMERICA, N.A. | 37.07% |
| FLEET CAPITAL CORPORATION | 23.33% |
| THE CIT GROUP/BUSINESS CREDIT, INC. | 19.8% |
| TRANSAMERICA BUSINESS CREDIT CORPORATION | 19.8% |

January 25, 2001 (10:33AM)

## ANNEX II

Agreed Adequate Protection Order