*ORIGINAL*

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | } | Chapter 11 |
| | } | |
| OUTBOARD MARINE | } | |
| CORPORATION, et al. | } | |
| | } | Case No. 00-37405 |
| | } | |
| | } | |
| Debtors. | } | Jointly Administered |
| | } | |

## FINAL ORDER APPROVING POSTPETITION FINANCING AND
## GRANTING LIENS AND SUPER ADMINISTRATIVE PRIORITY PURSUANT
## TO 11 U.S.C. §§ 364(c) AND (d) AND MODIFYING THE AUTOMATIC STAY

OUTBOARD MARINE CORPORATION, a Delaware corporation ("OMC"),

OMC ALUMINUM BOAT GROUP, INC., a Delaware corporation ("OMC Aluminum"), OMC

FISHING BOAT GROUP, INC., a Delaware corporation ("OMC Fishing"), OMC LATIN

AMERICA/CARIBBEAN, INC., a Delaware corporation ("OMC Latin America"), OMC

RECREATIONAL BOAT GROUP, INC., a Delaware corporation ("OMC Boat Group"),

OUTBOARD MARINE TRANSPORTATION CORPORATION, a Delaware corporation

("OMC Transportation"), OMCEMA, Inc., a Delaware corporation ("OMCEMA"), OMC

NEVADA, INC., a Nevada corporation ("OMC Nevada"),  and RECREATIONAL BOAT

GROUP LIMITED PARTNERSHIP, a Delaware limited partnership ("Recreational Boat

336

Group", and with OMC, OMC Aluminum, OMC Fishing, OMC Latin America, OMC Boat

Group, OMC Transportation, OMCEMA, and OMC Nevada, the "Borrowers") each as a debtor

and debtor-in-possession in these cases (each a "Debtor," and collectively the "Debtors"), having

filed with this Court voluntary petitions (each a "Petition," and collectively the "Petitions") for

relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the

"Code"), on December 22, 2000 (the "Petition Date"); and having filed a Motion on December

22, 2000 pursuant to 11 U.S.C. §§ 364(c) and (d) (the "Motion") for entry of an order, inter alia:

(1)    Authorizing the Borrowers to borrow, on a secured revolving credit basis

from Bank of America, N.A. ("B of A"), and certain other lenders (collectively with B of A, the

"DIP Lenders"), an amount not to exceed $35,000,000 (the "DIP Facility"), pursuant to the terms

of the Interim Order (defined below) and that certain Term Sheet dated as of December 22, 2000

(the "DIP Term Sheet," a true and correct copy of which is attached as Exhibit 1 to the Interim

Order (defined below), by and among the Borrowers, B of A, as agent (in such capacity, the "DIP

Agent") and as a lender, and the DIP Lenders, and any related documents, required to be

delivered by or in connection with the DIP Term Sheet (collectively with the DIP Term Sheet as

amended, the "DIP Loan Documents");

(2)    Authorizing and directing the Debtors to execute and deliver, from time to

time, all such other documents, instruments and agreements and perform all such other acts as

may be required in connection with the DIP Term Sheet;

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

(3)    Authorizing, under Section 364(c)(1), (c)(2), (c)(3) and (d) of the Code,

the Borrowers to obtain postpetition financing under the DIP Facility (all such financing, loans,

extensions of credit, and other indebtedness, including interest and fees in connection therewith,

shall hereinafter be referred to as the "Postpetition Advances"), which financing and indebtedness,

due and owing by the Borrowers to the DIP Lenders, shall (a) pursuant to 11 U.S.C. § 364(c)(1),

have priority over any and all administrative expenses of the kind specified in or created or

awarded pursuant to, inter alia, 11 U.S.C. §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a),

507(b) and 726, subject only to the Carve-Out (as defined below), (b) pursuant to 11 U.S.C. §

364(c)(2) be secured by a first priority fully perfected lien on property of the Debtors not

otherwise subject to a lien  subject only to the Carve-Out (as defined below), (c) pursuant to 11

U.S.C. § 364 (c)(3) be secured by a fully perfected lien in all property of the Debtors other than

the Prepetition Collateral (defined below) (the "Prepetition DIP Junior Collateral") that is subject

to valid and non-avoidable liens as of the Petition Date which security interest shall be junior in

priority to such valid and non-avoidable liens, and (d) pursuant to 11 U.S.C. § 364(d)(1), be

secured by a first priority priming lien on and security interest in all Prepetition Collateral (defined

below), in each case, subject only to the Existing Liens (as defined in paragraph 7 below) other

than Existing Liens in favor of the Prepetition Lenders (as defined below).

(4)    Lifting the automatic stay imposed by section 362 of the Code to the extent

reasonably necessary to permit the DIP Agent, the DIP Lenders and the Debtors to implement the

terms of the Interim Order;

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

(5)      Authorizing the Borrowers, after an interim hearing on the Motion, to
obtain from the DIP Lenders interim financing up to $10,000,000 and to otherwise enable the
Debtors to pay the expenses set forth in the Budget (as defined below) all under the same terms
and conditions as set forth in the DIP Term Sheet pending a final hearing on the Motion (the
"Final Hearing") in accordance with Fed. R. Bankr. P. 4001(b) and (c); and

(6)      Granting the Debtors such other and further relief as the Court deems
necessary, appropriate, equitable, proper, and consistent with the terms of the Interim Order;

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

A.      Pursuant to Sections 1107 and 1108 of the Code, the Debtors have
retained possession of their property and are authorized thereby, as debtors-in-possession, to
continue the operation and management of their businesses. The Debtors and their non-debtor
affiliates collectively are one of the world's largest designers, manufacturers, and sellers of
outboard marine engines, boats, and marine parts. The Debtors' products include Johnson and
Evinrude brand outboard engines and Chris*Craft, Four Winns, Seaswirl, Stratos, Javelin, Hydra-
Sports, Lowe, and Princecraft recreational and fishing boats.

B.      The Debtors and the DIP Lenders stipulate that, prior to the Petition Date:

(1)      Certain of the Borrowers, B of A, as agent (in such capacity, the
"Prepetition Agent") and as a lender, and certain other lenders (collectively with B of A, the
"Prepetition Lenders") are parties to that certain Amended and Restated Loan and Security

Agreement dated as of January 6, 1998 (such agreement, as amended and modified by that certain

First Amendment to Amended and Restated Loan and Security Agreement dated as of May 21,

1998, that certain Second Amendment to Amended and Restated Loan and Security Agreement

dated as of August 31, 1998, that certain Third Amendment to Amended and Restated Loan and

Security Agreement dated as of December 21, 1998, that certain Fourth Amendment to Amended

and Restated Loan and Security Agreement dated as of February 1, 1999, that certain Fifth

Amendment to Amended and Restated Loan and Security Agreement dated as of February 25,

1999, that certain Sixth Amendment to Amended and Restated Loan and Security Agreement

dated as of July 30, 1999, that certain Seventh Amendment to Amended and Restated Loan and

Security Agreement dated as of October 27, 1999, that certain Eighth Amendment to Amended

and Restated Loan and Security Agreement dated as of January 31, 2000, that certain Ninth

Amendment to Amended and Restated Loan and Security Agreement dated as of August 9, 2000,

and that certain Tenth Amendment to Amended and Restated Loan and Security Agreement dated

as of October 10, 2000, collectively, the "Prepetition Credit Agreement"), pursuant to which the

Prepetition Lenders have made loans to the Borrowers.  As of the Petition Date, the Borrowers

were indebted to the Prepetition Lenders for obligations totaling not less than $125,000,000 in

principal (including approximately $45,000,000 in outstanding letters of credit), plus accrued

interest, fees and costs, including professional fees and costs.  All obligations arising under or

evidenced by the Prepetition Credit Agreement and the instruments and documents executed in

connection with such agreement shall hereinafter be referred to as the "Prepetition Obligations".

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

(2)     As security for the Prepetition Obligations, the Debtors granted to the

Prepetition Agent, for the ratable benefit of the Prepetition Lenders, security interests in and liens

upon certain of the Borrowers' then-owned and thereafter acquired property and interests in

property as more specifically set forth in the Prepetition Credit Agreement and those Security

Agreements, Patent Security Agreements, Trademark Security Agreements, Copyright Security

Agreements and other documents executed in connection with the Prepetition Credit Agreement.

The Prepetition Lenders assert that they duly perfected the liens and security interests granted to

them by the Debtors through the filing and recordation of financing statements and other

appropriate documents and instruments in the relevant jurisdictions.  The Prepetition Credit

Agreement and the documents executed in connection therewith shall hereinafter be referred to as·

the "Prepetition Loan Documents."  The property subject to the liens and security interests

described in this paragraph B3 shall hereinafter be referred to as the "Prepetition Collateral."

C.     On December 22, 2000 the Debtors filed a motion seeking interim approval

of postpetition financing and granting liens and super administrative expense priority pursuant to

11 U.S.C. §§ 364(c) and (d), modifying the automatic stay and scheduling a final hearing (the

"Interim Motion").

D.     After a hearing on December 26, 2000, this Court entered the Interim

Order Approving Postpetition Financing And Granting Liens And Super Administrative Priority

Pursuant to 11 U.S.C. §§ 364(c) And (d), Modifying The Automatic Stay And Scheduling A Final

Hearing (the "Interim Order").

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

E.    On December 28, 2000, the United States Trustee appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors Committee").

F.    This Court has jurisdiction over this case and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b)(2)(D) and 1334. The subject of this Final Order is a "core" proceeding within the meaning of 28 U.S.C. § 157.

G.    The Debtors provided notice of the Interim Order to: (i) the DIP Agent and the Prepetition Agent, (ii) the DIP Lenders and the Prepetition Lenders, (iii) each Debtor's twenty (20) largest unsecured creditors, (iv) the United States Trustee for the Northern District of Illinois, Eastern Division, (v) the Creditors Committee, and (vi) all parties entitled to notice pursuant to Fed. R. Bankr. P. 4001.

H.    On January 16, 2001, the Creditors Committee filed a Limited Objection Of The Official Committee Of Unsecured Creditors To The Proposed Final Adequate Protection And Financing Orders (the "Objection").

I.    In order to resolve the Objection, the Debtors, the Creditors Committee, and the DIP Lenders have amended the terms of the DIP Term Sheet as set forth in Exhibit 1 attached hereto (the "Amended and Restated DIP Term Sheet") and have agreed to the terms of this Final Order as set forth herein.

J.    A need exists for the Debtors to obtain financing in order to facilitate,

among other things, the orderly wind down of their operations and sale of their assets. The

Debtors have no significant source of cash and require cash for the payment of, inter alia, wages,

salaries and certain expenses (including rent and utility deposits), and to meet other expenses

(including the compensation and reimbursement of expenses of such professionals as the Debtors

may, with prior approval of the Court, retain) necessary to preserve their assets and maximize

value during the liquidation process.

     K.    The Debtors are presently unable to obtain, in the ordinary course of

business or otherwise, unsecured credit allowable under Sections 364(a) or 364(b) of the Code, or

secured credit pursuant to Sections 364(c) or 364(d) of the Code, except from the DIP Lenders

on the terms and conditions contained in this Final Order. The DIP Agent and the DIP Lenders

have indicated a willingness to provide the Debtors with certain Postpetition Advances as

contemplated herein, but solely on the terms and conditions set forth in this Final Order and the

Amended and Restated DIP Term Sheet. After considering all of the alternatives, the Debtors

have concluded, in the exercise of their best and reasonable business judgment, that the financing

to be provided by the DIP Lenders under the terms of this Final Order and the Amended and

Restated DIP Term Sheet represents the best financing available to the Debtors.

     L.    Without prejudice to the rights, if any, of any other party in interest to

object to, challenge or dispute the validity and extent of the Prepetition Indebtedness (as defined

below), each of the Debtors admits that it is truly and justly indebted to the Prepetition Lenders

without defense, counterclaim, or offset of any kind, and that as of the Petition Date it was

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

indebted and liable to the Prepetition Lenders in the aggregate principal amount of not less than

$125,000,000 in respect of loans made by the Prepetition Lenders to the Borrowers and financial

accommodations made by the Prepetition Lenders to the Borrowers pursuant to the Prepetition

Credit Agreement, including letters of credit issued and outstanding under the letter of credit sub-

facility in the Prepetition Credit Agreement in the amount of approximately $45,000,000 plus

approximately $570,000 of accrued and unpaid interest thereon, plus fees, costs and expenses

now owing or hereafter accruing pursuant to the Amended and Restated DIP Term Sheet (the

foregoing amounts of principal, interest, fees, costs, and expenses now owing or hereafter

accruing pursuant to the Prepetition Credit Agreement entered into by the Debtors in connection

therewith are collectively referred to hereinafter as the "Prepetition Indebtedness").

      M.     The security interests and liens granted in this Final Order to the DIP

Agent, for the ratable benefit of the DIP Lenders, including the security interests and liens granted

in paragraph 7 below and in the Amended and Restated DIP Term Sheet, do not impair the valid,

perfected, prepetition security interests and liens, if any, of any holder (other than the Prepetition

Lenders) of such a security interest or lien in the property of the estates created by the filing of the

Petitions.

      N.     Without prejudice to the rights, if any, of any other party in interest to

object to, challenge or dispute the validity, priority, and perfection of the Prepetition Agent's liens

on the Prepetition Collateral, the Debtors agree and acknowledge that the Prepetition

Indebtedness is secured by first-priority, non-avoidable, perfected, valid and enforceable liens on

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

and security interests in all of the Debtors' right, title and interest in and to the Prepetition

Collateral, including, without limitation, the following categories of Prepetition Collateral:

accounts, contract rights, chattel paper, instruments, general intangibles (including without

limitation, trademarks and tradenames, patents and copyrights, and specifically including without

limitation those listed in Schedule 7.1(z) of the Prepetition Credit Agreement), licenses, inventory

(including without limitation, finished goods, work-in-process and raw materials), investment

property (including without limitation, securities, security entitlements and securities accounts,

but excluding capital stock in any subsidiary of OMC or any of its subsidiaries owned by OMC or

any of the other "Loan Parties" under the Prepetition Credit Agreement), books and records, and

deposit accounts and all cash deposited with any clearing bank, the Prepetition Agent or any

Prepetition Lender or any affiliate or subsidiary thereof, respectively, and all proceeds and

products of any of the foregoing as more particularly described in the Prepetition Agreements.

      O.     Entry of this Final Order is in the best interest of the Debtors and their

creditors and estates. The terms of the postpetition financing authorized hereby are fair and

reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment

consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair

consideration.

      P.     As set forth in the Motion and based upon the record of this proceeding,

the DIP Agent, the DIP Lenders, the Debtors and the Creditors Committee have negotiated the

terms and conditions of this Final Order and the documents in good faith and at arm's-length, and

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

any credit extended by the DIP Lenders on or after the Petition Date pursuant to the terms of the

Amended and Restated DIP Term Sheet and this Final Order, shall be and hereby is, deemed to

have been extended in "good faith" for purposes of Section 364(e) of the Code.

**BASED ON THE FOREGOING, IT IS HEREBY ADJUDGED, ORDERED AND DECREED:**

1. The Debtors' Motion shall be, and hereby is, approved, subject to the terms

and conditions set forth in this Final Order.

2. Subject to the terms and conditions contained in this Final Order, the

Debtors are hereby expressly authorized and directed to execute and deliver to the DIP Lenders,

as applicable, the Amended and Restated DIP Term Sheet, and such additional documents,

instruments, and agreements as may be reasonably required by the DIP Agent to implement the

terms or effectuate the purposes of this Final Order or the Amended and Restated DIP Term

Sheet including, without limitation, the DIP Loan Agreement as contemplated in the Amended

and Restated DIP Term Sheet in form and substance satisfactory to the DIP Agent, the DIP

Lenders and their counsel.  The terms and conditions of the Amended and Restated DIP Term

Sheet are hereby approved and ratified, and each of the Debtors is authorized and directed to

comply with and perform all of the terms and conditions contained therein.  The failure to

reference or discuss any particular provision of the Amended and Restated DIP Term Sheet in this

Final Order shall not affect the validity or enforceability of any such provision.

3. Without limiting the foregoing, the Borrowers are authorized to borrow

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

Postpetition Advances up to the aggregate principal amount, including borrowing capacity

reserved to fund the Employee Retention Amount and Accrued Professional Fees (each as defined

in the Amended and Restated DIP Term Sheet), of $19,500,000 outstanding (or reserved for) at

any one time pursuant to the terms of the Amended and Restated DIP Term Sheet.

4.    In addition, the Debtors are hereby authorized to pay all fees, expenses and

other amounts which may be required or necessary for their performance under the terms of the

Amended and Restated DIP Term Sheet or this Final Order, including, without limitation, the

closing fee (as referenced in the Amended and Restated DIP Term Sheet), the commitment fee (as

referenced in the Amended and Restated DIP Term Sheet), and all reasonable attorneys' fees and

related costs and expenses incurred by the DIP Agent and the DIP Lenders, including those

relating to the negotiation, documentation and administration of the Amended and Restated DIP

Term Sheet and the enforcement of the DIP Agents' and the DIP Lenders' rights under and in

respect of the Amended and Restated DIP Term Sheet.

5.    All loans made to the Borrowers on or after the Petition Date under the

Amended and Restated DIP Term Sheet (collectively, the "Postpetition Advances") and interest

thereon, and all fees, costs, expenses, indebtedness, obligations and other liabilities arising or

incurred on or after the Petition Date and owing by the Debtors to the DIP Lenders under the

Amended and Restated DIP Term Sheet and the Interim Order and this Final Order shall

hereinafter be referred to as the "Postpetition Indebtedness." Postpetition Advances: (i) shall be

evidenced by the books and records of the DIP Agent or the DIP Lenders; (ii) shall bear interest

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

(which shall be payable monthly) at the rate prescribed in the Amended and Restated DIP Term

Sheet; (iii) shall be secured in the manner specified in paragraph 7 below; (iv) shall be payable in

accordance with the terms of the Amended and Restated DIP Term Sheet; and (v) shall comply

with and otherwise be governed by the terms as set forth in the Amended and Restated DIP Term

Sheet.

6.    Subject to the terms and conditions contained in this Final Order, the

Borrowers may use Postpetition Advances to (i) fund expenses incident to the Borrowers' efforts

to preserve and sell assets in accordance with the weekly cumulative amounts set forth in the

Budget (as defined herein) for the then current week, and (ii) to pay all fees as provided under the

DIP Loan Documents, provided that: (1) the aggregate amount of Postpetition Advances

(including Reserve Amounts) which may be used by the Debtors may not exceed $19,500,000;

and (2) the Borrowers may use Postpetition Advances only to the extent and in the amounts

provided for in the Budget (as defined below), unless the Required DIP Lenders (as defined in the

Amended and Restated DIP Term Sheet) consent to a greater or different use of the funds than

that prescribed by the Budget.  Pursuant to the DIP Loan Documents, the Debtors are authorized

and directed to provide the DIP Agent, DIP Lenders and the Creditors Committee with: (i) not

later than the third business day of each week,  (a) a copy of a budget (such budget, with

modifications approved from time to time by the Required DIP Lenders (as defined in the

Amended and Restated DIP Term Sheet), the "Budget", and an initial Budget attached to the

Interim Order as Exhibit "2"), in form and substance satisfactory to the DIP Agent and the

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

Required DIP Lenders, reflecting on a line-item basis anticipated weekly cash receipts and

expenditures for the period ending May 31, 2001, and (b) a copy of a variance report (the

"Variance Report") reflecting on a line-item basis the actual cash receipts and disbursements for

the preceding week and the percentage variance of such actual results from those reflected in the

Budget for the preceding week, and a written explanation of such variance; and (ii) such other

financial and related reports as required by the Amended and Restated DIP Term Sheet.  In the

absence of any Event of Default (as defined in the Amended and Restated DIP Term Sheet), the

Borrowers shall have continuing authority to borrow Postpetition Advances, but only: (i) on the

conditions set forth in this Final Order and the Amended and Restated DIP Term Sheet; and (ii) to

the extent and in the amounts provided for in the Budget.

       7.    As security for the full and timely payment of the Postpetition Indebtedness

and the timely performance of each of the other obligations owing by the Debtors on or after the

Petition Date, the DIP Agent, for the ratable benefit of the DIP Lenders, is hereby granted a valid,

perfected, and enforceable security interest in and lien upon all real and personal property of the

Debtors and their estates, whether now owned or hereafter acquired or arising, whether tangible

or intangible, and wherever located (all such property being referred to collectively as the "DIP

Collateral").  The liens and security interests herein granted to the DIP Agent, for the ratable

benefit of the DIP Lenders, in that portion of the DIP Collateral (including, without limitation, any

such DIP Collateral acquired or generated by the Debtors or their estates after the Petition Date)

which is not subject to any other properly perfected, valid, non-avoidable and enforceable liens or

security interests as of the Petition Date (the "Postpetition DIP Collateral") shall have first and

paramount priority pursuant to Section 364(c)(2) of the Code, subject only to the Carve-Out (as

defined below). The liens and security interests herein granted to the DIP Agent, for the ratable

benefit of the DIP Lenders, on all other property owned by the Debtors shall (i) pursuant to

Section 364(d)(1) of the Code, prime the liens and security interests held by the Prepetition Agent

(for the ratable benefit of the Prepetition Lenders) in the Prepetition Collateral, and (ii) pursuant

to Section 364(c)(3) of the Code, be junior in priority only to Existing Liens held by persons other

than the Prepetition Agent. Existing Liens, as used herein, shall mean liens in property of the

Debtors on the Petition Date that were properly perfected, valid, enforceable and non-avoidable

as of the Petition Date, including the liens granted to the Prepetition Agent for the ratable benefit .

of the Prepetition Lenders pursuant to the Prepetition Credit Agreement.

       8.    The security interests and liens herein granted: (i) shall be subject only to

(x) the Existing Liens (other than those held by the Prepetition Agent) to the extent provided in

clause 7(ii) above, and (y) with respect to the liens granted herein on the Postpetition DIP

Collateral, the "Carve-Out", and shall be prior and senior to all security interests, liens and other •

encumbrances in and to the DIP Collateral granted or arising after the Petition Date; (ii) shall not

extend to any avoidance actions by any of the Debtors or their estates, including, without

limitation, those arising under sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy

Code and any retainer paid to Skadden, Arps, Slate, Meagher & Flom as counsel to the Debtors

as agreed by the parties; and (iii) are and shall be valid, perfected, enforceable, non-avoidable and

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

effective by operation of law as of the Petition Date without any further action by the Debtors, the

DIP Agent, or the DIP Lenders and without the execution, filing, or recordation of any financing

statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent

and Trademark Office or other documents. If the DIP Agent hereafter requests the Debtors to

execute and deliver to the DIP Agent financing statements, security agreements, collateral

assignments, mortgages, or other instruments or documents considered by the DIP Agent to be

reasonably necessary or desirable to further evidence the perfection of the liens and security

interests granted in this Final Order, the Debtors are hereby authorized and directed to execute

and deliver those financing statements, security agreements, mortgages, collateral assignments, in-

struments, and documents, and the DIP Agent is hereby authorized to file or record, in its sole

discretion, such documents; provided that all such documents shall be deemed to have been filed

or recorded at the time and on the date of entry of this Final Order.

9.      In addition to the liens and security interests granted to the DIP Agent, for

the ratable benefit of the DIP Lenders, pursuant to this Final Order and subject to the last 4

sentences of this paragraph 9, all of the Postpetition Indebtedness (including, without limitation,

all Postpetition Advances) is hereby granted superpriority administrative expense status, in

accordance with Section 364(c)(1) of the Code, over any and all administrative expenses of the

Debtors, whether heretofore or hereafter incurred, of the kind specified in 11 U.S.C. §§ 105, 326,

328, 330, 331, 503(b), 507(a), or 507(b) subject and subordinate only to a carve-out (the "Carve-

Out") for (i) following the termination of the DIP Facility as a consequence of a Default or an

Event of Default upon delivery of a "Termination Notice" (as each such term is defined in the

Amended and Restated DIP Term Sheet), the payment of (A) professional fees and disbursements

incurred by professionals (other than ordinary course professionals) retained, pursuant to Sections

327 or 1103(a) of the Code, by the Debtors and the Creditors Committee (provided that such fees

and disbursements are allowed by the Court) in an aggregate amount not to exceed $750,000

(plus Budgeted professional fees and disbursements incurred prior to such termination to the

extent such fees and expenses are subsequently allowed) and (B) the expenses (including counsel

fees) of any member of any such committee allowed under Section 503(b)(3)(F) of the Code, and

(ii) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to

the Clerk of the Court; provided, however, that neither the Carve-Out nor the Budget shall

include professional fees, disbursements, costs or expenses incurred in connection with asserting

any claims or causes of action against either the Prepetition Lenders, the Prepetition Agent, the

DIP Lenders or the DIP Agent and/or challenging or raising any defense to the Prepetition

Indebtedness or the Postpetition Indebtedness or any lien of the Prepetition Agent, the Prepetition

Lenders, the DIP Agent or the DIP Lenders.  Except as otherwise provided herein, no other

claims, costs or expenses, including, without limitation, any administrative claim granted to any

reclamation claimant, that have been or may be incurred in these proceedings, or in any

conversion of these proceedings pursuant to Section 1112 of the Code, or in any other proceeding

related thereto: (i) shall be granted a priority senior to or pari passu with (x) the claims of the DIP

Lenders against the Debtors or any successor Debtors or trustees, or (y) the security interests and

liens of the DIP Agent, for the ratable benefit of the DIP Lenders, upon the DIP Collateral; or (ii)

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

-17-

shall be imposed against the DIP Agent, the DIP Lenders, their claims, or the DIP Collateral,

while any portion of the Postpetition Indebtedness remains outstanding unless first consented to in

writing by the Required DIP Lenders. The Creditors Committee, for itself and any Chapter 7

trustee appointed in this case, expressly reserves the right to challenge the priority, as a matter of

law, of the Section 364(c)(1) priority granted to the DIP Lenders relative to the administrative

priority claims of a Chapter 7 liquidation, and the entry of this Final Order is without prejudice to

such reservation of (and the DIP Lenders' right to challenge) such rights. Moreover, nothing

contained in this paragraph 9 shall (1) impair the rights (if any) of parties-in-interest (with

standing under applicable law) to assert that the priority claims granted to the DIP Lenders

hereunder should be satisfied, in whole or in part, by the imposition against the Prepetition

Lenders of a charge under Section 506(c) or Section 552(b) of the Code against proceeds that are

realized from the disposition of the Prepetition Collateral, or (2) limit in any way the right of the

Prepetition Lenders to contest such assertions. Additionally, nothing contained in this paragraph

9 shall impair the rights (if any) of parties-in-interest (with standing under applicable law) to assert

that charges allowable under Section 506(c) of the Code should be imposed against proceeds of

Postpetition DIP Collateral in respect of the benefits conferred by such parties (other than the

Debtors) upon the DIP Lenders and with respect to the Postpetition DIP Collateral, nor shall

anything contained herein limit the right of the DIP Lenders to contest such assertions. Finally, as

it pertains to proceeds of avoidance actions, including, without limitation, those arising under

sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, the priority accorded the

DIP Lenders hereunder shall be equivalent in priority to a claim allowed under section

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

503(b)(1)(A) of the Bankruptcy Code, or such higher priority as may be awarded to any other entity in respect of such proceeds.

10.    The Debtors agree that no portion of the Postpetition Advances, the DIP Collateral, and/or the Carve-Out may be used to commence or prosecute any action or objection with respect to the claims, liens or security interests of the Prepetition Lenders, the Prepetition Agent, the DIP Lenders or the DIP Agents or raise any defense to the Prepetition or Postpetition Indebtedness.

11.    The DIP Agent is authorized to collect upon, convert to cash, and enforce checks, drafts, instruments, and other forms of payment now or hereafter coming into its possession as collateral or proceeds of collection of the DIP Collateral and to apply all proceeds of collections of collateral now or hereafter coming into the DIP Agent's possession in accordance with the Amended and Restated DIP Term Sheet. The automatic stay is hereby vacated as against the DIP Agent and the DIP Lenders to permit the DIP Agent and the DIP Lenders to effectuate the provisions of this paragraph 11.

12.    The signature of the Chief Executive Officer or any other persons designated by the Board of Directors or similar governing authority of the respective Debtor, whether by letter to the DIP Agent or appearing on any one or more of the agreements, certificates, instruments, or documents contemplated by or referenced in this Final Order, shall bind the Debtors with respect to documents executed and other actions taken pursuant to this

Final Order.

13.   The provisions of this Final Order shall be immediately and fully effective upon entry by the Court and any actions taken pursuant hereto shall survive entry of, and shall govern with respect to any conflict with any order (i) which may be entered confirming any plan of reorganization or (ii) which may be entered converting the Debtors' chapter 11 cases from chapter 11 to chapter 7. The priority of the liens and security interests granted to the DIP Agent, for the ratable benefit of the DIP Lenders, in paragraph 7 hereof and the Amended and Restated DIP Term Sheet, the priority of the superpriority administrative expense granted to the DIP Lenders in paragraph 9 hereof, and all rights of the DIP Agent and the DIP Lenders and all obligations of the Debtors created hereunder or arising pursuant hereto or the Amended and Restated DIP Term Sheet on or after the Petition Date, shall continue in the Debtors' chapter 11 case and in any superseding chapter 7 case under the Bankruptcy Code, and such claims, liens and security interests shall maintain their priority as provided by this Final Order until satisfied and discharged in accordance with the terms of the Amended and Restated DIP Term Sheet.

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

14.    Consistent with Section 364(e) of the Code, if any or all of the provisions of this Final Order are hereafter modified, vacated or stayed: (a) such stay, modification or vacation shall not affect the validity of any obligation, indebtedness, liability, security interest or lien granted or incurred by the Debtors to the DIP Agent or the DIP Lenders on or after the Petition Date and prior to the effective date of such stay, modification or vacation, or the validity and enforceability of any security interest, lien, priority or right authorized or created hereby pursuant to the Amended and Restated DIP Term Sheet; and (b) any indebtedness, obligation or liability incurred by the Debtors to the DIP Agent or the DIP Lenders on or after the Petition Date and prior to the effective date of such stay, modification or vacation shall be governed in all respects by the provisions of this Final Order, and the DIP Agent and the DIP Lenders shall be entitled to all the rights, remedies, privileges and benefits, including the priority, security interests and liens granted herein and pursuant to the Amended and Restated DIP Term Sheet, with respect to any such indebtedness, obligation or liability.

15.    Except as otherwise provided for in this Final Order or the Amended and Restated DIP Term Sheet, or to the extent that the Required DIP Lenders may otherwise agree in writing, the Debtors shall not seek, and it shall constitute an Event of Default (as defined below) should there be entered any order: (i) dismissing the chapter 11 case of any of the Debtors under 11 U.S.C. §§ 305 or 1112 or otherwise; (ii) converting the chapter 11 case of any of the Debtors under 11 U.S.C. § 1112 or otherwise; or (iii) confirming a plan of reorganization in the chapter 11 case of any of the Debtors unless such order provides for (x) the payment in full in cash of all

Postpetition Indebtedness payable or owing to the DIP Lenders under the Amended and Restated

DIP Term Sheet on or before the effective date of, or substantial consummation of, the plan of

reorganization that is the subject of such order, or (y) such other treatment as may be agreed to in

writing by the Debtors and the Required DIP Lenders (as defined in the Amended and Restated

DIP Term Sheet).

      16.    The automatic stay provisions of 11 U.S.C. § 362 are hereby vacated and

modified to the extent necessary to permit the DIP Agent, and the DIP Lenders to exercise all

rights and remedies provided for in this Final Order, the Amended and Restated DIP Term Sheet,

and applicable law, and to otherwise effectuate the provisions of this Final Order, without the

need for filing further pleadings or application to or order of this Court. Upon the occurrence and

during the continuance of any Event of Default as defined in the Amended and Restated DIP

Term Sheet and upon the DIP Agent's providing of three (3) business days' written notice (by

facsimile, telecopy or otherwise) to each of the Debtors, to counsel for the Debtors, to the United

States Trustee, and to counsel for the Creditors Committee, the DIP Agent and the DIP Lenders

shall be, and hereby are, authorized to exercise any or all of their rights and remedies and to take

any or all of the following actions without further modification of the automatic stay pursuant to

Section 362 of the Code or further order of or application of this Court: (a) terminate the Total

DIP Commitments (as defined in the Amended and Restated DIP Term Sheet) and thereafter

cease to make any DIP Loans or Postpetition Advances to the Debtors, (b) declare all principal

of, and accrued interest on, the obligations in respect of the Amended and Restated DIP Term

Sheet to be immediately due and payable, (c) set-off immediately, in the DIP Lenders' sole

discretion, any and all amounts in accounts maintained by the Debtors with the DIP Agent or any

of the DIP Lenders, or otherwise enforce rights against any DIP Collateral in the possession of

the DIP Agent or any of the DIP Lenders, and (d) take any other actions or exercise any other

rights or remedies permitted it under this Final Order, the DIP Loan Documents or applicable law.

17.     In further consideration for the DIP Lenders' agreement to provide the DIP

Loans, the Debtors, on behalf of themselves and their respective estates, agree that (i) the rate of

interest applicable to the Prepetition Obligations from and after the Petition Date shall be the

interest rate prescribed in the Amended and Restated DIP Term Sheet; and (ii) so long as the DIP

Lenders have not terminated or materially restricted the Debtors' right to borrow funds in

accordance with the Amended and Restated DIP Term Sheet, neither the Debtors nor any party

acting on their behalf (including the Creditors Committee) may seek to (a) borrow money from

any person other than the DIP Lenders to the extent that the repayment of such borrowings is to

be secured pursuant to Section 364(d)(1) of the Code by a lien or security interest that is senior or

equal to the liens and security interests held by the Prepetition Agent (for the ratable benefit of the

Prepetition Lenders), or (b) to use cash collateral without the consent of both the Required DIP

Lenders (as defined in the Amended and Restated DIP Term Sheet) and  Prepetition Lenders

holdings at least 51% (in dollar amount) of the Prepetition Obligations.

18.     Each of the Debtors has stipulated and is hereby deemed: (a) to release and

discharge the DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders, in their

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

respective capacities as such, together with their respective agents, attorneys, employees, heirs,

executors, administrators, officers, directors, successors and assigns, from any and all claims,

causes of action and remedies (whether under the Bankruptcy Code or other applicable law)

arising out of, based upon or related to the Prepetition Obligations or the Prepetition Collateral

securing such obligations; and (b) to waive any and all defenses (including, without limitation,

offsets and counterclaims of any nature or kind) as to the validity, perfection, priority,

enforceability, amount and nonavoidability (under the Bankruptcy Code or otherwise) of the

Prepetition Obligations and the security interests in and liens upon the Prepetition Collateral

securing such obligations.  The releases and waivers set forth in this paragraph are deemed

effective upon the date of entry of this Final Order, but are expressly without prejudice to the

rights of the Creditors Committee to challenge the validity of the liens and claims asserted by the

Prepetition Lenders, or otherwise seek to prosecute claims held by the Debtors' estates against

the Prepetition Lenders.  The releases and waivers set forth in this paragraph shall not be deemed

to apply to Quantum Industrial Partners, LDC or any assignee or affiliate thereof, nor shall such

releases and waivers be construed as a release or waiver of any rights under section 506(c) or

552(b) of the Bankruptcy Code.

      19.    The provisions of this Final Order shall be binding upon and inure to the

benefit of the DIP Agent, the DIP Lenders and each of the Debtors and their respective

successors and assigns (including, without limitation, any chapter 11 trustee, chapter 7 trustee or

other fiduciary hereafter appointed for or on behalf of the Debtors or with respect to any of the

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

Debtors' property in the Debtors' chapter 11 cases or otherwise).

20.   The rights and remedies of the DIP Agent and the DIP Lenders specified herein are cumulative and not exclusive of any rights or remedies that they may have under the Amended and Restated DIP Term Sheet or otherwise. The Debtors, the DIP Agent and the DIP Lenders are hereby authorized (i) to implement, in accordance with the terms of the Amended and Restated DIP Term Sheet, any non-material modifications (including, without limitation, any change in the number or composition of the DIP Lenders) to the Amended and Restated DIP Term Sheet without further order of this Court, and (ii) to agree upon and enter into any written amendments or modifications to the Budget without further order of this Court.

21.   This Final Order may be extended by agreement among the Debtors, the DIP Lenders, the DIP Agent, the Creditors Committee and approval by the Court upon two (2) days notice to parties in interest.

Dated: January, 25 2001.

_____
United States Bankruptcy Judge

Consented to:

BANK OF AMERICA, N.A., as DIP Agent

By: _____
One of its Attorneys

Larry J. Nyhan
Matthew A. Clemente (ARDC # 6255757)
SIDLEY & AUSTIN
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

## EXHIBIT 1

**Amended and Restated DIP Term Sheet**

**EXECUTION COPY**

## Amended and Restated DIP Term Sheet

   Outboard Marine Corporation, a Delaware corporation ("OMC"), OMC Aluminum Boat Group, Inc., a Delaware corporation ("OMC Aluminum"), OMC Fishing Boat Group, Inc., a Delaware corporation ("OMC Fishing"), OMC Latin America/Caribbean, Inc., a Delaware corporation ("OMC Latin America"), OMC Recreational Boat Group, Inc., a Delaware corporation ("OMC Boat Group"), Outboard Marine Transportation Corporation, a Delaware corporation ("OMC Transportation"), OMCEMA, Inc., a Delaware corporation ("OMCEMA"), OMC Nevada, Inc., a Nevada corporation ("OMC Nevada") and Recreational Boat Group Limited Partnership, a Delaware limited partnership ("Recreational Boat Group L.P."), and certain of their subsidiaries (collectively, the "Loan Parties") have filed petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). Bank of America, N.A., a national banking association and successor in interest to Bank of America, N.A., formerly NationsBank, N.A., successor in interest to NationsBank of Texas, N.A., in its capacity as agent for the prepetition senior lenders ("BOA"), and certain of the senior lenders hereby agree to extend to the Loan Parties, as debtors and debtors-in-possession, on or before December 31, 2000, a senior secured superpriority debtor-in-possession credit facility in the amount specified below (the "DIP Loans"), subject to the terms and conditions of this term sheet ("Term Sheet"). Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in that certain Amended and Restated Loan and Security Agreement by and among the Borrowers party thereto, OMC Boat Group, BOA as Agent (the "Prepetition Agent") for the lenders specified therein (the "Prepetition Lenders") and the Prepetition Lenders, dated as of January 6, 1998, (as from time to time amended, modified or waived (the "Prepetition Credit Agreement"). The Prepetition Credit Agreement, together with all instruments and documents executed in connection therewith, shall be referred to collectively as the "Prepetition Credit Documents."

## Terms and Conditions for Priming Credit Loan[1]

| Borrowers: | OMC, OMC Aluminum, OMC Fishing, OMC Latin America, OMC Boat Group, OMC Transportation, OMCEMA, OMC Nevada, and Recreational Boat Group, L.P., as Debtors-In-Possession in cases (the "Cases") pending under Chapter 11 of the Bankruptcy Code (each in such capacity, a "Borrower" or |

---

[1]   The terms and conditions for the extension of credit described herein are dependent upon, among other things, authorization and approval by the Bankruptcy Court. The terms and conditions with respect to such commitments are mutually dependent on each other and no lender shall be obligated to extend credit unless agreement with the Debtors and approval by the Bankruptcy Court is obtained with respect to such terms and conditions as a whole.

"Debtor" and collectively, the "Borrowers" or the "Debtors"). Each of the Borrowers shall be jointly and severally liable to repay any and all indebtedness incurred under the DIP Loan Agreement (as defined below).

Guarantors:

All subsidiaries of the Borrowers that are non-Debtors, provided that no foreign subsidiary of the Borrowers shall be required to execute a guaranty of the obligations of the Debtors hereunder to the extent that (i) such guaranty would result in adverse tax consequences for any Debtor, (ii) such guaranty would violate applicable local law, (iii) such foreign subsidiary or its directors or officers are advised by legal counsel that the provision of such guaranty could result in personal liability to the directors and officers of such subsidiary or (iv) the DIP Agent shall determine, in the exercise of its reasonable discretion, that the costs involved in procuring a guaranty from such foreign subsidiary exceed the incremental benefits afforded to the DIP Agent and the DIP Lenders through the procurement of such guaranty.

Agent:

BOA (the "DIP Agent").

Lenders:

The financial institutions listed under the column "DIP Lenders" on Schedule I attached hereto (collectively, the "DIP Lenders").

Commitments:

The DIP Loans shall consist of a credit facility (the "DIP Facility") with a maximum commitment of up to $19,500,000 (the "Total DIP Commitment"). The full Retention Program Amount (defined below) together with all Accrued Professional Fees (defined below) shall at all times be reserved against the Total DIP Commitment. The DIP Loans shall be funded by the DIP Lenders in accordance with their respective commitments as reflected in Schedule I attached hereto and pursuant to and solely in accordance with the Budget (as defined herein).

DIP Loans:

The DIP Loans shall be advanced weekly based upon, and solely in accordance with, the Budget (defined below).

Use of Proceeds:

The proceeds of the DIP Facility shall be used by the Debtors, in accordance with the terms of the postpetition financing agreement described herein (the "DIP Loan Agreement") (i) to fund expenses incident to the Debtors' efforts to preserve and sell assets in accordance with, but limited to, the weekly cumulative amounts set forth in the Budget (as defined below) for the then current week, and (ii) to pay all fees as provided under the DIP Loan Agreement (whether incurred before or after the date of the commencement of the Cases (the "Petition Date")).

2

| Employee Retention Program: | The costs and expenses associated with the Borrowers' employee retention bonus program approved by the Bankruptcy Court, not to exceed $2.5 million in aggregate ("Retention Program Amount") shall, notwithstanding the occurrence of a Default or an Event of Default (and to the extent that such sums have not already been borrowed), be made available to the Debtors upon their request for the sole purpose of funding such Retention Program Amounts. |
|---|---|
| Budget: | Not later than the third business day of each week (and not later than the Closing Date with respect to the Budget to be delivered with respect to the week in which the Closing Date occurs) the Borrower shall provide to the DIP Agent, each DIP Lender and the Official Committee of Unsecured Creditors (the "Committee") (i) a copy of a budget (such budget, with modifications approved from time to time by the Required DIP Lenders (defined below), the "Budget"), in form and substance satisfactory to the DIP Agent and the Required DIP Lenders, reflecting on a line-item basis anticipated weekly cash receipts and expenditures for the succeeding six months, (ii) a copy of a variance report (the "Variance Report") reflecting on a line-item basis the actual cash receipts and disbursements for the preceding week and the percentage variance of such actual results from those reflected in the Budget for the preceding week, and a written explanation of such variance, and (iii) a statement that discloses the cumulative professional fees and expenses that have been accrued, but not paid, since the inception of the cases in accordance with the Budget (such cumulative sum, the "Accrued Professional Fees"). |
| Term: | All DIP Loans shall be repaid in full and the Total DIP Commitment shall terminate at the earliest to occur of (i) May 31, 2001 (the "Maturity Date"), (ii) the Termination Date (as defined below), (iii) the effective date of a plan of reorganization, and (iv) when the Total DIP Commitment has been reduced to zero. |
| Interest Rates and Payment Dates: | The non-default rate of interest with respect to each DIP Loan shall be the Base Rate plus 3.75% (the "Non-Default Rate").<br><br>The default rate of interest with respect to each DIP Loan after the occurrence of an Event of Default shall be the Non-Default Rate plus 2%.<br><br>Interest on the DIP Loan shall be payable in cash, monthly in arrears. Interest on the Prepetition Revolving Credit Loans shall accrue at the Base Rate plus 3.75% and shall be payable from the proceeds of Prepetition Collateral as provided below. The Prepetition Lenders' entitlement to postpetition interest (but not the |

rate at which such interest accrues) will remain subject to determination under Section 506(b) of the Bankruptcy Code.

Closing Fee:              A $1,000,000 closing fee (the "Closing Fee"), fully earned as of the Closing Date, shall be paid on the Closing Date to the DIP Agent for the ratable benefit of the DIP Lenders.

Commitment Fee:           0.375% per annum of the unutilized Total DIP Commitment, payable monthly in arrears, to the DIP Agent for the account of the DIP Lenders.

Nature of Fees:           Non-refundable under all circumstances.

Collateral and Priority:  All obligations of the Debtors to the DIP Lenders and the DIP Agent, including, without limitation, all principal and accrued interest, costs, fees and expenses (collectively, the "DIP Obligations") shall be:

(a) Secured (subject to the Carve-Out (defined below)), pursuant to section 364(c)(2), of the Bankruptcy Code by a first priority, fully perfected security interest, in all of the existing and after acquired real and personal, tangible and intangible, assets of the Borrowers not subject to a perfected, non-avoidable lien or other encumbrance as of the Petition Date, including, without limitation, all cash, cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable and specifically including the stock of each Debtor's subsidiaries, but limited to 65% of the stock in any foreign subsidiaries of the Debtors), equipment, fixtures, real property interests, franchise rights, patents, tradenames, copyrights, intellectual property, general intangibles, investment property and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, but excluding avoidance actions under the Bankruptcy Code (collectively, the "Postpetition DIP Collateral");

(b) Secured, pursuant to section 364(d)(1), by a fully perfected security interest senior in priority to all liens of the Prepetition Lenders existing as of the Petition Date in all Collateral existing as of the Petition Date (the "Prepetition DIP Senior Collateral");

(c) Secured, pursuant to section 364(c)(3), by a fully perfected security interest in all property other than the Collateral (the "Prepetition DIP Junior Collateral") that is subject to valid and

4

non-avoidable liens as of the Petition Date which security interest shall be junior in priority to such valid and non-avoidable liens (the Postpetition DIP Collateral, Prepetition Senior DIP Collateral and the Prepetition DIP Junior Collateral shall be referred to collectively as the "DIP Collateral");

(d) Accorded administrative priority status under section 364(c)(1) of the Bankruptcy Code, having a superpriority over any and all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code ("Superpriority Claims"), subject only to the Carve-Out; provided, however, that as it pertains to proceeds of avoidance actions, the priority accorded to the DIP Lenders (and to the Prepetition Lenders pursuant to the Adequate Protection provision below) shall be equivalent in priority to a claim allowed under section 503(b)(1)(A) of the Bankruptcy Code, or such higher priority as may be awarded to any other entity in respect of such proceeds.

(e) Joint and several among the Borrowers; and

(f) Guaranteed by all non-Debtor subsidiaries of the Borrowers, subject to the "Guarantors" provisions above.

All DIP Collateral shall be free and clear of other liens, claims and encumbrances, except for (1) those liens granted in favor of the Prepetition Agent and the Prepetition Lenders pursuant to the Prepetition Credit Agreement, and (2) the Permitted Liens.

The foregoing liens on the Postpetition DIP Collateral and the administrative priority claim shall be subject to a carve-out (the "Carve-Out") for (i) following termination of the Total DIP Commitment as provided for herein as the result of a Default or an Event of Default (as each such term will be defined in the DIP Credit Agreement), the payment of allowed professional fees and disbursements incurred by the professionals retained, pursuant to Bankruptcy Code §§ 327 or 1103(a), by the Debtors and the Committee in an aggregate amount not to exceed $750,000 (plus Accrued Professional Fees incurred prior to such termination to the extent such fees are subsequently allowed) and (ii) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court; provided, however, neither the Carve-Out nor the Budget shall include professional fees and disbursements incurred in connection with asserting any claims or causes of action against either the Prepetition Lenders, the Prepetition Agent, the DIP Lenders or the DIP Agent and/or challenging or raising any defense to the obligations under the

Prepetition Credit Agreement or the DIP Loans or any lien of the
Prepetition Agent, the Prepetition Lenders, the DIP Agent or the
DIP Lenders. As long as no Default or Event of Default shall have
occurred and be continuing, the Debtors shall be permitted to pay
Budgeted compensation and reimbursement of expenses, allowed
and payable under Bankruptcy Code §§ 330 and 331, as the same
may be payable, and the amount so paid shall not reduce the
Carve-Out.

Distribution Priorities:    If any Debtor receives cash proceeds from the sale or other
disposition of Postpetition DIP Collateral, such proceeds shall be
paid to the DIP Agent, when and as received, and shall be applied
against the DIP Loans (or released to the Debtors, as the case may
be) as follows: first to the payment of all fees and expenses owing
to the DIP Agent, second to the payment of accrued interest and
fees owing in respect of the DIP Loan, third, released to the
Debtors to fund expenses in accordance with the Budget provided
that the undrawn portion of the Total DIP Commitment shall be
permanently reduced, dollar for dollar, to the extent that such
proceeds are released to the Debtors, fourth, after the undrawn
portion of the Total DIP Commitment has been eliminated, to the
payment of principal and all other amounts owing in respect to the
DIP Loan until the DIP Loan has been paid in full and all DIP
Commitments have been terminated, and fifth to the payment of
any unpaid Adequate Protection Obligations (defined below) until
all Adequate Protection Obligations have been paid in full.

If any Debtor receives cash proceeds from the sale or other
disposition of Prepetition Senior DIP Collateral (or any net
proceeds from the Prepetition Junior DIP Collateral remaining
after the senior liens on such collateral are satisfied), such proceeds
shall be paid to the DIP Agent, when and as received, and shall be
applied against the Prepetition Revolving Credit Loans and the
DIP Loan as follows: first to the payment of all fees and expenses
owing to the Prepetition Agent in respect of the Prepetition
Revolving Credit Loans, second to the Prepetition Agent in respect
of the Prepetition Revolving Credit Loans and fees up to an
amount equal to all interest accrued in respect of Tranche A
Revolving Credit Loans (or to be deposited into a reserve for
payment of interest accruing in respect of Tranche A Revolving
Credit Loans); third, to the Prepetition Agent in respect of the
Prepetition Revolving Credit Loans up to an amount equal to all
principal owing in respect of Tranche A Revolving Credit Loans,
including all reimbursement obligations in respect of undrawn
Letter of Credit Obligations, to be applied by the Prepetition Agent

in a manner consistent with the Prepetition Credit Documents; _fourth_ to the payment of accrued interest and fees owing in respect of the DIP Loan, _fifth_, released to the Debtors to fund expenses in accordance with the Budget provided that the undrawn portion of Total DIP Commitment shall be permanently reduced, dollar for dollar, to the extent that such proceeds are released to the Debtors, _sixth_, after the undrawn portion of the Total DIP Commitment has been eliminated, to the payment of principal and all other amounts owing in respect of the DIP Loan until the DIP Loan has been paid in full and all DIP Commitments have been terminated, _seventh_, to the Prepetition Agent in respect of the Prepetition Revolving Credit Loans to be applied in a manner consistent with the Prepetition Credit Documents.

If and to the extent the DIP Collateral proves to be insufficient to satisfy in full the DIP Loans, the holders of the Revolving Credit Loans shall be obligated to return to the DIP Lenders each such holder's pro rata share of proceeds or payments received by such holders from and after the Petition Date until such time as the DIP Loans have been paid in full.

| | |
|---|---|
| Closing Date: | The date upon which all conditions precedent to the making of the initial extension of credit are satisfied (the "Closing Date"). |
| Fees and Expenses: | The Borrowers shall pay all reasonable costs and expenses of the DIP Agent and DIP Lenders (including fees and expenses of the DIP Agent's legal and financial advisors) relating to the negotiation, documentation and administration of the DIP Loan Agreement and the enforcement of the DIP Agent's and the DIP Lenders' rights under and in respect of the DIP Loan Agreement. The Committee will be afforded an opportunity to review, subject to appropriate redactions for privileged materials, charges of the DIP Lenders' professionals that are reimbursed by the Debtors. |
| Conditions to Each Extension of Credit: | The DIP Loan Agreement shall contain conditions precedent to each extension of credit after the date hereof required by the DIP Agent, including, without limitation: |

(a) The Borrowers shall have executed the DIP Loan Agreement and all other documentation with respect thereto, satisfactory in all respects to the DIP Agent and the DIP Lenders, on the earlier of (i) January 26, 2001, or (ii) such other date which the DIP Agent shall agree to in writing.

(b) No Default or Event of Default shall exist.

7

(c) All representations and warranties shall be true and correct in all material respects as of the date of each extension of credit.

(d) An order of the Bankruptcy Court granting final approval of the DIP Loan Agreement (the "Final Order") shall have been entered in form and substance satisfactory to the DIP Agent and the DIP Lenders, and shall be in full force and effect and shall not have been stayed, reversed, vacated or otherwise modified.

(e) The Debtors are continuing to employ their reasonable best efforts to prosecute the Disposition Plan (as defined in the Interim Order).

(f) Payment of all fees, costs, expenses and other amounts then due and payable to the DIP Agent, including, without limitation, internal fees, costs and expenses.

(g) On or before January 31, 2001, the Debtors shall have directed State Street Bank & Trust, in its capacity as depository agent pursuant to that certain Depository Agreement dated as of May 27, 1998 to remit to the Agent on a provisional basis and subject to Bankruptcy Code § 506(b) the $5.3 million on deposit in accounts FD4426 and FD4427 at State Street Bank & Trust to be applied for the ratable benefit of the Prepetition Lenders.

Representations
and Warranties:

Those representations and warranties as are customary or appropriate in the context of the proposed DIP Loan Agreement and acceptable to the DIP Agent and the DIP Lenders.

Admissions and
Acknowledgments:

In addition to, and without limiting the foregoing, each of the Borrowers shall expressly represent, warrant and acknowledge in the DIP Loan Agreement each of the following, subject to the rights of the Committee:

(a) That each of the prepetition agreements executed and delivered by such Borrower in connection with the Prepetition Credit Agreement, including but not limited to each of the Prepetition Credit Documents to which such Borrower is a party, is valid and enforceable by the Prepetition Agent and the Prepetition Lenders against such Borrower;

(b) That such Borrower shall not dispute the validity or enforceability of any of the Prepetition Credit Documents or

any of its obligations thereunder, or the validity, priority, enforceability, scope or extent of any charge, lien, security interest or any other encumbrance of the Prepetition Agent and the Prepetition Lenders in, on or against any of the Collateral in the Cases or in any other judicial, administrative or other proceeding;

(c) That such Borrower shall not challenge or dispute the validity of any of the obligations under the Prepetition Credit Agreement, and that, as of the Petition Date, the Borrowers were liable to the Prepetition Agent and the Prepetition Lenders in the aggregate principal amount of approximately $125,000,000, inclusive of Letter of Credit Obligations, plus approximately $570,000 in accrued and unpaid interest thereon, plus fees, costs and expenses incurred in connection with the obligations under the Prepetition Credit Agreement as provided in the Prepetition Credit Documents;

(d) That by reason of the Prepetition Credit Documents, the obligations under the Prepetition Credit Agreement are secured by first-priority, non-avoidable, perfected, valid and enforceable liens on and security interests in all of such Borrower's right, title and interest in and to the Collateral.

Affirmative Covenants:    The DIP Loan Agreement shall contain affirmative covenants required by the DIP Agent, including, without limitation: (i) delivery of statement of cash receipts and disbursements which statement shall include separate line items for collections on Collateral, including accounts receivable, and collections from the sale or disposition of Postpetition DIP Collateral, weekly Budgets and Variance Reports, officers certificates, monthly reporting packages and other information requested by the DIP Agent, (ii) delivery weekly of a report on collateral composition, including a breakdown of collateral between Postpetition DIP Collateral and Collateral, (iii) delivery weekly of a status report on sales of collateral, including a breakdown of collateral to be sold between Postpetition DIP Collateral and Collateral, (iv) payment of all postpetition taxes and other obligations, (v) notices of defaults, litigation and other material events, (vi) weekly accounts receivable aging report for the preceding week, (vii) collection of the following percentages (on a cumulative basis) of gross receivables of the Debtors existing as of the Petition Date (1) 2.5% by January 31, 2001, (2) 5% by February 28, 2001, (3) 10% by March 31, 2001, (4) 15% by April 30, 2001, and (5) 35% by May 31, 2001 (the "Receivables Covenant"), and (viii) by no later than February 9, 2001, the Debtors shall provide the DIP Lenders and the Prepetition Lenders with a plan with respect to disposition

9

of the Segregated Funds (defined below). In addition, the Debtors shall provide the Agent by not later than February 2, 2001 all information concerning the Debtors' historical warranty claim experience, as well as warranty insurance information, as the Agent may reasonably request.

Negative Covenants:       The DIP Loan Agreement shall contain negative covenants required by the DIP Agent, including, without limitation, on: (i) liens, (ii) capital expenditures, (iii) payment of certain prepetition claims in accordance with the first day motions filed in the Cases, and (iv) the existence of any claims entitled to a superpriority under § 364(c)(1) of the Bankruptcy Code other than the Superpriority Claims of the DIP Lenders and the Prepetition Lenders. Additionally, OMC will not permit its wholly owned subsidiary, OMC Development Inc., to use, transfer or commingle the $14,064,544.19 plus interest accruing thereon (the "Segregated Funds") held by OMC Development, Inc. at Chase Manhattan Bank in the United States without advance written notice to the Agent and the Committee and, in the absence of the consent of both the Agent and the Committee to any such proposed action, an order from the Bankruptcy Court.

Allocation of Sale Proceeds: Prior to filing a pleading in the Cases seeking to approve a proposed sale, the Debtors shall provide the DIP Agent and the DIP Lenders a good faith estimate of the allocation of the purchase price consideration among the assets being sold between Postpetition DIP Collateral and Collateral. Any disputes over such allocation shall be resolved by the Bankruptcy Court in the ordinary course of administration of the Cases.

Events of Default:        The DIP Loan Agreement shall contain Events of Default required by the DIP Agent, including, without limitation: (i) the entry of an order dismissing any of the Cases or converting any of the Cases to a Chapter 7 case, (ii) the entry of an order appointing a Chapter 11 trustee in any of the Cases, (iii) the entry of an order granting any other claim superpriority status or a lien equal or superior to that granted to the DIP Agent and the DIP Lenders, (iv) the entry of an order staying, reversing, vacating or otherwise modifying the DIP Loan Agreement, the Interim Order or the Final Order without the prior written consent of the DIP Agent and the DIP Lenders, (v) the entry of an order in any of the Cases appointing an examiner having enlarged powers beyond those set forth under § 1106(a)(3) and (4) of the Bankruptcy Code, (vi) the failure of any of the Borrowers to pay (A) interest or fees when due and such default shall continue for two business days or (B) principal when due, (vii) the failure of any of the Borrowers to comply with any negative covenants, (viii) breach of the Receivables Covenant, (ix)

10

the failure of any of the Borrowers to perform or comply with any other term or covenant and such default shall continue unremedied for a period of 10 days, (x) any representation or warranty by any of the Borrowers shall be incorrect or misleading in any material respect when made; and (xi) an unfavorable variance in the Budget tested on (a) a weekly basis of 15% in total expenses; or (b) a cumulative basis of 10% in total expenses.

Remedies:

Upon the occurrence of an Event of Default other than an Event of Default set forth above in (ii) and (v), the Required DIP Lenders (as defined below) upon three business days written notice to the Debtors, the United States Trustee and the Committee appointed in the Cases may (a) terminate the Total DIP Commitments (the date of any such termination, the "Termination Date", and any notice to the Debtors declaring such a termination, a "Termination Notice"), (b) declare the obligations in respect of the DIP Loan Agreement to be immediately due and payable, (c) enjoin and prohibit each of the Debtors from using any cash collateral (other than to pay any DIP Obligations), (d) set off immediately any and all amounts in any cash collateral account and exercise all rights and remedies under the DIP Loan Agreement and the Interim Order or Final Order, as applicable.  With respect to an Event of Default set forth in (ii) and (v) above, the remedies shall be limited to those described in (a) and (c) in the immediately preceding sentence. The DIP Lenders shall have other customary remedies under the DIP Loan Agreement.

Financial and Other
Reporting Requirements:

Each of the Borrowers shall provide all information reasonably requested by the DIP Agent.

Required DIP Lenders:

"Required DIP Lenders" shall mean, as of any date of determination,  DIP Lenders who in the aggregate hold at least 61% of the Total DIP Commitment (which, if terminated, shall be deemed outstanding in the amounts outstanding immediately prior to such termination).

100% approval of the DIP Lenders shall be required to do the following:  (a) extend the Maturity Date, (b) change the interest rate, or (c) increase the Total DIP Commitment beyond $19,500,000.  All other actions relative to the DIP Loans may be accomplished with the consent of the Required DIP Lenders.

Adequate Protection:

To protect the Prepetition Lenders from any diminution in the value of Collateral available to satisfy the Prepetition Lenders' claims resulting from (i) the Debtors' use of such collateral, and (ii) the priming of the liens securing the obligations under the

11

Prepetition Credit Agreement by the liens granted to secure the DIP Loans, the Debtors shall (a) grant to the Prepetition Lenders replacement liens on all DIP Collateral which liens will be subordinate in priority only to (i) the liens granted to secure the DIP Loans and the Carve-Out (with respect to the Postpetition DIP Collateral only), and (ii) valid, non-avoidable liens existing on the Petition Date, (b) grant to the Prepetition Lenders Superpriority Claims subject only to the Carve-Out and the Superpriority Claim granted in favor of the DIP Loans, and (c) reimburse the Prepetition Agent, on a monthly basis, for professional fees and expenses incurred by the Prepetition Agent in connection with the Cases, which reimbursement shall be provisional in nature pending allowance under section 506(b) of the Code. The foregoing replacement liens and Superpriority claim shall secure payment of the Obligations in an amount equal to the diminution in value of the Collateral available to the Prepetition Lenders from and after the Petition Date (such amount, the "Adequate Protection Obligations"), whether such diminution results from (i) the Debtors' use of such collateral, or (ii) the priming of the liens securing the Obligations under the Prepetition Credit Agreement by the liens granted to secure the DIP Loans

**Release:**

In consideration for the DIP Loans, each of the Borrowers on behalf of itself and each of its successors and assigns (collectively, the "Releasors"), but without prejudice to the rights of the Committee or other party-in-interest to assert claims on behalf of the Debtors' estates, shall forever release, discharge and acquit the DIP Agent, each of the DIP Lenders, the Prepetition Agent, and each of the Prepetition Lenders (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations (collectively, "Claims"), of every type, including, without limitation, any so-called "lender liability" claims or defenses, which occurred on or prior to the date hereof with respect to any of the Borrowers, the Obligations under the Prepetition Credit Agreement, the Prepetition Credit Documents, the DIP Loans or the DIP Loan Agreement.

**Counterparts:**

This Term Sheet may be executed in one or more counterparts, each of which shall be considered an original counterpart and shall become binding when the DIP Agent and each of the Debtors and DIP Lenders has executed one counterpart. Each of the parties hereto agrees that a signature transmitted via facsimile transmission shall be effective to bind the party so transmitting its signature.

**Intended Third Party**

Beneficiaries:                    The parties hereto intend that the Prepetition Agent and the
                                  Prepetition Lenders be the beneficiaries of the following provisions
                                  of this Term Sheet without prejudice to their rights under the
                                  Prepetition Credit Agreement, the Consent Letter, the Final DIP
                                  Order, the Agree Final Order Granting Certain Adequate
                                  Protection Relief To the Prepetition Lenders or any other order
                                  entered in the Cases or any other agreement: (i) subsection (g) of
                                  the section titled "Conditions to Each Extension of Credit", (ii)
                                  subsection (viii) of the section titled "Affirmative Covenants", (iii)
                                  the last sentence of the section titled "Affirmative Covenants", (iv)
                                  the last sentence of the section titled "Negative Covenants", (v) the
                                  section titled "Distribution Priorities", (vi) the section titled
                                  "Adequate Protection", and (vii) the section titled "Release".
                                  Furthermore, the provisions identified in (i) through (iv) above
                                  cannot be discharged by agreement of the parties hereto or
                                  modified in any material manner without the written consent of the
                                  Prepetition Agent and the Prepetition Lenders.

Governing Law:                    Texas, except as governed by the Bankruptcy Code.

The preceding summary of proposed terms and conditions is not intended to be all-inclusive.
Any terms and conditions that are not specifically addressed above would be subject to future
negotiations with the Debtors, and comprehensive documentation of the transaction that is
acceptable to each DIP Lender will have to be prepared.

13

IN WITNESS WHEREOF, the DIP Agent, the DIP Lenders and the Borrowers each has caused this Amended and Restated DIP Termsheet to be executed and delivered by their duly authorized officers as of this 24th day of January, 2001.

BORROWERS

OUTBOARD MARINE CORPORATION

By:_____
Name:_____
Title:_____


OMC ALUMINUM BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

OMC FISHING BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

OMC LATIN AMERICA/CARIBBEAN, INC.

By:_____
Name:_____
Title:_____

OMC RECREATIONAL BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

RECREATIONAL BOAT GROUP LIMITED PARTNERSHIP

By:_____
Name:_____
Title:_____

DIP AGENT

BANK OF AMERICA, N.A
in its capacity as DIP Agent

By:_____
Name: _Leonardo J. Cangiamila_
Title: _Vice President_


DIP LENDERS

BANK OF AMERICA, N.A.
in its capacity as a DIP Lender

By:_____
Name: _Leonardo J. Cangiamila_
Title: _Vice President_


FLEET CAPITAL CORPORATION

By:_____
Name:_____
Title:_____

THE CIT GROUP/BUSINESS CREDIT, INC.

By:_____
Name:_____
Title:_____

TRANSAMERICA BUSINESS CREDIT CORPORATION

By:_____
Name:_____
Title:_____

IN WITNESS WHEREOF, the DIP Agent, the DIP Lenders and the Borrowers each has caused this ~~Amended and Restated DIP Termsheet~~ **Term Sheet** to be executed and delivered by their duly authorized officers as of this ~~24th~~ **25th** day of January, 2001.

| | |
|---|---|
| **BORROWERS** | **DIP AGENT** |
| OUTBOARD MARINE CORPORATION | BANK OF AMERICA, N.A in its capacity as DIP Agent |
| By:_____ <br> Name:_____ <br> Title:_____ | By:_____ <br> Name:_____ <br> Title:_____ |
| OMC ALUMINUM BOAT GROUP, INC. | **DIP LENDERS** |
| By:_____ <br> Name:_____ <br> Title:_____ | BANK OF AMERICA, N.A. in its capacity as a DIP Lender |
| OMC FISHING BOAT GROUP, INC. | By:_____ <br> Name:_____ <br> Title:_____ |
| By:_____ <br> Name:_____ <br> Title:_____ | |
| OMC LATIN AMERICA/CARIBBEAN, INC. | FLEET CAPITAL CORPORATION <br> By:_____ <br> Name: _Patrick McGonagil_ <br> Title: _First Vice President_ |
| By:_____ <br> Name:_____ <br> Title:_____ | THE CIT GROUP/BUSINESS CREDIT, INC. |
| OMC RECREATIONAL BOAT GROUP, INC. | By:_____ <br> Name:_____ <br> Title:_____ |
| By:_____ <br> Name:_____ <br> Title:_____ | TRANSAMERICA BUSINESS CREDIT CORPORATION |
| RECREATIONAL BOAT GROUP LIMITED PARTNERSHIP | By:_____ <br> Name:_____ <br> Title:_____ |
| By:_____ <br> Name:_____ <br> Title:_____ | |

IN WITNESS WHEREOF, the DIP Agent, the DIP Lenders and the Borrowers each has caused this Term Sheet to be executed and delivered by their duly authorized officers as of this 25th day of January, 2001.

<u>BORROWERS</u>

OUTBOARD MARINE CORPORATION

By:_____
Name:_____
Title:_____

OMC ALUMINUM BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

OMC FISHING BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

OMC LATIN AMERICA/CARIBBEAN, INC.

By:_____
Name:_____
Title:_____

OMC RECREATIONAL BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

RECREATIONAL BOAT GROUP LIMITED PARTNERSHIP

By:_____
Name:_____
Title:_____

<u>DIP AGENT</u>

BANK OF AMERICA, N.A
in its capacity as DIP Agent

By:_____
Name:_____
Title:_____

<u>DIP LENDERS</u>

BANK OF AMERICA, N.A.
in its capacity as a DIP Lender

By:_____
Name:_____
Title:_____

FLEET CAPITAL CORPORATION

By:_____
Name:_____
Title:_____

THE CIT GROUP/BUSINESS CREDIT, INC.

By: _Alan R Schnack_____
Name: _Alan R Schnack_____
Title: _Assistant Vice President_

TRANSAMERICA BUSINESS CREDIT CORPORATION

By:_____
Name:_____
Title:_____

IN WITNESS WHEREOF, the DIP Agent, the DIP Lenders and the Borrowers each has caused this Term Sheet to be executed and delivered by their duly authorized officers as of this 25th day of January, 2001.

BORROWERS

OUTBOARD MARINE CORPORATION

By:_____
Name:_____
Title:_____

OMC ALUMINUM BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

OMC FISHING BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

OMC LATIN AMERICA/CARIBBEAN, INC.

By:_____
Name:_____
Title:_____

OMC RECREATIONAL BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

RECREATIONAL BOAT GROUP LIMITED PARTNERSHIP

By:_____
Name:_____
Title:_____

DIP AGENT

BANK OF AMERICA, N.A
in its capacity as DIP Agent

By:_____
Name:_____
Title:_____

DIP LENDERS

BANK OF AMERICA, N.A.
in its capacity as a DIP Lender

By:_____
Name:_____
Title:_____

FLEET CAPITAL CORPORATION

By:_____
Name:_____
Title:_____

THE CIT GROUP/BUSINESS CREDIT, INC.

By:_____
Name:_____
Title:_____

TRANSAMERICA BUSINESS CREDIT CORPORATION

By: _Ulm Thylh_
Name: _Ari Kaplan_
Title: _Vue President_

OUTBOARD MARINE TRANSPORTATION
CORPORATION

By:_____

Name:_____

Title:_____

OMCEMA, INC.

By:_____

Name:_____

Title:_____

OMC NEVADA, INC.

By:_____

Name:_____

Title:_____

15

## SCHEDULE I

| **DIP LENDER** | **COMMITMENT** |
| --- | --- |
| BANK OF AMERICA, N.A. | 37.07% |
| FLEET CAPITAL CORPORATION | 23.33% |
| THE CIT GROUP/BUSINESS CREDIT, INC. | 19.8% |
| TRANSAMERICA BUSINESS CREDIT CORPORATION | 19.8% |

January 25, 2001 (10.29AM)