E O D   JAN 3 1 2001



## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 00-37405 |
| | ) | Chapter 11 |
| OUTBOARD MARINE CORPORATION, | ) | Hon. Erwin I. Katz |
| et al., | ) | |
| | ) | |
| Debtors. | ) | |

## CERTIFICATE OF SERVICE

I, Angeline Negron, a non-attorney, do hereby certify that on January 25, 2001, I caused to be served upon the parties on the attached list a copy of the attached **Final Order Approving Postpetition Financing and Granting Liens and Super Administrative Priority Pursuant to 11 U.S.C. § § 364(c) and (d) and Modifying the Automatic Stay** via overnight delivery;

I further certify that on January 25, 2001, I caused to be served upon the parties on the attached list a copy of the attached **Agreed Final Order Granting Certain Adequate Protection Relief to the Prepetition Lenders** via overnight delivery;

356

I further certify that on January 25, 2001, I caused to be served upon

the parties on the attached list a copy of the attached **Order Authorizing Retention**

**and Payment of Professionals Utilized by Debtors in the Ordinary Course of**

**Business** via overnight delivery.


Subscribed and sworn to
before me on this 30th day
of January, 2001


_____
Notary Public

_____
Angeline Negron

```
"OFFICIAL SEAL"
JOHN K. LYONS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3/3/2003
```

2

## SERVICE LIST

Robert S. Romano, Esq.
General Counsel
Outboard Marine Corparation
100 Seahorse Dr.
Waukegan, IL 60085

Anthony J. Smits, Esq.
Bingham Dana LLP
One State Street
Hartford, CT 06103

Michael A. Kramer
Houlihan Lokey Howard & Zukin
685 Third Avenue,
15th Floor
New York, NY 10017-4024

William A. Brandt
Development Specialists, Inc.
Three First National Plaza, Ste. 2300
70 West Madison Street
Chicago, IL 60602-4250

Kathryn Gleason, Esq.
Office of the United States Trustee
Regional Office
227 West Monroe, Suite 3500
Chicago, IL 60606

District Director
Internal Revenue Service
P.O. Box 970011
St Louis, MO 63197-0011

United States Attorney's Office
219 S. Dearborn Street
5th Floor
Chicago, IL 60604

Illinois Attorney General
100 West Randolph Street
Chicago, IL 60601

Illinois Treasurer's Office
Attention Legal Department
100 West Randolph
Suite 15-600
Chicago, IL 60601

Michael Vincent
Illinois Secretary of State
Department of Business Services
Room 340, Howlett Building
Springfield, IL 62756

3

## SERVICE LIST

Environmental Protection Agency
1021 North Grand Avenue East
Springfield, IL 62702

Larry Nyhan, Esq.
Matthew A. Clemente, Esq.
Sidley & Austin
10 S. Dearborn St., 48th Floor
Chicago, IL 60603

Richard Hiersteiner, Esq.
Palmer & Dodge LLP
One Beacon Street
Boston, MA 02108-3190

Jeffrey Schwartz, Esq.
Gardner Carton & Douglas
321 N. Clark St. Ste. 3400
Chicago, IL 60610

James B. Shein, Esq.
McDermott Will & Emery
227 West Monroe Street
Chicago, IL 60606

Michael P. Glynn
ITW Shakeproof
4300 South Racine Avenue
Chicago, IL 60609

Michael L. Gesas, Esq.
Gesas Pilati and Gesas, Ltd.
53 W. Jackson Blvd.
Ste. 528
Chicago, IL 60604

David N. Missner, Esq.
Mark P. Naughton, Esq.
Piper Marbury Rudnick & Wolfe
203 North La Salle Street, Suite 1800
Chicago, IL 60601-1293

Robert L. Green, Esq.
Dan Sullivan, Esq.
Howrey Simon Arnold & White
1299 Pennsylvania Ave
Washington, DC 20004

Steven B. Towbin, Esq.
Peter J. Roberts, Esq., Kathleen H.
Klaus, Esq.
D'Ancona & Pflaum LLC
111 E. Wacker Dr., Ste. 2800
Chicago, IL 60601

Howard L. Adelman, Esq.
Adelman, Gettleman,
Merens, Berish & Carter, Ltd.,
53 West Jackson Blvd., Ste. 1050
Chicago, IL 60604

Alan Kornberg, Esq.
Paul Weiss Rifkind Wharton & Garri-
son
1285 Avenue of the Americas
New York, NY 10019-6064

4

## SERVICE LIST

| | |
|---|---|
| Julia K. Cowles, Esq.<br>Davis Polk & Wardell<br>450 Lexington Avenue<br>New York, NY 10017 | Andrew D. Gottfried<br>Morgan Lewis & Bockius LLP<br>101 Park Avenue<br>New York, NY 10178-0060 |
| Greenmarine Holdings LLC<br>277 Park Avenue<br>27th Floor<br>New York, NY 10172 | Greenlake Holdings II LLC<br>277 Park Avenue<br>27th Floor<br>New York, NY 10172 |
| Richard Katz<br>Villa La Sirena<br>Vico dell'Olivetta 12<br>18039 Martola Inferiore<br>Ventimiglia, IT 1  IT | Frank V. Sica<br>888 Seventh Avenue<br>33rd Floor<br>New York, NY 10106 |
| Gary K. Duberstein<br>277 Park Avenue<br>27th Floor<br>New York, NY 10172 | Alfred D. Kingsley<br>277 Park Avenue<br>27th Floor<br>New York, NY 10172 |
| Barry A. Chatz, Esq.<br>Kamensky & Rubenstein<br>7250 N. Cicero<br>Ste. 200<br>Lincolnwood, IL 60712 | James A. Stempel, Esq.<br>Kirkland & Ellis<br>200 E. Randolph Dr.<br>Chicago, IL 60601 |
| Jonathan Alden<br>Florida Department of<br>Environmental Protection<br>3900 Commonwealth Blvd.<br>Tallahassee, FL 32399 | Steven B. Varick<br>Charles L. Philbrick<br>McBride Baker & Coles<br>500 West Madison Street<br>Chicago, IL 60661 |

## SERVICE LIST

Marc M. Bakst, Esq.
Bodman, Longley & Dahling LLP
100 Rennaissance Center
34th Floor
Detroit, MI 48243

Michael Zdeb, Esq.
Thomas Skallas, Esq.
Childress & Zdeb Ltd.
6 West Hubbard Street, Suite 500
Chicago, IL 60610

Don Schiemann
Legal Department
General Motors Corporation
P.O. Box 300 Mail Code 482-C24-D24
Detroit, MI 48265-3000

Jerome I. Maynard
Dykema Gossett PLLC
55 East Monroe
Chicago, IL 60603

Gerald F. Munitz, Esq.
Kathryn A. Pamenter, Esq.
Goldberg, Kohn, Bell, Black,
Rosenbloom, & Moritz
55 East Monroe, Suite 3700
Chicago, IL 60603

Lawrence K. Snider, Esq.
N. Neville Reid, Esq.
Mayer, Brown & Platt
190 South LaSalle Street
Chicago, IL 60603

George E. Shoup, III
C/o Gordon G. Repp
Outboard Marine Corporation
100 Sea Horse Drive
Waukegan , IL 60085

The Honorable Erwin I. Katz
United States Bankruptcy Judge
Dirksen Federal Building
219 South Dearborn
Chicago, IL 60604

Michael A. Kramer
Houlihan, Lokey Howard & Zukin
685 Third Avenue, 13th Floor
New York, NY 10017

William Brandt
Development Specialists
Three First National Plaza
70 West Madison Street
Chicago, IL 60602-4205

6

## SERVICE LIST

Kate Logan
Logan & Co.
546 Valley Road
Upper Montclair, NJ 07043

Roger Fix
President and Chief Executive Officer
Outboard Marine Corporation
100 Sea Horse Drive
Waukegan, IL 60085

J. Douglas Bacon, Esq.
Latham & Watkins
Sears Tower
Suite 5800
Chicago, IL 60606

Robert E. Richards
Sonnenschein Nath & Rosenthal
8000 Sears Tower
Chicago, IL 60606

Catherine Steege
Jenner & Block, LLC
One IBM Plaza
Chicago, IL 60611

James Donnell, Esq.
Paul D. Moak, Esq.
Andrews & Kurth LLP
600 Travis, Suite 4200
Houston, TX 77002

Douglas L. Lutz, Esq.
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202

Michael T. Hannafan, Esq.
Cory A. Johnson
Michael T. Hannafan & Associates
One East Wacker Drive, Suite 2710
Chicago, IL 60601

E. James Hopple
Schottenstein Zox & Dunn
41 South High Street
Suite 2600
Columbus , OH
43215

John Collen, Esq.
Duane Morris & Hechscher
227 West Monroe
Suite 3400
Chicago, IL 60606

## SERVICE LIST

Robert M. Fishman, Esq.
Brian L. Shaw, Esq.
Shaw Gussis Domanskis Fishman &
Glantz
144 West Fulton, Suite 200
Chicago, IL  60607

Faria Corp.
385 Norwich-New London Turnpike
Uncasville, CT 06382


Robert P. Simons, Esq.
Terry A. Shulsky, Esq.
Klett Rooney Lieber & Schorling
One Oxford Centre, 40th Floor
Pittsburgh, PA

15219-6498

Charles M. Tatelbaum, Esq.
Cummings & Lockwood
3001 Tamiami Trail North
Naples, FL 34101-3032


Nick Hill
Nelson Wheeler Corporate Advisory
Services Ltd.
138 Gloucester Road
7th Floor Allied Kajima Building
Hong Kong, HK 1  HK Phone: (852)
2598-5123

Peter Walker
Ferrier Hodgson
2 Market Street, Level 17
Sydney,  NSW 2000  Au Phone: (011)
612-9286-9999


Francis X. Buckley, Esq.
Thompson & Coburn
One Mercantile Center
St Louis, MO 63101-1693

Michael E. Hayes
American National Bank &  Trust
Co.of Chicago
Managed Assets Dept., Mail Code
IL1-0631
1 Bank One Plaza
Chicago, IL 60670-0631

## SERVICE LIST

Mark Page, Esq.
American National Bank and Trust
Company of Chicago
Law Dept., Mail Code IL1-0286
1 Bank One Plaza
Chicago, IL 60670

Lowell P. Bottrell
Anderson & Bottrell
State Bank Center, Suite 202
Fargo, ND 58106

Jed A. Hart
Angelo, Gordon & Co.
245 Park Avenue, 26th Floor
New York, NY 10167

E. Decker Adams
State Street Bank & Trust Co.
Two Avenue de Lafayette
Boston, MA 02111

Gary E. Green, Esq.
Coston & Lichtman
53 West Jackson
Suite 1150
Chicago, IL 60604

John R. Weiss
Brian M. Graham
Katten Muchin Zavis
525 West Monroe, Suite 1600
Chicago, IL 60661-3693

Elizabeth Wallace
Environmental Bureau
188 West Randolph, 20th Floor
Chicago, IL 60601

Jeffery D. Jeep, Esq.
The Jeff Diver Group
1749 S. Naperville Rd.
Suite 102
Wheaton, IL 60187

Robert Glaser
Sub-Director
USWA Sub-District #2
2525 No. 124th Street, Suite 205
Brookfield , WI 53005

George Graff, Esq.
Murphy, Gillick, Wicht &
Prachthauser
300 No. Corporate Drive
Brookfield , WI 53045

## SERVICE LIST

Raymond J. Kloss, Esq.
111 West Maple
Mundelein, IL 60060

John R. Zinke, Jr.
Mellon First United Leasing
3000 Lakeside Drive
Bannockburn, IL 60015-1230

Thomas H. Geoghegan, Esq.
Jeffrey Boulden, Esq.
Despres Schwartz & Geoghegan
77 West Washington, Suite 711
Chicago, IL 60602

Howard L. Adelman
Chad H. Gentleman
Adelman, Gentleman, Berens, Berish
& Carter, Ltd.
53 West Jackson Blvd., Suite 1050
Chicago, IL 60604

Alan W. Kornberg, Esq.
Lorine F. Levine, Esq.
Paul, Weiss, Rifkind, Wharton & Gar-
rison
1285 Avenue of the Americas
New York, NY 10019-6064

Scott N. Schrieber, Esq.
Much Shelist Freed Denenberg Ament
& Rubenstein
200 North LaSalle Street, Suite 2100
Chicago, IL 60601

Chris Condon
American Finance Group
24 School Street
Boston, MA 02108

Derek A. Wu, Esq.
1136 West Ontario Street, Apt. 3B
Oak Park, IL 60302

James R. Scheuerle, Esq.
175 West Apple
Muskegon, MI 49443-0786

George A. Pierce
Toyota Tsusho America, Inc.
437 Madison Avenue, 29th Floor
New York, NY 10022

Tony Kordus, Esq.
Liebmann, Conway, Olejnicak & Jerry
231 South Adams Street
Green Bay, WI 54301

Perry F. Goldlust, Esq.
Heiman, Aber, Goldlust & Baker
702 King Street, Suite 600
Wilmington, DE 19899-1675

## SERVICE LIST

Kenneth C. Baker, Esq.
Eastman & Smith
One Seagate
24th Floor
Toledo, OH 43699

Mark T. Megaw, Esq.
ACE USA
Two Liberty Place
1601 Chestnut Street
Philadelphia, PA 19103

Robert L. Danaher, Esq.
Sturm, Ruger & Company, Inc.
One Lacey Place
Southport, CT  06490

Joseph J. Wielebiniski, Esq.
Mark H. Ralston, Esq.
Munsch Hardt Kopf & Harr, P.C.
4000 Fountain Place, 1445 Ross Avenue
Dallas, TX 75202-2790

M. Mosley
Internal Revenue Service
Department of the Treasury
230 South Dearborn, Stop 5014-CHI
Chicago, IL 60604

Billy Wong
Amroc Investments, Inc.
535 Madison Avenue
15th Floor
New York, NY 10022

Alice K. Small, Esq.
New Jersey Attorney General's Office,
Division of Law
R.J. Hughes Justic Complex.
25 Market Street, 7th West Wing
Trenton, NJ 08625

Scott N. Schrieber, Esq.
Much Shelist Freed Dennenberg
Ament & Rubenstein, P.C.
200 North LaSalle Street, Suite 2100
Chicago, IL 60601

Thomas Martin, Esq.
Associate Regional Counsel
United States Environmental Protection Agency
77 West Jackson Boulevard
Chicago, IL 60604-3590

Alan S. Tenenbaum, Esq.
Environmental Enforcement Section
U.S. Department of Justice
Ben Franklin Station
Washington , DC 20044

## SERVICE LIST

Tyler V. Choyke
President
TPC Enterprises/Hidden Harbor Marine
7700 S. Tamiami Trail
Sarasota, FL 34231

Steven D. Welhouse
Johnson & Bell
55 East Monroe Street, Suite 4100
Chicago, IL 60603

,

## SERVICE LIST

Citicorp Del Lease, Inc.
450 Mamaroneck Avenue
Harrison, NY 10528

The First National Bank of Chicago,
As Agent
One First National Plaza
Chicago, IL 60670

Wrenn Handling, Inc.
5191 Snapfinger Woods Drive
Decatur, GA 30035

Hyster Credit Company (Assignee)
P.O. Box 4366
Portland, OR 97208

Nationsbank of Texas, N.A., As Agent
P.O. Box 830732
Dallas, TX 75283-0732

Associates Commercial Corporation
(Assignee)
8001 Ridgepoint Drive
Irving, TX 75068-3117

Clarklift of Dalton, Inc.
P.O. Box 1045
Dalton, GA 30720

American Finance Group
Exchange Place
Boston, MA 02109

Calhoun Electrical Mechanical
P.O. Box 778
Calhoun, GA 30703

Calhoun 1st Natl Bk (Assignee)
P.O. Box 12169
Calhoun, GA 30703

Austell Box Board Corp.
P.O. Box 157
3100 Washington Street
Austell, GA 30168

Compaq Capital Corporation
100 Woodbridge Center Drive; Suite
202
Woodbridge, NJ 07095

Bank of America (Assignee)
633 Chestnut St.
Chattanooga, TN 37402

Lookout Leasing Company
410 Spring St.
Chattanooga, TN 37405

The CIT Group/Equipment Financing,
Inc.

Regions Bank (Assignee)
P.O. Box 1929

## SERVICE LIST

650 CIT Drive
Livingston, NJ 07039

Dalton, GA 30720

United Jersey Bank
25 E. Salem St.
Hackensack, NJ 07602

Pitney Bowes Credit Corp.
201 Merritt Seven
Norwalk, CT 06856

USIR
2988 Campus Dr.
San Mateo, CA 94403

Caterpillar Financial Services Corp.
901 Warrenville Rd.
Lisle, IL 60532

General Electric Capital Corp.
150 Royal St.
Canton, MA 02021

Forsythe McArthur Associates, Inc.
7500 Frontage Rd.
Skokie, IL 60077

GTE Leasing Corp.
1907 US 301N, Ste. 270A
Tampa, FL 33619

Canon Financial Services, Inc.
200 Commerce Sq. Blvd.
Burlington, NJ 08016

Caterpillar Financial Services Corp.
1800 Pkwy. Pl., Ste. 820
Marietta, GA 30067

Leasetec System Credit
75 2nd Ave., Ste. 200
Needham Heights, MA 02494

Yamazen, Inc.
735 E. Remington Rd.
Schaumburg, IL 60173

AT&T Credit Corp.
2 Gatehall Dr.
Parsippany, NJ 07054

State Street Bank & Trust Co.
(Trustee)
225 Asylum St. Goodwin Sq.
Hartford, CT 06103

M & SD Financial Services Div. Electronic Data Systems Corp.
1200 Wall St. W.
Lyndhurst, NJ 07071

The CIT Group Equipment Financing, Inc.
1200 Wall St. W.
Lyndhurst, NJ 07071

Safeco Credit Co. Inc. DBA Safeline Leasing
10915 Willows Rd. NE
Redmond, WA 98052

2

## SERVICE LIST

The CIT Group Equipment Financing,
Inc.
900 Ashwood Pkwy., Suite 600
Atlanta, GA 30338

Xerox Corp.
P.O. Box 660501
Dallas, TX 75266

Bank of America National Trust and
Savings Association - As Collateral
Agent
315 Montgomery Street; 15th Floor
San Francisco, CA 94104

NF Computer Sales & Leasing Corporation
950 York Road
Hinsdale, IL 60521

Des Plaines National Bank (Assignee)
678 Lee Street
Des Plaines, IL 60016

SCN Leasing Corporation
P.O. Box 2364
Greenville, SC 29602

Caterpillar Financial Services Corporation
2401 Lake Park Drive, Suite 270
Smyrna, GA 30080

Manufacturers Bank (Assignee)
1200 North Ashland Avenue
Chicago, IL 60622

Shawmut Bank of Boston, NA (Assignee)
One Federal Street
Boston, MA 02211

Lucent Technologies, Inc.
6135 Park South Dr., #500
Charlotte, NC 28210

General Home Corporation
471 U.S. 250 East
Ashland, OH 44805

Compaq Financial Services Corporation
420 Mountain Ave.
Murray Hill, NJ 07974

Makino Incorporated
7680 Innovation Way
Mason, OH 45040

BCI Holdings, Inc.
P.O. Box 221857
El Paso, TX 79913

## SERVICE LIST

Texas Copy Systems
3019 Alvin Devane
Austin, TX 78741

General Electric Capital Corporation
1961 Hirst Dr.
Moberly, MO 65270

Textron Financial Corporation
40 Westminster St.
Providence, RI 02940

Tennant Company
701 N. Lilac, P.O. Box 1452
Minneapolis, MN 55440

Ervin Leasing Company
3893 Research Park Drive, P.O. Box
1689
Ann Arbor, MI 48106-1689

Clarklift of Detroit, Inc.
2340 Alger Drive
Troy, MI 48083

The Summit Group, Inc.
4215 Edison Lakes Pkwy.
Mishawaka, IN 46546

NBD Leasing, Inc.
251 N. Illinois St.
Indianapolis, IN 46204

Data Exchange, Inc.
John A. Swidergal (Assignee)
1400 Opus Place
Downers Grove, IL 60515

AB Dick Co.
5700 West Touhy Ave.
Chicago, IL 60648

# SERVICE LIST

Kathryn Gleason, Esq.
Office of the United States Trustee
Regional Office
227 West Monroe
Suite 3500
Chicago, IL 60606
Fax: (312) 886-5794

United States Attorney's Office
219 S. Dearborn Street
5th Floor
Chicago, IL 60604
Fax: (312) 353-2067

Illinois Treasurer's Office
Attention Legal Department
100 West Randolph
Suite 15-600
Chicago, IL 60601
Fax: (312) 814-8961

Environmental Protection Agency
1021 North Grand Avenue East
Springfield, Illinois 62702
Fax: (217) 782-9039

Steven Cimalore
State Street Bank and Trust Company
Goodwin Square
225 Asylum Street, 23rd Floor
Hartford, CT 06103
Steven Cimalore
Fax: (860) 244-1897

District Director
Internal Revenue Service
P.O. Box 970011,
St. Louis, MO 63197-0011
Fax: (410) 962-9295

Illinois Attorney General
100 West Randolph Street
Chicago, IL 60601
Fax: (312) 814-2549

Illinois Secretary of State
17 N. State Street
Suite 1137
Chicago, Illinois 60602
Fax: (312) 793-3360

Larry Nyhan, Esq.
Matthew A. Clemente
Sidley & Austin
10 S. Dearborn St.,
48th Floor
Chicago, Illinois
Fax: (312) 853-7036

Chris Schossow
LaSalle National Bank
135 South LaSalle Street
Chicago, IL 60603
Fax: (312) 904-2236

## SERVICE LIST

Bill Sellers
Industrial Development Board of
Rutherford
County Tennessee
P.O. Box 1159
Murfreesboro, TN 37113-1159
Fax: (615) 893-2282

Chairman
New Jersey Economic Development
Authority
John Fitch Plaza
P.O. Box 1446
Trenton, NJ 08625
Fax: (609) 292-5722

Darrin Walker
American Marine Components, Inc.
707 West Cherry Street
Sunbury, OH 43074-9595
Fax: (614) 965-5735

Alexsis Jones
US Relocation
1801 California
Suite 2740
Denver, CO 80202-2627
Fax: (303) 296-8146

Bob Oliver
Development Authority of Clayton
County
P.O. Box 37
Jonesboro, GA  30237
Fax: (770) 473-0972

Volvo Penta North America
Ed Archambault
1300 Volvo Penta Drive
Chesapeake, VA 23320
Fax: (757) 436-5190

Teri Cunningham
Atlas Industries Inc. Freemont
1750 E. State St.
Freemont, OH 43420
Fax: (419) 447-8456

Joel Brockman
Sagem, Inc.
5150 Pelham Road
P.O. Box 5755
Greenville, SC 29606
Fax: (864) 297-8391

Rick Pfizer
Stahl Speciality Company
P.O. Box 6
Kingsville, MO 64061-0006
Fax: (816) 597-3485

Donna Scovich
Faria Corporation
385 Norwich New London Turnpike
Uncasville, CT 06382-0983
Fax: (860) 848-7174

2

## SERVICE LIST

Laurie Herd
Federal Mogul Corp.
91 Industrial Boulevard
Logansport, IN 46947-6994
Fax: (219) 722-5297

Mike Glynn
ITW Shakeproof
4300 South Racine Avenue
Chicago, IL 60609
Fax: (773) 523-2332

Steve Anderson
Harvard Industries Hayes Albion
Corp.
2080 10th Street
P.O. Box 178
Rock Valley, IA 51247
Fax: (712) 476-5332

David Missner, Esq.
Piper Marbury Rudnick & Wolfe
203 North La Salle Street, Suite 1800
Chicago, Illinois 60601-1293
Fax: (312) 236-7516

QUANTUM INDUSTRIAL
PARTNERS LDC
c/o Soros Fund Management LLC
888 7th Avenue
New York, New York  10016
Fax:    (212) 245-5154

Karen Hirn
Sycamore Precision
334 East 1st Street
Genoa, IL 60135
Fax: (815) 784-2103

Chad Good
Lithographix, Inc.
13500 S. Figueroa St.
Los Angeles, CA 90061
Fax: (323) 770-1731

Rebecca Stoczynski
Lord Corporation
2000 West Grandview Boulevard
P.O. Box 10040
Erie, PA 16514-0040
Fax: (814) 868-3109

Howard L. Adelman, Esq.
Adelman, Gettleman, Merens, Berish
& Carter, Ltd., Suite 1050, 53 West
Jackson Boulevard
Chicago, Illinois 60604
Fax: (312) 435-1059

Alan Kornberg, Esq.
PAUL WEISS RIFKIND WHARTON
& GARRISON
1285 Avenue of the Americas
New York, New York 10019-6064
Fax: (212) 757-3990

3

## SERVICE LIST

Ronald O. Drake
Christian P. Michalik
SOROS FUND MANAGEMENT
LLC/SOROS PRIVATE EQUITY
PARTNERS
888 Seventh Avenue
New York, New York 10106
Fax:   (212) 245-5154

Julia K. Cowles, Esq.
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
Fax:  (212) 450-3800

Ginger Brown
Larry Cannariato
BANK OF AMERICA
901 Main Street, 6th Floor
Dallas, Texas 75202
Fax: (214) 209-3501

Donna Evans
AMERICAN NATIONAL
BANK AND TRUST COMPANY
OF CHICAGO
One North LaSalle Street
8th Floor
Chicago, Illinois 60603
Fax: (312) 661-6929

Tom Maiale
FLEET CAPITAL CORP.
60 East 42nd Street
New York, New York 10017
Fax: (212) 885-8829

Alan Schnacke
CTT GROUP/BUSINESS
CREDIT, INC.
5420 LBJ Freeway
Suite 200
Dallas, Texas 75240
Fax: (972) 455-1690

Ari Kaplan
TRANSAMERICA BUSINESS
CREDIT
8750 Bryn Mawr Avenue
Suite 720

Andrew D. Gottfried
MORGAN, LEWIS &
BOCKIUS LLP
101 Park Avenue
New York, New York  10178-0060

4

## SERVICE LIST

Chicago, Illinois 60631                    Fax: (212) 309-6273
Fax: (773) 380-6179

# SERVICE LIST

Greenmarine Holdings LLC
277 Park Avenue, 27th Floor
New York, New York  10172

Greenlake Holdings II LLC
277 Park Avenue, 27th Floor
New York, New York  10172

Richard Katz
Villa La Sirena
Vico dell'Olivetta 12
18039 Martola Inferiore
Ventimiglia, Italy

Frank V. Sica
888 Seventh Avenue, 33rd Floor
New York, New York  10106

Quantum Industrial Partners LDC
Kaya Flamboyan 9
Villemstad
Curacao
Netherlands-Antilles

Gary K. Duberstein
277 Park Avenue, 27th Floor
New York, New York  10172

Alfred D. Kingsley
277 Park Avenue, 27th Floor
New York, New York  10172

David N. Missner, Esq.
Piper, Marbury, Rudnick & Wolfe
203 N. LaSalle Street, Suite 1800
Chicago, IL 60601-1293
,

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | } | |
| | } | Chapter 11 |
| OUTBOARD MARINE | } | |
| CORPORATION, et al. | } | |
| | } | Case No. 00-37405 |
| | } | |
| | } | |
| Debtors. | } | Jointly Administered |
| | } | |

**FINAL ORDER APPROVING POSTPETITION FINANCING AND
GRANTING LIENS AND SUPER ADMINISTRATIVE PRIORITY PURSUANT
TO 11 U.S.C. §§ 364(c) AND (d) AND MODIFYING THE AUTOMATIC STAY**

OUTBOARD MARINE CORPORATION, a Delaware corporation ("OMC"),

OMC ALUMINUM BOAT GROUP, INC., a Delaware corporation ("OMC Aluminum"), OMC

FISHING BOAT GROUP, INC., a Delaware corporation ("OMC Fishing"), OMC LATIN

AMERICA/CARIBBEAN, INC., a Delaware corporation ("OMC Latin America"), OMC

RECREATIONAL BOAT GROUP, INC., a Delaware corporation ("OMC Boat Group"),

OUTBOARD MARINE TRANSPORTATION CORPORATION, a Delaware corporation

("OMC Transportation"), OMCEMA, Inc., a Delaware corporation ("OMCEMA"), OMC

NEVADA, INC., a Nevada corporation ("OMC Nevada"),  and RECREATIONAL BOAT

GROUP LIMITED PARTNERSHIP, a Delaware limited partnership ("Recreational Boat

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

Group", and with OMC, OMC Aluminum, OMC Fishing, OMC Latin America, OMC Boat

Group, OMC Transportation, OMCEMA, and OMC Nevada, the "Borrowers") each as a debtor

and debtor-in-possession in these cases (each a "Debtor," and collectively the "Debtors"), having

filed with this Court voluntary petitions (each a "Petition," and collectively the "Petitions") for

relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the

"Code"), on December 22, 2000 (the "Petition Date"); and having filed a Motion on December

22, 2000 pursuant to 11 U.S.C. §§ 364(c) and (d) (the "Motion") for entry of an order, inter alia:

     (1)    Authorizing the Borrowers to borrow, on a secured revolving credit basis

from Bank of America, N.A. ("B of A"), and certain other lenders (collectively with B of A, the

"DIP Lenders"), an amount not to exceed $35,000,000 (the "DIP Facility"), pursuant to the terms

of the Interim Order (defined below) and that certain Term Sheet dated as of December 22, 2000

(the "DIP Term Sheet," a true and correct copy of which is attached as Exhibit 1 to the Interim

Order (defined below), by and among the Borrowers, B of A, as agent (in such capacity, the "DIP

Agent") and as a lender, and the DIP Lenders, and any related documents, required to be

delivered by or in connection with the DIP Term Sheet (collectively with the DIP Term Sheet as

amended, the "DIP Loan Documents");

     (2)    Authorizing and directing the Debtors to execute and deliver, from time to

time, all such other documents, instruments and agreements and perform all such other acts as

may be required in connection with the DIP Term Sheet;

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

(3)    Authorizing, under Section 364(c)(1), (c)(2), (c)(3) and (d) of the Code,
the Borrowers to obtain postpetition financing under the DIP Facility (all such financing, loans,
extensions of credit, and other indebtedness, including interest and fees in connection therewith,
shall hereinafter be referred to as the "Postpetition Advances"), which financing and indebtedness,
due and owing by the Borrowers to the DIP Lenders, shall (a) pursuant to 11 U.S.C. § 364(c)(1),
have priority over any and all administrative expenses of the kind specified in or created or
awarded pursuant to, inter alia, 11 U.S.C. §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a),
507(b) and 726, subject only to the Carve-Out (as defined below), (b) pursuant to 11 U.S.C. §
364(c)(2) be secured by a first priority fully perfected lien on property of the Debtors not
otherwise subject to a lien  subject only to the Carve-Out (as defined below), (c) pursuant to 11
U.S.C. § 364 (c)(3) be secured by a fully perfected lien in all property of the Debtors other than
the Prepetition Collateral (defined below) (the "Prepetition DIP Junior Collateral") that is subject
to valid and non-avoidable liens as of the Petition Date which security interest shall be junior in
priority to such valid and non-avoidable liens, and (d) pursuant to 11 U.S.C. § 364(d)(1), be
secured by a first priority priming lien on and security interest in all Prepetition Collateral (defined
below), in each case, subject only to the Existing Liens (as defined in paragraph 7 below) other
than Existing Liens in favor of the Prepetition Lenders (as defined below).

(4)    Lifting the automatic stay imposed by section 362 of the Code to the extent
reasonably necessary to permit the DIP Agent, the DIP Lenders and the Debtors to implement the
terms of the Interim Order;

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

-3-

(5)     Authorizing the Borrowers, after an interim hearing on the Motion, to

obtain from the DIP Lenders interim financing up to $10,000,000 and to otherwise enable the

Debtors to pay the expenses set forth in the Budget (as defined below) all under the same terms

and conditions as set forth in the DIP Term Sheet pending a final hearing on the Motion (the

"Final Hearing") in accordance with Fed. R. Bankr. P. 4001(b) and (c); and

(6)     Granting the Debtors such other and further relief as the Court deems

necessary, appropriate, equitable, proper, and consistent with the terms of the Interim Order;

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

A.     Pursuant to Sections 1107 and 1108 of the Code, the Debtors have

retained possession of their property and are authorized thereby, as debtors-in-possession, to

continue the operation and management of their businesses   The Debtors and their non-debtor

affiliates collectively are one of the world's largest designers, manufacturers, and sellers of

outboard marine engines, boats, and marine parts.  The Debtors' products include Johnson and

Evinrude brand outboard engines and Chris*Craft, Four Winns, Seaswirl, Stratos, Javelin, Hydra-

Sports, Lowe, and Princecraft recreational and fishing boats.

B.     The Debtors and the DIP Lenders stipulate that, prior to the Petition Date:

(1)     Certain of the Borrowers, B of A, as agent (in such capacity, the

"Prepetition Agent") and as a lender, and certain other lenders (collectively with B of A, the

"Prepetition Lenders") are parties to that certain Amended and Restated Loan and Security

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

Agreement dated as of January 6, 1998 (such agreement, as amended and modified by that certain

First Amendment to Amended and Restated Loan and Security Agreement dated as of May 21,

1998, that certain Second Amendment to Amended and Restated Loan and Security Agreement

dated as of August 31, 1998, that certain Third Amendment to Amended and Restated Loan and

Security Agreement dated as of December 21, 1998, that certain Fourth Amendment to Amended

and Restated Loan and Security Agreement dated as of February 1, 1999, that certain Fifth

Amendment to Amended and Restated Loan and Security Agreement dated as of February 25,

1999, that certain Sixth Amendment to Amended and Restated Loan and Security Agreement

dated as of July 30, 1999, that certain Seventh Amendment to Amended and Restated Loan and

Security Agreement dated as of October 27, 1999, that certain Eighth Amendment to Amended

and Restated Loan and Security Agreement dated as of January 31, 2000, that certain Ninth

Amendment to Amended and Restated Loan and Security Agreement dated as of August 9, 2000,

and that certain Tenth Amendment to Amended and Restated Loan and Security Agreement dated

as of October 10, 2000, collectively, the "Prepetition Credit Agreement"), pursuant to which the

Prepetition Lenders have made loans to the Borrowers.  As of the Petition Date, the Borrowers

were indebted to the Prepetition Lenders for obligations totaling not less than $125,000,000 in

principal (including approximately $45,000,000 in outstanding letters of credit), plus accrued

interest, fees and costs, including professional fees and costs.  All obligations arising under or

evidenced by the Prepetition Credit Agreement and the instruments and documents executed in

connection with such agreement shall hereinafter be referred to as the "Prepetition Obligations".

(2)     As security for the Prepetition Obligations, the Debtors granted to the

Prepetition Agent, for the ratable benefit of the Prepetition Lenders, security interests in and liens

upon certain of the Borrowers' then-owned and thereafter acquired property and interests in

property as more specifically set forth in the Prepetition Credit Agreement and those Security

Agreements, Patent Security Agreements, Trademark Security Agreements, Copyright Security

Agreements and other documents executed in connection with the Prepetition Credit Agreement.

The Prepetition Lenders assert that they duly perfected the liens and security interests granted to

them by the Debtors through the filing and recordation of financing statements and other

appropriate documents and instruments in the relevant jurisdictions.  The Prepetition Credit

Agreement and the documents executed in connection therewith shall hereinafter be referred to as

the "Prepetition Loan Documents."  The property subject to the liens and security interests

described in this paragraph B3 shall hereinafter be referred to as the "Prepetition Collateral."

C.     On December 22, 2000 the Debtors filed a motion seeking interim approval

of postpetition financing and granting liens and super administrative expense priority pursuant to

11 U.S.C. §§ 364(c) and (d), modifying the automatic stay and scheduling a final hearing (the

"Interim Motion").

D.     After a hearing on December 26, 2000, this Court entered the Interim

Order Approving Postpetition Financing And Granting Liens And Super Administrative Priority

Pursuant to 11 U.S.C. §§ 364(c) And (d), Modifying The Automatic Stay And Scheduling A Final

Hearing (the "Interim Order").

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

E.    On December 28, 2000, the United States Trustee appointed an official

committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the

"Creditors Committee").

F.    This Court has jurisdiction over this case and the parties and property

affected hereby pursuant to 28 U.S.C. §§ 157(b)(2)(D) and 1334. The subject of this Final Order

is a "core" proceeding within the meaning of 28 U.S.C. § 157.

G.    The Debtors provided notice of the Interim Order to: (i) the DIP Agent

and the Prepetition Agent, (ii) the DIP Lenders and the Prepetition Lenders, (iii) each Debtor's

twenty (20) largest unsecured creditors, (iv) the United States Trustee for the Northern District of

Illinois, Eastern Division, (v) the Creditors Committee, and (vi) all parties entitled to notice

pursuant to Fed. R. Bankr. P. 4001.

H.    On January 16, 2001, the Creditors Committee filed a Limited Objection

Of The Official Committee Of Unsecured Creditors To The Proposed Final Adequate Protection

And Financing Orders (the "Objection").

I.    In order to resolve the Objection, the Debtors, the Creditors Committee,

and the DIP Lenders have amended the terms of the DIP Term Sheet as set forth in Exhibit 1

attached hereto (the "Amended and Restated DIP Term Sheet") and have agreed to the terms of

this Final Order as set forth herein.

J.    A need exists for the Debtors to obtain financing in order to facilitate,

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

among other things, the orderly wind down of their operations and sale of their assets. The

Debtors have no significant source of cash and require cash for the payment of, inter alia, wages,

salaries and certain expenses (including rent and utility deposits), and to meet other expenses

(including the compensation and reimbursement of expenses of such professionals as the Debtors

may, with prior approval of the Court, retain) necessary to preserve their assets and maximize

value during the liquidation process.

   K.  The Debtors are presently unable to obtain, in the ordinary course of

business or otherwise, unsecured credit allowable under Sections 364(a) or 364(b) of the Code, or

secured credit pursuant to Sections 364(c) or 364(d) of the Code, except from the DIP Lenders

on the terms and conditions contained in this Final Order. The DIP Agent and the DIP Lenders

have indicated a willingness to provide the Debtors with certain Postpetition Advances as

contemplated herein, but solely on the terms and conditions set forth in this Final Order and the

Amended and Restated DIP Term Sheet. After considering all of the alternatives, the Debtors

have concluded, in the exercise of their best and reasonable business judgment, that the financing

to be provided by the DIP Lenders under the terms of this Final Order and the Amended and

Restated DIP Term Sheet represents the best financing available to the Debtors.

   L.  Without prejudice to the rights, if any, of any other party in interest to

object to, challenge or dispute the validity and extent of the Prepetition Indebtedness (as defined

below), each of the Debtors admits that it is truly and justly indebted to the Prepetition Lenders

without defense, counterclaim, or offset of any kind, and that as of the Petition Date it was

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

indebted and liable to the Prepetition Lenders in the aggregate principal amount of not less than

$125,000,000 in respect of loans made by the Prepetition Lenders to the Borrowers and financial

accommodations made by the Prepetition Lenders to the Borrowers pursuant to the Prepetition

Credit Agreement, including letters of credit issued and outstanding under the letter of credit sub-

facility in the Prepetition Credit Agreement in the amount of approximately $45,000,000 plus

approximately $570,000 of accrued and unpaid interest thereon, plus fees, costs and expenses

now owing or hereafter accruing pursuant to the Amended and Restated DIP Term Sheet (the

foregoing amounts of principal, interest, fees, costs, and expenses now owing or hereafter

accruing pursuant to the Prepetition Credit Agreement entered into by the Debtors in connection

therewith are collectively referred to hereinafter as the "Prepetition Indebtedness").

      M.    The security interests and liens granted in this Final Order to the DIP

Agent, for the ratable benefit of the DIP Lenders, including the security interests and liens granted

in paragraph 7 below and in the Amended and Restated DIP Term Sheet, do not impair the valid,

perfected, prepetition security interests and liens, if any, of any holder (other than the Prepetition

Lenders) of such a security interest or lien in the property of the estates created by the filing of the

Petitions.

      N.    Without prejudice to the rights, if any, of any other party in interest to

object to, challenge or dispute the validity, priority, and perfection of the Prepetition Agent's liens

on the Prepetition Collateral, the Debtors agree and acknowledge that the Prepetition

Indebtedness is secured by first-priority, non-avoidable, perfected, valid and enforceable liens on

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

and security interests in all of the Debtors' right, title and interest in and to the Prepetition

Collateral, including, without limitation, the following categories of Prepetition Collateral:

accounts, contract rights, chattel paper, instruments, general intangibles (including without

limitation, trademarks and tradenames, patents and copyrights, and specifically including without

limitation those listed in Schedule 7.1(z) of the Prepetition Credit Agreement), licenses, inventory

(including without limitation, finished goods, work-in-process and raw materials), investment

property (including without limitation, securities, security entitlements and securities accounts,

but excluding capital stock in any subsidiary of OMC or any of its subsidiaries owned by OMC or

any of the other "Loan Parties" under the Prepetition Credit Agreement), books and records, and

deposit accounts and all cash deposited with any clearing bank, the Prepetition Agent or any

Prepetition Lender or any affiliate or subsidiary thereof, respectively, and all proceeds and

products of any of the foregoing as more particularly described in the Prepetition Agreements.

      O.     Entry of this Final Order is in the best interest of the Debtors and their

creditors and estates. The terms of the postpetition financing authorized hereby are fair and

reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment

consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair

consideration.

      P.     As set forth in the Motion and based upon the record of this proceeding,

the DIP Agent, the DIP Lenders, the Debtors and the Creditors Committee have negotiated the

terms and conditions of this Final Order and the documents in good faith and at arm's-length, and

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

any credit extended by the DIP Lenders on or after the Petition Date pursuant to the terms of the

Amended and Restated DIP Term Sheet and this Final Order, shall be and hereby is, deemed to

have been extended in "good faith" for purposes of Section 364(e) of the Code.

## BASED ON THE FOREGOING, IT IS HEREBY ADJUDGED, ORDERED AND DECREED:

1.      The Debtors' Motion shall be, and hereby is, approved, subject to the terms

and conditions set forth in this Final Order.

2.      Subject to the terms and conditions contained in this Final Order, the

Debtors are hereby expressly authorized and directed to execute and deliver to the DIP Lenders,

as applicable, the Amended and Restated DIP Term Sheet, and such additional documents,

instruments, and agreements as may be reasonably required by the DIP Agent to implement the

terms or effectuate the purposes of this Final Order or the Amended and Restated DIP Term

Sheet including, without limitation, the DIP Loan Agreement as contemplated in the Amended

and Restated DIP Term Sheet in form and substance satisfactory to the DIP Agent, the DIP

Lenders and their counsel. The terms and conditions of the Amended and Restated DIP Term

Sheet are hereby approved and ratified, and each of the Debtors is authorized and directed to

comply with and perform all of the terms and conditions contained therein. The failure to

reference or discuss any particular provision of the Amended and Restated DIP Term Sheet in this

Final Order shall not affect the validity or enforceability of any such provision.

3.      Without limiting the foregoing, the Borrowers are authorized to borrow

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

Postpetition Advances up to the aggregate principal amount, including borrowing capacity

reserved to fund the Employee Retention Amount and Accrued Professional Fees (each as defined

in the Amended and Restated DIP Term Sheet), of $19,500,000 outstanding (or reserved for) at

any one time pursuant to the terms of the Amended and Restated DIP Term Sheet.

4.    In addition, the Debtors are hereby authorized to pay all fees, expenses and

other amounts which may be required or necessary for their performance under the terms of the

Amended and Restated DIP Term Sheet or this Final Order, including, without limitation, the

closing fee (as referenced in the Amended and Restated DIP Term Sheet), the commitment fee (as

referenced in the Amended and Restated DIP Term Sheet), and all reasonable attorneys' fees and

related costs and expenses incurred by the DIP Agent and the DIP Lenders, including those

relating to the negotiation, documentation and administration of the Amended and Restated DIP

Term Sheet and the enforcement of the DIP Agents' and the DIP Lenders' rights under and in

respect of the Amended and Restated DIP Term Sheet.

5.    All loans made to the Borrowers on or after the Petition Date under the

Amended and Restated DIP Term Sheet (collectively, the "Postpetition Advances") and interest

thereon, and all fees, costs, expenses, indebtedness, obligations and other liabilities arising or

incurred on or after the Petition Date and owing by the Debtors to the DIP Lenders under the

Amended and Restated DIP Term Sheet and the Interim Order and this Final Order shall

hereinafter be referred to as the "Postpetition Indebtedness." Postpetition Advances: (i) shall be

evidenced by the books and records of the DIP Agent or the DIP Lenders; (ii) shall bear interest

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

(which shall be payable monthly) at the rate prescribed in the Amended and Restated DIP Term Sheet; (iii) shall be secured in the manner specified in paragraph 7 below; (iv) shall be payable in accordance with the terms of the Amended and Restated DIP Term Sheet; and (v) shall comply with and otherwise be governed by the terms as set forth in the Amended and Restated DIP Term Sheet.

6.     Subject to the terms and conditions contained in this Final Order, the Borrowers may use Postpetition Advances to (i) fund expenses incident to the Borrowers' efforts to preserve and sell assets in accordance with the weekly cumulative amounts set forth in the Budget (as defined herein) for the then current week, and (ii) to pay all fees as provided under the DIP Loan Documents, provided that: (1) the aggregate amount of Postpetition Advances (including Reserve Amounts) which may be used by the Debtors may not exceed $19,500,000; and (2) the Borrowers may use Postpetition Advances only to the extent and in the amounts provided for in the Budget (as defined below), unless the Required DIP Lenders (as defined in the Amended and Restated DIP Term Sheet) consent to a greater or different use of the funds than that prescribed by the Budget. Pursuant to the DIP Loan Documents, the Debtors are authorized and directed to provide the DIP Agent, DIP Lenders and the Creditors Committee with: (i) not later than the third business day of each week, (a) a copy of a budget (such budget, with modifications approved from time to time by the Required DIP Lenders (as defined in the Amended and Restated DIP Term Sheet), the "Budget", and an initial Budget attached to the Interim Order as Exhibit "2"), in form and substance satisfactory to the DIP Agent and the

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

Required DIP Lenders, reflecting on a line-item basis anticipated weekly cash receipts and

expenditures for the period ending May 31, 2001, and (b) a copy of a variance report (the

"Variance Report") reflecting on a line-item basis the actual cash receipts and disbursements for

the preceding week and the percentage variance of such actual results from those reflected in the

Budget for the preceding week, and a written explanation of such variance; and (ii) such other

financial and related reports as required by the Amended and Restated DIP Term Sheet.  In the

absence of any Event of Default (as defined in the Amended and Restated DIP Term Sheet), the

Borrowers shall have continuing authority to borrow Postpetition Advances, but only: (i) on the

conditions set forth in this Final Order and the Amended and Restated DIP Term Sheet; and (ii) to

the extent and in the amounts provided for in the Budget.

       7.    As security for the full and timely payment of the Postpetition Indebtedness

and the timely performance of each of the other obligations owing by the Debtors on or after the

Petition Date, the DIP Agent, for the ratable benefit of the DIP Lenders, is hereby granted a valid,

perfected, and enforceable security interest in and lien upon all real and personal property of the

Debtors and their estates, whether now owned or hereafter acquired or arising, whether tangible

or intangible, and wherever located (all such property being referred to collectively as the "DIP

Collateral").  The liens and security interests herein granted to the DIP Agent, for the ratable

benefit of the DIP Lenders, in that portion of the DIP Collateral (including, without limitation, any

such DIP Collateral acquired or generated by the Debtors or their estates after the Petition Date)

which is not subject to any other properly perfected, valid, non-avoidable and enforceable liens or

security interests as of the Petition Date (the "Postpetition DIP Collateral") shall have first and

paramount priority pursuant to Section 364(c)(2) of the Code, subject only to the Carve-Out (as

defined below). The liens and security interests herein granted to the DIP Agent, for the ratable

benefit of the DIP Lenders, on all other property owned by the Debtors shall (i) pursuant to

Section 364(d)(1) of the Code, prime the liens and security interests held by the Prepetition Agent

(for the ratable benefit of the Prepetition Lenders) in the Prepetition Collateral, and (ii) pursuant

to Section 364(c)(3) of the Code, be junior in priority only to Existing Liens held by persons other

than the Prepetition Agent. Existing Liens, as used herein, shall mean liens in property of the

Debtors on the Petition Date that were properly perfected, valid, enforceable and non-avoidable

as of the Petition Date, including the liens granted to the Prepetition Agent for the ratable benefit ·

of the Prepetition Lenders pursuant to the Prepetition Credit Agreement.

8.    The security interests and liens herein granted: (i) shall be subject only to

(x) the Existing Liens (other than those held by the Prepetition Agent) to the extent provided in

clause 7(ii) above, and (y) with respect to the liens granted herein on the Postpetition DIP

Collateral, the "Carve-Out", and shall be prior and senior to all security interests, liens and other

encumbrances in and to the DIP Collateral granted or arising after the Petition Date; (ii) shall not

extend to any avoidance actions by any of the Debtors or their estates, including, without

limitation, those arising under sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy

Code and any retainer paid to Skadden, Arps, Slate, Meagher & Flom as counsel to the Debtors

as agreed by the parties; and (iii) are and shall be valid, perfected, enforceable, non-avoidable and

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

effective by operation of law as of the Petition Date without any further action by the Debtors, the

DIP Agent, or the DIP Lenders and without the execution, filing, or recordation of any financing

statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent

and Trademark Office or other documents. If the DIP Agent hereafter requests the Debtors to

execute and deliver to the DIP Agent financing statements, security agreements, collateral

assignments, mortgages, or other instruments or documents considered by the DIP Agent to be

reasonably necessary or desirable to further evidence the perfection of the liens and security

interests granted in this Final Order, the Debtors are hereby authorized and directed to execute

and deliver those financing statements, security agreements, mortgages, collateral assignments, in-

struments, and documents, and the DIP Agent is hereby authorized to file or record, in its sole

discretion, such documents; provided that all such documents shall be deemed to have been filed

or recorded at the time and on the date of entry of this Final Order.

9.     In addition to the liens and security interests granted to the DIP Agent, for

the ratable benefit of the DIP Lenders, pursuant to this Final Order and subject to the last 4

sentences of this paragraph 9, all of the Postpetition Indebtedness (including, without limitation,

all Postpetition Advances) is hereby granted superpriority administrative expense status, in

accordance with Section 364(c)(1) of the Code, over any and all administrative expenses of the

Debtors, whether heretofore or hereafter incurred, of the kind specified in 11 U.S.C. §§ 105, 326,

328, 330, 331, 503(b), 507(a), or 507(b) subject and subordinate only to a carve-out (the "Carve-

Out") for (i) following the termination of the DIP Facility as a consequence of a Default or an

Event of Default upon delivery of a "Termination Notice" (as each such term is defined in the

Amended and Restated DIP Term Sheet), the payment of (A) professional fees and disbursements

incurred by professionals (other than ordinary course professionals) retained, pursuant to Sections

327 or 1103(a) of the Code, by the Debtors and the Creditors Committee (provided that such fees

and disbursements are allowed by the Court) in an aggregate amount not to exceed $750,000

(plus Budgeted professional fees and disbursements incurred prior to such termination to the

extent such fees and expenses are subsequently allowed) and (B) the expenses (including counsel

fees) of any member of any such committee allowed under Section 503(b)(3)(F) of the Code, and

(ii) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to

the Clerk of the Court; provided, however, that neither the Carve-Out nor the Budget shall

include professional fees, disbursements, costs or expenses incurred in connection with asserting

any claims or causes of action against either the Prepetition Lenders, the Prepetition Agent, the

DIP Lenders or the DIP Agent and/or challenging or raising any defense to the Prepetition

Indebtedness or the Postpetition Indebtedness or any lien of the Prepetition Agent, the Prepetition

Lenders, the DIP Agent or the DIP Lenders.  Except as otherwise provided herein, no other

claims, costs or expenses, including, without limitation, any administrative claim granted to any

reclamation claimant, that have been or may be incurred in these proceedings, or in any

conversion of these proceedings pursuant to Section 1112 of the Code, or in any other proceeding

related thereto: (i) shall be granted a priority senior to or pari passu with (x) the claims of the DIP

Lenders against the Debtors or any successor Debtors or trustees, or (y) the security interests and

liens of the DIP Agent, for the ratable benefit of the DIP Lenders, upon the DIP Collateral; or (ii)

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

shall be imposed against the DIP Agent, the DIP Lenders, their claims, or the DIP Collateral,

while any portion of the Postpetition Indebtedness remains outstanding unless first consented to in

writing by the Required DIP Lenders. The Creditors Committee, for itself and any Chapter 7

trustee appointed in this case, expressly reserves the right to challenge the priority, as a matter of

law, of the Section 364(c)(1) priority granted to the DIP Lenders relative to the administrative

priority claims of a Chapter 7 liquidation, and the entry of this Final Order is without prejudice to

such reservation of (and the DIP Lenders' right to challenge) such rights. Moreover, nothing

contained in this paragraph 9 shall (1) impair the rights (if any) of parties-in-interest (with

standing under applicable law) to assert that the priority claims granted to the DIP Lenders

hereunder should be satisfied, in whole or in part, by the imposition against the Prepetition

Lenders of a charge under Section 506(c) or Section 552(b) of the Code against proceeds that are

realized from the disposition of the Prepetition Collateral, or (2) limit in any way the right of the

Prepetition Lenders to contest such assertions. Additionally, nothing contained in this paragraph

9 shall impair the rights (if any) of parties-in-interest (with standing under applicable law) to assert

that charges allowable under Section 506(c) of the Code should be imposed against proceeds of

Postpetition DIP Collateral in respect of the benefits conferred by such parties (other than the

Debtors) upon the DIP Lenders and with respect to the Postpetition DIP Collateral, nor shall

anything contained herein limit the right of the DIP Lenders to contest such assertions. Finally, as

it pertains to proceeds of avoidance actions, including, without limitation, those arising under

sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, the priority accorded the

DIP Lenders hereunder shall be equivalent in priority to a claim allowed under section

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

503(b)(1)(A) of the Bankruptcy Code, or such higher priority as may be awarded to any other

entity in respect of such proceeds.

      10.    The Debtors agree that no portion of the Postpetition Advances, the DIP

Collateral, and/or the Carve-Out may be used to commence or prosecute any action or objection

with respect to the claims, liens or security interests of the Prepetition Lenders, the Prepetition

Agent, the DIP Lenders or the DIP Agents or raise any defense to the Prepetition or Postpetition

Indebtedness.

      11.    The DIP Agent is authorized to collect upon, convert to cash, and enforce

checks, drafts, instruments, and other forms of payment now or hereafter coming into its

possession as collateral or proceeds of collection of the DIP Collateral and to apply all proceeds

of collections of collateral now or hereafter coming into the DIP Agent's possession in accordance

with the Amended and Restated DIP Term Sheet. The automatic stay is hereby vacated as against

the DIP Agent and the DIP Lenders to permit the DIP Agent and the DIP Lenders to effectuate

the provisions of this paragraph 11.

      12.    The signature of the Chief Executive Officer or any other persons

designated by the Board of Directors or similar governing authority of the respective Debtor,

whether by letter to the DIP Agent or appearing on any one or more of the agreements,

certificates, instruments, or documents contemplated by or referenced in this Final Order, shall

bind the Debtors with respect to documents executed and other actions taken pursuant to this

Final Order.

13.     The provisions of this Final Order shall be immediately and fully effective upon entry by the Court and any actions taken pursuant hereto shall survive entry of, and shall govern with respect to any conflict with any order (i) which may be entered confirming any plan of reorganization or (ii) which may be entered converting the Debtors' chapter 11 cases from chapter 11 to chapter 7.  The priority of the liens and security interests granted to the DIP Agent, for the ratable benefit of the DIP Lenders, in paragraph 7 hereof and the Amended and Restated DIP Term Sheet, the priority of the superpriority administrative expense granted to the DIP Lenders in paragraph 9 hereof, and all rights of the DIP Agent and the DIP Lenders and all obligations of the Debtors created hereunder or arising pursuant hereto or the Amended and Restated DIP Term Sheet on or after the Petition Date, shall continue in the Debtors' chapter 11 case and in any superseding chapter 7 case under the Bankruptcy Code, and such claims, liens and security interests shall maintain their priority as provided by this Final Order until satisfied and discharged in accordance with the terms of the Amended and Restated DIP Term Sheet.

14.     Consistent with Section 364(e) of the Code, if any or all of the provisions of this Final Order are hereafter modified, vacated or stayed: (a) such stay, modification or vacation shall not affect the validity of any obligation, indebtedness, liability, security interest or lien granted or incurred by the Debtors to the DIP Agent or the DIP Lenders on or after the Petition Date and prior to the effective date of such stay, modification or vacation, or the validity and enforceability of any security interest, lien, priority or right authorized or created hereby pursuant to the Amended and Restated DIP Term Sheet; and (b) any indebtedness, obligation or liability incurred by the Debtors to the DIP Agent or the DIP Lenders on or after the Petition Date and prior to the effective date of such stay, modification or vacation shall be governed in all respects by the provisions of this Final Order, and the DIP Agent and the DIP Lenders shall be entitled to all the rights, remedies, privileges and benefits, including the priority, security interests and liens granted herein and pursuant to the Amended and Restated DIP Term Sheet, with respect to any such indebtedness, obligation or liability.

15.     Except as otherwise provided for in this Final Order or the Amended and Restated DIP Term Sheet, or to the extent that the Required DIP Lenders may otherwise agree in writing, the Debtors shall not seek, and it shall constitute an Event of Default (as defined below) should there be entered any order: (i) dismissing the chapter 11 case of any of the Debtors under 11 U.S.C. §§ 305 or 1112 or otherwise; (ii) converting the chapter 11 case of any of the Debtors under 11 U.S.C. § 1112 or otherwise; or (iii) confirming a plan of reorganization in the chapter 11 case of any of the Debtors unless such order provides for (x) the payment in full in cash of all

Postpetition Indebtedness payable or owing to the DIP Lenders under the Amended and Restated

DIP Term Sheet on or before the effective date of, or substantial consummation of, the plan of

reorganization that is the subject of such order, or (y) such other treatment as may be agreed to in

writing by the Debtors and the Required DIP Lenders (as defined in the Amended and Restated

DIP Term Sheet).

16.    The automatic stay provisions of 11 U.S.C. § 362 are hereby vacated and

modified to the extent necessary to permit the DIP Agent, and the DIP Lenders to exercise all

rights and remedies provided for in this Final Order, the Amended and Restated DIP Term Sheet,

and applicable law, and to otherwise effectuate the provisions of this Final Order, without the

need for filing further pleadings or application to or order of this Court. Upon the occurrence and

during the continuance of any Event of Default as defined in the Amended and Restated DIP

Term Sheet and upon the DIP Agent's providing of three (3) business days' written notice (by

facsimile, telecopy or otherwise) to each of the Debtors, to counsel for the Debtors, to the United

States Trustee, and to counsel for the Creditors Committee, the DIP Agent and the DIP Lenders

shall be, and hereby are, authorized to exercise any or all of their rights and remedies and to take

any or all of the following actions without further modification of the automatic stay pursuant to

Section 362 of the Code or further order of or application of this Court: (a) terminate the Total

DIP Commitments (as defined in the Amended and Restated DIP Term Sheet) and thereafter

cease to make any DIP Loans or Postpetition Advances to the Debtors, (b) declare all principal

of, and accrued interest on, the obligations in respect of the Amended and Restated DIP Term

Sheet to be immediately due and payable, (c) set-off immediately, in the DIP Lenders' sole

discretion, any and all amounts in accounts maintained by the Debtors with the DIP Agent or any

of the DIP Lenders, or otherwise enforce rights against any DIP Collateral in the possession of

the DIP Agent or any of the DIP Lenders, and (d) take any other actions or exercise any other

rights or remedies permitted it under this Final Order, the DIP Loan Documents or applicable law.

      17.    In further consideration for the DIP Lenders' agreement to provide the DIP

Loans, the Debtors, on behalf of themselves and their respective estates, agree that (i) the rate of

interest applicable to the Prepetition Obligations from and after the Petition Date shall be the

interest rate prescribed in the Amended and Restated DIP Term Sheet; and (ii) so long as the DIP

Lenders have not terminated or materially restricted the Debtors' right to borrow funds in

accordance with the Amended and Restated DIP Term Sheet, neither the Debtors nor any party

acting on their behalf (including the Creditors Committee) may seek to (a) borrow money from

any person other than the DIP Lenders to the extent that the repayment of such borrowings is to

be secured pursuant to Section 364(d)(1) of the Code by a lien or security interest that is senior or

equal to the liens and security interests held by the Prepetition Agent (for the ratable benefit of the

Prepetition Lenders), or (b) to use cash collateral without the consent of both the Required DIP

Lenders (as defined in the Amended and Restated DIP Term Sheet) and Prepetition Lenders

holdings at least 51% (in dollar amount) of the Prepetition Obligations.

      18.    Each of the Debtors has stipulated and is hereby deemed: (a) to release and

discharge the DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders, in their

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

respective capacities as such, together with their respective agents, attorneys, employees, heirs,

executors, administrators, officers, directors, successors and assigns, from any and all claims,

causes of action and remedies (whether under the Bankruptcy Code or other applicable law)

arising out of, based upon or related to the Prepetition Obligations or the Prepetition Collateral

securing such obligations; and (b) to waive any and all defenses (including, without limitation,

offsets and counterclaims of any nature or kind) as to the validity, perfection, priority,

enforceability, amount and nonavoidability (under the Bankruptcy Code or otherwise) of the

Prepetition Obligations and the security interests in and liens upon the Prepetition Collateral

securing such obligations.  The releases and waivers set forth in this paragraph are deemed

effective upon the date of entry of this Final Order, but are expressly without prejudice to the

rights of the Creditors Committee to challenge the validity of the liens and claims asserted by the

Prepetition Lenders, or otherwise seek to prosecute claims held by the Debtors' estates against

the Prepetition Lenders.  The releases and waivers set forth in this paragraph shall not be deemed

to apply to Quantum Industrial Partners, LDC or any assignee or affiliate thereof, nor shall such

releases and waivers be construed as a release or waiver of any rights under section 506(c) or

552(b) of the Bankruptcy Code.

19.    The provisions of this Final Order shall be binding upon and inure to the

benefit of the DIP Agent, the DIP Lenders and each of the Debtors and their respective

successors and assigns (including, without limitation, any chapter 11 trustee, chapter 7 trustee or

other fiduciary hereafter appointed for or on behalf of the Debtors or with respect to any of the

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

Debtors' property in the Debtors' chapter 11 cases or otherwise).

20.   The rights and remedies of the DIP Agent and the DIP Lenders specified herein are cumulative and not exclusive of any rights or remedies that they may have under the Amended and Restated DIP Term Sheet or otherwise.  The Debtors, the DIP Agent and the DIP Lenders are hereby authorized (i) to implement, in accordance with the terms of the Amended and Restated DIP Term Sheet, any non-material modifications (including, without limitation, any change in the number or composition of the DIP Lenders) to the Amended and Restated DIP Term Sheet without further order of this Court, and (ii) to agree upon and enter into any written amendments or modifications to the Budget without further order of this Court.

21.   This Final Order may be extended by agreement among the Debtors, the DIP Lenders, the DIP Agent, the Creditors Committee and approval by the Court upon two (2) days notice to parties in interest.

Dated: January, 25 2001.

_____
United States Bankruptcy Judge

Consented to:

<sup>~</sup> N T E R E <sup>·</sup>

JAN 2 5 2C

E?WIN I. KA.
··KBUPTCY JUD

BANK OF AMERICA, N.A., as DIP Agent

By: _____
One of its Attorneys

Larry J. Nyhan
Matthew A. Clemente (ARDC # 6255757)
SIDLEY & AUSTIN
Bank One Plaza
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

FINAL ORDER APPROVING SECTION
364 BORROWINGS AND GRANTING LIENS

## EXHIBIT 1

**Amended and Restated DIP Term Sheet**

### Amended and Restated DIP Term Sheet

Outboard Marine Corporation, a Delaware corporation ("OMC"), OMC Aluminum Boat Group, Inc., a Delaware corporation ("OMC Aluminum"), OMC Fishing Boat Group, Inc., a Delaware corporation ("OMC Fishing"), OMC Latin America/Caribbean, Inc., a Delaware corporation ("OMC Latin America"), OMC Recreational Boat Group, Inc., a Delaware corporation ("OMC Boat Group"), Outboard Marine Transportation Corporation, a Delaware corporation ("OMC Transportation"), OMCEMA, Inc., a Delaware corporation ("OMCEMA"), OMC Nevada, Inc., a Nevada corporation ("OMC Nevada") and Recreational Boat Group Limited Partnership, a Delaware limited partnership ("Recreational Boat Group L.P."), and certain of their subsidiaries (collectively, the "Loan Parties") have filed petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). Bank of America, N.A., a national banking association and successor in interest to Bank of America, N.A., formerly NationsBank, N.A., successor in interest to NationsBank of Texas, N.A., in its capacity as agent for the prepetition senior lenders ("BOA"), and certain of the senior lenders hereby agree to extend to the Loan Parties, as debtors and debtors-in-possession, on or before December 31, 2000, a senior secured superpriority debtor-in-possession credit facility in the amount specified below (the "DIP Loans"), subject to the terms and conditions of this term sheet ("Term Sheet"). Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in that certain Amended and Restated Loan and Security Agreement by and among the Borrowers party thereto, OMC Boat Group, BOA as Agent (the "Prepetition Agent") for the lenders specified therein (the "Prepetition Lenders") and the Prepetition Lenders, dated as of January 6, 1998, (as from time to time amended, modified or waived (the "Prepetition Credit Agreement"). The Prepetition Credit Agreement, together with all instruments and documents executed in connection therewith, shall be referred to collectively as the "Prepetition Credit Documents."

### Terms and Conditions for Priming Credit Loan[1]

| | |
|---|---|
| Borrowers: | OMC, OMC Aluminum, OMC Fishing, OMC Latin America, OMC Boat Group, OMC Transportation, OMCEMA, OMC Nevada, and Recreational Boat Group, L.P., as Debtors-In-Possession in cases (the "Cases") pending under Chapter 11 of the Bankruptcy Code (each in such capacity, a "Borrower" or |

---

[1]  The terms and conditions for the extension of credit described herein are dependent upon, among other things, authorization and approval by the Bankruptcy Court. The terms and conditions with respect to such commitments are mutually dependent on each other and no lender shall be obligated to extend credit unless agreement with the Debtors and approval by the Bankruptcy Court is obtained with respect to such terms and conditions as a whole.

"Debtor" and collectively, the "Borrowers" or the "Debtors"). Each of the Borrowers shall be jointly and severally liable to repay any and all indebtedness incurred under the DIP Loan Agreement (as defined below).

Guarantors:    All subsidiaries of the Borrowers that are non-Debtors, provided that no foreign subsidiary of the Borrowers shall be required to execute a guaranty of the obligations of the Debtors hereunder to the extent that (i) such guaranty would result in adverse tax consequences for any Debtor, (ii) such guaranty would violate applicable local law, (iii) such foreign subsidiary or its directors or officers are advised by legal counsel that the provision of such guaranty could result in personal liability to the directors and officers of such subsidiary or (iv) the DIP Agent shall determine, in the exercise of its reasonable discretion, that the costs involved in procuring a guaranty from such foreign subsidiary exceed the incremental benefits afforded to the DIP Agent and the DIP Lenders through the procurement of such guaranty.

Agent:    BOA (the "DIP Agent").

Lenders:    The financial institutions listed under the column "DIP Lenders" on Schedule I attached hereto (collectively, the "DIP Lenders").

Commitments:    The DIP Loans shall consist of a credit facility (the "DIP Facility") with a maximum commitment of up to $19,500,000 (the "Total DIP Commitment"). The full Retention Program Amount (defined below) together with all Accrued Professional Fees (defined below) shall at all times be reserved against the Total DIP Commitment. The DIP Loans shall be funded by the DIP Lenders in accordance with their respective commitments as reflected in Schedule I attached hereto and pursuant to and solely in accordance with the Budget (as defined herein).

DIP Loans:    The DIP Loans shall be advanced weekly based upon, and solely in accordance with, the Budget (defined below).

Use of Proceeds:    The proceeds of the DIP Facility shall be used by the Debtors, in accordance with the terms of the postpetition financing agreement described herein (the "DIP Loan Agreement") (i) to fund expenses incident to the Debtors' efforts to preserve and sell assets in accordance with, but limited to, the weekly cumulative amounts set forth in the Budget (as defined below) for the then current week, and (ii) to pay all fees as provided under the DIP Loan Agreement (whether incurred before or after the date of the commencement of the Cases (the "Petition Date")).

2

| | |
|---|---|
| Employee Retention Program: | The costs and expenses associated with the Borrowers' employee retention bonus program approved by the Bankruptcy Court, not to exceed $2.5 million in aggregate ("Retention Program Amount") shall, notwithstanding the occurrence of a Default or an Event of Default (and to the extent that such sums have not already been borrowed), be made available to the Debtors upon their request for the sole purpose of funding such Retention Program Amounts. |
| Budget: | Not later than the third business day of each week (and not later than the Closing Date with respect to the Budget to be delivered with respect to the week in which the Closing Date occurs) the Borrower shall provide to the DIP Agent, each DIP Lender and the Official Committee of Unsecured Creditors (the "Committee") (i) a copy of a budget (such budget, with modifications approved from time to time by the Required DIP Lenders (defined below), the "Budget"), in form and substance satisfactory to the DIP Agent and the Required DIP Lenders, reflecting on a line-item basis anticipated weekly cash receipts and expenditures for the succeeding six months, (ii) a copy of a variance report (the "Variance Report") reflecting on a line-item basis the actual cash receipts and disbursements for the preceding week and the percentage variance of such actual results from those reflected in the Budget for the preceding week, and a written explanation of such variance, and (iii) a statement that discloses the cumulative professional fees and expenses that have been accrued, but not paid, since the inception of the cases in accordance with the Budget (such cumulative sum, the "Accrued Professional Fees"). |
| Term: | All DIP Loans shall be repaid in full and the Total DIP Commitment shall terminate at the earliest to occur of (i) May 31, 2001 (the "Maturity Date"), (ii) the Termination Date (as defined below), (iii) the effective date of a plan of reorganization, and (iv) when the Total DIP Commitment has been reduced to zero. |
| Interest Rates and Payment Dates: | The non-default rate of interest with respect to each DIP Loan shall be the Base Rate plus 3.75% (the "Non-Default Rate"). |
| | The default rate of interest with respect to each DIP Loan after the occurrence of an Event of Default shall be the Non-Default Rate plus 2%. |
| | Interest on the DIP Loan shall be payable in cash, monthly in arrears. Interest on the Prepetition Revolving Credit Loans shall accrue at the Base Rate plus 3.75% and shall be payable from the proceeds of Prepetition Collateral as provided below. The Prepetition Lenders' entitlement to postpetition interest (but not the |

3

rate at which such interest accrues) will remain subject to determination under Section 506(b) of the Bankruptcy Code.

Closing Fee:

A $1,000,000 closing fee (the "Closing Fee"), fully earned as of the Closing Date, shall be paid on the Closing Date to the DIP Agent for the ratable benefit of the DIP Lenders.

Commitment Fee:

0.375% per annum of the unutilized Total DIP Commitment, payable monthly in arrears, to the DIP Agent for the account of the DIP Lenders.

Nature of Fees:

Non-refundable under all circumstances.

Collateral and Priority:

All obligations of the Debtors to the DIP Lenders and the DIP Agent, including, without limitation, all principal and accrued interest, costs, fees and expenses (collectively, the "DIP Obligations") shall be:

(a) Secured (subject to the Carve-Out (defined below)), pursuant to section 364(c)(2), of the Bankruptcy Code by a first priority, fully perfected security interest, in all of the existing and after acquired real and personal, tangible and intangible, assets of the Borrowers not subject to a perfected, non-avoidable lien or other encumbrance as of the Petition Date, including, without limitation, all cash, cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable and specifically including the stock of each Debtor's subsidiaries, but limited to 65% of the stock in any foreign subsidiaries of the Debtors), equipment, fixtures, real property interests, franchise rights, patents, tradenames, copyrights, intellectual property, general intangibles, investment property and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, but excluding avoidance actions under the Bankruptcy Code (collectively, the "Postpetition DIP Collateral");

(b) Secured, pursuant to section 364(d)(1), by a fully perfected security interest senior in priority to all liens of the Prepetition Lenders existing as of the Petition Date in all Collateral existing as of the Petition Date (the "Prepetition DIP Senior Collateral");

(c) Secured, pursuant to section 364(c)(3), by a fully perfected security interest in all property other than the Collateral (the "Prepetition DIP Junior Collateral") that is subject to valid and

4

non-avoidable liens as of the Petition Date which security interest shall be junior in priority to such valid and non-avoidable liens (the Postpetition DIP Collateral, Prepetition Senior DIP Collateral and the Prepetition DIP Junior Collateral shall be referred to collectively as the "DIP Collateral");

(d) Accorded administrative priority status under section 364(c)(1) of the Bankruptcy Code, having a superpriority over any and all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code ("Superpriority Claims"), subject only to the Carve-Out; provided, however, that as it pertains to proceeds of avoidance actions, the priority accorded to the DIP Lenders (and to the Prepetition Lenders pursuant to the Adequate Protection provision below) shall be equivalent in priority to a claim allowed under section 503(b)(1)(A) of the Bankruptcy Code, or such higher priority as may be awarded to any other entity in respect of such proceeds.

(e) Joint and several among the Borrowers; and

(f) Guaranteed by all non-Debtor subsidiaries of the Borrowers, subject to the "Guarantors" provisions above.

All DIP Collateral shall be free and clear of other liens, claims and encumbrances, except for (1) those liens granted in favor of the Prepetition Agent and the Prepetition Lenders pursuant to the Prepetition Credit Agreement, and (2) the Permitted Liens.

The foregoing liens on the Postpetition DIP Collateral and the administrative priority claim shall be subject to a carve-out (the "Carve-Out") for (i) following termination of the Total DIP Commitment as provided for herein as the result of a Default or an Event of Default (as each such term will be defined in the DIP Credit Agreement), the payment of allowed professional fees and disbursements incurred by the professionals retained, pursuant to Bankruptcy Code §§ 327 or 1103(a), by the Debtors and the Committee in an aggregate amount not to exceed $750,000 (plus Accrued Professional Fees incurred prior to such termination to the extent such fees are subsequently allowed) and (ii) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court; provided, however, neither the Carve-Out nor the Budget shall include professional fees and disbursements incurred in connection with asserting any claims or causes of action against either the Prepetition Lenders, the Prepetition Agent, the DIP Lenders or the DIP Agent and/or challenging or raising any defense to the obligations under the

5

Prepetition Credit Agreement or the DIP Loans or any lien of the Prepetition Agent, the Prepetition Lenders, the DIP Agent or the DIP Lenders. As long as no Default or Event of Default shall have occurred and be continuing, the Debtors shall be permitted to pay Budgeted compensation and reimbursement of expenses, allowed and payable under Bankruptcy Code §§ 330 and 331, as the same may be payable, and the amount so paid shall not reduce the Carve-Out.

Distribution Priorities:    If any Debtor receives cash proceeds from the sale or other disposition of Postpetition DIP Collateral, such proceeds shall be paid to the DIP Agent, when and as received, and shall be applied against the DIP Loans (or released to the Debtors, as the case may be) as follows: first to the payment of all fees and expenses owing to the DIP Agent, second to the payment of accrued interest and fees owing in respect of the DIP Loan, third, released to the Debtors to fund expenses in accordance with the Budget provided that the undrawn portion of the Total DIP Commitment shall be permanently reduced, dollar for dollar, to the extent that such proceeds are released to the Debtors, fourth, after the undrawn portion of the Total DIP Commitment has been eliminated, to the payment of principal and all other amounts owing in respect to the DIP Loan until the DIP Loan has been paid in full and all DIP Commitments have been terminated, and fifth to the payment of any unpaid Adequate Protection Obligations (defined below) until all Adequate Protection Obligations have been paid in full.

If any Debtor receives cash proceeds from the sale or other disposition of Prepetition Senior DIP Collateral (or any net proceeds from the Prepetition Junior DIP Collateral remaining after the senior liens on such collateral are satisfied), such proceeds shall be paid to the DIP Agent, when and as received, and shall be applied against the Prepetition Revolving Credit Loans and the DIP Loan as follows: first to the payment of all fees and expenses owing to the Prepetition Agent in respect of the Prepetition Revolving Credit Loans, second to the Prepetition Agent in respect of the Prepetition Revolving Credit Loans and fees up to an amount equal to all interest accrued in respect of Tranche A Revolving Credit Loans (or to be deposited into a reserve for payment of interest accruing in respect of Tranche A Revolving Credit Loans); third, to the Prepetition Agent in respect of the Prepetition Revolving Credit Loans up to an amount equal to all principal owing in respect of Tranche A Revolving Credit Loans, including all reimbursement obligations in respect of undrawn Letter of Credit Obligations, to be applied by the Prepetition Agent

in a manner consistent with the Prepetition Credit Documents; _fourth_ to the payment of accrued interest and fees owing in respect of the DIP Loan, _fifth_, released to the Debtors to fund expenses in accordance with the Budget provided that the undrawn portion of Total DIP Commitment shall be permanently reduced, dollar for dollar, to the extent that such proceeds are released to the Debtors, _sixth_, after the undrawn portion of the Total DIP Commitment has been eliminated, to the payment of principal and all other amounts owing in respect of the DIP Loan until the DIP Loan has been paid in full and all DIP Commitments have been terminated, _seventh_, to the Prepetition Agent in respect of the Prepetition Revolving Credit Loans to be applied in a manner consistent with the Prepetition Credit Documents.

If and to the extent the DIP Collateral proves to be insufficient to satisfy in full the DIP Loans, the holders of the Revolving Credit Loans shall be obligated to return to the DIP Lenders each such holder's pro rata share of proceeds or payments received by such holders from and after the Petition Date until such time as the DIP Loans have been paid in full.

| | |
|---|---|
| Closing Date: | The date upon which all conditions precedent to the making of the initial extension of credit are satisfied (the "Closing Date"). |
| Fees and Expenses: | The Borrowers shall pay all reasonable costs and expenses of the DIP Agent and DIP Lenders (including fees and expenses of the DIP Agent's legal and financial advisors) relating to the negotiation, documentation and administration of the DIP Loan Agreement and the enforcement of the DIP Agent's and the DIP Lenders' rights under and in respect of the DIP Loan Agreement. The Committee will be afforded an opportunity to review, subject to appropriate redactions for privileged materials, charges of the DIP Lenders' professionals that are reimbursed by the Debtors. |
| Conditions to Each Extension of Credit: | The DIP Loan Agreement shall contain conditions precedent to each extension of credit after the date hereof required by the DIP Agent, including, without limitation: |

(a)  The Borrowers shall have executed the DIP Loan Agreement and all other documentation with respect thereto, satisfactory in all respects to the DIP Agent and the DIP Lenders, on the earlier of (i) January 26, 2001, or (ii) such other date which the DIP Agent shall agree to in writing.

(b)  No Default or Event of Default shall exist.

(c) All representations and warranties shall be true and correct in all material respects as of the date of each extension of credit.

(d) An order of the Bankruptcy Court granting final approval of the DIP Loan Agreement (the "Final Order") shall have been entered in form and substance satisfactory to the DIP Agent and the DIP Lenders, and shall be in full force and effect and shall not have been stayed, reversed, vacated or otherwise modified.

(e) The Debtors are continuing to employ their reasonable best efforts to prosecute the Disposition Plan (as defined in the Interim Order).

(f) Payment of all fees, costs, expenses and other amounts then due and payable to the DIP Agent, including, without limitation, internal fees, costs and expenses.

(g) On or before January 31, 2001, the Debtors shall have directed State Street Bank & Trust, in its capacity as depository agent pursuant to that certain Depository Agreement dated as of May 27, 1998 to remit to the Agent on a provisional basis and subject to Bankruptcy Code § 506(b) the $5.3 million on deposit in accounts FD4426 and FD4427 at State Street Bank & Trust to be applied for the ratable benefit of the Prepetition Lenders.

| | |
|---|---|
| Representations and Warranties: | Those representations and warranties as are customary or appropriate in the context of the proposed DIP Loan Agreement and acceptable to the DIP Agent and the DIP Lenders. |
| Admissions and Acknowledgments: | In addition to, and without limiting the foregoing, each of the Borrowers shall expressly represent, warrant and acknowledge in the DIP Loan Agreement each of the following, subject to the rights of the Committee: |

(a) That each of the prepetition agreements executed and delivered by such Borrower in connection with the Prepetition Credit Agreement, including but not limited to each of the Prepetition Credit Documents to which such Borrower is a party, is valid and enforceable by the Prepetition Agent and the Prepetition Lenders against such Borrower;

(b) That such Borrower shall not dispute the validity or enforceability of any of the Prepetition Credit Documents or

any of its obligations thereunder, or the validity, priority, enforceability, scope or extent of any charge, lien, security interest or any other encumbrance of the Prepetition Agent and the Prepetition Lenders in, on or against any of the Collateral in the Cases or in any other judicial, administrative or other proceeding;

(c)   That such Borrower shall not challenge or dispute the validity of any of the obligations under the Prepetition Credit Agreement, and that, as of the Petition Date, the Borrowers were liable to the Prepetition Agent and the Prepetition Lenders in the aggregate principal amount of approximately $125,000,000, inclusive of Letter of Credit Obligations, plus approximately $570,000 in accrued and unpaid interest thereon, plus fees, costs and expenses incurred in connection with the obligations under the Prepetition Credit Agreement as provided in the Prepetition Credit Documents;

(d)   That by reason of the Prepetition Credit Documents, the obligations under the Prepetition Credit Agreement are secured by first-priority, non-avoidable, perfected, valid and enforceable liens on and security interests in all of such Borrower's right, title and interest in and to the Collateral.

| | |
|---|---|
| Affirmative Covenants: | The DIP Loan Agreement shall contain affirmative covenants required by the DIP Agent, including, without limitation: (i) delivery of statement of cash receipts and disbursements which statement shall include separate line items for collections on Collateral, including accounts receivable, and collections from the sale or disposition of Postpetition DIP Collateral, weekly Budgets and Variance Reports, officers certificates, monthly reporting packages and other information requested by the DIP Agent, (ii) delivery weekly of a report on collateral composition, including a breakdown of collateral between Postpetition DIP Collateral and Collateral, (iii) delivery weekly of a status report on sales of collateral, including a breakdown of collateral to be sold between Postpetition DIP Collateral and Collateral, (iv) payment of all postpetition taxes and other obligations, (v) notices of defaults, litigation and other material events, (vi) weekly accounts receivable aging report for the preceding week, (vii) collection of the following percentages (on a cumulative basis) of gross receivables of the Debtors existing as of the Petition Date (1) 2.5% by January 31, 2001, (2) 5% by February 28, 2001, (3) 10% by March 31, 2001, (4) 15% by April 30, 2001, and (5) 35% by May 31, 2001 (the "Receivables Covenant"), and (viii) by no later than February 9, 2001, the Debtors shall provide the DIP Lenders and the Prepetition Lenders with a plan with respect to disposition |

of the Segregated Funds (defined below). In addition, the Debtors shall provide the Agent by not later than February 2, 2001 all information concerning the Debtors' historical warranty claim experience, as well as warranty insurance information, as the Agent may reasonably request.

**Negative Covenants:** The DIP Loan Agreement shall contain negative covenants required by the DIP Agent, including, without limitation, on: (i) liens, (ii) capital expenditures, (iii) payment of certain prepetition claims in accordance with the first day motions filed in the Cases, and (iv) the existence of any claims entitled to a superpriority under § 364(c)(1) of the Bankruptcy Code other than the Superpriority Claims of the DIP Lenders and the Prepetition Lenders. Additionally, OMC will not permit its wholly owned subsidiary, OMC Development Inc., to use, transfer or commingle the $14,064,544.19 plus interest accruing thereon (the "Segregated Funds") held by OMC Development, Inc. at Chase Manhattan Bank in the United States without advance written notice to the Agent and the Committee and, in the absence of the consent of both the Agent and the Committee to any such proposed action, an order from the Bankruptcy Court.

**Allocation of Sale Proceeds:** Prior to filing a pleading in the Cases seeking to approve a proposed sale, the Debtors shall provide the DIP Agent and the DIP Lenders a good faith estimate of the allocation of the purchase price consideration among the assets being sold between Postpetition DIP Collateral and Collateral. Any disputes over such allocation shall be resolved by the Bankruptcy Court in the ordinary course of administration of the Cases.

**Events of Default:** The DIP Loan Agreement shall contain Events of Default required by the DIP Agent, including, without limitation: (i) the entry of an order dismissing any of the Cases or converting any of the Cases to a Chapter 7 case, (ii) the entry of an order appointing a Chapter 11 trustee in any of the Cases, (iii) the entry of an order granting any other claim superpriority status or a lien equal or superior to that granted to the DIP Agent and the DIP Lenders, (iv) the entry of an order staying, reversing, vacating or otherwise modifying the DIP Loan Agreement, the Interim Order or the Final Order without the prior written consent of the DIP Agent and the DIP Lenders, (v) the entry of an order in any of the Cases appointing an examiner having enlarged powers beyond those set forth under § 1106(a)(3) and (4) of the Bankruptcy Code, (vi) the failure of any of the Borrowers to pay (A) interest or fees when due and such default shall continue for two business days or (B) principal when due, (vii) the failure of any of the Borrowers to comply with any negative covenants, (viii) breach of the Receivables Covenant, (ix)

the failure of any of the Borrowers to perform or comply with any other term or covenant and such default shall continue unremedied for a period of 10 days, (x) any representation or warranty by any of the Borrowers shall be incorrect or misleading in any material respect when made; and (xi) an unfavorable variance in the Budget tested on (a) a weekly basis of 15% in total expenses; or (b) a cumulative basis of 10% in total expenses.

Remedies:    Upon the occurrence of an Event of Default other than an Event of Default set forth above in (ii) and (v), the Required DIP Lenders (as defined below) upon three business days written notice to the Debtors, the United States Trustee and the Committee appointed in the Cases may (a) terminate the Total DIP Commitments (the date of any such termination, the "Termination Date", and any notice to the Debtors declaring such a termination, a "Termination Notice"), (b) declare the obligations in respect of the DIP Loan Agreement to be immediately due and payable, (c) enjoin and prohibit each of the Debtors from using any cash collateral (other than to pay any DIP Obligations), (d) set off immediately any and all amounts in any cash collateral account and exercise all rights and remedies under the DIP Loan Agreement and the Interim Order or Final Order, as applicable. With respect to an Event of Default set forth in (ii) and (v) above, the remedies shall be limited to those described in (a) and (c) in the immediately preceding sentence. The DIP Lenders shall have other customary remedies under the DIP Loan Agreement.

Financial and Other
Reporting Requirements:    Each of the Borrowers shall provide all information reasonably requested by the DIP Agent.

Required DIP Lenders:    "Required DIP Lenders" shall mean, as of any date of determination, DIP Lenders who in the aggregate hold at least 61% of the Total DIP Commitment (which, if terminated, shall be deemed outstanding in the amounts outstanding immediately prior to such termination).

100% approval of the DIP Lenders shall be required to do the following: (a) extend the Maturity Date, (b) change the interest rate, or (c) increase the Total DIP Commitment beyond $19,500,000. All other actions relative to the DIP Loans may be accomplished with the consent of the Required DIP Lenders.

Adequate Protection:    To protect the Prepetition Lenders from any diminution in the value of Collateral available to satisfy the Prepetition Lenders' claims resulting from (i) the Debtors' use of such collateral, and (ii) the priming of the liens securing the obligations under the

11

Prepetition Credit Agreement by the liens granted to secure the DIP Loans, the Debtors shall (a) grant to the Prepetition Lenders replacement liens on all DIP Collateral which liens will be subordinate in priority only to (i) the liens granted to secure the DIP Loans and the Carve-Out (with respect to the Postpetition DIP Collateral only), and (ii) valid, non-avoidable liens existing on the Petition Date, (b) grant to the Prepetition Lenders Superpriority Claims subject only to the Carve-Out and the Superpriority Claim granted in favor of the DIP Loans, and (c) reimburse the Prepetition Agent, on a monthly basis, for professional fees and expenses incurred by the Prepetition Agent in connection with the Cases, which reimbursement shall be provisional in nature pending allowance under section 506(b) of the Code.   The foregoing replacement liens and Superpriority claim shall secure payment of the Obligations in an amount equal to the diminution in value of the Collateral available to the Prepetition Lenders from and after the Petition Date (such amount, the "Adequate Protection Obligations"), whether such diminution results from (i) the Debtors' use of such collateral, or (ii) the priming of the liens securing the Obligations under the Prepetition Credit Agreement by the liens granted to secure the DIP Loans

**Release:** In consideration for the DIP Loans, each of the Borrowers on behalf of itself and each of its successors and assigns (collectively, the "Releasors"), but without prejudice to the rights of the Committee or other party-in-interest to assert claims on behalf of the Debtors' estates, shall forever release, discharge and acquit the DIP Agent, each of the DIP Lenders, the Prepetition Agent, and each of the Prepetition Lenders (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations (collectively, "Claims"), of every type, including, without limitation, any so-called "lender liability" claims or defenses, which occurred on or prior to the date hereof with respect to any of the Borrowers, the Obligations under the Prepetition Credit Agreement, the Prepetition Credit Documents, the DIP Loans or the DIP Loan Agreement.

**Counterparts:** This Term Sheet may be executed in one or more counterparts, each of which shall be considered an original counterpart and shall become binding when the DIP Agent and each of the Debtors and DIP Lenders has executed one counterpart.  Each of the parties hereto agrees that a signature transmitted via facsimile transmission shall be effective to bind the party so transmitting its signature.

**Intended Third Party**

Beneficiaries:                The parties hereto intend that the Prepetition Agent and the
                              Prepetition Lenders be the beneficiaries of the following provisions
                              of this Term Sheet without prejudice to their rights under the
                              Prepetition Credit Agreement, the Consent Letter, the Final DIP
                              Order, the Agree Final Order Granting Certain Adequate
                              Protection Relief To the Prepetition Lenders or any other order
                              entered in the Cases or any other agreement: (i) subsection (g) of
                              the section titled "Conditions to Each Extension of Credit", (ii)
                              subsection (viii) of the section titled "Affirmative Covenants", (iii)
                              the last sentence of the section titled "Affirmative Covenants", (iv)
                              the last sentence of the section titled "Negative Covenants", (v) the
                              section titled "Distribution Priorities", (vi) the section titled
                              "Adequate Protection", and (vii) the section titled "Release".
                              Furthermore, the provisions identified in (i) through (iv) above
                              cannot be discharged by agreement of the parties hereto or
                              modified in any material manner without the written consent of the
                              Prepetition Agent and the Prepetition Lenders.

Governing Law:                Texas, except as governed by the Bankruptcy Code.

The preceding summary of proposed terms and conditions is not intended to be all-inclusive.
Any terms and conditions that are not specifically addressed above would be subject to future
negotiations with the Debtors, and comprehensive documentation of the transaction that is
acceptable to each DIP Lender will have to be prepared.

IN WITNESS WHEREOF, the DIP Agent, the DIP Lenders and the Borrowers each has caused this Amended and Restated DIP Termsheet to be executed and delivered by their duly authorized officers as of this 24th day of January, 2001.

BORROWERS

OUTBOARD MARINE CORPORATION

By:_____
Name:_____
Title:_____

OMC ALUMINUM BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

OMC FISHING BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

OMC LATIN AMERICA/CARIBBEAN, INC.

By:_____
Name:_____
Title:_____

OMC RECREATIONAL BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

RECREATIONAL BOAT GROUP LIMITED PARTNERSHIP

By:_____
Name:_____
Title:_____

DIP AGENT

BANK OF AMERICA, N.A
in its capacity as DIP Agent

By:_____
Name: _Edwardo J. Cavarazati_
Title: _Vice President_

DIP LENDERS

BANK OF AMERICA, N.A.
in its capacity as a DIP Lender

By:_____
Name: _Edwardo J. Cannariato_
Title: _Vice President_

FLEET CAPITAL CORPORATION

By:_____
Name:_____
Title:_____

THE CIT GROUP/BUSINESS CREDIT, INC.

By:_____
Name:_____
Title:_____

TRANSAMERICA BUSINESS CREDIT CORPORATION

By:_____
Name:_____
Title:_____

IN WITNESS WHEREOF, the DIP Agent, the DIP Lenders and the Borrowers each has caused this ~~Amended and Restated DIP Termsheet~~ **Term Sheet** to be executed and delivered by their duly authorized officers as of this ~~24th~~ **25th** day of January, 2001.

<u>BORROWERS</u>

OUTBOARD MARINE CORPORATION

By:_____
Name:_____
Title:_____

OMC ALUMINUM BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

OMC FISHING BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

OMC LATIN AMERICA/CARIBBEAN, INC.

By:_____
Name:_____
Title:_____

OMC RECREATIONAL BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

RECREATIONAL BOAT GROUP LIMITED PARTNERSHIP

By:_____
Name:_____
Title:_____

<u>DIP AGENT</u>

BANK OF AMERICA, N.A.
in its capacity as DIP Agent

By:_____
Name:_____
Title:_____

<u>DIP LENDERS</u>

BANK OF AMERICA, N.A.
in its capacity as a DIP Lender

By:_____
Name:_____
Title:_____

FLEET CAPITAL CORPORATION

By:_____
Name: _Patrick McEnroe_
Title: _First Vice President_

THE CIT GROUP/BUSINESS CREDIT, INC.

By:_____
Name:_____
Title:_____

TRANSAMERICA BUSINESS CREDIT CORPORATION

By:_____
Name:_____
Title:_____

IN WITNESS WHEREOF, the DIP Agent, the DIP Lenders and the Borrowers each has caused this Term Sheet to be executed and delivered by their duly authorized officers as of this 25th day of January, 2001.

| BORROWERS | DIP AGENT |
|---|---|
| **OUTBOARD MARINE CORPORATION** | **BANK OF AMERICA, N.A**<br>in its capacity as DIP Agent |
| By:_____<br>Name:_____<br>Title:_____ | By:_____<br>Name:_____<br>Title:_____ |
| **OMC ALUMINUM BOAT GROUP, INC.** | **DIP LENDERS** |
| By:_____<br>Name:_____<br>Title:_____ | **BANK OF AMERICA, N.A.**<br>in its capacity as a DIP Lender |
| **OMC FISHING BOAT GROUP, INC.** | By:_____<br>Name:_____<br>Title:_____ |
| By:_____<br>Name:_____<br>Title:_____ | |
| **OMC LATIN AMERICA/CARIBBEAN, INC.** | **FLEET CAPITAL CORPORATION** |
| By:_____<br>Name:_____<br>Title:_____ | By:_____<br>Name:_____<br>Title:_____ |
| **OMC RECREATIONAL BOAT GROUP, INC.** | **THE CIT GROUP/BUSINESS CREDIT, INC.**<br>By: _Alan R Schnack_<br>Name: _Alan R Schnacke_<br>Title: _Assistant Vice President_ |
| By:_____<br>Name:_____<br>Title:_____ | |
| **RECREATIONAL BOAT GROUP LIMITED PARTNERSHIP** | **TRANSAMERICA BUSINESS CREDIT CORPORATION** |
| By:_____<br>Name:_____<br>Title:_____ | By:_____<br>Name:_____<br>Title:_____ |

IN WITNESS WHEREOF, the DIP Agent, the DIP Lenders and the Borrowers each has caused this Term Sheet to be executed and delivered by their duly authorized officers as of this 25th day of January, 2001.

BORROWERS

OUTBOARD MARINE CORPORATION

By:_____
Name:_____
Title:_____


OMC ALUMINUM BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

OMC FISHING BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

OMC LATIN AMERICA/CARIBBEAN, INC.

By:_____
Name:_____
Title:_____

OMC RECREATIONAL BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

RECREATIONAL BOAT GROUP LIMITED PARTNERSHIP

By:_____
Name:_____
Title:_____


DIP AGENT

BANK OF AMERICA, N.A
in its capacity as DIP Agent

By:_____
Name:_____
Title:_____


DIP LENDERS

BANK OF AMERICA, N.A.
in its capacity as a DIP Lender

By:_____
Name:_____
Title:_____


FLEET CAPITAL CORPORATION

By:_____
Name:_____
Title:_____

THE CIT GROUP/BUSINESS CREDIT, INC.

By:_____
Name:_____
Title:_____

TRANSAMERICA BUSINESS CREDIT CORPORATION

By: _Alfred Kaph m._____
Name: _Ar. Kaplan_____
Title: _Vue President_____

OUTBOARD MARINE TRANSPORTATION
CORPORATION

By:_____
Name:_____
Title:_____

OMCEMA, INC.

By:_____
Name:_____
Title:_____

OMC NEVADA, INC.

By:_____
Name:_____
Title:_____

## SCHEDULE I

| **DIP LENDER** | **COMMITMENT** |
| --- | --- |
| BANK OF AMERICA, N.A. | 37.07% |
| FLEET CAPITAL CORPORATION | 23.33% |
| THE CIT GROUP/BUSINESS CREDIT, INC. | 19.8% |
| TRANSAMERICA BUSINESS CREDIT CORPORATION | 19.8% |

January 25, 2001 (10:29AM)

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| OUTBOARD MARINE CORPORATION, et al., | Case No. 00-37405 |
| Debtors. | Jointly Administered |

## AGREED FINAL ORDER GRANTING CERTAIN ADEQUATE PROTECTION RELIEF TO THE PREPETITION LENDERS

OUTBOARD MARINE CORPORATION, a Delaware corporation ("OMC"),

OMC ALUMINUM BOAT GROUP, INC., a Delaware corporation, OMC FISHING BOAT

GROUP, INC., a Delaware corporation, OMC LATIN AMERICA/CARIBBEAN, INC., a

Delaware corporation, OMC RECREATIONAL BOAT GROUP, INC., a Delaware corporation,

OUTBOARD MARINE TRANSPORTATION CORPORATION, a Delaware corporation,

OMCEMA, Inc., a Delaware corporation, OMC NEVADA, INC., a Nevada corporation,  and

RECREATIONAL BOAT GROUP LIMITED PARTNERSHIP, a Delaware limited partnership

each as a debtor and debtor-in-possession in these cases (each a "Debtor," and collectively the

"Debtors"), having filed with this Court voluntary petitions (each a "Petition," and collectively

the "Petitions") for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§

101, et seq. (the "Code"), in the United States Bankruptcy Court for the Northern District of

Illinois, Eastern Division on December 22, 2000 (the "Petition Date"); and having filed a Motion

on December 22, 2000 pursuant to 11 U.S.C. §§ 364(c) and (d) (the "Motion") for entry of an

interim order and proposed final order to provide certain relief to (i) Bank of America N. A.

("BOA"), as agent (in such capacity, the "Prepetition Agent") for certain lenders (the

"Prepetition Lenders") under that certain Amended and Restated Loan and Security Agreement

dated as of January 6, 1998 by and among certain of the Debtors, the Prepetition Agent and the

Prepetition Lenders (as restated, amended or modified from time to time, the "Prepetition Credit

Agreement") in consideration for the Prepetition Lenders' consent to the imposition of a priming

lien, in connection with the Debtors' Emergency Motion For Interim and Final Orders Pursuant

to 11 U.S.C. §§ 105, 362, and 364 (i) Authorizing Postpetition Financing, (ii) Granting Liens and

Superpriority Claims, and (iii) Scheduling a Final Hearing Pursuant to Fed. R. Bankr. P. 4001

(the "DIP Financing Motion"), upon prepetition collateral securing payment of the claims of the

Prepetition Lenders;

Counsel for the Debtors and counsel for the Prepetition Agent having consented

to the entry of this Order; and notice of the Agreed Interim Order (as defined below) having been

given to each of the Prepetition Lenders, to the Debtors' twenty (20) largest unsecured creditors,

to the United States Trustee for the Northern District of Illinois, Eastern Division, to the

Creditors Committee (defined below) and to any other parties entitled to notice under

Bankruptcy Rule 4001(b), and such notice being appropriate under the circumstances:

THE COURT HAS BEEN ADVISED THAT THE DEBTORS AND THE

PREPETITION AGENT HAVE STIPULATED TO THE FOLLOWING:

A.      On December 22, 2000 (the "Petition Date"), the Debtors filed petitions for relief

under Chapter 11 of the Code. Pursuant to sections 1107 and 1108 of the Code, the Debtors have

retained possession of their property and are authorized thereby, as debtors-in-possession, to

continue the operation and management of their businesses.

B.      On December 28, 2000, the United States Trustee appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors Committee").

C.      Prior to the Petition Date, certain of the Debtors, the Prepetition Agent and the Prepetition Lenders were parties to the Prepetition Credit Agreement.  The Prepetition Credit Agreement, and all documents and instruments executed in connection therewith are hereinafter collectively referred to as the "Prepetition Agreements".

D.      Pursuant to the Prepetition Agreements, in consideration of the loans and other financial accommodations extended to the Debtors under such agreements, and to secure the payment and performance of the Debtors' obligations under the Prepetition Agreements, the Debtors granted the Prepetition Agent for the ratable benefit of the Prepetition Lenders security interests in and liens on certain of the Debtors' property (including, without limitation, the Debtors' accounts, contract rights, chattel paper, instruments, general intangibles (including without limitation, trademarks and tradenames, patents and copyrights, and specifically including without limitation those listed in Schedule 7.1(z) of the Prepetition Credit Agreement), licenses, inventory (including without limitation, finished goods, work-in-process and raw materials), investment property (including without limitation, securities, security entitlements and securities accounts, but excluding capital stock in any subsidiary of OMC or any of its subsidiaries owned by OMC or any of the other "Loan Parties" under the Prepetition Credit Agreement), books and records, and deposit accounts and all cash deposited with any clearing bank, the Prepetition Agent or any Prepetition Lender or any affiliate or subsidiary thereof, respectively, and all proceeds and products of any of the foregoing (collectively, the "Prepetition Collateral").

3

E.     The Prepetition Agent and the Debtors agree that the Prepetition Agent duly

perfected its security interests in and upon the Prepetition Collateral by filing financing

statements and taking certain other actions.  The Prepetition Agent and the Debtors agree that the

Prepetition Agent has a valid, perfected, enforceable, and non-avoidable first priority lien upon

and security interests in the Prepetition Collateral.

F.     On the Petition Date, the Debtors were indebted to the Prepetition Lenders in the

aggregate principal amount of not less than $125 million pursuant to the Prepetition Agreements,

plus interest, fees, costs, expenses, and other amounts owing or accrued as of the Petition Date

under or in connection with the Prepetition Agreements  (collectively referred to hereinafter as

the "Prepetition Indebtedness").

G.     On the Petition Date, the Debtors filed the DIP Financing Motion seeking

authority to enter into a debtor-in-possession financing facility (the "DIP Facility") in order to

borrow money from BOA and certain other lenders (the "DIP Lenders") pursuant to the terms of

the term sheet attached thereto (the "DIP Term Sheet").  As more fully set forth in the DIP

Financing Motion, the DIP Lenders are only prepared to loan money to the Debtors if they are,

among other things, granted liens and security interests in the Prepetition Collateral which liens

and security interests are superior in priority to the liens and security interests held by the

Prepetition Lenders.

H.     As more fully set forth in the Consent Letter attached hereto as Exhibit A, the

Prepetition Lenders are prepared to consent to the imposition of priming liens in favor of the DIP

Lenders on the Prepetition Collateral to the extent set forth in the DIP Financing Motion, the

final DIP financing order (the "Final DIP Order") and the Amended and Restated DIP Term

Sheet (attached as <u>Exhibit 1</u> to the Final DIP Order); <u>provided</u> that the Court (a) authorizes the

Debtors, pursuant to sections 361, 363, and 364 of the Code, to grant to the Prepetition Agent

(for the benefit of all Prepetition Lenders and to the extent that such Prepetition Lenders' liens on

the Prepetition Collateral are valid, perfected, enforceable and non-avoidable) replacement

security interests in and liens upon all property of the Debtors and their estates, whether now

existing or hereafter acquired or arising and wherever located,  (b) authorizes and directs the

Debtors pay to the Prepetition Lenders interest accruing under the Prepetition Agreements as

provided for in the Final DIP Order, (c) affords the Prepetition Lenders the other relief

prescribed in this Order, and (d) enters the Final DIP Order and approves the DIP Facility,

including, without limitation, the Amended and Restated DIP Term Sheet, in form and substance

satisfactory to the Prepetition Agent.

      I.     On December 26, 2001, the Court entered the Agreed Interim Order And

Proposed Final Order Granting Certain Adequate Protection Relief To The Prepetition Lenders

(the "Agreed Interim Order") and the Interim Order Approving Postpetition Financing And

Granting Liens And Super Administrative Priority Pursuant To 11 U.S.C. §§ 364(c) and (d, And

Modifying The Automatic Stay And Scheduling A Final Hearing.

      J.     On January 16, 2001, the Creditors Committee filed a Limited Objection Of The

Official Committee Of Unsecured Creditors To The Proposed Final Adequate Protection And

Financing Orders (the "Objection").

      K.     In order to Resolve the Objection, the Debtors, the Creditors Committee and DIP

Lenders have amended the terms of the DIP Term Sheet as set forth in Exhibit 1 to the Final

Order (the "Amended and Restated DIP Term Sheet") and have agreed to the terms of this Order as set forth herein.

BASED UPON THE MOTION, THE RECORD BEFORE THE COURT, AND THE COMBINED CONSENT OF THE DEBTORS AND THE PREPETITION AGENT TO THE ENTRY OF THIS ORDER, THE COURT FINDS, AS FOLLOWS:

i)       The Debtors have adequate notice under the circumstances to (i) the Prepetition Lenders, (ii) the twenty (20) largest unsecured creditors of the Debtors, (iii) the United States Trustee for the Northern District of Illinois, Eastern Division, (iv) the Creditors Committee, and (v) any other persons entitled to notice under Bankruptcy Rule 4001(b).

ii)      A need exists for the Debtors to borrow funds and seek other financial accommodations from the DIP Lenders in order to fund the orderly windown of their operations and the sale of their assets.

iii)     The Debtors are presently unable to obtain unsecured credit allowable under section 503(b)(1) of the Code as an administrative expense or unsecured credit allowable under sections 364(a) or 364(b) of the Code. The only source of secured credit available to the Debtors will be the DIP Facility. The Debtors require funds from the DIP Facility in order to preserve their assets and achieve maximum value for their creditors. The Prepetition Agent will not agree to priming of its liens and security interest in the Prepetition Collateral on terms less favorable than those contained in this Order.

iv)     Good cause has been shown for the entry of this Order. Among other things, entry of this Order will facilitate the funding of the orderly windown of the Debtors' operations and sales of their assets. In consideration for the consents provided herein and to the imposition of priming liens, the Prepetition Agent, for the benefit of the Prepetition Lenders, is

entitled to the relief set forth in this Order.  The protections afforded the Prepetition Lenders'

interests herein are fair under the circumstances.

v)      The Prepetition Agent and the Debtors have negotiated the terms and

conditions of this Order in good faith and at arms-length and have offered sufficient evidence of

the Prepetition Agent's good faith in agreeing to this Order.

ACCORDINGLY, IT IS HEREBY ADJUDGED, ORDERED AND DECREED

THAT:

1.      As adequate protection against the diminution of value of the Prepetition

Lenders' interests in the Prepetition Collateral, the Prepetition Lenders are hereby granted,

pursuant to sections 361, 363 and 364 of the Code, valid,  perfected, and enforceable security

interests in and liens upon all property of the Debtors and their estates, whether now existing or

hereafter acquired or arising and wherever located, and all proceeds, rents, products, or profits

thereof (collectively, the "Postpetition Collateral").  The security interests in and liens on the

Postpetition Collateral shall (i) at all times be senior to the rights of the Debtors and any

successor trustee in these or any subsequent proceedings under the Code, (ii) be subordinate only

to (1) the liens and security interests granted to the DIP Lenders in connection with the DIP

Facility, (2) the "Carve-Out" as defined in the DIP Term Sheet, and (3) valid, enforceable and

non-avoidable liens and security interests existing as of the Petition Date.

2.      The security interests and liens herein granted (i) are and shall be in

addition to all security interests, liens, and rights of set-off existing in favor of the Prepetition

Lenders on the Petition Date, (ii) are and shall be valid, perfected, enforceable, and effective as

of the date of commencement of the present proceedings without any further action by the

Debtors or the Prepetition Agent and without the execution, filing, or recordation of any

7

financing statements, security agreements, mortgages, or other documents; and (iii) shall secure

payment of the Prepetition Indebtedness in an amount equal to any diminution in value of the

Prepetition Lenders' interest in the Prepetition Collateral (the "Adequate Protection Obligation")

which occurs during the pendency of the Debtors' bankruptcy cases, whether such diminution is

a consequence of (a) the Debtors' use of the Prepetition Collateral, (b) the Debtors' incurring of

obligations under the DIP Facility (which obligations will be secured by priority liens on the

Prepetition Collateral), (c) economic depreciation of the Prepetition Collateral, or (d) otherwise.

   3.  Subject to the last three sentences of this paragraph 3, the Adequate

Protection Obligation shall also be afforded status as an administrative priority claim equivalent

in priority to a claim under section 364(c)(1) of the Code, and, as such, except as provided in the

last sentence of this paragraph 3, having priority over all other costs and expenses of the kind

specified in, or ordered pursuant to, sections 105, 326, 330, 331, 503(b), 507(a), or 507(b), or

any other section of the Code and shall at all times be senior to the rights of the Debtors, and any

successor trustee in this or any subsequent proceedings under the Code; provided, however, the

priority claim granted the Prepetition Lenders in this paragraph shall be subordinate to (i) the

administrative priority claim granted the DIP Lenders pursuant to section 364(c)(1) of the Code

in the Final DIP Order, and (ii) the Carve-Out, as defined in the Amended and Restated DIP

Term Sheet. The Creditors Committee, for itself and any Chapter 7 trustee appointed in this

case, expressly reserves the right to challenge the priority, as a matter of law, of the Section

364(c)(1) priority claim granted to the Prepetition Lenders hereunder relative to the

administrative priority claims of a Chapter 7 liquidation, and the entry of this Order is without

prejudice to such reservation of (and the Prepetition Lenders' right to challenge) such rights.

Moreover, nothing contained herein shall (1) impair the rights (if any) of parties-in-interest (with

standing under applicable law) to assert that charges under Section 506(c) or Section 552 of the

Code should be imposed against proceeds that are (a) realized from the disposition of the

Prepetition Collateral or Postpetition Collateral and (b) otherwise payable to the Prepetition

Lenders in order to repay monies borrowed from the DIP Lenders (or to satisfy other

administrative priority claims incurred by the Debtors), or (2) limit in any way the right of the

Prepetition Lenders to contest such assertions.  Finally, as it pertains to proceeds of avoidance

actions, including, without limitation, those arising under sections 544, 545, 547, 548, 549, 550

and 553 of the Bankruptcy Code, the priority accorded under this paragraph 3 shall be equivalent

in priority to a claim allowed under section 503(b)(1)(A) of the Bankruptcy Code, or such higher

priority as may be awarded to any other entity in respect of such proceeds, provided, however,

that such claim shall be subordinate to the administrative priority claim granted to the DIP

Lenders pursuant to the Final DIP Order.

4.    Additionally, as adequate protection of, and consideration for,

relinquishing any set-off rights it may have with respect to balances as of the Petition Date in

deposit accounts at Bank One, NA ("Bank One"), a Prepetition Lender but not a DIP Lender,

Bank One shall be and hereby is granted a superpriority claim pursuant to Bankruptcy Code §

364(c)(1) to the extent it would, as of the Petition Date, have had valid, non-avoidable setoff

rights against the Debtors under applicable non-bankruptcy law and the Bankruptcy Code,

independent of its rights and remedies as a Prepetition Lender under the Prepetition Agreements.

Any such superpriority claim shall (a) be junior to (i) the superpriority claims granted pursuant to

this Order to the DIP Agent and the DIP Lenders in respect of the DIP Facility and (ii) the

Carve-Out, and (b) subject to the following sentence, be on a parity with the administrative

priority claim afforded the Adequate Protection Obligation.  If and to the extent that the

Prepetition Lenders establish that they held an interest as to all or part of such balances that was superior to all or part of any setoff rights of Bank One with respect to such balances, then (and to the extent of such superior interest) the priority claim accorded to Bank One shall be subordinate in priority to the priority claim accorded to the Adequate Protection Obligation.

      5.    As additional protection for the interests of the Prepetition Lenders and in further consideration for the Prepetition Lenders' consent to the imposition of priming liens, (a) the Debtors shall pay to the Prepetition Lenders (other than with respect to Tranche B under the Prepetition Credit Agreement) from the proceeds of Prepetition Collateral (i) on a monthly basis as provided in the Prepetition Agreements,  interest accruing on the Prepetition Indebtedness at the non-default rate prescribed in the Amended and Restated DIP Term Sheet, (ii) as and when required to be paid under the Prepetition Credit Agreement (and otherwise upon request), all reasonable fees and expenses for which the Prepetition Lenders (or the Prepetition Agent) are entitled to receive reimbursement pursuant to the terms of the Prepetition Agreements and all fees and expenses incurred in connection with or in preparation for the Debtors' bankruptcy proceedings (including, without limitation, fees and expenses arising in connection with the negotiation and preparation of this Order) to the extent such parties were entitled to receive such category of fee or expense pursuant to the Prepetition Agreements; provided, however, that the Debtors' payment of such interest, fees and expenses (but not the Debtors' agreement to pay a higher rate of interest) shall be provisional in nature pending the allowance of such claims pursuant to Section 506(b) of the Code, and (iii) the DIP Lenders shall not agree to increase the Total DIP Commitment (as defined in the DIP Term Sheet) above $19,500,000 without the consent of each Prepetition Lender.

6.     If the Prepetition Agent hereafter request the Debtors to execute and

deliver to the Prepetition Agent financing statements, mortgages, or other instruments or

documents considered by the Prepetition Agent to be necessary or desirable to further evidence

the perfection of the liens and security interests granted in this Order, the Debtors are hereby

authorized to execute and deliver those financing statements, instruments, and documents.

Nothing in this Order shall in any way restrict the scope of the Prepetition Agent's prepetition

liens, security interests, mortgages, rights of set-off or claims with respect to the Prepetition

Indebtedness or the Prepetition Collateral, and the Prepetition Agent's liens on and security

interests in the Prepetition Collateral shall extend to the fullest extent permitted by section 552(b)

of the Code.

7.     The Prepetition Agent is authorized to collect upon, convert to cash, and

endorse checks, drafts, instruments, and other forms of payment now or hereafter coming into its

possession as collateral or proceeds of collection of the Prepetition Collateral, and to apply,

during the term of this Order, all proceeds of collections of Prepetition Collateral now or

hereafter coming into the Prepetition Agent's possession in accordance with the Amended and

Restated DIP Term Sheet.

8.     During the term of this order, the Debtors shall provide to the Prepetition

Agent and the Creditors Committee (i) the reports and information specified in the Amended and

Restated DIP Term Sheet at the times such reports and information are required to be provided to

the agent for the DIP Lenders, and (ii) access to the Debtors' books, records and management

personnel upon reasonable request during normal business hours.

9.     Nothing contained in this Order shall be deemed a finding with respect to

adequate protection (as that term is defined in section 361 of the Code) of the interests of the

Prepetition Lenders. Without limiting the foregoing in any respect, the Prepetition Lenders may, at any time, request the Court to increase the payments to or other protections for the benefit of the Prepetition Lenders as a condition to the continued use by the Debtors of the Prepetition Collateral. Notwithstanding QIP's consent to the entry of this Order, nothing contained herein shall be deemed, nor construed to be a waiver, limitation, modification or impairment, in any manner whatsoever, of QIP's rights to accrue and/or seek the allowance and payment of postpetition interest, costs, fees and any and all other charges arising under or related to any and all applicable prepetition agreements between QIP and one or more of the Debtors, that certain Junior Participation Agreement dated October 10, 2000 between QIP and the Prepetition Lenders, and/or any other Prepetition Agreements, and any and all such rights are hereby expressly preserved. Without limiting the foregoing in any respect, nothing herein shall (i) limit the rights of QIP, at any time, to request the Court to direct the Debtors to remit payments or provide other protections, to QIP as a condition to the continued use by the Debtors of the Prepetition Collateral, (ii) confer upon QIP standing that it does not otherwise enjoy to make such requests, or (iii) limit the rights of the Debtors, the Prepetition Lenders, or any other parties to oppose such requests on any grounds.

10.     The automatic stay provisions of section 362 of the Code are hereby vacated as to the Prepetition Agent to the extent necessary to implement the terms of this Order.

11.     The subject of this Order is a "core" proceeding within the meaning of 28 U.S.C. § 157. This Order is immediately applicable and valid and fully effective upon its entry.

12.     This Order may be extended by agreement among the Debtors, the DIP Lenders, the DIP Agent, the Prepetition Agent, the Prepetition Lenders, the Creditors Committee and with approval by the Court upon two (2) days notice to parties in interest.

Dated: January 25, 2001

**E N T E R E D**

_____
United States Bankruptcy Judge

JAN 2 5 2001

ERWIN I. KATZ
~NKRUPTCY  JUDGE

Consented to:

OUTBOARD MARINE CORPORATION,
OMC ALUMINUM BOAT GROUP, INC.,
OMC FISHING BOAT GROUP, INC.,
OMC LATIN AMERICA/CARIBBEAN, INC.,
OMC RECREATIONAL BOAT GROUP, INC.,
OUTBOARD MARINE TRANSPORTATION CORPORATION,
OMCEMA, INC.
OMC NEVADA, INC., and
RECREATIONAL BOAT GROUP LIMITED PARTNERSHIP,

DEBTORS

By: _____
One of their Attorneys

SKADDEN, ARPS, SLATE, MEAGHER & FLOM (ILLINOIS)
David Kurtz
Mark A. McDermott
333 W. Wacker Drive, Suite 2100
Chicago, IL 60606
Telephone  (312) 407-0411
Telecopier  (210) 407-0700

Attorneys for Debtors and
Debtors in Possession

13

BANK OF AMERICA N.A.
as Prepetition Agent

By:
One of its Attorneys

SIDLEY & AUSTIN
Larry J. Nyhan
Matthew A. Clemente (ARDC # 6255757)
Bank One Plaza
Chicago, IL 60603
Telephone   (312) 853-7000
Telecopier   (312) 853-7036

January 25, 2001 (10:25AM)

14

# **EXHIBIT A**

Consent Letter

CONSENT LETTER
January 24, 2001

Reference is made to that certain Amended and Restated Loan and Security Agreement by and among the Borrowers party thereto, Bank of America, N.A. ("BOA") in its contractual capacity as Agent (the "Prepetition Agent") and as a lender, and the other lenders from time to time party thereto (collectively, the "Prepetition Lenders"), dated as of January 6, 1998 (as amended, restated or supplemented from time to time, the "Prepetition Credit Agreement" and collectively, with all documents executed in connection therewith, the "Prepetition Agreements"). Certain of the Prepetition Lenders (the "DIP Lenders") and BOA, as agent (the "DIP Agent") have agreed to provide the Borrowers with a debtor in possession financing facility (the "DIP Facility") in accordance with that certain term sheet attached hereto as Annex 1 (the "DIP Term Sheet"). Capitalized terms used herein but not defined herein shall have the meanings assigned to such terms in the DIP Term Sheet. To the extent any provision of this agreement is inconsistent with any provision of the Prepetition Agreements or the DIP Term Sheet, the provisions of this agreement shall control and supersede the provisions of the Prepetition Agreements and the DIP Term Sheet.

To induce the DIP Lenders to extend the DIP Facility, the undersigned Prepetition Lenders hereby agree as follows:

- The Prepetition Lenders consent to the priming of the Prepetition Liens by those liens granted to secure payment of obligations under the DIP Facility up to a maximum principal amount of $19,500,000. The Prepetition Agent is hereby authorized to consent to entry of that certain Agreed Adequate Protection Order, a copy of which is attached hereto as Annex II.

- If and to the extent the DIP Collateral proves to be insufficient to satisfy in full the DIP Loans, the Prepetition Lenders shall remit to the DIP Agent for the benefit of the DIP Lenders any and all collateral proceeds paid to the Prepetition Lenders subsequent to the Petition Date until the DIP Facility, excluding the amount, if any of incremental default interest (i.e. the 2% spread between Non-Default Rate and the default rate of interest) ("Incremental Default Interest") and the Closing Fee has been paid in full (the "Adjusted DIP Facility"); provided, however, that the Prepetition Lenders will be under no obligation to remit such collateral proceeds to the DIP Agent to the extent that the unpaid portion of the Adjusted DIP Facility equals or is less than the sum of (a) the amount of the Closing Fee actually paid to and retained by the DIP Lenders, plus (2) the Incremental Default Interest actually paid to and retained by the DIP Lenders in respect of the DIP Loans.

- The undersigned Prepetition Lenders who are also DIP Lenders agree that they will not, without the written consent of each Prepetition Lender, make additional principal advances under the DIP Facility if, after giving effect to such advances, the then outstanding principal balance of the DIP Facility would exceed $19,500,000.

- The DIP Agent shall provide to each Prepetition Lender any and all reports, budgets, notices, financial statements, and other material information received by the DIP Agent from the Debtors and distributed to the DIP Lenders pursuant to the DIP Term Sheet.

- Each Prepetition Lender shall have the independent right to contest the allocation of proceeds of the Debtors' assets among the various categories of collateral defined in the DIP Term Sheet provided that any Prepetition Lender shall raise any such objection in the Bankruptcy Court.

The terms of this agreement shall not be modified except as by writing signed by all parties hereto.

This agreement may be executed in one or more counterparts, each of which shall be considered an original counterpart and shall become binding when the DIP Agent, the Prepetition Agent and each of the DIP Lenders and Prepetition Lenders has executed one counterpart. Each of the parties hereto agrees that a signature transmitted via facsimile transmission shall be effective to bind the party so transmitting its signature.

2

Acknowledged and Agreed as of the date set forth above.

**BANK OF AMERICA, N.A.**
in its capacity as DIP Agent and Prepetition
Agent

By: _____
Name: LAWRENCE J. CANNARIATI
Title: Vice President

**BANK OF AMERICA, N.A.**
in its capacity as a DIP Lender and Prepetition
Lender

By: _____
Name: LAWRENCE J. CANNARIATI
Title: Vice President

**THE CIT GROUP/BUSINESS CREDIT, INC.**
in its capacity as a DIP Lender and Prepetition
Lender

By: _____
Name: _____
Title: _____

**FLEET CAPITAL CORPORATION,**
in its capacity as a DIP Lender and Prepetition
Lender

By: _____
Name: _____
Title: _____

**TRANSAMERICA BUSINESS
CREDIT CORPORATION**
in its capacity as a DIP Lender and Prepetition
Lender

By: _____
Name: _____
Title: _____

**AMERICAN NATIONAL BANK AND
TRUST COMPANY OF CHICAGO**
in its capacity as a Prepetition Lender

By: _____
Name: _____
Title: _____

3

Acknowledged and Agreed as of the date set forth above.

BANK OF AMERICA, N.A
in its capacity as DIP Agent and Prepetition
Agent

By:_____
Name:_____
Title:_____

BANK OF AMERICA, N.A.
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

THE CIT GROUP/BUSINESS CREDIT, INC.
in its capacity as a DIP Lender and Prepetition
Lender

By: _Alan R Schnack_
Name: Alan R Schnack
Title: Assistant Vice President

FLEET CAPITAL CORPORATION,
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

TRANSAMERICA BUSINESS
CREDIT CORPORATION
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

AMERICAN NATIONAL BANK AND
TRUST COMPANY OF CHICAGO
in its capacity as a Prepetition Lender

By:_____
Name:_____
Title:_____

3

Acknowledged and Agreed as of the date set forth above.

BANK OF AMERICA, N.A
in its capacity as DIP Agent and Prepetition
Agent

By:_____
Name:_____
Title:_____

THE CIT GROUP/BUSINESS CREDIT, INC.
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

TRANSAMERICA BUSINESS
CREDIT CORPORATION
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

BANK OF AMERICA, N.A.
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

FLEET CAPITAL CORPORATION,
in its capacity as a DIP Lender and Prepetition
Lender

By: _/s/_____
Name: _Patrick McGarvell_
Title: _Vice President_

AMERICAN NATIONAL BANK AND
TRUST COMPANY OF CHICAGO
in its capacity as a Prepetition Lender

By:_____
Name:_____
Title:_____

Acknowledged and Agreed as of the date set forth above.

**BANK OF AMERICA, N.A**
in its capacity as DIP Agent and Prepetition
Agent

By:_____
Name:_____
Title:_____

**THE CIT GROUP/BUSINESS CREDIT, INC.**
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

**TRANSAMERICA BUSINESS
CREDIT CORPORATION**
in its capacity as a DIP Lender and Prepetition
Lender

By: _Ari Kaplan_
Name: _Ari Kaplan_
Title: _Vice President_

**BANK OF AMERICA, N.A.**
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

**FLEET CAPITAL CORPORATION,**
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

**AMERICAN NATIONAL BANK AND
TRUST COMPANY OF CHICAGO**
in its capacity as a Prepetition Lender

By:_____
Name:_____
Title:_____

3

Acknowledged and Agreed as of the date set forth above.

BANK OF AMERICA, N.A
in its capacity as DIP Agent and Prepetition
Agent

By:_____
Name:_____
Title:_____

BANK OF AMERICA, N.A.
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

THE CIT GROUP/BUSINESS CREDIT, INC.
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

FLEET CAPITAL CORPORATION,
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

TRANSAMERICA BUSINESS
CREDIT CORPORATION
in its capacity as a DIP Lender and Prepetition
Lender

By:_____
Name:_____
Title:_____

AMERICAN NATIONAL BANK AND
TRUST COMPANY OF CHICAGO
in its capacity as a Prepetition Lender

By: _Michael Hayes_
Name: _Michael Hayes_
Title:_____

3

## **ANNEX 1**

DIP Term Sheet

**EXECUTION COPY**

### Amended and Restated DIP Term Sheet

Outboard Marine Corporation, a Delaware corporation ("OMC"), OMC Aluminum Boat Group, Inc., a Delaware corporation ("OMC Aluminum"), OMC Fishing Boat Group, Inc., a Delaware corporation ("OMC Fishing"), OMC Latin America/Caribbean, Inc., a Delaware corporation ("OMC Latin America"), OMC Recreational Boat Group, Inc., a Delaware corporation ("OMC Boat Group"), Outboard Marine Transportation Corporation, a Delaware corporation ("OMC Transportation"), OMCEMA, Inc., a Delaware corporation ("OMCEMA"), OMC Nevada, Inc., a Nevada corporation ("OMC Nevada") and Recreational Boat Group Limited Partnership, a Delaware limited partnership ("Recreational Boat Group L.P."), and certain of their subsidiaries (collectively, the "Loan Parties") have filed petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). Bank of America, N.A., a national banking association and successor in interest to Bank of America, N.A., formerly NationsBank, N.A., successor in interest to NationsBank of Texas, N.A., in its capacity as agent for the prepetition senior lenders ("BOA"), and certain of the senior lenders hereby agree to extend to the Loan Parties, as debtors and debtors-in-possession, on or before December 31, 2000, a senior secured superpriority debtor-in-possession credit facility in the amount specified below (the "DIP Loans"), subject to the terms and conditions of this term sheet ("Term Sheet"). Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in that certain Amended and Restated Loan and Security Agreement by and among the Borrowers party thereto, OMC Boat Group, BOA as Agent (the "Prepetition Agent") for the lenders specified therein (the "Prepetition Lenders") and the Prepetition Lenders, dated as of January 6, 1998, (as from time to time amended, modified or waived (the "Prepetition Credit Agreement"). The Prepetition Credit Agreement, together with all instruments and documents executed in connection therewith, shall be referred to collectively as the "Prepetition Credit Documents."

### Terms and Conditions for Priming Credit Loan[1]

| | |
|---|---|
| Borrowers: | OMC, OMC Aluminum, OMC Fishing, OMC Latin America, OMC Boat Group, OMC Transportation, OMCEMA, OMC Nevada, and Recreational Boat Group, L.P., as Debtors-In-Possession in cases (the "Cases") pending under Chapter 11 of the Bankruptcy Code (each in such capacity, a "Borrower" or |

---

[1]    The terms and conditions for the extension of credit described herein are dependent upon, among other things, authorization and approval by the Bankruptcy Court. The terms and conditions with respect to such commitments are mutually dependent on each other and no lender shall be obligated to extend credit unless agreement with the Debtors and approval by the Bankruptcy Court is obtained with respect to such terms and conditions as a whole.

"Debtor" and collectively, the "Borrowers" or the "Debtors"). Each of the Borrowers shall be jointly and severally liable to repay any and all indebtedness incurred under the DIP Loan Agreement (as defined below).

Guarantors:    All subsidiaries of the Borrowers that are non-Debtors, provided that no foreign subsidiary of the Borrowers shall be required to execute a guaranty of the obligations of the Debtors hereunder to the extent that (i) such guaranty would result in adverse tax consequences for any Debtor, (ii) such guaranty would violate applicable local law, (iii) such foreign subsidiary or its directors or officers are advised by legal counsel that the provision of such guaranty could result in personal liability to the directors and officers of such subsidiary or (iv) the DIP Agent shall determine, in the exercise of its reasonable discretion, that the costs involved in procuring a guaranty from such foreign subsidiary exceed the incremental benefits afforded to the DIP Agent and the DIP Lenders through the procurement of such guaranty.

Agent:    BOA (the "DIP Agent").

Lenders:    The financial institutions listed under the column "DIP Lenders" on Schedule I attached hereto (collectively, the "DIP Lenders").

Commitments:    The DIP Loans shall consist of a credit facility (the "DIP Facility") with a maximum commitment of up to $19,500,000 (the "Total DIP Commitment"). The full Retention Program Amount (defined below) together with all Accrued Professional Fees (defined below) shall at all times be reserved against the Total DIP Commitment. The DIP Loans shall be funded by the DIP Lenders in accordance with their respective commitments as reflected in Schedule I attached hereto and pursuant to and solely in accordance with the Budget (as defined herein).

DIP Loans:    The DIP Loans shall be advanced weekly based upon, and solely in accordance with, the Budget (defined below).

Use of Proceeds:    The proceeds of the DIP Facility shall be used by the Debtors, in accordance with the terms of the postpetition financing agreement described herein (the "DIP Loan Agreement") (i) to fund expenses incident to the Debtors' efforts to preserve and sell assets in accordance with, but limited to, the weekly cumulative amounts set forth in the Budget (as defined below) for the then current week, and (ii) to pay all fees as provided under the DIP Loan Agreement (whether incurred before or after the date of the commencement of the Cases (the "Petition Date")).

| | |
|---|---|
| Employee Retention Program: | The costs and expenses associated with the Borrowers' employee retention bonus program approved by the Bankruptcy Court, not to exceed $2.5 million in aggregate ("Retention Program Amount") shall, notwithstanding the occurrence of a Default or an Event of Default (and to the extent that such sums have not already been borrowed), be made available to the Debtors upon their request for the sole purpose of funding such Retention Program Amounts. |
| Budget: | Not later than the third business day of each week (and not later than the Closing Date with respect to the Budget to be delivered with respect to the week in which the Closing Date occurs) the Borrower shall provide to the DIP Agent, each DIP Lender and the Official Committee of Unsecured Creditors (the "Committee") (i) a copy of a budget (such budget, with modifications approved from time to time by the Required DIP Lenders (defined below), the "Budget"), in form and substance satisfactory to the DIP Agent and the Required DIP Lenders, reflecting on a line-item basis anticipated weekly cash receipts and expenditures for the succeeding six months, (ii) a copy of a variance report (the "Variance Report") reflecting on a line-item basis the actual cash receipts and disbursements for the preceding week and the percentage variance of such actual results from those reflected in the Budget for the preceding week, and a written explanation of such variance, and (iii) a statement that discloses the cumulative professional fees and expenses that have been accrued, but not paid, since the inception of the cases in accordance with the Budget (such cumulative sum, the "Accrued Professional Fees"). |
| Term: | All DIP Loans shall be repaid in full and the Total DIP Commitment shall terminate at the earliest to occur of (i) May 31, 2001 (the "Maturity Date"), (ii) the Termination Date (as defined below), (iii) the effective date of a plan of reorganization, and (iv) when the Total DIP Commitment has been reduced to zero. |
| Interest Rates and Payment Dates: | The non-default rate of interest with respect to each DIP Loan shall be the Base Rate plus 3.75% (the "Non-Default Rate").

The default rate of interest with respect to each DIP Loan after the occurrence of an Event of Default shall be the Non-Default Rate plus 2%.

Interest on the DIP Loan shall be payable in cash, monthly in arrears. Interest on the Prepetition Revolving Credit Loans shall accrue at the Base Rate plus 3.75% and shall be payable from the proceeds of Prepetition Collateral as provided below. The Prepetition Lenders' entitlement to postpetition interest (but not the |

3

rate at which such interest accrues) will remain subject to determination under Section 506(b) of the Bankruptcy Code.

Closing Fee:  A $1,000,000 closing fee (the "Closing Fee"), fully earned as of the Closing Date, shall be paid on the Closing Date to the DIP Agent for the ratable benefit of the DIP Lenders.

Commitment Fee:  0.375% per annum of the unutilized Total DIP Commitment, payable monthly in arrears, to the DIP Agent for the account of the DIP Lenders.

Nature of Fees:  Non-refundable under all circumstances.

Collateral and Priority:  All obligations of the Debtors to the DIP Lenders and the DIP Agent, including, without limitation, all principal and accrued interest, costs, fees and expenses (collectively, the "DIP Obligations") shall be:

(a) Secured (subject to the Carve-Out (defined below)), pursuant to section 364(c)(2), of the Bankruptcy Code by a first priority, fully perfected security interest, in all of the existing and after acquired real and personal, tangible and intangible, assets of the Borrowers not subject to a perfected, non-avoidable lien or other encumbrance as of the Petition Date, including, without limitation, all cash, cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable and specifically including the stock of each Debtor's subsidiaries, but limited to 65% of the stock in any foreign subsidiaries of the Debtors), equipment, fixtures, real property interests, franchise rights, patents, tradenames, copyrights, intellectual property, general intangibles, investment property and all substitutions, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds, but excluding avoidance actions under the Bankruptcy Code (collectively, the "Postpetition DIP Collateral");

(b) Secured, pursuant to section 364(d)(1), by a fully perfected security interest senior in priority to all liens of the Prepetition Lenders existing as of the Petition Date in all Collateral existing as of the Petition Date (the "Prepetition DIP Senior Collateral");

(c) Secured, pursuant to section 364(c)(3), by a fully perfected security interest in all property other than the Collateral (the "Prepetition DIP Junior Collateral") that is subject to valid and

4

non-avoidable liens as of the Petition Date which security
interest shall be junior in priority to such valid and non-
avoidable liens (the Postpetition DIP Collateral, Prepetition
Senior DIP Collateral and the Prepetition DIP Junior Collateral
shall be referred to collectively as the "DIP Collateral");

(d) Accorded administrative priority status under section
364(c)(1) of the Bankruptcy Code, having a superpriority over
any and all administrative expenses of the kind specified in
sections 503(b) or 507(b) of the Bankruptcy Code
("Superpriority Claims"), subject only to the Carve-Out;
provided, however, that as it pertains to proceeds of avoidance
actions, the priority accorded to the DIP Lenders (and to the
Prepetition Lenders pursuant to the Adequate Protection
provision below) shall be equivalent in priority to a claim
allowed under section 503(b)(1)(A) of the Bankruptcy Code,
or such higher priority as may be awarded to any other entity
in respect of such proceeds.

(e) Joint and several among the Borrowers; and

(f) Guaranteed by all non-Debtor subsidiaries of the Borrowers,
subject to the "Guarantors" provisions above.

All DIP Collateral shall be free and clear of other liens, claims and
encumbrances, except for (1) those liens granted in favor of the
Prepetition Agent and the Prepetition Lenders pursuant to the
Prepetition Credit Agreement, and (2) the Permitted Liens.

The foregoing liens on the Postpetition DIP Collateral and the
administrative priority claim shall be subject to a carve-out (the
"Carve-Out") for (i) following termination of the Total DIP
Commitment as provided for herein as the result of a Default or an
Event of Default (as each such term will be defined in the DIP
Credit Agreement), the payment of allowed professional fees and
disbursements incurred by the professionals retained, pursuant to
Bankruptcy Code §§ 327 or 1103(a), by the Debtors and the
Committee in an aggregate amount not to exceed $750,000 (plus
Accrued Professional Fees incurred prior to such termination to the
extent such fees are subsequently allowed) and (ii) quarterly fees
required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees
payable to the Clerk of the Bankruptcy Court; provided, however,
neither the Carve-Out nor the Budget shall include professional
fees and disbursements incurred in connection with asserting any
claims or causes of action against either the Prepetition Lenders,
the Prepetition Agent, the DIP Lenders or the DIP Agent and/or
challenging or raising any defense to the obligations under the

5

Prepetition Credit Agreement or the DIP Loans or any lien of the Prepetition Agent, the Prepetition Lenders, the DIP Agent or the DIP Lenders. As long as no Default or Event of Default shall have occurred and be continuing, the Debtors shall be permitted to pay Budgeted compensation and reimbursement of expenses, allowed and payable under Bankruptcy Code §§ 330 and 331, as the same may be payable, and the amount so paid shall not reduce the Carve-Out.

Distribution Priorities:   If any Debtor receives cash proceeds from the sale or other disposition of Postpetition DIP Collateral, such proceeds shall be paid to the DIP Agent, when and as received, and shall be applied against the DIP Loans (or released to the Debtors, as the case may be) as follows: first to the payment of all fees and expenses owing to the DIP Agent, second to the payment of accrued interest and fees owing in respect of the DIP Loan, third, released to the Debtors to fund expenses in accordance with the Budget provided that the undrawn portion of the Total DIP Commitment shall be permanently reduced, dollar for dollar, to the extent that such proceeds are released to the Debtors, fourth, after the undrawn portion of the Total DIP Commitment has been eliminated, to the payment of principal and all other amounts owing in respect to the DIP Loan until the DIP Loan has been paid in full and all DIP Commitments have been terminated, and fifth to the payment of any unpaid Adequate Protection Obligations (defined below) until all Adequate Protection Obligations have been paid in full.

If any Debtor receives cash proceeds from the sale or other disposition of Prepetition Senior DIP Collateral (or any net proceeds from the Prepetition Junior DIP Collateral remaining after the senior liens on such collateral are satisfied), such proceeds shall be paid to the DIP Agent, when and as received, and shall be applied against the Prepetition Revolving Credit Loans and the DIP Loan as follows: first to the payment of all fees and expenses owing to the Prepetition Agent in respect of the Prepetition Revolving Credit Loans, second to the Prepetition Agent in respect of the Prepetition Revolving Credit Loans and fees up to an amount equal to all interest accrued in respect of Tranche A Revolving Credit Loans (or to be deposited into a reserve for payment of interest accruing in respect of Tranche A Revolving Credit Loans); third, to the Prepetition Agent in respect of the Prepetition Revolving Credit Loans up to an amount equal to all principal owing in respect of Tranche A Revolving Credit Loans, including all reimbursement obligations in respect of undrawn Letter of Credit Obligations, to be applied by the Prepetition Agent

in a manner consistent with the Prepetition Credit Documents; _fourth_ to the payment of accrued interest and fees owing in respect of the DIP Loan, _fifth_, released to the Debtors to fund expenses in accordance with the Budget provided that the undrawn portion of Total DIP Commitment shall be permanently reduced, dollar for dollar, to the extent that such proceeds are released to the Debtors, _sixth_, after the undrawn portion of the Total DIP Commitment has been eliminated, to the payment of principal and all other amounts owing in respect of the DIP Loan until the DIP Loan has been paid in full and all DIP Commitments have been terminated, _seventh_, to the Prepetition Agent in respect of the Prepetition Revolving Credit Loans to be applied in a manner consistent with the Prepetition Credit Documents.

If and to the extent the DIP Collateral proves to be insufficient to satisfy in full the DIP Loans, the holders of the Revolving Credit Loans shall be obligated to return to the DIP Lenders each such holder's pro rata share of proceeds or payments received by such holders from and after the Petition Date until such time as the DIP Loans have been paid in full.

| | |
|---|---|
| Closing Date: | The date upon which all conditions precedent to the making of the initial extension of credit are satisfied (the "Closing Date"). |
| Fees and Expenses: | The Borrowers shall pay all reasonable costs and expenses of the DIP Agent and DIP Lenders (including fees and expenses of the DIP Agent's legal and financial advisors) relating to the negotiation, documentation and administration of the DIP Loan Agreement and the enforcement of the DIP Agent's and the DIP Lenders' rights under and in respect of the DIP Loan Agreement. The Committee will be afforded an opportunity to review, subject to appropriate redactions for privileged materials, charges of the DIP Lenders' professionals that are reimbursed by the Debtors. |
| Conditions to Each Extension of Credit: | The DIP Loan Agreement shall contain conditions precedent to each extension of credit after the date hereof required by the DIP Agent, including, without limitation: |

(a) The Borrowers shall have executed the DIP Loan Agreement and all other documentation with respect thereto, satisfactory in all respects to the DIP Agent and the DIP Lenders, on the earlier of (i) January 26, 2001, or (ii) such other date which the DIP Agent shall agree to in writing.

(b) No Default or Event of Default shall exist.

7

(c) All representations and warranties shall be true and correct in all material respects as of the date of each extension of credit.

(d) An order of the Bankruptcy Court granting final approval of the DIP Loan Agreement (the "Final Order") shall have been entered in form and substance satisfactory to the DIP Agent and the DIP Lenders, and shall be in full force and effect and shall not have been stayed, reversed, vacated or otherwise modified.

(e) The Debtors are continuing to employ their reasonable best efforts to prosecute the Disposition Plan (as defined in the Interim Order).

(f) Payment of all fees, costs, expenses and other amounts then due and payable to the DIP Agent, including, without limitation, internal fees, costs and expenses.

(g) On or before January 31, 2001, the Debtors shall have directed State Street Bank & Trust, in its capacity as depository agent pursuant to that certain Depository Agreement dated as of May 27, 1998 to remit to the Agent on a provisional basis and subject to Bankruptcy Code § 506(b) the $5.3 million on deposit in accounts FD4426 and FD4427 at State Street Bank & Trust to be applied for the ratable benefit of the Prepetition Lenders.

| | |
|---|---|
| Representations and Warranties: | Those representations and warranties as are customary or appropriate in the context of the proposed DIP Loan Agreement and acceptable to the DIP Agent and the DIP Lenders. |
| Admissions and Acknowledgments: | In addition to, and without limiting the foregoing, each of the Borrowers shall expressly represent, warrant and acknowledge in the DIP Loan Agreement each of the following, subject to the rights of the Committee: |

(a) That each of the prepetition agreements executed and delivered by such Borrower in connection with the Prepetition Credit Agreement, including but not limited to each of the Prepetition Credit Documents to which such Borrower is a party, is valid and enforceable by the Prepetition Agent and the Prepetition Lenders against such Borrower;

(b) That such Borrower shall not dispute the validity or enforceability of any of the Prepetition Credit Documents or

8

any of its obligations thereunder, or the validity, priority, enforceability, scope or extent of any charge, lien, security interest or any other encumbrance of the Prepetition Agent and the Prepetition Lenders in, on or against any of the Collateral in the Cases or in any other judicial, administrative or other proceeding;

(c) That such Borrower shall not challenge or dispute the validity of any of the obligations under the Prepetition Credit Agreement, and that, as of the Petition Date, the Borrowers were liable to the Prepetition Agent and the Prepetition Lenders in the aggregate principal amount of approximately $125,000,000, inclusive of Letter of Credit Obligations, plus approximately $570,000 in accrued and unpaid interest thereon, plus fees, costs and expenses incurred in connection with the obligations under the Prepetition Credit Agreement as provided in the Prepetition Credit Documents;

(d) That by reason of the Prepetition Credit Documents, the obligations under the Prepetition Credit Agreement are secured by first-priority, non-avoidable, perfected, valid and enforceable liens on and security interests in all of such Borrower's right, title and interest in and to the Collateral.

Affirmative Covenants:   The DIP Loan Agreement shall contain affirmative covenants required by the DIP Agent, including, without limitation: (i) delivery of statement of cash receipts and disbursements which statement shall include separate line items for collections on Collateral, including accounts receivable, and collections from the sale or disposition of Postpetition DIP Collateral, weekly Budgets and Variance Reports, officers certificates, monthly reporting packages and other information requested by the DIP Agent, (ii) delivery weekly of a report on collateral composition, including a breakdown of collateral between Postpetition DIP Collateral and Collateral, (iii) delivery weekly of a status report on sales of collateral, including a breakdown of collateral to be sold between Postpetition DIP Collateral and Collateral, (iv) payment of all postpetition taxes and other obligations, (v) notices of defaults, litigation and other material events, (vi) weekly accounts receivable aging report for the preceding week, (vii) collection of the following percentages (on a cumulative basis) of gross receivables of the Debtors existing as of the Petition Date (1) 2.5% by January 31, 2001, (2) 5% by February 28, 2001, (3) 10% by March 31, 2001, (4) 15% by April 30, 2001, and (5) 35% by May 31, 2001 (the "Receivables Covenant"), and (viii) by no later than February 9, 2001, the Debtors shall provide the DIP Lenders and the Prepetition Lenders with a plan with respect to disposition

9

of the Segregated Funds (defined below). In addition, the Debtors shall provide the Agent by not later than February 2, 2001 all information concerning the Debtors' historical warranty claim experience, as well as warranty insurance information, as the Agent may reasonably request.

Negative Covenants:                     The DIP Loan Agreement shall contain negative covenants required by the DIP Agent, including, without limitation, on: (i) liens, (ii) capital expenditures, (iii) payment of certain prepetition claims in accordance with the first day motions filed in the Cases, and (iv) the existence of any claims entitled to a superpriority under § 364(c)(1) of the Bankruptcy Code other than the Superpriority Claims of the DIP Lenders and the Prepetition Lenders. Additionally, OMC will not permit its wholly owned subsidiary, OMC Development Inc., to use, transfer or commingle the $14,064,544.19 plus interest accruing thereon (the "Segregated Funds") held by OMC Development, Inc. at Chase Manhattan Bank in the United States without advance written notice to the Agent and the Committee and, in the absence of the consent of both the Agent and the Committee to any such proposed action, an order from the Bankruptcy Court.

Allocation of Sale Proceeds:   Prior to filing a pleading in the Cases seeking to approve a proposed sale, the Debtors shall provide the DIP Agent and the DIP Lenders a good faith estimate of the allocation of the purchase price consideration among the assets being sold between Postpetition DIP Collateral and Collateral. Any disputes over such allocation shall be resolved by the Bankruptcy Court in the ordinary course of administration of the Cases.

Events of Default:                       The DIP Loan Agreement shall contain Events of Default required by the DIP Agent, including, without limitation: (i) the entry of an order dismissing any of the Cases or converting any of the Cases to a Chapter 7 case, (ii) the entry of an order appointing a Chapter 11 trustee in any of the Cases, (iii) the entry of an order granting any other claim superpriority status or a lien equal or superior to that granted to the DIP Agent and the DIP Lenders, (iv) the entry of an order staying, reversing, vacating or otherwise modifying the DIP Loan Agreement, the Interim Order or the Final Order without the prior written consent of the DIP Agent and the DIP Lenders, (v) the entry of an order in any of the Cases appointing an examiner having enlarged powers beyond those set forth under § 1106(a)(3) and (4) of the Bankruptcy Code, (vi) the failure of any of the Borrowers to pay (A) interest or fees when due and such default shall continue for two business days or (B) principal when due, (vii) the failure of any of the Borrowers to comply with any negative covenants, (viii) breach of the Receivables Covenant, (ix)

10

the failure of any of the Borrowers to perform or comply with any other term or covenant and such default shall continue unremedied for a period of 10 days, (x) any representation or warranty by any of the Borrowers shall be incorrect or misleading in any material respect when made; and (xi) an unfavorable variance in the Budget tested on (a) a weekly basis of 15% in total expenses; or (b) a cumulative basis of 10% in total expenses.

Remedies:

Upon the occurrence of an Event of Default other than an Event of Default set forth above in (ii) and (v), the Required DIP Lenders (as defined below) upon three business days written notice to the Debtors, the United States Trustee and the Committee appointed in the Cases may (a) terminate the Total DIP Commitments (the date of any such termination, the "Termination Date", and any notice to the Debtors declaring such a termination, a "Termination Notice"), (b) declare the obligations in respect of the DIP Loan Agreement to be immediately due and payable, (c) enjoin and prohibit each of the Debtors from using any cash collateral (other than to pay any DIP Obligations), (d) set off immediately any and all amounts in any cash collateral account and exercise all rights and remedies under the DIP Loan Agreement and the Interim Order or Final Order, as applicable.  With respect to an Event of Default set forth in (ii) and (v) above, the remedies shall be limited to those described in (a) and (c) in the immediately preceding sentence. The DIP Lenders shall have other customary remedies under the DIP Loan Agreement.

Financial and Other
Reporting Requirements:

Each of the Borrowers shall provide all information reasonably requested by the DIP Agent.

Required DIP Lenders:

"Required DIP Lenders" shall mean, as of any date of determination,  DIP Lenders who in the aggregate hold at least 61% of the Total DIP Commitment (which, if terminated, shall be deemed outstanding in the amounts outstanding immediately prior to such termination).

100% approval of the DIP Lenders shall be required to do the following:  (a) extend the Maturity Date, (b) change the interest rate, or (c) increase the Total DIP Commitment beyond $19,500,000.  All other actions relative to the DIP Loans may be accomplished with the consent of the Required DIP Lenders.

Adequate Protection:

To protect the Prepetition Lenders from any diminution in the value of Collateral available to satisfy the Prepetition Lenders' claims resulting from (i) the Debtors' use of such collateral, and (ii) the priming of the liens securing the obligations under the

11

Prepetition Credit Agreement by the liens granted to secure the DIP Loans, the Debtors shall (a) grant to the Prepetition Lenders replacement liens on all DIP Collateral which liens will be subordinate in priority only to (i) the liens granted to secure the DIP Loans and the Carve-Out (with respect to the Postpetition DIP Collateral only), and (ii) valid, non-avoidable liens existing on the Petition Date, (b) grant to the Prepetition Lenders Superpriority Claims subject only to the Carve-Out and the Superpriority Claim granted in favor of the DIP Loans, and (c) reimburse the Prepetition Agent, on a monthly basis, for professional fees and expenses incurred by the Prepetition Agent in connection with the Cases, which reimbursement shall be provisional in nature pending allowance under section 506(b) of the Code.   The foregoing replacement liens and Superpriority claim shall secure payment of the Obligations in an amount equal to the diminution in value of the Collateral available to the Prepetition Lenders from and after the Petition Date (such amount, the "Adequate Protection Obligations"), whether such diminution results from (i) the Debtors' use of such collateral, or (ii) the priming of the liens securing the Obligations under the Prepetition Credit Agreement by the liens granted to secure the DIP Loans

Release:

In consideration for the DIP Loans, each of the Borrowers on behalf of itself and each of its successors and assigns (collectively, the "Releasors"), but without prejudice to the rights of the Committee or other party-in-interest to assert claims on behalf of the Debtors' estates, shall forever release, discharge and acquit the DIP Agent, each of the DIP Lenders, the Prepetition Agent, and each of the Prepetition Lenders (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations (collectively, "Claims"), of every type, including, without limitation, any so-called "lender liability" claims or defenses, which occurred on or prior to the date hereof with respect to any of the Borrowers, the Obligations under the Prepetition Credit Agreement, the Prepetition Credit Documents, the DIP Loans or the DIP Loan Agreement.

Counterparts:

This Term Sheet may be executed in one or more counterparts, each of which shall be considered an original counterpart and shall become binding when the DIP Agent and each of the Debtors and DIP Lenders has executed one counterpart.  Each of the parties hereto agrees that a signature transmitted via facsimile transmission shall be effective to bind the party so transmitting its signature.

Intended Third Party

| | |
|---|---|
| Beneficiaries: | The parties hereto intend that the Prepetition Agent and the Prepetition Lenders be the beneficiaries of the following provisions of this Term Sheet without prejudice to their rights under the Prepetition Credit Agreement, the Consent Letter, the Final DIP Order, the Agree Final Order Granting Certain Adequate Protection Relief To the Prepetition Lenders or any other order entered in the Cases or any other agreement:  (i) subsection (g) of the section titled "Conditions to Each Extension of Credit", (ii) subsection (viii) of the section titled "Affirmative Covenants", (iii) the last sentence of the section titled "Affirmative Covenants", (iv) the last sentence of the section titled "Negative Covenants", (v) the section titled "Distribution Priorities", (vi) the section titled "Adequate Protection", and (vii) the section titled "Release". Furthermore, the provisions identified in (i) through (iv) above cannot be discharged by agreement of the parties hereto or modified in any material manner without the written consent of the Prepetition Agent and the Prepetition Lenders. |
| Governing Law: | Texas, except as governed by the Bankruptcy Code. |

The preceding summary of proposed terms and conditions is not intended to be all-inclusive. Any terms and conditions that are not specifically addressed above would be subject to future negotiations with the Debtors, and comprehensive documentation of the transaction that is acceptable to each DIP Lender will have to be prepared.

IN WITNESS WHEREOF, the DIP Agent, the DIP Lenders and the Borrowers each has caused this Term Sheet to be executed and delivered by their duly authorized officers as of this 25th day of January, 2001.

BORROWERS

OUTBOARD MARINE CORPORATION

By:_____
Name:_____
Title:_____

OMC ALUMINUM BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

OMC FISHING BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

OMC LATIN AMERICA/CARIBBEAN, INC.

By:_____
Name:_____
Title:_____

OMC RECREATIONAL BOAT GROUP, INC.

By:_____
Name:_____
Title:_____

RECREATIONAL BOAT GROUP LIMITED PARTNERSHIP

By:_____
Name:_____
Title:_____

DIP AGENT

BANK OF AMERICA, N.A
in its capacity as DIP Agent

By:_____
Name:_____
Title:_____

DIP LENDERS

BANK OF AMERICA, N.A.
in its capacity as a DIP Lender

By:_____
Name:_____
Title:_____

FLEET CAPITAL CORPORATION

By:_____
Name:_____
Title:_____

THE CIT GROUP/BUSINESS CREDIT, INC.

By:_____
Name:_____
Title:_____

TRANSAMERICA BUSINESS CREDIT CORPORATION

By:_____
Name:_____
Title:_____

OUTBOARD MARINE TRANSPORTATION
CORPORATION

By:_____

Name:_____

Title:_____

OMCEMA, INC.

By:_____

Name:_____

Title:_____

OMC NEVADA, INC.

By:_____

Name:_____

Title:_____

## SCHEDULE I

| **DIP LENDER** | **COMMITMENT** |
| --- | --- |
| BANK OF AMERICA, N.A. | 37.07% |
| FLEET CAPITAL CORPORATION | 23.33% |
| THE CIT GROUP/BUSINESS CREDIT, INC. | 19.8% |
| TRANSAMERICA BUSINESS CREDIT CORPORATION | 19.8% |

January 25, 2001 (10:33AM)

## ANNEX II

Agreed Adequate Protection Order

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 00-37405 |
| | ) | |
| OUTBOARD MARINE CORPORATION, et al., | ) ) | (Jointly Administered) Chapter 11 |
| | ) | |
| Debtors. | ) | Hon. Erwin I. Katz |

## ORDER AUTHORIZING RETENTION AND PAYMENT OF PROFESSIONALS UTILIZED BY DEBTORS IN THE ORDINARY COURSE OF BUSINESS

Upon the motion (the "Motion")[1] of Outboard Marine Corporation and certain of its domestic subsidiaries, debtors and debtors and debtors-in-possession in the above captioned cases (collectively, the "Debtors"), for entry of an order authorizing the retention of professionals utilized by the Debtors in the ordinary course of business (collectively, the "Ordinary Course Professionals"); and it appearing that the employment of the Ordinary Course Professionals is in the best interests of the Debtors' respective estates, creditors, and other parties-in-interest; and it further appearing that proper and adequate notice having been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion related hereto.

ORDERED, ADJUDGED AND DECREED THAT:

1.     The Motion is granted.

2.     The Debtors be, and each of them hereby is, authorized and empow-
ered to employ and retain, pursuant to 11 U.S.C. §§ 105(a) and 327, all Ordinary
Course Professionals listed on Exhibit A attached hereto.

3.     The Debtors are authorized and empowered to make monthly pay-
ments up to $15,000, and up to $50,000 during the entire case, for compensation and
reimbursement of expenses to each of the Ordinary Course Professionals in the
manner outlined in paragraph 4 below, provided, however, that compensation paid to
an Ordinary Course Professional shall not be final until the retention of such Profes-
sional is authorized as a final matter pursuant to the provisions below.  Payments to
any one Ordinary Course Professional shall be subject to the approval of the Court in
accordance with 11 U.S.C. §§ 330 and 331 if invoices of such Ordinary Course
Professional exceed $15,000 in any one month or $50,000 during the entire case.

4.     All Ordinary Course Professionals in these cases may seek interim
compensation in accordance with the following procedure:

a.     On or before the 30th day of each month following the month
for which compensation is sought (the "Monthly Statement Date"), each Ordinary
Course Professional will submit a monthly statement to: (i) the Debtors at Outboard
Marine Corporation, 100 Sea Horse Drive, Waukegan, Illinois  60085 (Attn: Robert

2

S. Romano); (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom

(Illinois), 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Attn: David

S. Kurtz); (iii) counsel to the Debtor's Post-Petition Lenders, Sidley & Austin, One

First National Plaza, Chicago, IL 60603 (Attn: Lawrence J. Nyhan); (iv) counsel to

the Committee, D'Ancona & Pflaum, 111 E. Wacker Drive, Suite 2800, Chicago,

Illinois 60601 (Attn: Steven B. Towbin); and (v) the United States Trustee, 227 West

Monroe Street, Suite 3350, Chicago, IL 60606 (Attn: Kathryn Marie Gleason).  Each

such person receiving such a statement will have fifteen (15) days after the Monthly

Statement Date to review the statement.

        b.      At the expiration of the fifteen (15) day period, the Debtors

shall promptly pay one hundred percent (100%) of the fees and disbursements

identified in each monthly statement, except such fees or disbursements as to which

an objection has been served as provided in paragraph (c) below.  Any Ordinary

Course Professional who fails to submit a monthly statement shall be ineligible to

receive further payment of fees and expenses as provided herein until such time as

the monthly statement is submitted.  The first statements shall be submitted and

served by each of the professionals by February 28, 2001 and shall cover the period

from the commencement of this case through January 31, 2001;

        c.      In the event that the Debtors, the United States Trustee, the

Lenders, or the Committee has an objection to the compensation or reimbursement

3

sought in a particular statement, they shall, within fifteen (15) days of the Monthly

Statement Date, serve upon (i) the Ordinary Course Professional whose statement is

objected to, and (ii) except to the extent duplicative of the foregoing clause (i), the

other persons designated to receive statements in paragraph (a) above, a written

"Notice Of Objection To Fee Statement" setting forth the precise nature of the

objection and the amount at issue.  Thereafter, the objecting party and the Ordinary

Course Professional whose statement is objected to shall attempt to reach an agree-

ment regarding the correct payment to be made.  If the parties are unable to reach an

agreement on the objection within fifteen (15) days after receipt of such objection,

the objecting party may file its objection with the Court and serve such objection on

the parties listed in clauses (i) and (ii) above and the Court shall consider and dispose

of the objection at the next interim hearing scheduled in these cases.

      d.     The pendency of an application or a court order for payment of

compensation or reimbursement of expenses, and the pendency of any Notice of

Objection to Fee Statement or other objection, shall not disqualify an Ordinary

Course Professional from the future payment or compensation or reimbursement of

expenses as set forth above.

     5.     Within 5 business days hereof, the Debtors shall serve this Order upon

each Ordinary Course Professional.  Thereafter, no later than 30 days after the entry

of this Order, each Ordinary Course Professional shall file with the Court, and serve

4

on the United States Trustee, an Affidavit of Proposed Professional and Disclosure

Statement, a form of which is attached on Exhibit B, including an explanation of

prepetition services rendered, and postpetition services to be provided, to the

Debtors.

      6.     The Debtors are authorized, without need for further hearing or Order

from the Court, to employ and retain Ordinary Course Professionals not presently

listed in Exhibit A ("Additional Ordinary Course Professionals") by filing with the

Court and serving on the United States Trustee, counsel for the Committee appointed

in this case, and counsel for the Debtors' post-petition lenders a supplement to

Exhibit A (the "Supplement"), listing the name and estimated monthly fee of the

Additional Ordinary Course Professional, along with a brief description of the

services to be rendered and by otherwise complying with the terms of this Order.

The Trustee, counsel for the Debtors' post-petition lenders, and counsel for the

Committee shall have fifteen (15) days from receipt of the Supplement to object to

the retention of such Ordinary Course Professional. If any such objection cannot be

resolved within fifteen (15) days, the matter shall be scheduled for hearing before the

Court at the next scheduled hearing in these cases. If no objection is received, the

Debtors shall be authorized to retain such Ordinary Course Professional as a final

matter.

Dated: Chicago, Illinois
January __, 2001

**E N T E R E D**

JAN 2 5 2001

ERWIN I. KATZ
BANKRUPTCY JUDGE

_____
UNITED STATES BANKRUPTCY JUDGE

# Exhibit A
## Ordinary Course Professionals

*inputted manually*

| Name/Address | Description of Services | Estimated Average Monthly Payment |
|---|---|---|
| Holland & Knight LLP<br>~~P.O. Box 32092~~ 92 lake Wire Drive<br>Lakeland, FL 33802 15 | Intellectual Property | $18,000 |
| Jones, Day, Reavis & Pogue<br>77 W. Wacker Drive<br>Chicago, IL 60601-1692 | General Corporate / Litigation / Employee Benefits | $15,000 |
| Piper Marbury Rudnick & Wolfe<br>203 N. LaSalle Street<br>Chicago, IL 60601 | Environmental | $20,000 |

242392-Chicago S2A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 00-37405 |
| | ) | |
| OUTBOARD MARINE CORPORATION, | ) | (Jointly Administered) |
| et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Hon. Erwin I. Katz |

## AFFIDAVIT OF ORDINARY COURSE PROFESSIONAL

| | | |
|---|---|---|
| STATE OF _____ | ) | |
| | ) ss: | |
| COUNTY OF _____ | ) | |

_____, being duly sworn, deposes and says:

1.    I am a principal of _____ ("\_\_\_\_"), which firm maintains offices at \_

_____.

2.    Neither I, "\_\_\_", nor any partner, auditor or other member thereof,

insofar as I have been able to ascertain, has any connection with the above-captioned

debtors and debtors-in-possession (the "Debtors"), their creditors, or any other party

in interest, or their attorneys, except as set forth in this affidavit.

3.    "\_\_\_", has represented and advised the Debtors in _____

.

4.     The Debtors have requested, and "____" has agreed, to continue to

represent and advise the Debtors pursuant to section 327(e) of title 11 of the United

States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") with respect to such

matters.  Additionally, the Debtors have requested, and "    " proposes, to render the

following services to the Debtors:       [INSERT SERVICES]

5.     "____"'s current fees arrangement is _____.

6.     Except as set forth herein, no promises have been received by "___"

or any partner, auditor or other member thereof as to compensation in connection

with these chapter 11 cases other than in accordance with the provisions of the

Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules,

orders of this Court, and the Fee Guidelines promulgated by the Executive Office of

the United States Trustee.

7.     "__" has no agreement with any entity to share with such entity any

compensation received by "___".

8.     "____" and its partners, auditors and other members may have in the

past represented, currently represent, and may in the future represent entities that are

claimants of the Debtors in matters totally unrelated to these pending chapter 11

cases. "____" does not and will not represent any such entity in connection with these

pending chapter 11 cases and does not have any relationship with any such entity,

attorneys, or accountants that would be adverse to the Debtors or their estates.

9.     Neither I, "___", nor any partner, auditor or other member thereof,

insofar as I have been able to ascertain, holds or represents any interest adverse to the

Debtors, or their estates in the matters upon which "_____" is to be engaged.

10.     The foregoing constitutes the statement of "_____" pursuant to

sections 329 and 504 of the Bankruptcy Code and Bankruptcy Rules 2014 and

2016(b).

FURTHER AFFIANT SAYETH NOT

_____

Sworn to before me this
____ day of ____, 2001.