**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 00-37405 |
| | ) | (Jointly Administered) |
| OUTBOARD MARINE CORPORATION, | ) | Chapter 11 |
| et al., | ) | Hon. Ronald Barliant |
| | ) | Hearing Date:   TBD |
| Debtors. | ) | Hearing Time:   TBD |

**FIRST AND FINAL APPLICATION OF HOULIHAN,
LOKEY, HOWARD & ZUKIN CAPITAL FOR ALLOWANCE AND
REIMBURSEMENT OF EXPENSES UNDER 11 U.S.C. § 330**

Name of Applicant:   Houlihan, Lokey, Howard & Zukin Capital

Authorized to Provide
Professional Services to:  Outboard Marine Corporation, Inc.

Date of Retention Order: 01/26/01

Period for which compensation and
reimbursement are sought: 12/23/00 through 03/09/01

Amount of Compensation sought
as actual, reasonable, and necessary: $0.00

Amount of Expense Reimbursement sought
as actual, reasonable, and necessary: $60,805.82

This is an/(a):  _interim   X final application.

Aggregate amounts paid to date: $2,250,000 in fees

1209

F I L E D
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
NOV 15 2001
KENNETH S. GARDNER, CLERK

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 00-37405 |
| | ) | (Jointly Administered) |
| OUTBOARD MARINE CORPORATION, | ) | Chapter 11 |
| et al., | ) | Hon. Ronald Barliant |
| | ) | Hearing Date:   TBD |
| Debtors. | ) | Hearing Time:   TBD |

### FIRST AND FINAL APPLICATION OF HOULIHAN,
### LOKEY, HOWARD & ZUKIN CAPITAL SEEKING ALLOWANCE AND
### REIMBURSEMENT OF EXPENSES UNDER 11 U.S.C. § 330

Houlihan, Lokey, Howard & Zukin Capital ("Houlihan"), financial advisor and investment banker to Outboard Marine Corporation ("OMC") and certain of its domestic subsidiaries, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), submits this first and final application (the "Application") seeking allowance and reimbursement of expenses under 11 U.S.C. § 330 for the period from December 23, 2000 through March 9, 2001 (the "Case Period"). This Application is supported by the Certification of John A. McKenna, which is attached hereto as Exhibit A. In support of this Application, Houlihan represents as follows:

### BACKGROUND

1.     On December 22, 2000 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended (the "Bankruptcy Code").

1

1209

2.    On January 2, 2001, the United States Trustee appointed the Official Committee of Unsecured Creditors pursuant to Section 1102 of the Bankruptcy Code (the "Committee").

3.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.    The statutory predicates for the relief requested herein are Section 330 of the Bankruptcy Code and Rule 2016 of the Federal Rules of Bankruptcy Procedure.

## RELIEF REQUESTED

5.    In this Application, Houlihan seeks entry of an order allowing and authorizing payment of final expenses in the amount of $60,805.82 as financial advisor and investment bankers for the Debtors.

## BASIS FOR RELIEF

6.    On January 26, 2001, this Court entered that certain Order Authorizing Employment and Retention of Houlihan, Lokey, Howard & Zukin Capital as Financial Advisor and Investment Banker (the "Retention Order") (annexed hereto as Exhibit B).  The Retention Order authorized the Debtors' retention of Houlihan pursuant to the terms of that certain engagement letter between the Debtors and Houlihan dated January 23, 2001 (the "Engagement Letter") and that certain side letter dated January 24, 2001 (the "Side Letter") among Houlihan, the

2

Committee, and the agent for the Debtors' prepetition and postpetition lenders (collectively annexed hereto as Exhibit C).

7.    Under the terms of the Retention Order, the Engagement Letter, and the Side Letter, Houlihan was entitled to payment of a $2.25 million transaction fee (the "Transaction Fee") upon closing of certain sales of the Debtors' assets. After the Debtors' closed on sales of substantially all of their assets on March 9, 2001, this Court entered that certain Order Authorizing Payment of Transaction Fee to Houlihan, Lokey, Howard & Zukin Capital. The Debtors paid the Transaction Fee to Houlihan shortly thereafter.

8.    Pursuant to the terms of the Engagement Letter and the Side Letter, Houlihan must separately apply for reimbursement of expenses incurred as financial advisor and investment banker to the Debtors. In accordance with such requirement and the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Rules and Orders of the Court, Houlihan submits this Application for reimbursement of expenses incurred on behalf of the Debtors in the total amount of $60,805.82. Such expenses are itemized in Exhibit D attached hereto.

**SERVICES RENDERED IN SUPPORT
OF REIMBURSEMENT OF EXPENSES**

9.    Houlihan was selected by the Debtors because of its extensive knowledge and reputation in the restructuring field, because of its familiarity with the issues involved in the case, and because the Debtors believe that Houlihan

3

possesses the requisite resources and is well qualified to represent the Debtors in the case. The services that Houlihan has been required to perform and has performed have been substantial and necessary in the case. Houlihan has performed such services with the minimum amount of duplication with the Debtors and Debtors' other advisors.

10.    Throughout the duration of Houlihan's retention by the Debtors, Houlihan has staffed the engagement consistent with the Debtors' objectives and in a manner that provided for thorough and efficient representation of the interests of the Debtors. Houlihan's activities in this case have been supervised on a day-to-day basis by John A. McKenna, Jr. Throughout the engagement, the following professionals have provided services: Michael A. Kramer, former Managing Director; John A. McKenna, Jr., Director; Andrew J. Torgove, Senior Vice-President; David M. Skatoff, former Senior Associate; Wayne A. Gore, former Senior Associate; Kimberly E. Lowney, Associate; David E. Burns, Associate; Joseph W. Cleverdon, Financial Analyst; Michael J. Huddleston, Financial Analyst; and Aaron B. Witte, Financial Analyst.

11.    During the Case Period, Houlihan worked extensively with the Debtors, other professionals retained by the Debtors, and other parties in interest in the case. This work covered a broad variety of financial and operational issues and other matters relevant to the case, and included the following categories of work:

4

a.   **Coordinate Asset Sale Process**

Houlihan led the process of advising the Debtors on the sale of their assets pursuant to Section 363 of the Bankruptcy Code. Houlihan compiled a comprehensive list of over 150 potential buyers that showed an interest in purchasing the Debtors in the past or that Houlihan, in consultation with the Debtors, had reason to believe may have had an interest in acquiring the Debtors' assets. Concurrently, Houlihan prepared a confidential information package (the "Information Package") that contained results of operations, detailed asset listings, and other financial information.

b.   **Qualified Bidder Solicitation**

Houlihan led the process of coordinating due diligence with each potential bidder (each, a "Potential Bidder") and determining whether or not each Potential Bidder could be considered a "Qualified Bidder." In coordination with the Debtors, Houlihan contacted approximately 200 Potential Bidders in order to execute confidentiality agreements and to provide them with Information Packages. Houlihan sent out over 160 confidentiality agreements for signature, received approximately 100 counter-signed confidentiality agreements and sent out approximately 100 initial Information Packages. As soon as practicable after executing a confidentiality agreement with and providing an Information Package to a Potential Bidder, Houlihan requested that the Potential Bidder submit a non-binding expression of interest (each, an "EOI"). Upon receipt of an EOI from a Potential Bidder and satisfactory information showing that the Potential Bidder had the financial wherewithal to bid on the Debtors' assets, Houlihan then designated the Potential Bidder a Qualified Bidder. Then, in coordination with the Debtors and the Debtors' other advisors, Houlihan coordinated (i) facility visits by Qualified Bidders to the Debtors' facilities, (ii) management presentations by the Debtors' management to the Qualified Bidders, (iii) the

assembly and maintenance of a data room at the Chicago offices of Skadden, Arps, Slate, Meagher & Flom (Illinois) and at the Debtors' headquarters, and (iv) the dissemination of pertinent information in response to Qualified Bidders' requests.

c.   **Correspond and Meet with Qualified Bidders**

Houlihan actively corresponded with Qualified Bidders by distributing bankruptcy and financial information to potential bidders, acting as a conduit between Qualified Bidders and the Company, ensuring that Qualified Bidders understood the bankruptcy sale process, including but not limited to timing, deadlines for bids, data room access, etc., and answering questions about the Company and the Information Package. Furthermore, Houlihan attended a number of management presentations and facility tours hosted by Debtors' management for Potential Bidders. Houlihan professionals attended such visits at Company facilities in Waukegan, Illinois; Columbia, South Carolina; Cadillac, Michigan; Lebanon, Missouri; and Redmond, Oregon.   In addition, during the five business days immediately preceding the deadline for Qualified Bids (January 26, 2001), one Houlihan professional was present at the Chicago offices of Debtors' counsel, Skadden Arps Slate Meagher & Flom, facilitating negotiations and communications with Qualified Bidders, and one Houlihan professional was present at the Debtors' Waukegan, Illinois headquarters,   facilitating   negotiations   and communications with Qualified Bidders.

d.   **Qualified Bid Preparation and Review**

In coordination with the Debtors and the Debtors' other advisors, Houlihan consulted with each Qualified Bidder on the submission of a Qualified Bid by the bid deadline, January 26, 2001.   After the bid deadline, Houlihan conferred with the Debtors, the Debtors' other advisors, the Debtors' Pre-Petition Lenders and their advisors, the Debtors' DIP Lenders and their advisors, and the Official Committee and its advisors

6

to determine which Qualified Bids were highest and best, to determine whether to give Bid Protection and to prepare for the Auction.

e.    **Conduct of the Auction**

Between January 26, 2001 and February 2, 2001, Houlihan, in coordination with the Debtors and the Debtors' other advisors, conferred with selected Qualified Bidders regarding the terms of their Qualified Bids. On February 2, 2001, the Debtors announced the leading Qualified Bid for each group of the Debtors' Assets, the material terms of the leading Qualified Bids and the Bid Protection given. Then, on February 5, 2001, in coordination with the Debtors and the Debtors' other advisors, Houlihan conducted the Auction in accordance with the terms of the Bid Procedures. The Auction proceeded in the following sequence: (1) one round of bidding on the Debtors' engine business, intended to stabilize the bidding on the Debtors' boat business; (2) the announcement of the then highest and best offer for groups of the Debtors' boat divisions; (3) one round of individual Qualified Bidders bidding on the Debtors' boat business on an individual, company-by-company basis; (4) the announcement of the aggregate value of the highest and best offers by individual Qualified Bidders for individual boat divisions; (5) a round of bidding by Qualified Bidders on groups of the Debtors' boat companies; and (6) a round of bidding on the Debtors' combined engine and boat assets. The Auction lasted approximately 12 hours. The prevailing Qualified Bid at the end of the Auction was a joint bid made by Bombardier Motor Corporation of America and JTC Acquisition LLC for $95 million, including the assumption of certain liabilities.

## HOULIHAN'S FINAL APPLICATION

12.    The professional services rendered by Houlihan were substantial, necessary and beneficial to the Debtors and the Creditors in this case.

7

Houlihan believes that the fees that have previously been approved, and the expenses sought in connection with this Application, are reasonable and necessary to maximize the value of the Debtors' estates, and that such actions did in fact add significant value to the Debtors' estates, given the variety and complexity of the issues involved in this case and the need to act on an expedited basis.

13.    Based on the above, Houlihan respectfully requests reimbursement of expenses in the amount of $60,805.82 incurred in connection with providing such services during the Application Period. All requested expenses are in compliance with the Bankruptcy Rules. Houlihan has maintained detailed records of the actual and necessary expenses incurred during this case.

WHEREFORE Houlihan respectfully requests that this Court enter an Order in the form attached hereto as Exhibit E allowing Houlihan reimbursement for charges and disbursements incurred during the Case Period in the amount of $60,805.82.

Dated: Chicago, Illinois
_____, 2001

HOULIHAN, LOKEY, HOWARD,
& ZUKIN CAPITAL

_____

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of First And Final Application Of

Houlihan, Lokey, Howard & Zukin Capital For Allowance And Reimbursement Of

Expenses Under 11 U.S.C. § 330 was served upon the parties on the attached service list on

this _15th_ day of November, 2001.

Richard A. Chesley

## SERVICE LIST

Brian L. Shaw, Esq.
SHAW, GUSSIS, DOMANSKIS, FISHMAN &
GIANTZ
1144 West Fulton Street
Suite 200
Chicago, IL 60607

Forrest Larmmiman. Esq.
Timothy W. Brink, Esq.
LORD BISSELL & BROOK
115 South LaSalle Street
Chicago, IL 60603

Roger R. Cloutier, II, Esq.
Mary McConnell, Esq.
GENMAR HOLDINGS, INC.
100 South 5th Street, Suite 2400
Minneapolis, MN 55402

John Collen, Esq.
DUANE, MORRIS & HECKSCHER LLP
227 W. Monroe Street, Suite 3400
Chicago, IL 60606

Alex D, Moglia, Esq.
ALEX D, MOGLIA & ASSOCIATES, INC.
1325 Remington Road Suite H
Schaumburg, IL 60173

Christopher Grant, Esq.
Assistant Attorney General
Office of the Illinois Attorney General
188 West Randolph Street
Suite 2001

Larry Setchell, Esq.
HELSELL FETTERMAN LLP
100 Puget Sound Plaza
1325 Fourth Avenue
Seattle, WA 98101

Robert L. Green, Esq
Dan Sullivan, Esq.
HOWREY SIMON ARNOLD & WHITE
1299 Pennsylvania Ave

Washington, DC 20004

Howard L. Adelman, Esq.
Adelman, Gettleman, Esq.
MERENS, BERISH & CARTER, LTD.,
53 West Jackson Blvd., Suite 1050
Chicago, IL 60604

Russell C. Bergman, Esq.
LASALLE BANK, N.A.
135 South LaSalle Street, Suite 1960
Chicago, IL 60603

James L.Eggerman, Esq.
Michael Michael, Esq.
PENSION BENEFIT GUARANTY
CORPORATION
1200 K Street, N.W., Suite 340
Washington, DC 20005-4026

Stanley J. Parzen, Esq.
MAYER, BROWN & PLATT
190 South LaSalle Street
Chicago, IL 60603-3441
Catherine L. Steege
JENNER & BLOCK
One IBM Plaza
38th Floor
Chicago, IL 60611

Larry Nyhan, Esq.
Matthew A. Clemente, Esq.
SIDLEY & AUSTIN
10 S. Dearborn St., 48th Moor
Chicago, IL 60603

Mark Page, Esq.
BANK ONE, NA
Law Dept., Mail Code IL 1-0287
1 Bank One Plaza
Chicago, 1160670-0287

Harold Kaplan, Eq.
Jeffrey Schwartz, Esq.
GARDNER CARTON & DOUGLAS

321 N. Clark St- Suite 3400
Chicago, IL 60610

AlanKornberg, Esq.
PAUL, WEISS,RIFKIND, WHARTON &
GARRISON
1285 Avenue of the Americas
New York, NY 100 19-6064

Anthony J, Smits, Esq
BINGHAM DANA LLP
One State Street
Hartford, CT 06103

E. Decker Adams, Esq.
STATE STREET BANK & TRUST CO.
Two Avenue de Lafayette
Boston, MA 02111

Kathryn Gleason, Esq.
Office of the United States Trustee
Regional Office
227 West Monroe, Suite 3500
Chicago, IL 60606

Alan P. Solow, Esq.
GOLDBERG KOHN BELL BLACK
    ROSENBLOOM & MORTIZ
55 East Monroe Street, Suite 3700
Chicago, IL 60603

Richard Hiersteiner, Esq.
PALMER & DODGE LLP
One Beacon Street
Boston, MA 02108-3190

David A. Blackburn, Esq.
Chief Executive Officer
THOMAS G. FARIA CORPORATION
385 Norwich-New London Turnpike
Uncasville, CT 06382

Michael L. Gesas, Esq.
GESAS PILATI AND GCSAS, LTD.
53 W. Jackson Blvd., Suite 528
Chicago, IL 60604

Exhibit
A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 00-37405 |
|  | ) | (Jointly Administered) |
| OUTBOARD MARINE CORPORATION, | ) | Chapter 11 |
| et al., | ) | Hon. Ronald Barliant |
|  | ) | Hearing Date:  TBD |
| Debtors. | ) | Hearing Time:  TBD |

### AFFIDAVIT PURSUANT TO SECTION 504
### OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2016

JOHN A. MCKENNA, being duly sworn, deposes and says:

1. I am a Director of the firm of Houlihan Lokey Howard & Zukin Capital ("Houlihan Lokey"), which maintains offices at 685 Third Avenue, 15th Floor, New York, New York 10017.

2. This affidavit is submitted pursuant to Section 504 of the Bankruptcy Code and Bankruptcy Rule 2016 in connection with and in support of the foregoing application (the "Application") for allowance and reimbursement of expenses incurred for services rendered as financial advisor to the Debtors for the period from December 23, 2000 through March 9, 2000, inclusive (the "Case Period"). The facts contained in the foregoing Application are true and correct to the best of my knowledge, information and belief.

3. This Application requests this Court enter an Order awarding Houlihan reimbursement for charges and disbursements incurred during the Case Period in the amount of $60,805.82.

4. No agreement or understanding exists between Houlihan Lokey and any other persons or parties to share in any compensation received in connection with this case.

5. The disbursement requested in the Application are billed at rates in accordance with practices customarily employed by Houlihan Lokey and generally accepted by Houlihan Lokey's clients.

6. Houlihan Lokey has at all times, to the extent practicable, minimized disbursements incurred in connection with its representation of the Debtors. In providing a reimbursable service, Houlihan

Lokey does not make a profit on that service. In charging for a particular service, Houlihan Lokey does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay. In seeking reimbursement for any good or service that is justifiably purchased or contracted for from a third party, Houlihan Lokey requests reimbursement only for the amount billed to Houlihan Lokey by the third-party vendor and paid by Houlihan Lokey to such vendor.

John A McKenna
Director
Houlihan Lokey Howard & Zukin Capital

Sworn to before me this
_13_ Day of November, 2001

**ANITA C. MORELL**
Notary Public, State of New York
No. 01MO5023590
Qualified in Nassau County
Commission Expires _____

Exhibit
B

E'O D   JAN 2 6 2001

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 00-37405 |
| | ) | |
| OUTBOARD MARINE CORPORATION, | ) | (Jointly Administered) |
| et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Hon. Erwin I. Katz |

## ORDER AUTHORIZING EMPLOYMENT AND RETENTION
## OF HOULIHAN, LOKEY, HOWARD & ZUKIN CAPITAL
## AS FINANCIAL ADVISOR AND INVESTMENT BANKER

Upon the application (the "Application")[1] of Outboard Marine Corporation and certain of its subsidiaries, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an order pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) authorizing the employment and retention of Houlihan, Lokey, Howard & Zukin Capital ("Houlihan") as financial advisors and investment banker to the Debtors; and upon the Affidavit and Statement of Michael A. Kramer, former managing director of Houlihan; and the Official Committee of Unsecured Creditors (the "Committee") having filed an objection to the Application; and the Debtors, the Committee, the Debtors' pre-petition lenders and post-petition lenders having agreed upon the terms of Houlihan's retention as stated herein; and the Court having been satisfied that Houlihan repre-

---

[1]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application related hereto.

sents no interest adverse to the Debtors' estates with respect to the matters upon
which it is to be employed; and the employment and retention of Houlihan upon the
terms contained in the Houlihan agreement, a copy of which is attached hereto as
Exhibit 1 (the "Houlihan Engagement Letter") and that certain side letter between
Houlihan and Bank of America Business Credit, Inc., as agent, dated January 24,
2001, a copy of which is attached hereto as Exhibit 2, (the "Side Letter"), is neces-
sary and in the best interests of the Debtors' estates, their creditors, and other parties-
in-interest; and it appearing that proper and adequate notice having been given and
that no other or further notice is necessary; and upon the record herein; and after due
deliberation thereon; and good and sufficient cause appearing therefore,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Application is granted as stated herein.

2.      Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, each
of the Debtors is hereby authorized to employ and retain Houlihan under a general
retainer and pursuant to the terms of the Houlihan Engagement Letter and the Side
Letter nunc pro tunc to the Petition Date as its financial advisor and investment
banker to perform the services set forth in the Application.

3.      Houlihan shall be compensated in accordance with (i) the procedures
set forth in sections 330 and 331 of the Bankruptcy Code and such Bankruptcy Rules
as may then be applicable, (ii) such procedures as may be fixed by order of this
Court, and (iii) the terms of the Houlihan Engagement Letter and the Side Letter.

of the Bankruptcy Court), the Transaction Fee shall be allocated between the Prepetition Collateral and the Postpetition DIP Collateral on the same basis.

6.    Houlihan is authorized to apply the Retainer (as such term is defined in the Application) to pay any fees, charges and disbursements relating to services rendered to the Debtors prior to the Petition Date (as such term is defined in the Application) that remain unpaid as of such date and shall hold the remaining portion of the Retainer for application to fees, charges and disbursements relating to services rendered subsequent to the Petition Date as may be further ordered by the Court.

Dated: Chicago, Illinois
       January 24, 2001

_____
UNITED STATES BANKRUPTCY JUDGE

Exhibit
C

01/23/01  TUE 18:19 FAX 1212 661 6347        HLHZ-NY                                    ☑002



# HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL

### INVESTMENT BANKERS

January 23, 2001

### _CONFIDENTIAL_

Outboard Marine Corporation
100 Sea Horse Drive
Waukeagan, IL  60085

Attention:    Roger Fix

Dear Mr. Fix:

This letter confirms the terms under which Outboard Marine Corporation
(collectively, with its subsidiaries, the "Company") has engaged Houlihan Lokey Howard
& Zukin Capital ("Houlihan Lokey") as its financial advisor with respect to a possible
Transaction (as defined below) and with respect to such other matters as to which the
Company and Houlihan Lokey may agree in writing during the terms of this engagement.
For purposes hereof, the term "Company" shall include any entity formed by or at the
direction of, and which is a subsidiary of, the Company to consummate a Transaction.  If
appropriate in connection with performing its services for the Company hereunder,
Houlihan Lokey may utilize the services of one or more of its affiliates, including but not
limited to Houlihan Lokey Howard & Zukin Financial Advisors Inc., in which case the
references herein to Houlihan Lokey shall include such affiliates.

    1.    <u>Scope of Services</u>.  Houlihan Lokey will assist the Company as its
financial advisor and agent in connection with the formulation and implementation of
various options for restructuring, reorganization and other strategic alternatives for the
Company under a variety of mechanisms.  In connection with our role as your financial
advisor, we would expect to, as requested:

        (i)    advise the Company generally of available capital restructuring
and financing alternatives, including recommendations of specific
courses of action and assist the Company with the design of

New York
685 Third Avenue, 15th Floor
New York, New York 10017-4024
Tel 212.497.4100   Fax 212.661.3070
Broker/dealer services through
Houlihan Lokey Howard & Zukin Capital.

Los Angeles    Chicago    San Francisco    Minneapolis    Washington, D.C.    Dallas    Atlanta    Toronto    Seoul

*Mr. Roger Fix*
*Outboard Marine Corporation*                                    *Page - 2 -*
*January 23, 2001*

alternative Transaction structures and any debt and equity
securities to be issued in connection with a Transaction;

(ii)    assist the Company with the development, negotiation and
        implementation of a Transaction, including participation as a
        representative of the Company in negotiations with creditors and
        other parties involved in a Transaction;

(iii)   assist the Company in valuing the Company and/or, as appropriate,
        valuing the Company's assets or operations; provided that any real
        estate or fixed asset appraisals needed would be executed by
        outside appraisers;

(iv)    provide expert advice and testimony relating to financial matters
        related to a Transaction, including the feasibility of any
        Transaction, the valuation of any securities issued in connection
        with a Transaction, and any other matter as to which Houlihan
        Lokey is rendering services hereunder;

(v)     advise the Company as to potential mergers or acquisitions, and
        the sale or other disposition of any of the Company's assets or
        businesses;

(vi)    advise the Company as to any potential financings, either debt or
        equity;

(vii)   prepare proposals to creditors, employees, shareholders and other
        parties-in-interest in connection with any Transaction;

(viii)  assist the Company's management with presentations made to the
        Company's Board of Directors regarding the Transaction and/or
        other issues related to the Company's contemplated reorganization;
        and

(ix)    render such other financial advisory and investment-banking
        services as may be mutually agreed upon by Houlihan Lokey and
        the Company.

In performing its services pursuant to this Agreement, Houlihan Lokey is not assuming
any responsibility for the Company's decision to pursue (or not to pursue) any business
strategy or to effect (or not to effect) any Transaction. Houlihan Lokey shall not have
any obligation or responsibility to provide "crisis management" for or business consultant
services to the Company, and shall have no responsibility for designing or implementing
operating, organizational, administrative, cash management or liquidity improvements.

*Mr. Roger Fix*
*Outboard Marine Corporation*
*January 23, 2001*                                               *Page - 3 -*

2.  **Information.** In connection with Houlihan Lokey's activities on the
Company's behalf, the Company will cooperate with Houlihan Lokey and will furnish to,
or cause to be furnished to Houlihan Lokey any and all information and data concerning
the Company (the "Information") which Houlihan Lokey deems reasonably appropriate
and will provide Houlihan Lokey with reasonable access to the Company's officers,
directors, employees, appraisers, independent accountants, legal counsel and other
consultants and advisors.  The Company represents and warrants that all Information (a)
made available to Houlihan Lokey, holders of Company Debt or Company Securities and
other parties to any Transaction or Plan by the Company or (b) contained in any filing by
the Company with any court or any governmental or regulatory agency, commission or
instrumentality each (an "Agency"), will, at all times during the period of the engagement
of Houlihan Lokey hereunder, be complete and correct in all material respects and will
not contain any untrue statement of a material fact or omit to state a material fact
necessary in order to make the statements therein not misleading in light of the
circumstances under which such statements are made.  The Company further represents
and warrants that any projections or other information provided by it to Houlihan Lokey,
holders of Company Debt or Company Securities or other parties to any Transaction or
Plan will have been prepared in good faith and will be based upon assumptions which, in
light of the circumstances under which they are made, are reasonable.  The Company
acknowledges and agrees that, in rendering its services hereunder, Houlihan Lokey will
be using and relying on the Information (and information available from public sources
and other sources deemed reliable by Houlihan Lokey) without independent verification
thereof by Houlihan Lokey or independent appraisal by Houlihan Lokey of any of the
Company's assets.  Houlihan Lokey does not assume responsibility for the accuracy or
completeness of the Information or any other information regarding the Company.  Any
advice rendered by Houlihan Lokey pursuant to this Agreement may not be disclosed
publicly without our prior written consent and any reference to Houlihan Lokey in any
offering or solicitation material is subject to Houlihan Lokey's prior written consent,
which consent referred to in this sentence shall not be unreasonably withheld.  Houlihan
Lokey agrees that it will keep all Information confidential.

3.  **Compensation.** In consideration of our services pursuant to this
Agreement, Houlihan Lokey shall be entitled to receive, and the Company shall pay, the
following compensation:

(a)  *Monthly Fees:* Commencing upon the execution of this Agreement,
the Company shall pay Houlihan Lokey a cash fee of US$175,000
per month (the "Monthly Fee").  The first Monthly Fee shall be
payable, in cash, one month in advance upon the Company's and
Houlihan Lokey's execution of this Agreement.  All additional
Monthly Fees shall be due and payable on the 1st day of each
following month.

*Mr. Roger Fix*
*Outboard Marine Corporation*
*January 23, 2001*                                                              *Page - 4 -*

    (b)   *Transaction Fee*: In addition to the foregoing Monthly Fees, the Company shall pay Houlihan Lokey a Transaction Fee of $2.25 million, provided (A) that the highest Qualified Bids(s) for (i) the Entire Business; (ii) the Engine Business and/or the Boat Business, or (iii) each of the Business Components (as all of the foregoing terms are defined in the approved Bidding Procedures) exceeding $50 million in the aggregate, not including (x) value paid for cash or cash equivalents; and (y) assumed liabilities; and (B) Houlihan shall only be entitled to a Transaction Fee to the extent that sale proceeds generated from transactions exceed $50 million within six months of the date of the Auction (as defined in the approved Bidding Procedures). The Transaction Fee may only be paid from the proceeds of the Transaction that satisfies criteria "B" of this subparagraph. In addition, if the sale of all or substantially all of the Company's assets exceeds $160 million, Houlihan Lokey is entitled to the greater of (x) 3% of gross proceeds in excess of $160 million; or (y) the lesser of (1) $575,000 per sale transaction; or (2) 5% of the gross proceeds of each sale transaction, with either option (1) or (2) to be credited against the $2.25 million. The total amount Houlihan Lokey may recover under the subparagraph in $4 million.

    (c)   *Other Services*: To the extent the Company requests Houlihan Lokey to perform additional services not contemplated by this Agreement, such fees shall be mutually agreed upon by Houlihan Lokey and the Company, in writing, in advance.

        Furthermore, if at any time after the termination of this Agreement Houlihan Lokey is called upon to render services directly or indirectly relating to the subject matter of this Agreement beyond the services contemplated herein (including, but not limited to, producing of documents, answering interrogatories, giving depositions, giving expert or other testimony, whether by agreement, subpoena or otherwise), the Company shall pay Houlihan Lokey the then current hourly rates for the persons involved for the time expended in rendering such services, including, but not limited to, time for meetings, conferences, preparation and travel, and all related costs and expenses, inclusive of the reasonable legal fees and expenses of Houlihan Lokey's counsel.

The Company and Houlihan Lokey acknowledge and agree that the hours worked, the results achieved and the ultimate benefit to the Company and it's creditors, of the work

Mr. Roger Fix
*Outboard Marine Corporation*
*January 23, 2001*                                                            *Page - 5 -*

performed, in each case, in connection with this engagement, may vary, and that the
Company and Houlihan Lokey have taken this into account in setting the fees hereunder.

   4.   **Out-of-Pocket Expenses.** In addition to the fees described in paragraph 3
above, subject to prior Bankruptcy Court approval, the Company agrees to promptly
reimburse Houlihan Lokey, upon request from time to time, for all out-of-pocket
expenses incurred by Houlihan Lokey (including, without limitation, reasonable fees of
counsel [which shall not exceed $25,000 without the prior consent of the Company], and
other consultants and advisors retained by Houlihan Lokey) in connection with the
matters contemplated by this Agreement.   Out-of-pocket expenses *plus* all other
compensation payable to Houlihan Lokey shall be made to Houlihan Lokey in same day
funds, by wire transfer in lawful money of the United States to such accounts as Houlihan
Lokey shall determine upon written notice to the Company and the Company shall
provide contemporaneous written notice of each such payment to Houlihan Lokey at the
above address, Attention:  John A. McKenna.  Additionally all payments to Houlihan
Lokey shall be exclusive of any and all foreign income and other foreign (including
withholding) taxes.

   5.   **Indemnification; Contribution; and Standard of Care.** The Company
agrees, and shall cause any new company that may be formed to make any exchange
offer for Company Debt to agree to indemnify Houlihan Lokey in accordance with the
indemnification provisions (the "Indemnification Provisions") attached hereto as Exhibit
A, which Indemnification Provisions are incorporated herein and made a part hereof and
which shall survive the termination, expiration or suppression of this Agreement.

   The obligations of Houlihan Lokey are solely corporate obligations, and no
officer, director, employee, agent, shareholder or controlling person of Houlihan Lokey
shall be subjected to any personal liability whatsoever to any person, nor will any such
claim be asserted by or on behalf of any other party to this Agreement or any person
relying on the services provided hereunder.

   6.   **Termination.** Either party hereto may terminate this Agreement at any
time upon written notice (with copies of the notice going to the Official Committee of
Unsecured Creditors and the Company's Prepetition Lenders), without liability or
continuing obligation, except as set forth in the following sentence.  Neither termination
nor completion of this assignment shall affect: (i) any compensation earned by Houlihan
Lokey prior to termination or completion, as the case may be, (ii) any compensation to be
earned by Houlihan Lokey after termination by the Company pursuant to paragraph 3
hereof, (iii) the reimbursement of expenses incurred by Houlihan Lokey up to the date of
termination or completion, as the case may be, (iv) the provisions of paragraph 3 – 16,
inclusive, of this Agreement, and (v) the attached Indemnification Provisions which are
incorporated herein, all of which shall remain operative and in full force and effect.

*Mr. Roger Fix*
*Outboard Marine Corporation*
*January 23, 2001*                                                    *Page - 6 -*

7.    **Bankruptcy Court Approval.** Houlihan Lokey understands that the
Company filed a voluntary petition for bankruptcy protection under Chapter 11 of the
Bankruptcy Code.   The Company shall use its best efforts to apply promptly to the
United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy
Court") for the approval of this Agreement and Houlihan Lokey's retention by the
Company under the terms of this Agreement.   The Company shall supply Houlihan
Lokey with a draft of such application sufficiently in advance of the filing of such
application to enable Houlihan Lokey and its counsel to review and comment thereon..
Houlihan Lokey acknowledges that in the event that the Bankruptcy Court approves its
retention by the Company, Houlihan Lokey's fees and expenses shall be subject to the
jurisdiction and approval of the Bankruptcy Court under the Bankruptcy Code and any
applicable fee and expense guideline orders.

8.    **Agreement with Lenders**. This engagement letter is subject to a letter
agreement by and between Houlihan Lokey and the Prepetition Lenders and the DIP
Lenders (as those terms are defined in the December 26, 2000 "Interim Order Approving
Postpetition Financing And Granting Liens And Super Administrative Priority Pursuant
To 11 U.S.C. §§ 364(c) And (d), Modifying Automatic Stay And Scheduling The Final
Hearing") regarding the payment of Houlihan Lokey's fees from the Prepetition and DIP
Lenders' collateral proceeds.

9.    **CHOICE OF LAW**.  THIS AGREEMENT SHALL BE GOVERNED
BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF
NEW YORK WITHOUT REFERENCES TO PRINCIPLES OF CONFLICTS OF
LAW..

10.    **Assignability** The benefits of this Agreement shall inure to the parties
hereto, their respective successors and assigns, and to the indemnified parties hereunder
and their respective successors and assigns and representatives, and the obligations and
liabilities assumed in this Agreement by the parties hereto shall be binding upon their
respective successors and assigns.

11.    **Waiver of Jury Trial**. Each of the Company and Houlihan Lokey (and, to
the extent permitted by law, on behalf of their respective equity holders and creditors)
hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by
jury in respect of any claim based upon, arising out of or in connection with this
Agreement or any Transaction.   Each of the Company and Houlihan Lokey hereby
certifies that no representative or agent of the other party has represented expressly or
otherwise that such party would not seek to enforce the provisions of this waiver.
Further, each of the Company and Houlihan Lokey acknowledges that each party has
been induced to enter this Agreement by, inter alia, the provisions of this paragraph.

12.    **Joint and Several Obligations.** The parties hereto agree that the
obligations of the Company under this Agreement, including the Indemnification

*Mr. Roger Fix*
*Outboard Marine Corporation*
*January 23, 2001*

*Page · 7 ·*

Provisions referenced above, shall be joint and several obligations of the Company and the other entities that are signatories hereto.

13.    **Entire Agreement.** This Agreement embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein.    No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party.

14.    **Authority.** Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and the transactions contemplated hereby (including, without limitation, any transaction).    Each party hereto further represents and warrants that this Agreement has been duly and validly authorized by all necessary corporate action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms.

15.    **Counterparts.** For the convenience · of the parties, any number of counterparts of this Agreement may be executed by the parties hereto.    Each such counterpart shall, and shall be deemed to be, an original instrument, but all such counterparts taken together shall constitute one and the same Agreement.

16.    **Attorney's Fees.** If any party to this Agreement brings an action directly or indirectly based upon this Agreement or the matters contemplated hereby against another party, the prevailing party shall be entitled to recover, in addition to any other approximate amounts, its reasonable costs and expenses in connection with such proceeding, including, but not limited to, reasonable attorneys' fees and court costs.

17.    **Credit.** Upon consummation of any Transaction, Houlihan Lokey may, at is own expense, place announcements in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement) describing its services in connection therewith.

*Mr. Roger Fix*
*Outboard Marine Corporation*
*January 23, 2001*                                                          *Page - 8 -*

    If the foregoing correctly sets forth our Agreement, please sign and return to us the enclosed duplicate hereof.

                         Very truly yours,

                         HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL

                         By: _____
                              John A. McKenna
                              Director

Confirmed and Agreed to
This _____ day of _____, 2001

OUTBOARD MARINE CORPORATION on behalf of
itself, and its subsidiaries

By: _____
      Roger Fix
      Chief Executive Officer

RECREATIONAL BOAT GROUP LIMITED PARTNERSHIP

By: _____
      Roger Fix
      Chief Executive Officer

OMC FISHING BOAT GROUP, INC.

By: _____
      Roger Fix
      Chief Executive Officer

OMC ALUMINUM BOAT GROUP, INC.

By: _____
      Roger Fix
      Chief Executive Officer

                   HLHZ Initial _____

Mr. Roger Fix
*Outboard Marine Corporation*
*January 23, 2001*                                                           *Page - 9 -*

## EXHIBIT A

### INDEMNIFICATION AND CONTRIBUTION

This Exhibit A is a part of and incorporated into that certain letter agreement (together, the "Agreement"), dated January 23, 2001.

(a) If Houlihan Lokey or any employee, agent, officer, director, attorney, shareholder or any person who controls Houlihan Lokey (any or all of the foregoing, hereinafter an "Indemnified Person") becomes involved in any capacity in any legal or administrative action, suit, proceeding, investigation or inquiry, regardless of the legal theory or the allegations made in connection therewith, directly or indirectly in connection with, arising out of, based upon, or in any way related to (i) the Agreement; (ii) the services that are the subject of the Agreement; (iii) any document or information, whether verbal or written, referred to herein or supplied to Houlihan Lokey; (iv) the breach of the representations, warranties or covenants by the Company given pursuant hereto; (v) Houlihan Lokey's involvement in the Transaction or any part thereof; (vi) any filings made by or on behalf of any party with any governmental agency in connection with the Transaction; (vii) the Transaction; or (viii) proceedings by or on behalf of any creditors or equity holders of the Company, the Company will on demand, advance or pay promptly, on behalf of each Indemnified Person, reasonable attorneys' fees and other expenses and disbursements (including, but not limited to, the cost of any investigation and related preparation) as they are incurred by the Indemnified Person. The Company also indemnifies and holds harmless each Indemnified Person against any and all losses, claims, damages, liabilities, costs and expenses (including, but not limited to, attorneys' fees, disbursements and court costs, and costs of investigation and preparation) ("Losses") to which such Indemnified Person may become subject in connection with any such matter.

(b) If for any reason the foregoing indemnification is determined to be unavailable to any Indemnified Person or insufficient fully to indemnify any such person, then the Company will contribute to the amount paid or payable by such person as a result of any such Losses in such proportion as is appropriate to reflect (i) the relationship between Houlihan Lokey's fee on the one hand and the aggregate value of the Transaction on the other hand or (ii) if the allocation provided by clause (i) is not permitted by applicable law, not only such relative benefit but also the relative fault of the other participants in the Transaction, on the one hand, and Houlihan Lokey and the Indemnified Persons on the other hand, and any other relevant equitable considerations in connection with the matters as to which such Losses relate; provided, however, that in no event shall the amount to be contributed by all Indemnified Persons in the aggregate exceed the amount of the fees actually received by Houlihan Lokey hereunder.

(c) If any action or proceeding shall be brought or asserted against any Indemnified Person in respect of which indemnity may be sought from the Company

*Mr. Roger Fix*
*Outboard Marine Corporation*
*January 23, 2001*                                                                      *Page - 10 -*

hereunder, Houlihan Lokey shall promptly notify the Company in writing, provided that
failure to notify the Company shall not relieve it from any liability hereunder except to
the extent of any material prejudice resulting there from. The Company may, upon notice
to Houlihan Lokey, assume the defense thereof, by retaining U.S.–based counsel
reasonably satisfactory to Houlihan Lokey. Houlihan Lokey shall have the right to
employ separate counsel in any such action and to participate in the defense thereof, but
the fees and expenses of such counsel incurred after receipt of such notice from the
Company shall be at the expense of Houlihan Lokey (but not other reasonable out-of-
pocket defense or investigation expenses incurred by or on behalf of the Indemnified
Persons) unless (a) the Company has agreed to pay the fees and expenses of such counsel,
or (b) the Company shall have failed to timely assume the defense of such action or
proceeding and retain counsel reasonably satisfactory to Houlihan Lokey, or (c) the
named parties to any such action or proceeding (including any impleaded parties) include
both one or more Indemnified Persons and the Company, and in the reasonable judgment
of Houlihan Lokey's legal counsel the joint representation of the Company and such
Indemnified Persons would be inappropriate due to an actual or potential material conflict
of interest (in which case, if Houlihan Lokey notifies the Company in writing that it
elects to retain separate counsel, the Company (i) shall not have the right to assume the
defense of such action or proceeding on behalf of such Indemnified Persons, and (ii) shall
pay or reimburse as incurred the reasonable fees and expenses of not more than one
separate law firm   per relevant jurisdiction (including local counsel) representing
Houlihan Lokey and the other Indemnified Persons jointly).

(d) The obligations hereunder shall not apply to any Losses that are finally
judicially determined on the merits to have been material and been caused primarily by
the negligence, bad faith, willful misfeasance, or reckless disregard of its obligations or
duties on the part of Houlihan Lokey or such Indemnified Person. In the event of such
final judicial determination, the Company shall, subject to Houlihan Lokey's rights of
contribution, be entitled to recover from the Indemnified Person or Houlihan Lokey the
costs and expenses paid on behalf of such Indemnified Person pursuant to this obligation.

(e) The Company agrees that it will not settle, compromise or discharge any suit,
claim, litigation, threatened litigation or threatened claim arising out of, based upon, or in
any way related to the Transaction and to which Houlihan Lokey or any Indemnified
Person is or may reasonably be expected to be a party, unless and until the Company has
obtained a written agreement, approved by Houlihan Lokey and each relevant
Indemnified Person (which shall not be unreasonably withheld) and executed by each
party to such proposed settlement, compromise or discharge, releasing Houlihan Lokey
and each Indemnified Person from any and all liability. Houlihan Lokey agrees that it
will not settle, compromise or discharge any such suit, claim, litigation or threatened
claim without the prior written consent of the Company, which will not be unreasonably
withheld.

(f) The Company's obligations under this Section shall be in addition to any
liability that the Company or any other person may otherwise have to Houlihan Lokey or

01/23/01  TUE 18:22 FAX 1212 661 6347        HLHZ-NY                                   ☑012

*Mr. Roger Fix*
*Outboard Marine Corporation*
*January 23, 2001*                                                      *Page - 11 -*

any Indemnified Person. The foregoing provisions shall be enforceable by each
Indemnified Person and such person's heirs, representatives and successors, and shall
survive any termination of this Agreement or the completion of services hereunder.

**Bank of America**

January 24, 2001

Bank of America Commercial Finance
Business Credit
TX1-492-06-01
901 Main Street, 6th Floor
Dallas, TX 75202-3714

John A. McKenna, Jr.
Director
Houlihan Lokey Howard
& Zukin Capital
685 Third Avenue, 15th Floor
New York, NY 10017

Re:  Outboard Marine Corporation

Dear Mr. McKenna:

       We are informed that Outboard Marine Corporation and certain of its domestic
affiliates (collectively, the "Company") have engaged Houlihan Lokey Howard & Zukin Capital
("HL") pursuant to the terms of an engagement letter of even date herewith (the "Engagement
Letter") to perform certain investment banking services, including assisting the Company with
the development, negotiation and implementation of a "Transaction" (as defined in the
Engagement Letter).  As more specifically set forth in paragraph 3(b) of the Engagement Letter,
the Company has agreed to pay HL a Transaction Fee, upon the satisfaction of conditions
specified in the Engagement Letter, in connection with the sale of the assets of the Entire
Business, the Engine Business and/or the Boat Business, or each of the Business Components
(each as defined in the bidding procedures approved by the Bankruptcy Court).

       As you are aware, all of the assets that would be sold in a Transaction constitute
either Prepetition Collateral or Postpetition DIP Collateral (each as defined in that certain Interim
Order Approving Postpetition Financing and Granting Liens and Super Administrative Priority
Pursuant to 11 U.S.C. Sections 364(c) and (d), Modifying the Automatic Stay and Scheduling a
Final Hearing (the "Interim Financing Order")) which secures, as more specifically set forth in
the Interim Financing Order, payment of the obligations owed to the Prepetition Lenders and the
DIP Lenders (each as defined in the Interim Financing Order).  HL has requested that the
Prepetition Lenders and the DIP Lenders (i) consent to the Company's agreements with HL in
respect of a Transaction, and (ii) agree that the Transaction Fee can be paid from proceeds of the
Prepetition Collateral and the Postpetition DIP Collateral.

       Subject to the agreement by the Company and Official Committee of Unsecured
Creditors to the provisions of this letter, the Prepetition Lenders and the DIP Lenders agree that
if HL earns a Transaction Fee in accordance with paragraph 3(b) of the Engagement Letter, the
Company is authorized to use proceeds realized from the sale of Prepetition Collateral and
Postpetition DIP Collateral to pay the Transaction Fee in the manner prescribed in paragraph

3(b) notwithstanding the fact that the aggregate proceeds realized from a Transaction may prove to be insufficient to pay the claims held by the Prepetition Lenders and the DIP Lenders in full.

The payment of collateral proceeds to HL shall not reduce in any respect the obligations owed to the Prepetition Lenders or the DIP Lenders, nor shall such payment in any way impair or diminish (a) the right of the Prepetition Lenders and the DIP Lenders to receive full payment from collateral proceeds to the extent that aggregate proceeds realized from a Transaction equal or exceed the sum of HL's Transaction Fee plus the aggregate obligations owed to the Prepetition Lenders and the DIP Lenders, or (b) the rights of the Committee or the Debtors to object thereto. Moreover, if and to the extent that collateral proceeds are hereafter allocated between the Prepetition Collateral and the Postpetition DIP Collateral (whether by agreement of the parties or, in the absence such agreement, by order of the Bankruptcy Court), the Transaction Fee shall be allocated between the Prepetition Collateral and the Postpetition DIP Collateral on the same basis.

I trust that this letter is responsive to HL's request. Please call me if you have any questions concerning the foregoing.

Bank of America Business Credit, Inc., as Agent for the Prepetition Lenders and the DIP Lenders

By: _Virginia H. Brown_

Virginia H. Brown, Senior Vice President

Acknowledged and Agreed to
this 23rd day of January, 2001

Outboard Marine Corporation

The Official Committee of Unsecured Creditors
for Outboard Marine Corporation, et. al.

By: _____

By: _____

Its:

Its:

2

CHI 2114841v2

# Exhibit
# D

**Outboard Marine Corp.**
*Detail of Out-of-Pocket Expenses*

**Expense Detail:**

*January 1 - 31, 2001*

| Source | Position | Airfare | Other | Lodging | Client Meals | Overtime Meals | Phone & Other | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | | *Transportation* | | | | | | |
| Donald Smith | Sr. Managing Director | | | | | | | - |
| Michael Kramer | Managing Director | 1,474.50 | 998.28 | 150.77 | | 49.67 | | 2,673.22 |
| John McKenna | Director | 4,974.05 | 761.68 | 502.06 | 101.93 | | 154.84 | 6,494.56 |
| Gary Finger | Director | | | | | | | - |
| Andrew Torgove | Senior Vice President | 2,062.50 | 40.00 | | 5.49 | | | 2,107.99 |
| JC Choi | Vice President | | | | | | | - |
| Andrew Proctor | Associate | | | | | | | - |
| David Skatoff | Associate | 250.00 | 385.39 | 294.88 | 10.00 | 65.37 | 89.50 | 1,095.14 |
| Kim Lowney | Associate | | | | | | | - |
| David Burns | Associate | 4,433.50 | 362.08 | | 281.06 | 23.49 | | 5,100.13 |
| Wayne Gore | Associate | 4,423.50 | 678.54 | 549.45 | 55.80 | 26.19 | 4.18 | 5,737.66 |
| Michael Huddleston | Financial Analyst | | 56.00 | | | 105.88 | | 161.88 |
| Joseph Cleverdon | Financial Analyst | 1,474.50 | 2,004.08 | 169.2 | 9.82 | 472.52 | | 4,130.12 |

| | |
|---|---|
| Telephone, Telecopy & Other Expenses | 1,885.91 |
| Library, Office Supplies & Copying Expenses | 50.25 |
| Research and Information Service Expenses | 1,195.23 |
| Delivery and Messenger Expenses | 7,113.57 |
| Houlihan Lokey Administrative Overtime | 675.00 |

**Total Period Expenses**      $38,420.66

*February 1- 28, 2001*

| Source | Position | Airfare | Other | Lodging | Client Meals | Overtime Meals | Phone & Other | TOTAL |
|---|---|---|---|---|---|---|---|---|
| | | *Transportation* | | | | | | |
| Donald Smith | Sr. Managing Director | 731.75 | 47.00 | 419.39 | 152.00 | 3.40 | | 1,353.54 |
| Michael Kramer | Managing Director | | | | | | | - |
| John McKenna | Director | 3,243.00 | 800.08 | 1,804.76 | 100.23 | | 50.19 | 5,998.26 |
| Gary Finger | Director | 739.75 | 48.00 | | | | | 787.75 |
| Andrew Torgove | Senior Vice President | 1,028.75 | 125.72 | 1,034.10 | | 21.39 | 79.71 | 2,289.67 |
| JC Choi | Vice President | 1,424.50 | | | | | | 1,424.50 |
| Andrew Proctor | Associate | | | | | | | - |
| David Skatoff | Associate | | | | | | | - |
| Kim Lowney | Associate | | | | | | | - |
| David Burns | Associate | 1,418.50 | | | | | | 1,418.50 |
| Wayne Gore | Associate | 1,804.50 | 802.68 | 1405.2 | 19.88 | | 13.88 | 4,046.14 |
| Michael Huddleston | Financial Analyst | | | | | 71.38 | | 71.38 |
| Joseph Cleverdon | Financial Analyst | | 857.94 | 1275.22 | 230.95 | 266.62 | 2.28 | 2,633.01 |

| | |
|---|---|
| Telephone, Telecopy & Other Expenses | 268.02 |
| Library, Office Supplies & Copying Expenses | 120.00 |
| Research and Information Service Expenses | 145.19 |
| Delivery and Messenger Expenses | 37.72 |
| Houlihan Lokey Administrative Overtime | 60.00 |

**Total Period Expenses**      $20,653.68

**Outboard Marine Corp.**
*Detail of Out-of-Pocket Expenses*

**Expense Detail:**

| *March 1 - 31 2001* | | Transportation | | | Client | Overtime | Phone & | |
| Source | Position | Airfare | Other | Lodging | Meals | Meals | Other | TOTAL |
|---|---|---|---|---|---|---|---|---|
| Donald Smith | Sr. Managing Director | | | | | | | - |
| Michael Kramer | Managing Director | | | | | | | - |
| John McKenna | Director | | | | | | | - |
| Gary Finger | Director | | | | | | | - |
| Andrew Torgove | Senior Vice President | | | | | | | - |
| JC Choi | Vice President | | | | | | | - |
| Andrew Proctor | Associate | | | | | | | - |
| David Skatoff | Associate | | | | | | | - |
| Kim Lowney | Associate | | | | | | | - |
| David Burns | Associate | | | | | | | - |
| Wayne Gore | Associate | | | | | | | - |
| Michael Huddleston | Financial Analyst | | | | | | | - |
| Joseph Cleverdon | Financial Analyst | | 17.85 | | | | | 17.85 |
| | | | | | | | | |
| Telephone, Telecopy & Other Expenses | | | | | | | | 270.43 |
| Library, Office Supplies & Copying Expenses | | | | | | | | |
| Research and Information Service Expenses | | | | | | | | 651.96 |
| Delivery and Messenger Expenses | | | | | | | | |
| Houlihan Lokey Administrative Overtime | | | | | | | | |
| | | | | | | | | |
| **Total Period Expenses** | | | | | | | | **$940.24** |

| *April 1 - 30, 2001* | | Transportation | | | Client | Overtime | Phone & | |
| Source | Position | Airfare | Other | Lodging | Meals | Meals | Other | TOTAL |
|---|---|---|---|---|---|---|---|---|
| Donald Smith | Sr. Managing Director | | | | | | | - |
| Michael Kramer | Managing Director | | | | | | | - |
| John McKenna | Director | | | | | | | - |
| Gary Finger | Director | | | | | | | - |
| Andrew Torgove | Senior Vice President | | | | | | | - |
| JC Choi | Vice President | | | | | | | - |
| Andrew Proctor | Associate | | | | | | | - |
| David Skatoff | Associate | | | | | | | - |
| Kim Lowney | Associate | | | | | | | - |
| David Burns | Associate | | $112.00 | | | | | 112.00 |
| Wayne Gore | Associate | | | | | | | - |
| Michael Huddleston | Financial Analyst | | | | | | | - |
| Joseph Cleverdon | Financial Analyst | | 18.13 | 409.04 | 19.24 | 80.93 | | 527.34 |
| | | | | | | | | |
| Telephone, Telecopy & Other Expenses | | | | | | | | |
| Library, Office Supplies & Copying Expenses | | | | | | | | 1.50 |
| Research and Information Service Expenses | | | | | | | | 109.15 |
| Delivery and Messenger Expenses | | | | | | | | 41.25 |
| Houlihan Lokey Administrative Overtime | | | | | | | | |
| | | | | | | | | |
| **Total Period Expenses** | | | | | | | | **$791.24** |

| **Total Expenses** | **$60,805.82** |
|---|---|

Exhibit
E