FOD NOV 29 2001

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| OUTBOARD MARINE | ) | No. 00 B 37405 |
| CORPORATION, et al., | ) | |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Hon. Ronald Barliant |
| | ) | |
| | ) | |

FILED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
NOV 28 2001
KENNETH S. GARDNER, CLERK
PS REP. - DR

**FIRST AND FINAL APPLICATION OF
AMERICAN EXPRESS TAX & BUSINESS SERVICES, INC.
FOR ALLOWANCE OF PROFESSIONAL FEES AND REIMBURSEMENT OF EXPENSES
(REPLACES AND AMENDS FIRST FEE APPLICATION FILED JULY 12, 2001)**

American Express Tax & Business Services, Inc. ("AmEx"), applies to this court pursuant to 11 U.S.C. §§ 330 and 331 and Federal Bankruptcy Rules 2002(a)(6), 2002(i), and 2016(a) for the allowance of $719,676.00 in compensation, including estimated fees of $2,075.00 for completion of this fee application, for 4,084.8 hours of professional services rendered, and the reimbursement of $9,418.60 for costs incurred incidental to those services during the period of January 22, 2001 through August 19, 2001 (the "Application Period")[1]. During the Application Period, AmEx rendered the services and incurred the costs at the direction and on behalf of the Official Committee of Unsecured Creditors of Outboard Marine Corporation and Its Related Debtor Entities (the "Committee") and the Committee's counsel D'Ancona & Pflaum LLC ("D'Ancona") in connection with the chapter 11 cases of Outboard

---

[1] This Amended and Final Application replaces and supercedes the original application filed on July 12, 2001. This amended application contains a request for approval of fees and expenses incurred by AmEx from May 29, 2001 through August 19, 2001, in addition to January 22, 2001 through May 28, 2001, which were included in the original application. Substantive changes also have been made to the narratives to reflect those services provided from May 29, 2001 through August 19, 2001.
565064.v2



Marine Corporation and its related debtor entities (collectively, "OMC"). In support of this application, AmEx respectfully represents as follows:

## BACKGROUND

1. OMC commenced its chapter 11 case in this court on December 22, 2000. On August 20, 2001, the court granted the Committee's motion to convert this case to a chapter 7 case and soon thereafter Alex D. Moglia was appointed chapter 7 trustee ("Trustee").

2. The Committee was formed by the United States Trustee for this judicial district on December 28, 2000.

3. On January 31, 2001, the Court entered an Order to employ and retain AmEx as accountants and financial advisors, nunc pro tunc, effective as of January 22, 2001. Together with D'Ancona, AmEx represented the Committee and the interest of unsecured creditors generally in connection with OMC's chapter 11 case.

4. On July 12, 2001, AmEx filed the first interim fee application for compensation and reimbursement of fees and expenses from January 22, 2001 through May 28, 2001. This fee application incorporates the statements contained therein and otherwise replaces and amends the first interim fee application.

5. In order to receive compensation and reimbursement of fees and expenses that AmEx has earned and incurred during the course of providing professional services to the Committee, and in accordance with the Administrative Order dated January 4, 2001, AmEx has submitted monthly statements to the Debtors summarized herein:

| Service Period | Total Fees and Expenses | Hold Back Amount | Partial Payment |
|---|---|---|---|
| January 22, 2001 - January 29, 2001 | $ 45,108.23 | $ 3,618.15 | $ 41,490.08 |
| January 30, 2001 - February 25, 2001 | $119,738.41 | $11,574.20 | $108,164.21 |
| February 26, 2001 - March 27, 2001 | $ 81,234.57 | $ 8,089.15 | $ 73,145.42 |
| March 28, 2001 - April 25, 2001 | $125,915.08 | $12,324.20 | $113,590.88 |
| April 26, 2001 - May 28, 2001 | $110,730.95 | $ 0.00 | $ 36,609.41 |
| May 29, 2001 - June 26, 2001 | $ 85,286.21 | $ 0.00 | $ 0.00 |
| June 27, 2001 - July 26, 2001 | $ 91,266.40 | $ 0.00 | $ 0.00 |
| July 27, 2001 - August 19, 2001* | $ 69,814.75 | $ 0.00 | $ 0.00 |
| Totals | $729,094.60 | $35,605.70 | $373,000.00 |

*\* Includes time incurred in preparation of this fee application for the amount $2,075.00, subsequent to August 19, 2001*

## RELIEF REQUESTED

6.   AmEx now seeks (A) final approval of the Debtors' partial payments made for services rendered from January 22, 2001 through May 28, 2001; (B) an award of the holdback amount for services rendered during the period from January 22, 2001 through April 25, 2001; (C) an award of all fees incurred through the period April 26, 2001 through August 19, 2001. The fees and expenses for which compensation and reimbursement are sought are actual, reasonable and necessary, within the meaning of § 330(a) of the Code.

### Compensation of Fees

7.   Section 330(a) of the Code governs compensation of professionals in bankruptcy matters and provides the court shall consider the nature, the extent, and the value of such

565064. v2                                3

services, when deciding on the granting of compensation, taking into account all relevant factors, including:

    i. the time spent on such services;

    ii. the rates charged for such services;

    iii. whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of a case under this title;

    iv. whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and,

    v. whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)

8. Bankruptcy courts must consider whether the fee awards are commensurate with fees for professional services in non-bankruptcy cases, thus providing sufficient economic incentive to practice in the bankruptcy courts. Pursuant to 11 U.S.C. § 331, compensation for professional services may be awarded on an interim basis.

9. AmEx has rendered substantial and valuable professional services on behalf of the Committee that have resulted in a significant benefit to the creditors of OMC's estate, and were beneficial to the administration of OMC's chapter 11 case. AmEx respectfully submits that its services were provided with the requisite level of skill and were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problems, issues, and tasks addressed. AmEx has charged its customary fees, which are reasonable based

565064. v2      4

on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title. The amount sought in compensation is in line with awards in similar cases and is commensurate with the professional standing, ability and expertise of AmEx and the professionals and paraprofessionals who have participated in this case. Accordingly, the compensation requested herein reflects the reasonable value of the services provided to the Committee.

10. AmEx has been mindful of the need to avoid undue professional fees in this case and has taken all reasonable steps to provide cost-effective representation while rendering services with the highest degree of skill and professionalism. Attached hereto as **Exhibit A** are the hourly rates for the professionals and paraprofessionals who provided service to the Committee in this case, and the total number of hours worked by each.

11. Attached hereto as **Exhibit B** is a summary of the fees that AmEx actually charged, corresponding to the tasks detailed in paragraph 14 below.

12. In accordance with Federal Rule of Bankruptcy Procedure 2016(a), **Exhibit C** presents an itemized list identifying: (a) the specific tasks performed, (b) the professional or paraprofessional who performed them, (c) the time required to perform them, and (d) the date on which the tasks were performed. To the extent possible, AmEx has described each specific task and separately allocated the time attributable to that task. Where the nature of certain tasks or the circumstances surrounding their performance did not allow for individual time entries, aggregate time entries were used.

13. Pursuant to § 330(a)(1)(A) of the Code, the Court may award a professional "reimbursement for actual, necessary expenses." Accordingly, AmEx seeks reimbursement of the actual, necessary expenses that it incurred during the course of providing legal services to the Committee. Charges for travel, overnight delivery, postage, long distance phone calls, and other

565064.v2                                                5

out-of-pocket disbursements are based on actual amounts paid by AmEx for those services. Attached hereto as **Exhibit D** is a detailed description of expenses that AmEx incurred from January 22, 2001 through May 28, 2001, the period covered by this Application.

## NARRATIVE SUMMARY OF SERVICES PERFORMED

14. The Committee and its professionals, AmEx and D'Ancona, were actively involved in all aspects of OMC's chapter 11 case. In that regard, AmEx has provided the Committee with 2,765.4 hours of professional services during the Application Period.

15. The issues presented by OMC's chapter 11 case were factually complex. The amounts involved in OMC's case were and are significant. OMC's assets that have thus far been liquidated exceed $100,000,000 in value and the liabilities asserted against OMC's estate will likely exceed $1,000,000,000. Given the intensity of OMC's case, the complexity and intricacy of the issues presented and the amount at stake, AmEx has been required to utilize the services of over 20 professionals. The members of the engagement team who rendered professional services in this case have considerable expertise in bankruptcy and reorganization, mergers and acquisitions, and litigation. In an effort to provide the court and parties in interest with understandable information concerning the amount and nature of AmEx's services during the Application Period, AmEx has classified its services into separate categories generally described as follows:

> i.  Asset Analysis and Recovery (2,948.7 hours)
>
> AmEx analyzed information obtained from OMC regarding disbursements made during the ninety day period and one year period prior to the date on which OMC filed its bankruptcy petition("Preference Analysis"). This task has encompassed analysis of 13 bank accounts with reported disbursements of amounts in excess of $530,000,000 to well over 5,000

565064.v2                                                                  6

vendors. In analyzing the disbursements related to the engine-portion of the business only, over 450 boxes of records were reviewed and analyzed, accounting for over 40,000 vendor invoices.

In addition to the Preference Analysis, AmEx also provided services to the Committee in connection with the analysis and determination of the proper allocation of the approximately $95,000,000 in sale proceeds received at auction between the secured lenders and unsecured creditors.

ii. <u>Asset Disposition</u> (627.2 hours)

Pursuant to the Committee's request, AmEx monitored the sale of OMC's assets in order to ensure the maximum possible recovery for OMC's estate and its creditors. To achieve this objective, AmEx reviewed and analyzed the due diligence documents packages prepared for potential bidders to assess OMC's financial status and to determine an appropriate range of market values for the various OMC entities.

Further, AmEx scrutinized and evaluated all competing bids for the benefit of the Committee. During the actual sale of substantially all of OMC's assets, AmEx assisted Committee counsel in negotiations with both OMC's and prospective purchasers' respective counsel.

AmEx in conjunction with the Committee's counsel regularly communicated with the Committee and its members to keep them regularly informed of all developments.

iii. <u>Business Analysis / Operations</u> (342.9 hours)

AmEx reviewed both the financial position and resulting operational implications of OMC. Further, AmEx interviewed key management and executives regarding specific operating issues of OMC including but not limited to manufacturing processes and sequencing, billing procedures, accounting techniques and procedures, and executive compensation. Also, AmEx investigated various OMC international intercompany transactions occurring during the month of December, during the days prior to OMC's bankruptcy filing.

AmEx also regularly reviewed operating budgets for OMC which were prepared in connection with OMC's utilization of it's $19,500,000 debtor-in-possession loan.

iv. <u>Case Administration</u> (112.6 hours)

AmEx secured, reviewed, organized and maintained documents that were obtained from OMC pursuant to AmEx's investigation and analysis. Pursuant to the Administrative Order dated January 4, 2001, AmEx prepared monthly statements, all of which were prepared by a paraprofessional.

v. <u>Litigation</u> (53.4 hours)

AmEx reviewed historical workpapers created by OMC's auditor, KPMG in connection with the audit conducted as of December 31, 1999 to determine whether any potential causes of action exist for the benefit of OMC's estate. AmEx also reviewed OMC's internally developed monthly financial reports.

Further, AmEx conferred often with counsel for the Committee regarding the investigation and pursuit of potential causes of actions against the officers and directors of OMC and other third parties.

## COMPENSATION PREVIOUSLY RECEIVED

16. Pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure and the Administrative Order dated January 4, 2001 AmEx affirmatively states that it has received the following payments from the Debtor in connection professional services performed on behalf of the Committee in the above-captioned cases:

| Service Period | Total Fees and Expenses | Hold Back Amount | Partial Payment Received |
| --- | --- | --- | --- |
| January 22, 2001 - January 29, 2001 | $ 45,108.23 | $ 3,618.15 | $ 41,490.08 |
| January 30, 2001 - February 25, 2001 | $119,738.41 | $11,574.20 | $108,164.21 |
| February 26, 2001 - March 27, 2001 | $ 81,234.57 | $ 8,089.15 | $ 73,145.42 |
| March 28, 2001 - April 25, 2001 | $125,915.08 | $12,324.20 | $113,590.88 |
| April 26, 2001 - May 28, 2001 | $110,730.95 | $ 0.00 | $ 36,609.41 |

17. AmEx further states that it has not shared any of the compensation that it has previously received in connection with this case with any other entity. Furthermore, no such agreement or understanding exists between AmEx and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with AmEx's representation of the Committee in the above-captioned case.

18. All of the professional services for which compensation is requested herein were performed by AmEx for and on behalf of the Committee, and not for or on behalf of any other person or entity. Furthermore, all services were performed at the direction of the Committee. Pursuant to the Administrative Order dated January 4, 2001 AmEx affirmatively states that the

565064. v2                                   9

former Counsel for the Committee has read, considered and approved this Application and the requested amounts sought herein.

## CONCLUSION

19. Giving due consideration to the nature of the services rendered, the size of the case, the legal complexities encountered, the experience of AmEx, AmEx's normal and customary hourly rates for similar services, the results achieved on behalf of the Committee, and the time devoted by AmEx in connection with providing professional services to the Committee, AmEx respectfully submits that the fees and expenses for which compensation and reimbursement are sought hereby are actual, reasonable and necessary costs of the administration of these chapter 11 cases.

WHEREFORE, Applicant respectfully requests that the Court enter an Order, hereto summarized as follows:

  i. approving the Debtors' partial payment of $41,490.08 to AmEx for fees and expenses incurred during the period from January 22, 2001 through January 29, 2001;

  ii. approving the Debtors' partial payment of $108,164.21 to AmEx for fees and expenses incurred during the period from January 30, 2001 through February 25, 2001;

  iii. approving the Debtors' partial payment of $73,145.42 to AmEx for fees and expenses incurred during the period from February 26, 2001 through March 27, 2001;

  iv. approving the Debtors' partial payment of $113,590.88 to AmEx for fees and expenses incurred during the period from March 28, 2001 through April 25, 2001;

v.   approving the Debtors' partial payment of $36,609.41 to AmEx for fees and expenses incurred during the period from April 26, 2001 through May 28, 2001;

vi.  authorizing the Debtors to pay AmEx $3,618.15 in fees that were incurred during the period from January 22, 2001 through January 29, 2001 which were held back pursuant to the Administrative Order dated January 4, 2001;

vii. authorizing the Debtors to pay AmEx $11,574.20 in fees that were incurred during the period from January 30, 2001 through February 25, 2001 which were held back pursuant to the Administrative Order dated January 4, 2001;

viii. authorizing the Debtors to pay AmEx $8,089.15 in fees that were incurred during the period from February 26, 2001 through March 27, 2001 which were held back pursuant to the Administrative Order dated January 4, 2001;

ix.  authorizing the Debtors to pay AmEx $12,324.20 in fees that were incurred during the period from March 28, 2001 through April 25, 2001 which were held back pursuant to the Administrative Order dated January 4, 2001;

x.   authorizing the Debtors to pay AmEx the unpaid balance of $74,121.54 in fees that were incurred during the period from April 26, 2001 through May 28, 2001 that are unpaid;

xi. authorizing the compensation and reimbursement of fees and expenses earned and incurred during the period from May 29, 2001 through April 25, 2001 in the amount of $85,286.21;

xii. authorizing the compensation and reimbursement of fees and expenses earned and incurred during the period from June 27, 2001 through July 26, 2001 in the amount of $91,266.40; and,

xiii. authorizing the compensation and reimbursement of fees and expenses earned and incurred during the period from July 27, 2001 through August 19, 2001 in the amount of $67,739.75.

AmEx seeks an order(i) allowing $729,094.60 in total compensation and expenses, pursuant to 11 U.S.C. §§ 330 and 3301, of which $373,000.00 has been paid; (ii) authorizing AmEx to keep the funds which it has received pursuant to this court's January 4, 2001 order; authorizing and directing the chapter 7 Trustee to pay $356,094.60 in unpaid compensation and expenses to AmEx as a chapter 11 administrative expense of the estate.

20. Dated this 28th day of November 2001.

Respectfully submitted,

American Express Tax & Business Services, Inc.
Accountants and Financial Advisors
to the Official Committee of Unsecured Creditors

By: _____

565064.v2

Exhibit A

# OUTBOARD MARINE CORPORATION
American Express Tax & Business Services, Inc.
Billing Hours / Rates for Services Rendered January 22, 2001 through August 19, 2001

| Professional | Title | Hours | Rate** | Total |
|---|---|---|---|---|
| S. Peltz | Managing Director | 302.10 | 325 | 98,182.50 |
| M. Hirsh | Director | 277.50 | 275 | 76,312.50 |
| A. Samsky | Director | 143.50 | 275 | 39,462.50 |
| L. Levine | Director | 143.00 | 300 | 42,900.00 |
| D. Bart | Director | 3.60 | 275 | 990.00 |
| D. Kodros | Senior Manager | 831.70 | 221 | 183,396.50 |
| J. Howe | Senior Manager | 59.80 | 225 | 13,455.00 |
| C. Tollefson | Senior Manager | 30.20 | 250 | 7,550.00 |
| J. Rossi | Senior Manager | 3.50 | 225 | 787.50 |
| S. Bormet | Manager | 43.50 | 165 | 7,177.50 |
| M. Gallagher | Manager | 18.70 | 140 | 2,618.00 |
| L. Habenicht | Manager | 3.70 | 165 | 610.50 |
| A. Delaney | Senior Consultant | 609.10 | 116 | 70,913.50 |
| M. Robertson | Senior Consultant | 90.30 | 115 | 10,384.50 |
| D. Geiger | Senior Consultant | 50.40 | 118 | 5,972.00 |
| J. Sargent | Consultant | 546.20 | 115 | 62,813.00 |
| B. Johnson | Consultant | 169.80 | 100 | 16,980.00 |
| G. Lehman | Consultant | 128.50 | 110 | 14,135.00 |
| P. Sippil | Consultant | 115.80 | 100 | 11,580.00 |
| B. Beck | Consultant | 109.00 | 100 | 10,900.00 |
| G. Holman | Consultant | 99.00 | 110 | 10,890.00 |
| R. Pataramekin | Consultant | 94.00 | 110 | 10,340.00 |
| W. Zarling | Consultant | 48.00 | 100 | 4,800.00 |
| L. Beniluz | Consultant | 42.30 | 125 | 5,287.50 |
| M. Bollin | Consultant | 40.00 | 100 | 4,000.00 |
| E. Mietus | Consultant | 10.00 | 100 | 1,000.00 |
| M. Gearica | Consultant | 8.50 | 105 | 892.50 |
| K. Clark | Consultant | 1.00 | 85 | 85.00 |
| K. Drewke | Paralegal | 26.50 | 85 | 2,252.50 |
| M. Glover | Paralegal | 19.50 | 95 | 1,852.50 |
| N. Holtze | Paralegal | 6.10 | 85 | 518.50 |
| C. Post | Paralegal | 3.50 | 85 | 297.50 |
| N. Radtke | Paralegal | 0.50 | 85 | 42.50 |
| C. Mattson | Researcher | 5.00 | 50 | 247.50 |
| M. Kilmer | Researcher | 1.00 | 50 | 49.50 |
| *Grand Total* | | 4,084.8 | $ 176 | $ 719,676.00 |

*Includes preparation of this fee application
**Average hourly rate charged (Fees / Hours = Average Rate)

1

## SERVICE LIST

Catherine L. Steege
Jenner & Block
One IBM Plaza
38th Floor
Chicago, IL 60611
Fax: (312) 840-7352

Larry Nyhan, Esq.
Matthew A. Clemente, Esq.
Sidley & Austin
10 S. Dearborn St., 48th Floor
Chicago, IL 60603
Fax: (312) 853-7036

Mark Page
Bank One, NA
Law Dept., Mail Code IL1-0287
1 Bank One Plaza
Chicago, IL 60670-0287
Fax: (312) 732-3596

Harold Kaplan
Jeffrey Schwartz, Esq.
Gardner Carton & Douglas
321 N. Clark St. Suite 3400
Chicago, IL 60610
Fax: (312) 644-3381

Alan Kornberg, Esq.
Paul Weiss
Rifkind Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019-6064
Fax: (212) 757-3990

Anthony J. Smits, Esq.
Bingham Dana LLP
One State Street
Hartford, CT 06103
Fax: (860) 240-2800

E. Decker Adams
State Street Bank & Trust Co.
Two Avenue de Lafayette
Boston, MA 02111
Fax: (617) 662-1456

Kathryn Gleason, Esq.
Office of the United States Trustee
Regional Office
227 West Monroe, Suite 3500
Chicago, IL 60606
Fax: (312) 886-5794

Alan P. Solow
Goldberg Kohn Bell Black Rosenbloom & Mortiz
55 East Monroe Street, Suite 3700
Chicago, IL 60603
Fax: (312) 332-2196

Richard Hiersteiner, Esq.
Palmer & Dodge LLP
One Beacon Street
Boston, MA 02108-3190
Fax: (617) 227-4420

David A. Blackburn
Chief Executive Officer
Thomas G. Faria Corporation
385 Norwich-New London Turnpike
Uncasville, CT 06382
Fax: (860) 848-2704

Michael L. Gesas, Esq.
Gesas Pilati and Gesas, Ltd.
53 W. Jackson Blvd., Suite 528
Chicago, IL 60604
Fax: (312) 939-1742

527767.v1

Forrest Lammiman, Esq.
Timothy W. Brink, Esq.
Lord Bissell & Brook
115 South LaSalle Street
Chicago, IL 60603
Fax: (312) 443-0336

Roger R. Cloutier, II
Mary McConnell
Genmar Holdings, Inc.
100 South 5th Street, Suite 2400
Minneapolis, MN 55402
Fax: (612) 337-1930

John Collen
Duane, Morris & Heckscher LLP
227 W. Monroe Street, Suite 3400
Chicago, IL 60606
Fax: (312) 499-6701

Alex D. Moglia & Associates, Inc.
1325 Remington Road
Suite H
Schaumburg, IL 60173
Fax: (847) 884-1188

Elizabeth Wallace
Senior Assistant Attorney General
Environmental Bureau
Illinois Attorney General's Office
188 West Randolph Street - Suite #2001
Chicago, IL 60601
Fax: (312) 814-2347

Alan S. Tenenbaum, Senior Counsel
Frank Biros
Trial Attorneys
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
Fax: (202) 353-0296

Robert L. Green, Esq.
Dan Sullivan, Esq.
Howrey Simon Arnold & White
1299 Pennsylvania Ave
Washington, DC 20004
Fax: (202) 383-6610

Howard L. Adelman, Esq.
Adelman, Gettleman,
Merens, Berish & Carter, Ltd.,
53 West Jackson Blvd., Suite 1050
Chicago, IL 60604
Fax: (312) 435-1059

Russell C. Bergman
LaSalle Bank, N.A.
135 South LaSalle Street, Suite 1960
Chicago, IL 60603
Fax: (312) 904-2236

James L. Eggeman
Michael Miller
Pension Benefit Guaranty Corporation
1200 K Street, N.W., Suite 340
Washington, DC 20005-4026
Fax: (202) 326-4112

Stanley J. Parzen
Mayer, Brown & Platt
190 South LaSalle Street
Chicago, IL 60603-3441
Fax: (312) 701-7711

Micheal M. Eidelman
Vedder, Price, Kaufman & Kammholz
222 N. LaSalle Street
Suite 2600
Chicago, IL 60601
Fax: (312) 609-5005

527767.v1                                    2