E'O D  FEB 0 5 2002

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 00 B 37405 |
| | ) | (Jointly Administered) |
| OUTBOARD MARINE CORPORATION, | ) | Chapter 7 |
| et al., | ) | |
| | ) | |
| Debtors. | ) | Hon. Ronald Barliant |

**TRUSTEE'S OBJECTION TO KPMG LLP'S FIRST AND FINAL APPLICATION
FOR COMPENSATION AND EXPENSES INCURRED DURING THE PERIOD
BEGINNING DECEMER 22, 2000 AND ENDING JULY 31, 2001**

Alex D. Moglia, not individually, but as chapter 7 trustee ("Trustee") for Outboard

Marine Corporation and its Related Debtor Entities ("OMC"), states as follows for his objection

to KPMG LLP's ("KPMG") First and Final Application For Compensation And Expenses

Incurred During the Period Beginning December 22, 2000 And Ending July 31, 2001

("Application"):

1.      KPMG seeks $409,466.14 in fees and expenses allegedly incurred in performing

tax and audit services on behalf of OMC's chapter 11 estate. The Trustee objects to KPMG's

application because (A) KPMG failed to disclose in its retention application made pursuant to 11

U.S.C. § 327(a) and Federal Rule of Bankruptcy Procedure 2014 that it received $666,135 from

OMC during the preference period; (B) falsely stated that it had only received $200,000 as a

prepetition "retainer" from OMC; and (C) the Application does not comply with 11 U.S.C. § 330

or Local Bankruptcy Rule 607.[1]

---

[1] The Trustee reserves the right to supplement his objection if and when KPMG submits a conforming application.

1415

## A. The Application Should Be Denied In Its Entirety Because KPMG Misrepresented The Nature and Extent of Its Prepetition Payments In Its 11 U.S.C. § 327(a) Employment Application.

2.      Section 327(a) of the Bankruptcy Code ("Code") allows a debtor in possession to retain professionals who "do not hold or represent an interest adverse to the estate and that are disinterested persons." Bankruptcy Rule 2014(a) requires an applicant to disclose under oath "all of the person's connections with the debtor" and other interested parties so that the court can fairly evaluate an § 327(a) application and the propriety of the proposed representation. The requirement of full disclosure in connection with an § 327(a) petition is not a formality or a matter for the petitioner's discretion; professionals "cannot pick and chose which connections are irrelevant or trivial." *In re EWC, Inc.*, 138 B.R. 276, 280 (Bankr. W.D. Okla. 1992), cited in *Gellene*, 182 F.3d at 588. In order to ensure absolute candor in connection with a § 327(a) application, a court may deny fees to any professional who fails to fully disclose relevant information, even if the failure was negligent or inadvertent. *Neben & Starrett, Inc. v. Chartwell Financial Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 882 (9th Cir. 1995), citations omitted.

3.      Here, KPMG misrepresented its connections with OMC by failing to disclose that it had received $666,187 in payments during the preference period on account of prior services. Had KPMG made a full disclosure, it could not have been retained because it was not a "disinterested person" under § 327(a). Accordingly, KPMG's Application should be denied in its entirely and it should be made to disgorge all of the fees it received in the preference period.

4.      KPMG was retained by OMC's chapter 11 estate on April 18, 2001 after negotiating limited objections to its retention filed by the Official Committee of Unsecured Creditors of Outboard Marine Corporation and Its Related Debtor Entities ("Committee"). The

579944.v1: 102528/000

Committee's objection to KPMG's retention was premised on questions it had concerning KPMG's representation that it "received a retainer of $200,000 for unpaid and not yet invoiced pre-petition fees for KPMG LLP and KPMG foreign member firms." *See* Affidavit of Douglas H. Ruud In Support of the Application for Order Pursuant to 11 U.S.C. §§ 327(a) and 328(b) Authorizing The Retention And Employment Of KPMG LLP As Accountants, Auditors and Tax Advisors To The Debtor ("Ruud Affidavit"), a copy of which is attached hereto as Exhibit A at ¶ 24.

5.      As an additional part of its Objection, the Committee sought KPMG's cooperation in "investigating the financial demise" of OMC. *See* Committees' Objection, a copy of which is attached hereto as Exhibit B.

6.      In order to secure its engagement with OMC's chapter 11 estate in light of the Committee's Objection, KPMG agreed to condition its retention on a promise to:

> promptly obtain and provide to the Committee all details surrounding any consideration received by KPMG during the ninety days prior to the commencement of this case.

*See* April 18, 2001 order allowing KPMG's retention ("Retention Order"), a copy of which is attached hereto as Exhibit C.  KPMG also agreed to produce certain documents related to its prepetition work on behalf of OMC.

7.      On or about May 18, 2001, KPMG submitted a summary of the $200,000 "retainer" as required by the Retention Order ("KPMG Summary").  *See* Summary, a copy of which is attached hereto as Exhibit D.  The Summary also disclosed for the first time that KPMG had received an additional $222,807 "prepetition" to pay invoices outstanding as of December 18, 2000.

579944.v1: 102528/000

8.    KPMG did not disclose either in the Summary or the Ruud Affidavit that it had received $243,328 during the preference period in addition to $422,807 by wire transfer sent on December 22, 2000 ("Petition Date") that was not "posted" by KPMG until January 2, 2001, *i.e.* after the Petition Date. *See* Schedule of Payments Made By OMC During Preference Period, a copy of which is attached hereto as Exhibit E; Confirmation of December 22, 2000 wire transfer to KPMG, a copy of which is attached hereto as Exhibit F; Summary at Exhibit 3.

9.    The egregious nature of these omissions was furthered by Ruud's misleading statement that KPMG received a $200,000 "prepetition retainer." The $200,000 was an arbitrary carve out of the $422,807 wired on the Petition Date. KPMG's listing a $200,000 "invoice" on Exhibit 3 of its Summary exacerbated the situation because this "invoice" included fees for which an invoice had already been generated. *See* Summary at Exhibit 2. All but $18,229 of the $200,000 "retainer" discussed in the Ruud Affidavit was used to pay prepetition services; it was not a "retainer" under the broadest possible definition of that word. *In re Production Associates, Ltd.*, 264 B.R. 180, 184 - 85 (Bankr. N.D. Ill. 2001) (describing various types of retainers, none of which includes payments for existing obligations).

10.    There is no legitimate explanation for KPMG's decision to disclose only $200,000 of the payments it received during the preference period or to characterize that payment as a "retainer." The $200,000 was no more of a "retainer" than the other $466,135 paid during the preference period that was not disclosed by KPMG in connection with its retention. As a financial advisor with "considerable experience" in "restructuring and chapter 11 proceedings" (Ruud. Aff. at ¶ 4), the court must assume that KPMG knew that the receipt of $666,135 in payments during the preference period was sufficient ground to deny its retention under 11 U.S.C. § 327(a). *In re First Jersey Securities, Inc.*, 180 F.3d 504, 509 (3rd Cir. 1999)

- 4 -

(preferential transfer creates actual conflict of interest requiring disqualification of professional).

KPMG's intentional efforts at hiding these payments by disclosing only $200,000 of them in the

Ruud Affidavit is ground for denying KPMG's Application in its entirety and ordering that all of

the payments it received during the preference period be returned to the estate. *United States v.*

*Gellene*, 182 F.3d 578, 588 (7th Cir. 1999) (citations omitted); *Law Offices of Nicholas A.*

*Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045 (9th Cir. 1997) (attorney ordered to

disgorge fees for submitting false information in its application for employment under § 327 and

Rule 2014(a)).

11.    The requirement of complete candor in connection with the retention of

professionals "goes to the heart of the integrity of the administration of the bankruptcy estate."

*Gellene, supra.*   OMC owes its creditors nearly $1 billion, including over $90 million to its

retired employees.    These creditors deserve to be represented by professionals whom the

creditors can trust to work for the benefit of the creditors, and not the professionals themselves.

KPMG violated this trust when it disguised the nature of its "connections" with OMC and it

cannot be allowed to profit from that violation. The Application should be denied in its entirety.

> **B.    KPMG's Application Should Be Denied For Failing To Satisfy 11 U.S.C. § 330.**

12.    The Application must also be denied because it fails to satisfy the requirements of

§ 330.  A professional's request for payment of fees under § 330 must demonstrate that the

services were actual, necessary and reasonable. The applicant has the burden of proof and "[t]his

burden must not be taken lightly, especially given that every dollar expended on . . . fees results

in a dollar less that is available for distribution to creditors." *In re McNichols*, 258 B.R. 892, 904

(Bankr. N.D. Ill. 2001), citations and internal quotations omitted.  The court must "address three

issues: were the services that are the subject of the application properly compensable; if so, were

they actual and necessary; if so, how will they be valued?" *In re Lifschultz Fast Freight, Inc.,*

140 B.R. 482, 487 (N. D. Ill. 1992), citations omitted.  Under Local Rule 607, an application for

fees must also contain descriptions of the services rendered that are "sufficient to demonstrated

to the court that each task and activity is compensable in the amount sought."  The Application

fails to meet the requirements of either the Code or the Local Rules.

### 1.    The Fees And Expenses Are Not Compensable.

13.    As an initial matter, KPMG was retained based on an application that failed to

disclose preferential payments that created an actual conflict of interest that would have barred

its representation of OMC's chapter 11 estate.  "[A]n application for attorneys fees may be

denied or reduced where the attorney has a conflict of interest." *Lifschultz,* 140 B.R. at 475,

citations omitted.  Given the nature and extent of KPMG's conflicts and efforts at hiding those

conflicts, the Application should be denied.

### 2.    Some Of The Services Were Not Actual and Necessary.

14.    The lack of candor in KPMG's § 327(a) application is mirrored in the Application

for fees.  KPMG's efforts at fabricating compensable time is so blatant that it borders on the

comical.

15.    For example, on January 10, 2001, KPMG Manager John Scacco (who bills at a

rate of $315) apparently spent five hours meeting with himself "regarding necessary revisions"

to a engagement letter with OMC dated July 12, 1999.  Mr. Scacco again met with himself on the

following day for three hours "regarding revisions to engagement letter for TMS services." *See*

Application at attached spread sheet for the period December 22, 2000 – February 28, 2001.  A

closer review of the schedules supporting the Application reveals that Mr. Scatto's entries are

identical in every respect (except for billing rate) to the entries submitted by Michael Pezzella, a

- 6 -

professional who charges $550 per hour.[2] In addition to being duplicative, the Trustee questions whether any professional who bills $315 or $550 per hour should dedicate nine hours to "review request regarding advance payment," whatever that "review" may entail. *See* Entries for February 26 and 27 for M. Pezzella and J. Scacco.

16.    Because each of the entries of Messrs. Pezzella and Scacco is vague, duplicative patently unreasonable and provided no benefit whatsoever to the estate, the Application should be denied as it relates to their time:

| M. Pezzella | 71.5 hours @ $550 | $39,325.00 | | |
| J. Scacco | 81.5 hours @ $315 | $25,672.50 | | |
| Total | | $64,997.50 | @ 70%[3] | $ 45,498.25 |

17.    KPMG also seeks fees for services that conferred no benefit on OMC's estate, including work that should have been charged to the employee benefit plans KPMG allegedly audited and services rendered on behalf of OMC's Canadian subsidiary. Attached to the Application is a schedule of fees in the amount of $5391 for audit of the OMC Pension Plan. The Plan itself permits such expenses to be paid from Plan assets. *See* Section 7.15 of OMC's Pension Plan, a copy of which is attached hereto as Exhibit G. There is no reason to tax OMC's creditors for this expense.

18.    Moreover, the schedule supporting the audit fees does not indicate how much is being charged for specific services. It contains a a column called "standard billing rate," one called "Realization," one called "Admin. Expenses" and a final one called "Total." KPMG does not indicate what a "realization rate" is or why the estate should pay for "admin. expenses." The

---

[2]    Mr. Scatto also submitted two identical entries for January 16, 2001 and two separate entries for February 22, 2001: one which mirrored Mr. Pezzella's and one for eight hours of "reviewing OMC's tax returns."

[3]    KPMG's retention agreement with OMC allowed it to collect 70% of the fees it billed prior to February 28, 2001 and 85% of the fees it billed after that date. The Application seeks fees based on these discounted rates.

579944.v1: 102528/000

spreadsheet is incomprehensible and the entire request for **$5391.00** supported by that initial

spread sheet should be denied.

19.   KPMG is also seeking compensation for administrative matters, for meetings

concerning its compensation in this case, for completing sales tax returns months after OMC had

sold substantially all of its assets and other activities that were not necessary to its work on

behalf of OMC. In addition to those set forth above, the Trustee objects to the following charges

as not being necessary to the administration of the chapter 11 estate:

| Employee | Date | Description | Time x Rate | Total |
|---|---|---|---|---|
| B. Ehlers | 3/18 | Bi-weekly status regarding engagement | 0.5 x $550 | $275 |
| | 3/30 | Bi-weekly status regarding engagement | 0.5 x 550 | 275 |
| | 4/13 | Bi-weekly status regarding engagement | 0.5x 550 | 275 |
| | 5/3 | Billing issues on OMC and collectability of outstanding invoices | 1 x 550 | 550 |
| | 5/8 | Billing issues with firm management | 1 x 550 | 550 |
| | 8/28 | Billing issues and collectability of receivables and WIP | 1 x 550 | 550 |
| | 7/9 | Accruals and status with firm management | 1 x 550 | 550 |
| | 7/18 | OMC with special and cohen regarding collectability of receivables and WIP | 1 X 550 | 550 |
| | 7/20 | Review of correspondence and termination of engagement | 0.5 x 550 | 225 |
| M. Pezzella | 2/20 | Review hours and dollars on engagement | 0.5 x 550 | 275 |
| | 2/21 | Review hours and dollars on engagement | 3 x 550 | 1650 |
| | 2/22 | Review request regarding application of advance payment | 2 x 550 | 1100 |
| | 2/23 | Discuss Canadian returns with Linda Hunt and arrange for delivery | 6 x 550 | 3300 |
| | 2/26 | Review request regarding application of advance payment | 5 x 550 | 2750 |
| | 2/27 | Review request regarding application of advance payment | 4 x 550 | 2200 |
| | 3/1 | Review billing analysis | 3 x 550 | 1650 |
| | 3/26 | Review OMC retention order with counsel | 5 x 550 | 2750 |
| | 3/29 | Review OMC retention order with counsel | 2 x 550 | 1100 |
| | 4/4 | Review OMC retention order with counsel | 2 x 550 | 1100 |
| | 5/22 | Analyze time and completed projects | 4 x 550 | 2200 |
| | 5/24 | Analyze time and completed projects | 4 x 550 | 2200 |

579944.v1: 102528/000

| M. Pezzella | 5/25 | Analyze time and completed projects | 4 x 550 | 2200 |
|---|---|---|---|---|
| | 6/1 | Analyze time and completed projects | 8 x 500 | 4400 |
| R. Ramdhamie | 2/12 | [Canadian] federal estimated tax payment – mail early due next month | .15 x 175 | 26.25 |
| | 2/12 | Ontario estimated tax payment – mail early – due next month | .15 x 175 | 26.25 |
| | 2/12 | Quebec estimated tax payment – mail early – due next month | .15 x 175 | 26.25 |
| | 2/12 | [Canadian] extension for Federal Return | .15 x 175 | 26.25 |
| | 2/12 | City of Peterborough, Ontario Canada personal property tax return | .15 x 175 | 26.25 |
| | 2/13 | [Canadian] federal estimated tax payment – mail early due next month | .15 x 175 | 26.25 |
| | 2/13 | Ontario estimated tax payment – mail early – due next month | .15 x 175 | 26.25 |
| | 2/13 | Quebec estimated tax payment – mail early – due next month | .15 x 175 | 26.25 |
| | 2/13 | [Canadian] extension for Federal Return | .15 x 175 | 26.25 |
| | 2/13 | City of Peterborough, Ontario Canada personal property tax return | .15 x 175 | 26.25 |
| | 2/14 | [Canadian] federal estimated tax payment – mail early due next month | .15 x 175 | 26.25 |
| | 2/14 | Ontario estimated tax payment – mail early – due next month | .15 x 175 | 26.25 |
| | 2/14 | Quebec estimated tax payment – mail early – due next month | .15 x 175 | 26.25 |
| | 2/14 | [Canadian] extension for Federal Return | .15 x 175 | 26.25 |
| | 2/14 | City of Peterborough, Ontario Canada personal property tax return | .15 x 175 | 26.25 |
| R. Wu | 1/2 | Email/Time and Billing | 1 x 260 | 260 |
| | 2/9 | OMC/Belgium/EUROPE/Workpaper preparation | 4.5 x 260 | 1170 |
| | 5/17 | Went over Aact software and installed on my laptop | 8 x 280 | 2240 |
| | 5/18 | Organize desk and reorganized files | 8.5 x 280 | 2380 |
| C. Pounds | 6/13 | May billing of OMC time | 2 x 200 | 400 |
| | 6/18 – 7/2 | Work related to sales and use tax filings for various states.[4] | 81.1 x 200 | 16,220 |

---

[4]   KPMG informed by the debtor in possession that it did not need to complete sales and use tax returns for the months following the sale of OMC's assets. The Trustee also objects to Mr. Pounds' time because it is duplicative. If the entries are to be believed, Mr. Pound filed at least two sales tax returns for months in which no sales were made.

579944.v1: 102528/000

| M. Special | 4/19 | Jan. Feb. 2001, billing info. | 3 x 345 | 1035 |
|---|---|---|---|---|
| | 4/26 | Jan. Feb. 2001, billing info. | 2 x 345 | 690 |
| | 4/27 | Jan & feb billing detail pull together | 2 x 345 | 690 |
| Total of objectionable entries before 2/28/01: $11,932.50 | | | @ 70% | $8352.75 |
| Total of objectionable entries after 3/1/01: $47,255.00 | | | @85% | $40,166.75 |
| **Total fees objected for no benefit to the estate** | | | | **$48,519.50** |

20.     KPMG is also seeking fees for performing identical services several times:

| Employee | 1st Date | 2nd Date | Description | Time x rate | Total |
|---|---|---|---|---|---|
| R. Ramdhamie | 1/2 | 1/9 | ME sales tax return for prior month | .15 x 175 | 26.25 |
| | 1/2 | 1/9 | Illinois accelerated sales tax payment for month | .15 x 175 | 26.25 |
| | 1/2 | 1/9 | Florida sales and use tax for prior month | .15 x 175 | 26.25 |
| | 1/2 | 1/9 | Alabama sales tax return for prior month | .15 X 175 | 26.25 |
| | 1/2 | 1/9 | Indiana sales and use tax for prior month | .15 x 175 | 26.25 |
| | 1/9 | 1/9 | Texas R/E and P/P – Dallas Distribution | .20 x 175 | 35.00 |
| | 1/9 | 1/10 | *Each and every time entry for January 10, 11, and 12 and February 5, 2001 is a repeat of the entry for January 9, 2001.* | 32 x 175 | 5600 |
| | 2/12 | 2/13 | *Each and every time entry for February 13 and 14 is a repeat of entries made on February 12, 2002. Some of these entries were for work performed for OMC Canada (see above) and the Trustee did not include that work in this objection to avoid double counting.* | 16 x 175 | 2800 |
| Total for duplicative services: $8566.25 | | | | @70% | **$5996.20** |

21.     KPMG also asks to be paid when it performed no services at all. *See* Entries for

M. Special for January 18 – 19 and January 26, 2001 – January 31, 2001. The blank entries

include 48 hours at $345 per hour or $16,560.00. Applying the 30% discount, the total reduction

for entries with no description at all is **$11,592.00.**

579944.v1: 102528/000

22.     These were only the entries where it was apparent from the face of the time entry that the services were not actual and necessary and that there was no benefit to the estate from the services performed.  If the court were inclined to grant KPMG any of its fees, the Trustee requests as opportunity to review KPMG's timesheets and other billing materials to determine whether there were additional entries for which the services were not actual or necessary.

### 3.     The Rates Are Not Reasonable.

23.     Other entries are inappropriate because the rate charged for the services is not commiserate with the services performed.  For example, on February 27, 2001, Michael Special charged 10 hours at $345 per hour to "copy, collate, sign, file & mail twenty plus state income tax returns."  Even the discounted charge of **$2415** seems extraordinary in light of the routine tasks performed, tasks which are more in the nature of overhead.

### 4.     The Application Fails To Comply With Local Rule 607.

24.     Local Rule 607 requires an applicant to describe the work performed with sufficient specificity that the court can determine that "each task and activity is compensable in the amount sought."  The Trustee objections to the following entries and being insufficiently descriptive:

| Employee | Date | Description | Time x Rate | Total |
|----------|------|-------------|-------------|-------|
| R. Patel | 1/8 | Various Notices State Notices | 8 x 285 | $2280 |
|  | 1/9 | Various notices | 8 x 285 | 2280 |
|  | 1/24 | NC audit adjustment reduced by $85,000. Total adjustment was about $93,000 + interest | 4 x 285 | 1140 |
|  | 2/13 | OMC Parent | 8 x 285 | 2280 |
|  | 5/17 | Miscellaneous work filing and copying correspondence, etc. | 0.7 x 285 | 200 |
| M. Special | 2/1 | Misc. | 1 x 345 | 345 |
|  | 2/2 | Admin. | 1 x 345 | 345 |
|  | 2/2 | Lawyer 2/5 filing | 2 x 345 | 690 |
|  | 2/2 | Review | 1 x 345 | 345 |

579944.v1: 102528/000

| Employee | Date | Description | Time x Rate | Total |
|----------|------|-------------|-------------|-------|
| M. Special | 2/5 | FW | 1.5 x 345 | 517.5 |
| | 2/5 | HS | 1 x 345 | 345 |
| | 2/5 | Misc. | 0.5 x 345 | 172.5 |
| | 2/5 | SS | 1 x 345 | 345 |
| | 2/6 | FBG | 1 x 345 | 345 |
| | 2/6 | OMTC | 2.5 x 345 | 862.5 |
| | 2/6 | Planning | 0.5 x 345 | 172.5 |
| | 2/9 | ""NJ | 0.5 x 345 | 172.5 |
| | 2/9 | ""MO | 0.5 x. 345 | 172.5 |
| | 2/9 | ""MO Fan | 0.5 x 345 | 172.5 |
| | 2/9 | ""NY | 0.5 x 345 | 172.5 |
| | 2/9 | ""TX | 0.5 x 345 | 172.5 |
| | 2/9 | ABG Mich. | 0.5 x 345 | 172.5 |
| | 2/9 | OMC Apportionment | 2 x 345 | 690 |
| | 2/9 | OMTC IL | 0.5 x 345 | 172.5 |
| | 2/9 | OMTC MI | 0.5 x 345 | 172.5 |
| | 2/12 | ""NC | 0.5 x 345 | 172.5 |
| | 2/12 | ""NY | 0.5 x 345 | 172.5 |
| | 2/12 | ""OH | 0.5 x 345 | 172.5 |
| | 2/12 | ""TN | 0.5 x 345 | 172.5 |
| | 2/12 | Control Sheet | 1 x 345 | 345 |
| | 2/12 | FBG NJ | 0.5 x 345 | 172.5 |
| | 2/12 | OMC & CO | 0.5 x 345 | 172.5 |
| | 2/12 | OMC Belgium | 1.5 x 345 | 517.5 |
| | 2/12 | OMC Europe Review | 0.5 x 345 | 172.5 |
| | 2/12 | OMC GL | 1 x 345 | 345 |
| | 2/12 | Sales and use | 0.5 x 345 | 172.5 |
| | 2/12 | Time report | 0.5 x 345 | 172.5 |
| | 2/13 | Misc. | 2 x 345 | 690 |
| | 2/17 | Misc. | 3 x 345 | 1035 |
| | 2/19 | E-mail | 0.5 x 345 | 172.5 |
| | 3/16 | Delinquent status and returns needed 1.0 | 4 x 345 | 1380 |
| | 4/13 | Gone | 1 x 345 | 345 |
| | 5/14 | Misc. notices and organization | 7.5 x 345 | 2588 |
| | 5/15 | Misc. notices and organization | 6.3 x 345 | 2174 |
| | 5/17 | Misc. notices and organization | 8.8 x 345 | 2340 |
| | 5/18 | Misc. notices and supervise | 3.9 x 345 | 1340 |
| | 5/21 | Misc. notices and supervision | 3.8 x 345 | 1311 |
| | 5/23 | Misc. notices and supervision | 6.4 x 345 | 2206 |
| | 5/24 | Misc. notices and supervision | 7 x 345 | 2415 |
| | 5/29 | Misc. notices and supervision | 3 x 345 | 1035 |
| | 5/31 | Misc. notices and supervision | 3 x 345 | 1035 |
| | 6/1 | Misc. mail sorting and email | 1.8 x 345 | 621 |

579944.v1: 102528/000

| Employee | Date | Description | Time x Rate | Total |
|---|---|---|---|---|
| M. Special | 6/5 | Feb 2001 | .1 x 345 | 35 |
| | 6/11 | Misc. mail sorting and email | 2.9 x 345 | 1001 |
| | 6/12 | Misc. notices and emails | 2.7 x 345 | 932 |
| | 6/13 | Misc. notices and emails | 1.3 x 345 | 448 |
| | 6/14 | Misc. notices and emails | 1.5 x 345 | 518 |
| | 6/18 | Misc. notices and emails | 1.8 x 345 | 621 |
| | 6/20 | Misc. notices and emails | 3 x 345 | 1035 |
| | 6/20 | Misc. clean up of files and area | 1.5 x 345 | 518 |
| | 6/21 | Misc. notice and emails | 3.2 x 345 | 1104 |
| | 6/21 | Misc. clean up | 0.3 x 345 | 104 |
| | 6/21 | Misc. notices and emails | 3.5 x 345 | 1208 |
| | 6/25 | Misc. supervise staff | 2.5 x 345 | 863 |
| | 6/25 | Misc. notices and emails | 1.3 x 345 | 449 |
| | 6/27 | Misc. supervise staff | 2 x 345 | 690 |
| | 6/27 | Misc. notices and emails | 2.5 x 345 | 863 |
| | 6/28 | Misc. supervise staff | 2 x 345 | 690 |
| | 6/28 | Misc. notices and emails | 1.5 x 345 | 618 |
| | 6/29 | Misc. notices and emails | 1.3 x 345 | 449 |
| | 6/29 | Misc. supervise staff | 3 x 345 | 1035 |
| | 7/2 | Misc. supervise staff | 1 x 345 | 345 |
| | 7/2 | Misc. notices and emails | 0.7 x 345 | 242 |
| | 7/5 | Misc. notices and emails | 2 x 345 | 690 |
| | 7/8 | Clean up files and work area | 3.3 x 345 | 1138 |
| | 7/8 | Misc. notices and emails | 2.7 x. 345 | 932 |
| | 7/11 | Misc. notices and emails | 0.8 x 345 | 276 |
| | 7/12 | Misc. supervise staff | 0.6 x 345 | 207 |
| | 7/12 | Misc. notices and emails | 1.4 x 345 | 483 |
| | 7/13 | Misc. supervise staff | 0.3 x 345 | 104 |
| R. Wu | 2/1 | Acts/Forms Preparation | 1.2 x 260 | 312 |
| | 2/1 | Acts/Forms Preparation | 1 x 260 | 260 |
| | 2/1 | Acts/Forms Preparation | 0.5 x. 260 | 130 |
| | 2/1 | Aasts/Forms Preparation | 0.5 x. 260 | 130 |
| | 2/6 | OMC | 4 x 260 | 1040 |
| | 2/6 | OMC | 8.3 x 260 | 2168 |
| Total of objectionable entries before 2/28/01: $23,145 | | | @ 70% | $16,201.50 |
| Total of objectionable entries after 3/1/01: $36,588 | | | @ 85% | $31,099.80 |
| Total Objectionable for insufficient descriptions | | | | $47,301.30 |

579944.v1: 102528/000

25.    The total amount of fees to which the Trustee asserts an objection is **$167,253.25**. The Trustee reserves the right to supplement this objection, in the event the court permits KPMG to submit additional materials in support of its Application.

### 5.    KPMG Should Not Be Reimbursed For Its Expenses.

26.    KPMG is seeking as "expenses" the legal fees it incurred in (a) "resolving" the objections of the Committee to KPMG's retention; and (b) resisting the Committee's and Trustee's efforts at compelling KPMG to comply with the Retention Order's requirement that KPMG produce certain documents related to its prepetition audit and tax work. *See* Application at p. 7. KPMG states that it was "forced" to seek the legal assistance of Greenberg Traurig P.C. in order to "resolve" issues related to "disinterdness."

27.    According to the schedules attached in support of the Application, KPMG first consulted with its counsel on January 9, 2001, after the filing of the Ruud Affidavit which disclosed only $200,000 of the $666,135 KPMG received during the preference period, but before Ruud filed his amended and supplemental affidavits. The affidavits filed after KPMG's retention of counsel did not disclose the additional payments made during the preference period or the fact that $422,807 was paid on the Petition Date. Thus, the fees paid to KPMG's counsel were not paid to "resolve" the issue of disinterdness, because the nature and extent of KPMG's conflicts were never disclosed.

28.    Moreover, KPMG fought the efforts of the Committee and Trustee to seek KPMG's compliance with the Retention Order. KPMG's intransigence forced the Trustee to file a motion to compel KPMG to produce documents and this court ordered KPMG to produce the records it was required to produce under the Retention Order. These expenses would not have

- 14 -

been incurred at all had KPMG done what it was required to do in the first place. OMC's creditors certainly should not have to pay for KPMG's litigation tactics.

29.     These circumstances distinguish KPMG's request for fees from those allowed in *In re Met-L-Wood Corp.*, 103 B.R. 972 (Bankr. N.D. Ill. 1989). In that case, the court held that a debtor's chapter 11 attorney were entitled to recover the costs of hiring a second law firm to defend them against charges of impropriety brought by the creditors committee and chapter 7 trustee based on their representation of the debtor in the bankruptcy case. The charges of impropriety were found to be baseless and court awarded attorneys fees as an "extraordinary expense" out of fairness to chapter 11 counsel. OMC's estate did not incur any benefit from KPMG's retention of its attorneys. In fact, KPMG's retention cost OMC's creditors money because KPMG's refusal to provide the documents that were a condition of its retention forced the Trustee to prosecute a motion to compel. Likewise, despite its hiring of counsel prior to its retention as OMC's financial advisor, KPMG never amended the false statements in the Ruud Affidavit concerning the KPMG's prepetition payments. Awarding fees and an extraordinary expense in this case would be rewarding a professional who failed to make a full disclosure in its § 327(a) petition and ignored the terms of its retention order.

30.     KPMG also provided no documents or other evidentiary basis to support the request for $17,104.64 in expenses. KPMG's request for expense reimbursement must be denied until such time as the Trustee and this court are provided with sufficient information upon which to make an informed judgment on the reasonableness and propriety of the expenses asserted.

579944.v1: 102528/000

C.      **Conclusion.**

31.     KPMG's Application should be denied in its entirety because its retention was

obtained in violation of § 327(a) and Bankruptcy Rule 2014(a).  KPMG used its position and

accountants to OMC's chapter 11 estate to create invoices for work that either was not or did not

need to be performed, apparently in an effort to mitigate its losses on its prepetition engagement

with OMC.   Accordingly, the Trustee respectfully asks the court to deny the Application in its

entirety and to order KPMG to disgorge all of the payments it received during the preference

period.

Dated: February 4, 2002                      Respectfully submitted,

                                             Alex D. Moglia, not individually, but as
                                             chapter 7 trustee for the Outboard Marine
                                             Corporation and Its Related Debtor Entities


                                             By: _____
                                                 One of its attorneys

Steven B. Towbin (#2848546)
Kathleen H. Klaus (#6211316)
Jeremy C. Kleinman (#6270080)
D'Ancona & Pflaum LLC
111 East Wacker Drive
Suite 2800
Chicago, Illinois 60601
(312) 602-2000

- 16 -

579944.v1: 102528/000



EOD JAN 03 2001

FILED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
JAN 02 2001
WAYNE E. NELSON, CLERK
PS REP. - SB

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ILLINOIS

In re:  Outboard Marine Corporation,   )
        et. al.,             )
                          )
                          )
                          )
                          )
Debtors.                     )

Chapter 11 Case No. 00-37405
Hon. Erwin I. Katz

---

## AFFIDAVIT OF DOUGLAS H. RUUD IN SUPPORT OF THE APPLICATION FOR ORDER PURSUANT TO 11 U.S.C. §§ 327(a) and 328(a) AUTHORIZING THE RETENTION AND EMPLOYMENT OF KPMG LLP AS ACCOUNTANTS, AUDITORS, AND TAX ADVISORS TO THE DEBTORS

State of Illinois    )
               ) SS:
County of Cook    )

I, Douglas H. Ruud, being duly sworn, depose and say:

I am a Certified Public Accountant and a partner of KPMG LLP, a professional services firm.  I submit this affidavit on behalf of KPMG LLP in support of the application (the "Application") of Outboard Marine Corporation, et al., as debtors and debtors-in-possession (the "Debtors"), for an order pursuant to §§ 327(a), 328 and 1107(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Bankruptcy Rules for the Northern District of Illinois (the "Local Bankruptcy Rules") authorizing the retention and employment of KPMG LLP as accountants, auditors, and tax advisors to the Debtors.  Except as

95

otherwise indicated, I have personal knowledge of the matters set forth herein, and if called as a witness, would testify competently thereto.

### Qualifications of Professionals

1.  KPMG LLP is a firm of independent public accountants as defined under the Code of Professional Conduct of the American Institute of Certified Public Accountants.

2.  The Debtors have selected KPMG LLP as its accountants, auditors, and tax advisors because of the firm's diverse experience and extensive knowledge in the fields of accounting, taxation and bankruptcy.

3.  Since the spring of 1999, KPMG LLP has served and continues to serve as accountants, auditors and tax advisors to the Debtors. By virtue of its prior engagement, KPMG LLP is familiar with the books, records, financial information and other data maintained by the Debtors and is well qualified to continue to provide accounting and tax advisory services to the Debtors. As such, retaining KPMG LLP is the most efficient and cost effective manner in which the Debtors may obtain the requisite services.

4.  In addition, the Debtors need assistance in collecting, analyzing and presenting accounting, financial and other information in relation to the restructuring and chapter 11 proceedings. KPMG LLP has considerable experience with rendering such services to debtors and other parties in numerous chapter 11 cases. As such, KPMG LLP is well qualified to perform the work required in this case.

## Services to be Rendered

5. The Debtors anticipate that KPMG LLP may render the following services in this case:

(1)     Audit examinations of the annual financial statements of the Debtors as may be required from time to time and assistance in the filing of the Debtors' financial statements and disclosure documents required by the Securities and Exchange Commission;

(2)     Reviews of the quarterly financial statements of the Debtors as may be required from time to time, and assistance in the filing of Quarterly Reports on Form 10-Q with the Securities and Exchange Commission;

(3)     Research, analysis, and advice with regard to a variety of audit, accounting, tax planning, and regulatory compliance issues;

(4)     Assistance to the Debtors in conducting various internal data systems, financial, and operational internal audits as requested by the Debtors;

(5)     Preparation or review of any tax returns and other tax compliance filings as may be required in the various jurisdictions in which the Debtors operate;

(6)     Advice and assistance to the Debtors regarding tax planning issues, including assistance in estimating net operating loss carryforwards;

(7)     Assistance in developing and implementing tax reduction strategies arising from the Debtors' specific request or KPMG's identification of possible tax planning opportunities;

(8)     Advice and assistance on the tax consequences of any proposed plans of reorganization and in the preparation of any Internal Revenue Service ("IRS") ruling requests regarding the future tax consequences of alternative reorganization structures;

(9)     Assistance required regarding existing and future IRS, state and/or local tax examinations; and

(10)    Other tax advice and assistance as may be requested from time to time.

(11)    Assistance in the preparation of various forms, reports, schedules, and statements required by the Court, the Office of the United States Trustee, and other regulatory agencies.

6. The Debtors have filed a motion to retain Houlihan Lokey Howard & Zukin ("Houlihan Lokey") as their investment banker and Development Strategies, Inc. ("DSI") as their restructuring advisor. The services to be provided by KPMG LLP will not be duplicative of those provided by Houlihan Lokey and DSI, and KPMG LLP will coordinate any services performed at the Debtors' request with the services of Houlihan Lokey, DSI or any other financial advisors and counsel, as appropriate, to avoid duplication of effort.

7. Subject to this Court's approval of the Application, KPMG LLP is willing to serve as the Debtors' accountants, auditors and tax advisors and to perform the services described above.

### Disinterestedness of Professionals

8. A search of the client database of KPMG LLP was performed to determine whether we had any connection or relationship with the following entities:

    (a)    The Debtors and their affiliates;

    (b)    The Debtors' officers and directors;

    (c)    The equity shareholders known to own more than twenty (20) percent of outstanding stock;

    (d)    The Debtors' major secured creditors;

    (e)    The Debtors' twenty (20) largest unsecured creditors; and

    (f)    Financial advisors and counsel to the Debtors and certain other parties-in-interest.

KPMG LLP would like the Court to note that KPMG LLP was required to expend several weeks to search for any connection or relationship KPMG LLP may have with entities.

9.      KPMG LLP does not hold or represent an interest adverse to the estate that would impair KPMG LLP's ability to objectively perform professional services for the Debtors and is a disinterested person, in accordance with 11 U.S.C. § 327 of the Bankruptcy Code.

10.     KPMG LLP is a "disinterested person" as that term is defined in 11 U.S.C. § 101(14) as modified by § 1107(b) of the Bankruptcy Code in that, to the best of my information and belief, KPMG LLP:

    (a)   is not a creditor, an equity security holder, or an insider;

    (b)   is not and was not an investment banker for any outstanding security of the Debtors;

    (c)   has not been within three years before the Petition Date, an investment banker for a security of the Debtors, or an attorney for such investment banker in connection with the offer, sale or issuance of a security of the Debtors;

    (d)   is not and was not, within two years before the Petition Date, a director, officer or employee of the Debtors or of an investment banker of the Debtors; and

    (e)   does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtors or an investment banker of the Debtors or for any other reason.

11.     To the best of my knowledge, except as set forth in accordance with Rules 2014 and 5002 of the Bankruptcy Rules at Exhibit A, (a) KPMG LLP's has no connections with the creditors, any other party-in-interest, or their respective attorneys; and (b) the KPMG LLP partners and professionals working on this matter are not relatives of the United States Trustee of the Northern District of Illinois or any known employee in the office thereof, or any United States Bankruptcy Judge of the Northern District of Illinois.

12.     KPMG LLP has in the past been retained by, and presently and likely in the future will provide services for, certain creditors of the Debtors and other parties-in-interest in

matters unrelated to such parties' claims against or interests in the Debtors or to this chapter 11 case. KPMG LLP currently performs or has previously performed such services for the entities listed in Exhibit A.

13.    KPMG LLP has not provided, and will not provide, any professional services to any of the creditors, other parties-in-interest or their attorneys with regard to any matter related to this chapter 11 case.

14.    KPMG LLP is the United States member firm of KPMG International, a Swiss association, and thus has connections to all of the foreign member firms of KPMG International. Only KPMG LLP is being retained in this matter. KPMG LLP has not performed a comprehensive global search for potential relationships between the remaining foreign KPMG International member firms and the Debtor or other parties in interest. As part of a worldwide association of member firms, we cannot assure that an engagement will not be accepted by other foreign member firms of KPMG International for another party that may bear on this engagement.

15.    As part of its practice, KPMG LLP appears in many cases, proceedings, and transactions involving many different law firms, accountants, financial consultants, and investment bankers in matters unrelated to this bankruptcy. KPMG LLP has not identified any relationship with any such entities, attorneys, accountants, financial consultants, and investment bankers which would be adverse to the Debtor or the Debtor's estate.

16.    If, and when, additional information becomes available with respect to any other relationships which may exist between KPMG LLP, foreign member firms of KPMG LLP International, or their partners and professionals and the Debtors or any other parties-in-interest which may affect this case, supplemental affidavits describing such information shall be filed with this Court.

## Professional Compensation

17.     KPMG LLP's requested compensation for professional services rendered to the

Debtors will be based upon the prior agreed upon amounts contained in the Engagement Letter and

attached hereto as Exhibit B of the Ruud Affidavit.  The Debtors have also agreed to compensate

KPMG LLP at normal and customary hourly rates for professional services rendered in the event

that cost overruns exceed the agreed to monthly amount set forth in the Engagement Letters, dated

May 5, 2000 and July 12, 1999.  See attached Exhibit B.

18.     KPMG LLP, in the normal course of business, revises its hourly rates and KPMG

LLP requests that the rates listed below be revised to the hourly rates that will be in effect at such

time in the event of cost overruns.  The customary hourly rates for accounting, auditing, and tax

advisory services to be rendered by KPMG LLP and applicable herein are as follows:

Accounting, Auditing and Tax Advisory:

| | |
|---|---|
| Partners and Directors | $375 - $600 |
| Senior Managers/Managers | $250 - $500 |
| Senior and Staff Accountants | $125 - $300 |
| Para-professionals | $85 - $105 |

19.     The rates included in this Application are KPMG LLP's normal and customary

rates for accounting, auditing, and tax advisory services.

20.     KPMG LLP has received a retainer for unpaid and not yet invoiced pre-petition

fees of KPMG LLP and KPMG foreign member firms.  Any remaining or unapplied amount of the

retainer shall be held by KPMG LLP, and will be used towards any Court approved post-petition

fees.

21.   KPMG LLP will also seek reimbursement for necessary expenses incurred, which shall include travel, photocopying, delivery service, postage, vendor charges and other out-of-pocket expenses incurred in providing professional services.

22.   KPMG LLP intends to apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.   KPMG LLP has agreed to accept as compensation such sums as may be allowed by the Court pursuant to 11 U.S.C. §§ 330 and 331.   KPMG LLP understands that interim and final fee awards are subject to approval by this Court.

23.   For the year prior to the Petition Date, KPMG LLP was paid approximately $1,100,000 for accounting, auditing, and tax advisory services.

24.   KPMG LLP has received a retainer of $200,000 for unpaid and not yet invoiced fees of KPMG LLP and KPMG foreign member firms.   Any remaining or unapplied amount of the retainer shall be held by KPMG LLP, and will be used towards any Court approved post-petition fees.

25.   KPMG LLP is not a creditor of the Debtors' estate.

26.   In accordance with § 504 of the Bankruptcy Code, I hereby state that there is no agreement or understanding between KPMG LLP and any other entity, other than a member, partner or regular associate of KPMG LLP, for the sharing of compensation received or to be received for services rendered in connection with these proceedings.

12/29/2000 17:00 FAX 312 456 ____01    GREENBERG TRAURIG    @030
d: 12/28/00 12:29PM;  -> Greenberg Traurig CHI 8 ;  Pa___2

ALEX CASTILLO        PHONE NO. : 32976778 6212        Dec. 28 2000 12:29PM P2
                     312 456 8495 8;        12/28/00 12:00PM; JetFax_#92; Page 10/18

27.   This affidavit is provided in accordance with § 327 of the Bankruptcy Code
and Rule 2014 of the Bankruptcy Rules.

28.   I have read the Application, and, to the best of my knowledge, information and
belief, the contents of said Application are true and correct.

*Douglas H Bruel*

Douglas H Bruel
303 East Wacker Drive
Chicago, Illinois 60601-5255

Sworn to and subscribed before me this _____
day of _____, 2000

_____
        Notary Public

-9-

# EXHIBIT A

This information is being provided in connection with the Affidavit of Douglas H. Ruud, a partner of KPMG LLP, in support of the Application for Order Authorizing the Retention and Employment of KPMG LLP as Accountants, Auditors, and Tax Advisors to the Debtors. KPMG LLP currently performs or has previously performed accounting, auditing, tax advisory, or consulting services in matters unrelated to this chapter 11 case for the following entities:

## UNDERWRITERS

Bear, Stearns & Co. Inc.
Donaldson, Lufkin & Jenrette Securities Corporation
State Street Bank and Trust Company

## SHAREHOLDERS

Quantum Corporation
Quasar International Fund

## MAJOR CONTRACTS

Johnson Worldwide Associations, Inc.
Volvo Penta of the Americas, Inc.
Polaris Industries Inc.,
Arctic Cat, Inc.,
Kawasaki Heavy Industries, Ltd.,
Suzuki Motor Corporation
Pro Line
Alumacraft Boat Company (Former Relationship)

## LENDERS

NationsBank of Texas, NA (Bank of America)
Bank of America
Fleet Capital Corporation
American National Bank
CIT Group
Transamerica Business Credit

## MAJOR CREDITORS (DOMESTIC ENGINES; TOP 50; >$100K OUTSTANDING)

PPG Industries
Microprecision Delavan

Intrepid Molding Inc.
Eaton Corporation
Arrow Electronics, Inc.
JB Hunt Transport Inc.
Deutsch Industrial Products (Deutsch Financial Services)
Delta Systems Inc.
Dana Corporation
Inno Tech Industries Inc.
NTN Bearing  Corp of America
Johnson Electric Automotive Inc.
Federal Mogul Corp
Lord Corporation
Morton Custom Plastics LLC
Volvo Penta North America
Torrington Co., The (Former Relationship)
Hypro Inc. (Former Relationship)
Atlas Industries (Former Relationship)

## OMC ALUMINUM BOAT GROUP INC. TOP 20 CREDITORS (12/3/00)

Teleflex Inc.

## OMC FISHING BOAT GROUP INC. TOP 20 CREDITORS (12/3/00)

Ashland Chemical Inc.
BH Electronics Inc.
Interstate Batteries
Cook Composites & Polymers Co.
Quality Manufacturing

## OMC RECREATIONAL BOAT GROUP INC./RECREATIONAL BOAT GROUP LP TOP 20 CREDITORS 12/3/00)

Cook Composites & Polymers Co.
Graham Creative Sales
Taylor Made Systems
G & T Industries
Matrix Composites Inc.
Volvo Penta of America
C.P.S. Distributors Inc.
Inland Plywood Co. (Former Relationship)
Richland County (Former Relationship)

**MAJOR LITIGANTS**

William Brooks
H.C Smith Investments, LLC

**PROFESSIONALS**

Bingham Dana LLP
Davis Polk & Wardwell
Development Specialists, Inc.
Houlihan Lokey Howard & Zukin Capital
Paul Weiss Rifkin Wharton & Garrison
Sidley & Austin

**FLOORPLAN FINANCING COMPANIES**

Transamerica Commercial Finance Corporation
Textron Financial Corporation
Deutsche Financial Services
Bombardier Capital Ltd.

**9 1/8th SINKING FUND DEBENTURES**

Continental Illinois Nat'l. Bank & Trust Company of Chicago

**7% CONVERTIBLE SUBORDINATED DEBENTURES**

LaSalle National Bank

**MEDIUM TERM NOTES**

Salomon Brothers, Inc.
Merrill Lynch Capital Markets

**GEORGIA IRB**

Development Authority of Clayton County

**FLORIDA IRB**

Manatee County, Florida

Capital Bank

## CANAWILL PREMIUM FINANCE AGREEMENT

Aon Risk Services

## MAJOR BONDHOLDERS OF 10.75% SENIOR NOTES DUE 2008

The Bank of New York
Bankers Trust Company
BNP Paribas Securities Corp.
Brown Brothers Harriman & Co.
BT Alex Brown Incorporated
Chase Bank of Texas, N.A.
Goldman, Sachs & Co.
Investors Bank & Trust Company
Lehman Brothers, Inc.
Merrill Lynch Pierce Fenner & Smith, Inc.
Salomon Smith Barney Inc.
SBC Trust Company
U.S. Bank National Association

## MAJOR BONDHOLDERS OF 9.125% SENIOR NOTES DUE 2017

Boston Safe Deposit & Trust Company
Chase Manhattan Bank
Charles Schwab & Co.
Dain Rauscher Incorporated
Firstar Bank, N.A.
First Clearing corp.
Fiserv Correspondent Services, Inc.
ING Barings LLC
Miller, Johnson & Kuern, Inc. or MJK Clearing
Paine Webber Incorporated
Prudential Securities Incorporated
Raymond, James & Associates, Inc.
Southwest Securities, Inc.
Stifel, Nicolaus & Company Incorporated

U.S. Bancorp Investments, Inc.
U.S. Bancorp Piper Jaffray Inc.



303 East Wacker Drive                        Telephone 312 665 1000
Chicago, IL 60601-5212                        Fax 312 665 6000

July 12, 1999

## PRIVATE & CONFIDENTIAL

Mr. Mark O. Vachalek
Outboard Marine Corporation
100 Sea Horse Drive
Waukegan, IL 60085

Dear Mr. Vachalek:

KPMG LLP ("KPMG") looks forward to serving as Outboard Marine Corporation's
(OMC) tax outsourcing provider. This letter ("Agreement") contains the terms and
conditions of your engagement of KPMG.

### Our Understanding

It is our understanding that OMC desires a service provider to help it meet the tax
department compliance reporting deadlines in an accurate, timely, and quality manner.
Additionally, OMC desires access to resources for day-to-day tax research to support the
compliance function. Specifically, OMC is seeking four individuals to be staffed *on-site*
at OMC on a full-time basis to work together as a team with the existing OMC Director
and Assistant Director of Taxes. In order to meet these needs, KPMG will provide the
requisite staffing pursuant to an outsourcing arrangement. In accordance with firm
policy, KPMG will sign all income and related franchise/excise tax returns covered by
this Agreement as "Preparer".

### OMC Responsibility and Control

It is the responsibility of OMC to:

> ➤ Designate a management-level individual or individuals to be responsible for
>   the services being provided.

> ➤ Evaluate the adequacy of the services performed and any findings that result.

> ➤ Make management decisions, including accepting responsibility for
>   overseeing the results of the services.

> ➤ Establish and maintain internal controls, including monitoring ongoing
>   activities.

OMC acknowledges that KPMG will not perform management functions nor make
management decisions.



-12/29/2000  16:53 FAX 312 456 6101    GREENBERG TRAURIG    ☐003
  12-20-00    03:30pm    From-KPMG L                           3126651889              T-118  P.13/83  F-426

Mr. Mark O. Vachalek
07/12/99
Page 2

OMC retains sole and unilateral right to control the selection and prioritization of
projects, including final review and approval of quality. OMC will determine the work
that will be done on-site based on the technical capabilities and skill sets, as well as
based on the available time of the on-site staff. KPMG will determine how the projects
will be completed. For purposes of this Agreement, available time is defined as 2,060
hours per team member per year, for a total of 8,240 available hours annually. In the
event that OMC requires additional hours, KPMG will provide other temporary staff
equivalent in experience to the on-site staff, for supplemental compliance related work
only, at a rate of $65 per hour.

From time to time, as OMC deems necessary, OMC and KPMG tax professionals will
meet to discuss OMC's business and potential tax planning issues, including a meeting
to discuss the tax return and the federal and state filing positions prior to the signing of
the income tax returns.

## Skill Sets of Personnel Provided to OMC
It is the responsibility of KPMG to provide OMC with individuals who meet the general
professional requirements for the positions that are to be staffed by our personnel. The
individuals will possess the appropriate educational background and professional
experience necessary to perform their job responsibilities. While these individuals may
not possess specific skills related to tax department reengineering, systems design or
programming, they will have the aptitude to develop the necessary skills required to
work with various types of financial and tax software, given adequate supervision and
training by OMC personnel. As KPMG employees, the individuals will also have access
to tax "best practices" training conducted by our Tax Management Solutions[sm] practice.

## In-Scope Services
Based on our discussions with OMC personnel and information provided to KPMG, the
following is a list of the services included in this engagement:

➤  Preparation and review of Federal and state income and franchise tax returns,
    including the calculation and preparation of estimated tax payments and extensions.

➤  Preparation of the calculation of OMC's overall foreign loss through December 31,
    1998.

^12/29/2000 16:53 FAX 312 456 8101   GREENBERG TRAURIG   ☑004
12-20-00  03:30pm   From-KPMG L   3128651888   T-119  P.14/33  F-426

Mr. Mark O. Vachalek
07/12/99
Page 3

➤ Preparation and review of the state amended income tax returns as the result of the
   IRS audit of the OMC FYE 1992 to 1994 Federal income tax returns.

➤ Preparation and review of the Federal and state income tax returns amended as the
   result of carryover adjustments from the IRS audit of the OMC FYE 1992 to 1994
   Federal income tax returns.

➤ Assistance with OMC's reengineering of the income tax compliance process to fully
   utilize the increased efficiencies inherent in the new J.D. Edwards ("JDE") AS-400
   and Hyperion information systems.  The goals of such reengineering are to move
   significantly towards a paperless compliance process, and to reduce the income tax
   compliance time to an average of fifty percent full time equivalent professional time.
   The North American Engine Operations are implementing the JDE Information
   Systems during the 1999 calendar year.  The various OMC Boat Companies and
   OMC's International Operations will be implementing the JDE Information Systems
   during the 2000 calendar year.  As stated earlier, KPMG personnel will have the
   aptitude to develop the necessary skills to assist in this process, but not the technical
   skills required for systems design and integration.  If OMC requires this type of
   assistance, it is an out-of-scope service.

➤ Assistance with OMC's implementation and transition to the Vertex software
   package for calculating and reporting sales & use tax and property taxes.  This will
   encompass the identification of all taxable and non-taxable transactions. As stated
   earlier, KPMG personnel will have the aptitude to develop the necessary skills to
   assist in this process, but not the technical skills required for systems design and
   integration.  If OMC requires this type of assistance, it is an out-of-scope service.

➤ Assistance with state audits consistent in volume and frequency with those over the
   past three years, such as the Illinois and Indiana audits currently in progress and the
   upcoming New York state audit.

➤ Gathering of information and coordination of preparation of the Canadian Federal
   and Provincial income tax matters, including any applicable extensions, returns and
   related estimated tax payments, and assisting with the related audits.  The actual
   preparation and review of these returns will be out-of-scope.

➤ Preparation and review of the Canadian GST/PST/HST returns and assisting with
   applicable audits, with the assistance of KPMG Canada, as required.

12/29/2000 16:53 FAX 312 456 ___ 1    GREENBERG TRAURIG    ☐005
12-20-00  03:30pm  From-KPMG LLP    3126651888    T-118  P.15/33  F-426

**KPMG**

Mr. Mark O. Vachalek
07/12/99
Page 4

➤ Preparation of United States Forms 5471s, 1118s, 1042s, and 720.

➤ Assistance with the preparation of work papers in a manner that facilitates the development of FAS 109 on a quarterly basis for the first year of the contract and on a monthly basis thereafter.

➤ Preparation, as applicable, and review of the U.S. personal property and real estate tax returns.

➤ Preparation, as applicable, and review of the monthly/quarterly sales and use tax returns for the U.S. States taxing jurisdictions.

➤ Preparation and review of the U.S. State Annual Report Filings.

➤ Preparation of responses to inquiries by the IRS, state, and other U.S. taxing authorities regarding income, sales and other non-payroll taxes for OMC review.

➤ Provide day-to-day research, such as responses to tax department customer inquiries, compliance-related research and other research projects as available time and capabilities permit. These research projects and memorandums will be assigned and supervised by the OMC Director or Assistant Director of Taxes. These research and related planning projects, including technical memorandums, will be documented and reviewed, at all times, in a manner proportionate to the materiality of the amount of tax involved. If KPMG, due to its policies and procedures, solely needs to perform incremental work on a project that OMC does not accept as a cost-effective, value-added service, such work will be performed at no cost to OMC.

To the extent the on-site team does not have available time to identify, research or implement a non-KPMG proprietary tax planning strategy, such work is not included in this Agreement, and the level of project related work and fees will be negotiated separately with the OMC selected service provider. To the extent that any planning-related research is the result of a specific, confidential KPMG proprietary tax planning strategy, such research and other related work shall be considered as part of an out-of-scope project, and the associated level of work and fees will be subject to good faith negotiation before such research is begun in earnest.

Mr. Mark O. Vachalek
07/12/99
Page 5

> Recommendation and communication of prudent and feasible tax savings strategies
  identified in the normal course of tax compliance, as well as to assist in the data
  gathering required to implement the strategies.  KPMG partner or manager
  involvement will depend on the materiality of the tax amounts involved.

> KPMG will sign as "Preparer", where applicable, for all returns we prepare.  A local
  office partner or manager will review returns and advice memos to the extent
  required by KPMG policies and procedures

> Assistance in the transfer of tax depreciation detail from outside vendors to the JDE
  fixed assets system and review of the tax depreciation calculation for correctness on
  a yearly basis.


**Out-of-Scope Services**
Services not listed above are not included in this Agreement.  It is our understanding that
currently the following activities are being performed by legal, treasury, or other non-tax
departments and are not intended to be activities for which KPMG will be responsible as
part of this Agreement:

- Payroll taxes, FICA, employee benefits compliance, and related information
  reporting.
- State registration and licensing requirements, including withdrawal procedures.
- Unclaimed property reports.

Additionally, KPMG will perform services related to fixed assets such as responding to
questions and providing guidance as to the appropriate "lives" and "methods," spot
checking for additions and deletions, and indicating the proper tax treatment.  However,
KPMG will not be responsible for maintaining book or tax depreciation, monitoring of
additions and disposals, or reconciling depreciation reports to the general ledger.

OMC has informed KPMG that the 1992-1994 Federal audit is concluding, and that a
tentative agreement has been reached with the IRS under which the OMC Federal
income tax returns for the 1995 –1997 years will not be audited.  As a result, the Federal
audit is not within the scope of this engagement, and KPMG does not anticipate
participating in any Federal income tax audits as part of this Agreement.   Should the
nature of the OMC Federal and State audits significantly change from the description
above, an agreed upon adjustment to resources and fees may be negotiated.

Mr. Mark O. Vachalek
07/12/99
Page 6


Additional out-of-scope services include, but are not limited to the following:

- Preparation or review of any tax returns, information reports or other tax-related filings or documents of any type required by any jurisdiction outside of the United States, except as previously stated as in-scope services for Canada.
- Any tax compliance or consulting services solely related to the shareholders, officers, directors, or employees of OMC.


Additionally, KPMG fully intends to work with OMC to determine and implement tax strategies to add value to OMC's tax process, which increases shareholder value. Many of these value-added strategies and tax products require expertise and specialists for work that will be beyond the technical competencies and capabilities of the on-site staff. KPMG's fees for various tax consulting and advisory services will be based upon the experience level of the professionals involved. If OMC determines KPMG is to be the supplier of these services, on a project-by-project basis, OMC and KPMG will negotiate in good faith to establish whether a project warrants value-added versus per diem billing. If it is agreed a project shall be subject to per diem billing, OMC will receive a fifteen-percent discount from KPMG's then relevant hourly per diem rates. Regardless of the agreed billing arrangement, separate engagement letters will be submitted and approved for such services.

### Term of the Engagement
This engagement will begin at an agreed upon date (the "Effective Date") after the acceptance and signing of this Agreement and last a duration of three years (thirty-six months) from that date. It is our understanding that within this period it will be KPMG's responsibility to prepare the short year returns for the year ended December 31, 1998, as well as the tax years ending December 31, 1999 and 2000. If the tax returns for the year ending December 31, 2001 are not completed at the end of the three-year period, the term may be extended to complete the 2001 returns, by mutual agreement.

This Agreement may be terminated by either party under the provisions contained in Appendix F.

### Our Professional Fees
Based on our understanding of your existing tax organization size and structure, our professional fees associated with this engagement are provided below.

| | |
|---|---|
| Year 1 | $365,000 |
| Year 2 | $385,000 |
| Year 3 | $405,000 |

12/29/2000 16:54 FAX 312 4  101          GREENBERG TRAURIG                              ☐ 008

12-20-00   03:31pm   From-KPMG LLP                           3125651588         T-115   P.18/33   F-426

刊初刊

Mr. Mark O. Vachalek
07/12/99
Page 7


The fees, as indicated above, are exclusive of out-of-pocket expenses. Reimbursement
of KPMG actual out-of-pocket expenses, not to exceed ten percent of the annual
professional fee, will be billed as incurred. These out-of-pocket fees must be reasonable
and will not include any moving expenses or meal expenses for on-site employees. The
on-site staff will use good faith and reasonable efforts to either car pool or to use
available public transportation. Reimbursement of expenses in excess of $20.00 shall
include a copy of the receipt, where applicable.

The above stated fees are valid for a period of 30 days from the date of this letter.


**Adjustment to Fees**
The outsourcing fee may be increased or decreased by the mutual agreement of both
parties because of significant changes in scope. Currently, the scope of this engagement
is based on the volume and nature of work identified in the "In-Scope Services" section

Changes in scope include:

- Significant changes in the level of tax compliance work resulting from acquisitions
  or divestitures;

- Significant changes in the information management systems other than the JDE
  and Hyperion implementations previously discussed; and

- Increases in compliance related to the implementation of tax planning strategies.


We will evaluate these events to determine the impact of the change in the resources
required by KPMG. If we determine, and OMC agrees, that the event causes an increase
in service that we cannot fulfill without additional resources, then KPMG and OMC will
work together in good faith to either adjust the service level or increase the fee.
Likewise, changes in scope that cause a material reduction in services and resources will
result in a mutually agreed upon decrease in the original fee arrangement.


**Personnel**
KPMG reserves the right to determine the personnel assigned to perform the in-scope
services of this engagement and to replace, rotate or reassign such personnel during the
term of the engagement. KPMG shall have the sole and unilateral right to control and
supervise the activities of KPMG personnel who provide services. If OMC reasonably

Mr. Mark O. Vachalek
07/12/99
Page 8

and in good faith determines that it is not in the best interest of OMC for a particular
KPMG employee to continue to work under the Agreement, then unless otherwise
prohibited by applicable law KPMG shall replace that individual with a person of
suitable ability and qualifications.

During the Term of this Agreement and for a period of one year following the expiration
or termination of this Agreement, each party agrees not to hire or solicit for employment
any personnel of the other party who are assigned to work under this Agreement, unless
mutually agreed upon.

**OMC's Responsibilities**
In addition to the other obligations of OMC set forth elsewhere in this engagement letter,
OMC agrees to provide or make available:

➢ All information, documentation and materials relating to OMC's operations
necessary for KPMG to perform its duties and obligations, including reasonable
access to all employees and personnel affected by the services provided herein. All
information provided that requires review by KPMG's on-site tax staff will not be
construed as part of the annual audit process;

➢ Adequate physical space including furniture and fixtures, including copiers, fax
machines, telephones, OMC's internal voice mail and electronic mail systems;

➢ Access to OMC systems necessary to the performance of KPMG's duties; including
but not limited to the latest releases of Arthur Andersen's AACTS tax compliance
software or other appropriate software if a new vendor is selected;

➢ Transitional assistance to KPMG in all matters relating to this Agreement;

➢ Access to and use of OMC's computer network as required and mutually agreed
upon including sufficient file server space for shared electronic files;

➢ MIS support for OMC's computer resources including file server maintenance,
workstation support and file server backup;

➢ General office supplies;

➢ Continued subscriptions to tax research services currently in use; and

➢ Access to OMC's customized compliance tools, electronic versions of Excel models
and files.

12/29/2000 18:55 FAX 312 456 4401          GREENBERG TRAURIG                    ☑010
12-20-00   03:32pm   From-KPMG LLP                    3126651000          T-118   P.20/33   F-425

Mr. Mark O. Vachalek
07/12/99
Page 9


**KPMG's Responsibilities**
KPMG's services hereunder, shall be performed in a professional manner, consistent
with AICPA and KPMG professional practice standards

KPMG shall maintain insurance as follows: (a)Commercial General Liability covering
claims for bodily injury, death, personal injury, or property damage with minimum
limits of $1,000,000 each occurrence and in the aggregate and naming OMC as an
additional insured as its interest may appear with respect to this Agreement;
(b)Comprehensive Automobile Liability, covering the ownership, operation and
maintenance all owned, non-owned and hired automobiles used in connection with the
performance of this Agreement, with minimum limits of $500,000 each
occurrence;(c)Workers' Liability or "Stop Gap" coverage with limits $100,000 each
accident; and professions errors and omissions insurance in an amount of not less than
$1,000,000.  OMC shall be given thirty (30) days advance written notification if any
cancellation or material change of such policy.  Certificate(s) of insurance evidencing
coverage shall be forwarded to OMC prior to Services being provided and upon any
renewal of such insurance during the term of this Agreement.


**Appendix**
The following terms and conditions are included by appendix and are attached to this
Agreement.  They are included herein as if written below verbatim:

| | |
|---|---|
| Appendix A | Licenses and Proprietary Rights |
| Appendix B | Warranties |
| Appendix C | Notices |
| Appendix D | Dispute Resolution and Arbitration |
| Appendix E | Confidentiality |
| Appendix F | Termination |
| Appendix G | Payment Terms |


**Entire Agreement:**
This Agreement constitutes the entire agreement between the parties.  There are no
representations, warranties, understandings or agreements relating to the subject matter
hereof which are not fully expressed in this Agreement.  No amendment, modification,
waiver or discharge of this Agreement shall be valid unless in writing and signed by an
authorized representative of the party against whom such amendment, modification,
waiver or discharge is sought to be enforced.

12/29/2000 16:55 FAX 312 456 5    GREENBERG TRAURIG    9125561538    T-118 P.21/33 F-426    @011

12-20-00  03:32pm  From-KPMG LLP

Mr. Mark O. Vachalek
07/12/99
Page 10

KPMG's maximum aggregate liability to OMC arising out of or relating to services
rendered under this letter shall be limited to the amount of fees paid for these services
for a one-year period. In the event of a claim by a third party arising out of or relating to
services under this letter, OMC will indemnify KPMG LLP and its personnel from all
such claims, liabilities, costs and expenses, except to the extent determined to have
resulted from the gross negligence or willful and wanton misconduct of KPMG LLP or
its personnel.

## Miscellaneous

Both OMC and KPMG agree that KPMG will act as an independent contractor in the
performance of its duties under this Agreement. Accordingly, KPMG shall be
responsible for payment of all taxes, filings and Social Security Administration reporting
arising out of KPMG's activities in accordance with this Agreement. KPMG hereby
waives any and all rights or claims to participation in or benefits under any and all of
OMC's welfare and pension plans.

All work product and other documents prepared by KPMG in connection with the
services covered by this Agreement shall become the property of OMC, with the
exception of information related to confidential KPMG proprietary tax planning
strategies. Thereafter, OMC shall have full right to use such work product and other
documents for any purpose without any claim on KPMG's part for additional
compensation for such use. KPMG shall not place any restrictive legend or proprietary
notice on any of the foregoing which are inconsistent with the rights of OMC hereunder,
and KPMG hereby authorizes OMC to obliterate or disregard any such legend or notice
appearing on same except the following. KPMG retains the right to indicate on any
written advice that it is for OMC's information and use only and is not to be provided to
any third party without our written consent. KPMG retains the right to access any tax
return-related work papers that are maintained by OMC. See the confidentiality
provisions contained in Appendix E.

If OMC's corporate retention policy for the above mentioned work product and other
documents prepared by KPMG is less than six years, KPMG will be responsible for
making copies of all information required to meet its own retention requirements.

KPMG may not enter into any contract or otherwise bind OMC in any way without the
prior written authority from OMC. Any contracts or other agreements entered into by
KPMG on behalf of OMC without the requisite authority shall be null and void and non-
binding on OMC.

*12/29/2000  16:56 FAX  312  456  5      GREENBERG TRAURIG                    ☒012

12-29-00  03:32pm  From-KPMG LLP              8126651593        T-118  P.22/33  F-426

KPMG

Mr Mark O. Vachalek
07/12/99
Page 11

This Agreement shall inure to the benefit of and be binding upon the parties hereto and
their respective successors, heirs, representatives and assigns as the case may be

Year 2000 compliance is required for all Services provided by KPMG under this
Agreement   Year 2000 Compliance shall be defined as the ability to continue to provide
services or deliver products and to continue normal use of a system or item of software
such that neither the performance nor the functionality of the system or software will be
affected by any changes to the date format (no value for current date or any
manipulations of date values will cause interruption to the system) caused by the advent
of the year 2000   KPMG warrants that each item of its hardware, software or firmware
used in connection with services provided hereunder is Year 2000 compliant.

**Amendments:**
All changes in this Agreement or its Schedules require the mutual written agreement of
the parties.

Please indicate your acceptance of the terms and conditions of this Agreement by
signing below and returning one signed copy to KPMG.

If you have any questions, please contact me at (317) 951-2431 or Kathy Hannan at
(312) 665-5312.

Very truly yours,

*KPMG LLP*

Lawrence G Keyler
Partner
*KPMG Tax Management Solutions℠*

Kathy Hopinkah Hannan
Partner-in-charge Tax
Chicago-Metro Area

12/29/2000 16:56 FAX 312 456 5    GREENBERG TRAURIG    3126651099    ☒013

12-20-00    02:39pm    From-KPMG LLP    3126651099    T-118    P.23/33    F-426

Mr Mark O. Vachalek
07/12/99
Page 12

ACCEPTED by Outboard Marine Corporation

x  _Andrew P. Hines_
Authorized Signature

_Executive V.P. + CFO_
Title

_7/15/99_
Date

cc:    Scott Swing – KPMG/Chicago
       James M. Pezzella - KPMG/Chicago
       Cecilia McGinty – KPMG/Atlanta
       Lou Ebling – KPMG/Chicago

12/29/2000 16:56 FAX 312 456 5121    GREENBERG TRAURIG    ☑014

12-20-00    03:33pm    From-KPMG LLP    3126651680    T-116    P.24/33    F-426

Mr. Mark O. Vachalek
07/12/99
Page 13

## Appendix A - Licenses and Proprietary Rights.

A.1    OMC hereby grants to KPMG a nonexclusive, nontransferable license or right to use, during the Term, for the purpose of providing KPMG with access to and use of any OMC-owned systems and technology, proprietary elements, and other OMC-owned trade secrets or know-how as are reasonably necessary to enable KPMG perform its Services. KPMG's use on OMC's behalf of any preexisting software and documentation owned by a third party shall be governed by the then current written license agreement required by such third party which agreement shall, unless otherwise agreed by the parties, be signed by and be solely between OMC and the third party.

A.2    KPMG hereby grants to OMC a nonexclusive, nontransferable license or right to use, during the Term, for the purpose of providing the use of any KPMG-owned systems and technology, proprietary elements, and other KPMG-owned trade secrets or know-how as are reasonably necessary to enable KPMG to provide Services. OMC shall receive no right or interest to any preexisting proprietary products owned by KPMG or any third party and used by KPMG to perform under this Agreement, including but not limited to KPMG's proprietary tools and methodologies (e.g., audit approaches) except to the extent otherwise agreed by the parties in a separate written agreement signed by authorized representatives of each party.

12/29/2000 16:57 FAX 312 456 51__    GREENBERG TRAURIG    ☒017

12-20-00   03:34pm   From-KPMG LLP    3128551688    T-118   P.27/33   F-426

Mr. Mark O. Vachalek
07/12/99
Page 16

## Appendix C - General

C.1    Notices. Whenever one party is required or permitted to give notice to the other, such notice shall be deemed given: when delivered by hand; one day after being given to an express courier with a reliable system for tracking delivery; when telecopied or faxed and receipt confirmed; or three (3) days after the day of mailing, when mailed through United States mail, registered or certified mail, return receipt requested, postage prepaid, and addressed as follows:

In the case of KPMG:

> KPMG LLP
> 303 East Wacker Drive
> Chicago, IL 60601
> Attention: Scott E. Swing

and:

> KPMG LLP
> 280 Park Avenue
> New York, NY 10017
> Attn: General Counsel

With a copy to:

> KPMG LLP
> 135 North Pennsylvania Street
> Indianapolis, Indiana 46204
> Attention: Lawrence G. Keyler

12/29/2000 16:57 FAX 312 456 5    GREENBERG TRAURIG    ☒018
9126651689    T-119   P.28/33   F-425
12-20-00   03:34pm   From-KPMG LLP

Mr. Mark O. Vachalek
07/12/99
Page 17

In the case of OMC:

> Outboard Marine Corporation
> 100 Sea Horse Drive
> Waukegan, IL 60085
> Attention: Mark O. Vachalek

With a copy to:

> Outboard Marine Corporation
> 100 Sea Horse Drive
> Waukegan, IL 60085
> Attention: General Counsel

Either party may from time to time change its address for notification purposes by giving the other thirty (30) days' prior written notice of the new address and the date upon which it shall become effective.

C.2   **Survival.** Notwithstanding any provisions of this Agreement to the contrary, any provision of this Agreement that by its terms, nature or operation of law should survive the termination or expiration of this Agreement will survive.

Mr. Mark O. Vachalek
07/12/99
Page 18

## Appendix D - Dispute Resolution and Arbitration

D.1    Dispute Resolution.  Issues requiring resolution, other than those for
which injunctive relief is appropriate which either party may seek in a court of
competent jurisdiction, will first be addressed by Mark O. Vachalek and Kathy Harman
(or by another OMC or KPMG individual mutually agreed to by both parties).  If either
representative determines in good faith that they will not be able to resolve the issues
through continued negotiation, the issues will then be escalated to higher-level executive
officers of each party   If either such higher level executive officer determines in good
faith the issues will not be able to be resolved through continued negotiation, the issues
will be referred to arbitration pursuant to the arbitration process contemplated by this
Agreement   OMC and KPMG agree that except for those issues requiring injunctive
relief, the issue resolution procedure will have to be exhausted prior to either party
proceeding to arbitration to resolve the issue.  At each level, the designated
representatives of the parties may utilize such practices and procedures for resolving the
issues as they determine in their discretion are most likely to result in an early and
amicable resolution.

D.2    Arbitration.  All disputes that cannot be resolved pursuant to the internal issue
resolution process identified above, other than those for which injunctive relief is
appropriate which either party may seek in a court of competent jurisdiction, will be
submitted to and settled by final and binding arbitration.  Any dispute which cannot be
resolved as set forth above, will be resolved by final and binding arbitration in Chicago,
Illinois by a panel of three (3) arbitrators in accordance with and subject to the
Commercial Arbitration Rules of the American Arbitration Association ("AAA") then in
effect.  Following notice of a party's election to require arbitration, each party will
within thirty (30) days select one arbitrator, and those two arbitrators will within thirty
(30) days thereafter select a third arbitrator.  If the two arbitrators are unable to agree on
a third arbitrator within thirty (30) days, the AAA will within thirty (30) days thereafter
select such third arbitrator.  Discovery as permitted by the Federal Rules of Civil
Procedure then in effect will be allowed in connection with arbitration to the extent
consistent with the purpose of the arbitration and as allowed by the arbitrators.  During
any arbitration proceedings, KPMG will continue to provide Services, and OMC will
continue to make payments to KPMG in accordance with this Agreement.  The fact that
arbitration is or may be allowed will not impair the exercise of any termination rights
under this Agreement.  The arbitration panel will be authorized to render awards of
monetary damages and equitable relief (direction to take or refrain from taking action),
or both.  The arbitration panel may, at its discretion, order one party to reimburse the
other party for all or any part of (i) the expenses of the arbitration paid by the other
party, or (ii) the attorneys' fees and other expenses reasonably incurred by the other party

12/29/2000 16:58 FAX 312 456 5191    GREENBERG TRAURIG    ☒020
3126551889    T-118  P.30/33  F-428
12-20-00  09:34pm  From-KPMG LLP

Mr. Mark O. Vachalek
07/12/99
Page 19

in connection with the arbitration. Judgment upon the award rendered in any such
arbitration may be entered in any court of competent jurisdiction, or application may be
made to such court for a judicial acceptance of the award and an enforcement, as the law
of such jurisdiction may require or allow.

12/29/2000 16:56 FAX 312 358 5    GREENBERG TRAURIG    ☒015

12-20-00  03:33pm  From-KPMG LLP              3126551889        T-118  P.25/33  F-428

Mr. Mark O. Vachalek
07/12/99
Page 14

## Appendix B - Warranties

B.1   Warranties. OMC represents and warrants that:

(a) it is a Delaware corporation duly organized, validly existing and in good standing under the laws of the State of Delaware.

(b) it has all requisite power and authority to execute this Agreement and to perform its obligations hereunder;

(c) the execution, delivery and performance of this Agreement has been duly authorized and this Agreement is a valid and binding agreement enforceable in accordance with its terms;

(d) it has obtained or will promptly obtain, as necessary, upon execution of this Agreement, all regulatory and governmental approvals in all jurisdictions where the Services are to be performed to permit KPMG to perform the Services hereunder;

(e) the documents, data and other information provided to KPMG and relied on by KPMG to prepare its prices and to perform the Services were, to the best of OMC's knowledge, true, complete and accurate at the time provided;

(f) OMC shall perform its responsibilities under this Agreement in a manner that does not infringe, or constitute an infringement or misappropriation of, any patent, invention, trade secret, copyright, trademark, proprietary information, nondisclosure or other proprietary right of any third party (collectively, "Business Property Rights") and that no claims have been asserted or threatened by any third party with respect to OMC's ownership or use of any of the OMC resources and there is no valid basis for any such claim and the use or ownership by OMC, and from and after the Effective Date, the use or ownership by KPMG in a manner comparable to the use or ownership by OMC prior to the Effective Date, of the OMC resources does not, to the best of OMC's knowledge, infringe, or constitute an infringement or misappropriation of any Business Property Rights.

Mr. Mark O. Vachalek
07/12/99
Page 15

**B.2**   KPMG Warranties. KPMG represents and warrants that:

(a) it is a Delaware registered limited liability partnership;

(b) it has all requisite power and authority to execute this Agreement and to perform its obligations hereunder.

(c) the execution, delivery and performance of this Agreement has been duly authorized and this Agreement is a valid and binding agreement enforceable in accordance with its terms;

(d) KPMG shall perform its responsibilities under this Agreement in a manner that does not infringe, or constitute an infringement or misappropriation of, any patent, invention, trade secret, copyright, trademark, proprietary information, nondisclosure or other proprietary right of any third party (collectively, "Business Property Rights") and that no claims have been asserted or threatened by any third party with respect to KPMG's ownership or use of any of the KPMG resources and there is no valid basis for any such claim and the use or ownership by KPMG, and from and after the Effective Date, the use or ownership by OMC in a manner comparable to the use or ownership by KPMG prior to the Effective Date, of the KPMG resources does not, to the best of KPMG's knowledge, infringe, or constitute an infringement or misappropriation of any Business Property Rights

**B.3** Disclaimer. THIS IS A SERVICES ENGAGEMENT AND SHALL BE PERFORMED IN A PROFESSIONAL MANNER, CONSISTENT WITH AICPA AND KPMG PROFESSIONAL PRACTICE STANDARDS. KPMG WARRANTS THAT IT WILL PERFORM SERVICES HEREUNDER IN GOOD FAITH. EXCEPT FOR THE WARRANTIES EXPRESSED IN THIS SECTION, KPMG DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

12/29/2000 16:58 FAX 312 456 5191   GREENBERG TRAURIG   ☑021
12-20-00   03:35pm   From-KPMG LLP   3126661693   T-118  P.21/23  F-421

Mr Mark O. Vachalek
07/12/99
Page 20

## Appendix E - Confidentiality

E.1     OMC and KPMG each acknowledge that during the course of this engagement each of them (as a "Receiving Party") will gain access to confidential and/or proprietary information ("Confidential Information") of the other party (the "Disclosing Party"). Confidential Information shall not include information that: (i) is or becomes in the public domain other than by a breach of this agreement by a Receiving Party; (ii) is independently developed by a Receiving Party without violation of this agreement; (iii) is independently known to a Receiving Party at the time of receipt through no unlawful act of that party; (iv) becomes known to a Receiving Party from a source other than the Disclosing Party, which source is not subject to any restriction on disclosure.   Each Receiving Party shall use reasonable measures to maintain the confidentiality of a Disclosing Party's Confidential Information and shall use it only for purposes of this agreement, and shall not disclose such Confidential Information without prior written consent of the Disclosing Party except that KPMG may use or disclose Confidential Information as may be necessary by reason of legal or regulatory, or applicable professional standards requirements including any subpoena or other similar form of process and including requirements of independent auditors applicable to such party and its business. The requested party will be required to give notice of the required disclosure to the owner of the information.

E.2     Upon any termination or conclusion of this agreement all Confidential Information shall be returned to its Disclosing Party; provided however that KPMG may retain, subject to the terms of this agreement, copies of OMC confidential information required for compliance with applicable professional standards. In addition, OMC agrees that all advice provided by KPMG to OMC, whether written or oral is for OMC's information and use only and will not be provided to any third party without the express written permission of KPMG.

韓國

Mr. Mark O. Vachalek
07/12/99
Page 21


**Appendix F -Termination**

**F.1** If either party materially breaches any of its duties or obligations of this contract, and such breach is not cured, or the breaching party is not diligently pursuing a cure, within thirty days after written notice of the breach, then the non-breaching party may terminate this agreement for cause as of a date specified in such notice.

**F.2** Should OMC default in the payment of any non-disputed amount due and payable under this agreement, and does not cure such default within thirty (30) days after written notice thereof by KPMG, then KPMG may thereafter immediately terminate this agreement.

**F.3** Agreement may be terminated by OMC or KPMG upon default by either party under the Agreement upon written notice thirty (30) days prior to the termination date.

12/29/2000 16:58 FAX 312 456 51    GREENBERG TRAURIG    ☑023

12-20-00  03:15pm  From-KPMG LLP                    9126651000    T-118  P.33/33  F-426

韓韓韓

Mr. Mark O. Vachalek
07/12/99
Page 22

## Appendix G - Payment Terms

Fees for the outsourcing services will be billed in 12 equal monthly installments. The first month's payment will be due at the signing of the contract for services. Terms will be net 45 days.



303 East Wacker Drive
Chicago, IL 60601-5212

Telephone 312 665 1000
Fax 212 665 8000

May 5, 2000

PRIVATE

Mr. James B Pekarek
Vice President and Corporate Controller
Outboard Marine Corporation
100 Sea Horse Drive
Waukegan, Illinois 60085

Dear Jun:

This letter will confirm our understanding of our engagement to provide professional services to
Outboard Marine Corporation (OMC, or the Company).

Audit Services

We will issue a written report upon our audit of the statements of consolidated financial position
of OMC as of December 31, 2000 and 1999, and the related statements of consolidated earnings
and comprehensive income, consolidated cash flows, and changes in consolidated shareholders'
investment for the years then ended, all of which are to be included in the annual report on Form
10-K proposed to be filed by the Company under the Securities Exchange Act of 1934.

We will conduct the audit in accordance with generally accepted auditing standards with the
objective of expressing an opinion as to whether the presentation of the consolidated financial
statements, taken as a whole, conforms with generally accepted accounting principles and our
interpretation of the published rules and regulations of the Securities and Exchange Commission
relative to matters of accounting. It should be understood that our report and the consolidated
financial statements and schedule may be subject to review by the Commission staff and to the
application by them of their interpretation of the relevant rules and regulations.

In conducting the audit, we will perform tests of the accounting records and such other
procedures as we consider necessary in the circumstances to provide a reasonable basis for our
opinion on the consolidated financial statements. We also will assess the accounting principles
used and significant estimates made by management, as well as evaluate the overall consolidated
financial statement presentation.

Our report will be addressed to the board of directors and shareholders of the Company and will
be in a form that is in accordance with the published rules and regulations of the Securities and

12/29/2000 16:59 FAX 312 456 5X█    GREENBERG TRAURIG    ☒ 025

Received: 12/28/00 10:11AM;    -> Greenberg Traurig CHZ 1;   Page

Dec-28-00 10:13am  From-KPMG NTS                   +3128656070    T-662  P.03/08  F-333

James B. Pekarek
Outboard Marine Corporation
May 5, 2000
Page 2


Exchange Commission. We can not provide assurance that an unqualified opinion will be
rendered. Circumstances may arise in which it is necessary for us to modify our report or
withdraw from the engagement. In such circumstances, our findings or reasons for withdrawal
will be communicated to the audit committee.

We will read the other information in your annual report and consider whether such information,
or the manner of its presentation, is materially inconsistent with information, or the manner of its
presentation, appearing in the consolidated financial statements. However, our audit does not
include the performance of procedures to corroborate such other information (including
forward-looking statements).

OMC agrees that all records, documentation, and information we request in connection with our
audit will be made available to us, that all material information will be disclosed to us, and that
we will have the full cooperation of the Company's personnel. As required by generally
accepted auditing standards, we will make specific inquiries of management about the
representations embodied in the financial statements and the effectiveness of internal control,
and obtain a representation letter from management about these matters. The responses to our
inquiries, the written representations, and the results of audit tests comprise the evidential matter
we will rely upon in forming an opinion on the consolidated financial statements.

The management of OMC has responsibility for the consolidated financial statements and all
representations contained therein. Management also has responsibility for the adoption of sound
accounting policies and the implementation of record keeping and internal control to maintain
the reliability of the consolidated financial statements and to provide reasonable assurance
against the possibility of misstatements that are material to the consolidated financial statements.
Management is responsible for adjusting the consolidated financial statements to correct
material misstatements and for affirming to us in the representation letter that the effects of any
uncorrected misstatements aggregated by us during the current audit engagement and pertaining
to the latest period presented are immaterial, both individually and in the aggregate, to the
consolidated financial statements taken as a whole.

An audit is planned and performed to obtain reasonable assurance about whether the
consolidated financial statements are free of material misstatement, whether caused by error or
fraud. Absolute assurance is not attainable because of the nature of audit evidence and the
characteristics of fraud. Therefore, there is a risk that material errors, fraud (including fraud that
may be an illegal act), and other illegal acts may exist and not be detected by an audit performed
in accordance with generally accepted auditing standards. Also, an audit is not designed to
detect matters that are immaterial to the consolidated financial statements.

12/29/2000 16:59 FAX 312 456 51      GREENBERG TRAURIG                    ☑026

Received: 12/28/00 10:11AM;      -> Greenberg Traurig CHI 1;  Page

Dec-28-00  10:10am  From-KPMG GTS                    43126658070          T-662   P.04/03   F-333

KPMG

James B Pekarek
Outboard Marine Corporation
May 5, 2000
Page 3

To the extent that they come to our attention, we will inform management about any material
errors and any instances of fraud or illegal acts. Further, to the extent that they come to our
attention, we will inform the audit committee about fraud and illegal acts that involve senior
management, fraud that in our judgment causes a material misstatement of the financial
statements of OMC, and illegal acts, unless clearly inconsequential, that have not otherwise been
communicated to the committee. In the case of illegal acts which in our judgment would have a
material effect on the consolidated financial statements of the Company, we are also required to
follow the procedures set forth in the Private Securities Litigation Reform Act of 1995, which
under certain circumstances would require us to communicate our conclusions to the Securities
and Exchange Commission.

In planning and performing our audit, we will consider the Company's internal control in order
to determine our auditing procedures for the purpose of expressing an opinion on the
consolidated financial statements and not to provide assurance on internal control.
Furthermore, our audit - including the limited inquiries we will make in connection with Year
2000 issues - is not designed to, and does not, provide any assurance that Year 2000 issues
which may exist will be identified, on the adequacy of the Company's Year 2000 remediation
plans regarding operational or financial systems, or on whether the Company is or will become
Year 2000 compliant on a timely basis. Year 2000 compliance is the responsibility of
management. However, we may communicate matters that come to our attention relating to the
Year 2000 issue which in our judgment may be of benefit to management.

While we are not being engaged to report on OMC's internal control, we will communicate
reportable conditions to you to the extent they come to our attention. Reportable conditions are
significant deficiencies in the design or operation of internal control which could adversely
affect the organization's ability to record, process, summarize and report financial data
consistent with the assertions of management in the consolidated financial statements.

**Quarterly Review Services**

We will review the condensed statement of consolidated financial position of OMC as of March
31, June 30, and September 30, 2000, and the related condensed statements of consolidated
earnings and comprehensive income and consolidated cash flows for the quarterly and year-to-
date periods then ended, which are to be included in the quarterly reports on Form 10-Q
proposed to be filed by the Company under the Securities Exchange Act of 1934.

James B. Pekarek
Outboard Marine Corporation
May 5, 2000
Page 4


We will conduct our reviews in accordance with the professional standards set forth in Statement on Auditing Standards No. 71 issued by the American Institute of Certified Public Accountants  Our procedures will be substantially less in scope than an audit of financial statements performed in accordance with generally accepted auditing standards, and accordingly, we will not express an opinion on the Company's quarterly financial information.

Our reviews will consist primarily of inquiries of Company personnel and analytical procedures applied to financial data and we will require a representation letter from management. It should be understood that the management of OMC is responsible for the representations contained in the Company's quarterly financial information.

A review does not contemplate tests of controls or accounting records, tests of responses to inquiries by obtaining corroborating evidential matter, and certain other procedures ordinarily performed during an audit. Thus, a review does not provide assurance that we will become aware of all significant matters that would be disclosed in an audit. Also, our review is not designed to, and does not, provide any assurance on Year 2000 issues.   However, we may communicate matters that come to our attention relating to the Year 2000 issue which in our judgment may be of benefit to management.

Our review cannot be relied upon to disclose errors, fraud or illegal acts that may exist. However, to the extent that they come to our attention, we will inform management about any material errors and any instances of fraud or illegal acts. Further, to the extent that they come to our attention, we will inform the audit committee about fraud and illegal acts that involve senior management, fraud that in our judgment causes a material misstatement of the interim financial information, and illegal acts, unless clearly inconsequential, that have not otherwise been communicated to the committee.

If we become aware of matters during our review that cause us to believe that interim financial information, filed or to be filed with the Securities and Exchange Commission, is probably materially misstated as a result of a departure from generally accepted accounting principles, we will discuss the matter with management and, if appropriate, communicate such matters to the audit committee.

As agreed, we will not issue a written report upon completion of each review. However, we will inform you if we are aware of any material modifications that should be made to the quarterly financial information for it to be in conformity with generally accepted accounting principles. Should conditions not now foreseen preclude us from completing a review, we will advise you and the audit committee of OMC promptly.

12/29/2000 17:00 FAX 312 456 5... GREENBERG TRAURIG CHI 1; Page 2   @025

Received:  12/28/00 10:14AM;   -> Greenberg Traurig CHI 1;  Pag

Dec-28-00  10:13am   From-KPMG GTS                    +9126656070        T-663   P.05/08   F-333

James B. Pekarek
Outboard Marine Corporation
May 5, 2000
Page 5

Based upon our discussions with and representations of management, we estimate that our fees for the fiscal 2000 audit of the Company's North American operations will approximate $425,000, plus out-of-pocket expenses estimated to be 10 to 15 percent of fees  Fees and expenses for the fiscal 2000 audits of the following non-U S. locations are estimated to be the same as the 1999 estimate on a local currency basis: Australia, New Zealand, Belgium, Asia, and Sweden. Fees and expenses for the fiscal 2000 quarterly reviews are estimated to be $10,000 per quarter. Attachment 1 provides details of all fees by location. These estimates are based on the level of expertise of the individuals who will perform the services. Circumstances encountered during the performance of these services that warrant additional time or expense could cause us to be unable to deliver them within the above estimates. We will endeavor to notify you of any such circumstances as they are assessed.

Invoices for the 2000 audit of the Company's North American operations and for the 2000 quarterly reviews will be billed as follows: April 27, 2000 - $80,000 (already billed); June 1, 2000 - $55,000; $40,000 on the first of each month, beginning July 1, 2000 though February 1, 2001, with the final invoice including actual expenses billed on March 1, 2001. Invoices are due upon receipt, but in no event later than thirty days. Fees and expenses for the 2000 audits of the non-U.S. locations will be billed as time and expenses are incurred.

We shall be pleased to discuss this letter with you at any time. For your convenience in confirming these arrangements, we enclose a copy of this letter. Please sign and return it to us. We appreciate the opportunity to serve OMC.

Very truly yours,

KPMG LLP

*Douglas H Ruud*

Douglas H. Ruud
*Partner*

12/29/2000 17:00 FAX 312 456 51        GREENBERG TRAURIG        ☒029
Received: 12/28/00 10:18A    -> Greenberg Traurig CHI 1;   Pag

Dec-28-00  10:18am   From-KPMG GTS              +3126656070      T-563  P.07/08  F-333

James B. Pekarek
Outboard Marine Corporation
May 5, 2000
Page 6

## ACCEPTED:

Outboard Marine Corporation

_James Pekarek_
Authorized Signature

_V.P. and Controller_
Title

_7/10/00_
Date



## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| OUTBOARD MARINE CORPORATION, *et al.*, | ) | No. 00 B 37405 |
| | ) | |
| | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Hon. Erwin I. Katz |
| | ) | |
| | ) | Hearing Date: March 7, 2001 |
| | ) | Hearing Time: 11:00 a.m. |

## LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
## CREDITORS TO DEBTORS' AMENDED APPLICATION TO EMPLOY KPMG LLP

The committee of unsecured creditors formed pursuant to 11 U.S.C. § 1102 (the

"Committee") of Outboard Marine Corporation and its related debtor entities ("OMC," and with

its related debtor entities, the "Debtors"), responds as follows to the Debtors' amended

application to employ KPMG LLP ("KPMG") as their accountants, auditors and tax advisors.

1.      The Committee does not question the qualifications of KPMG to serve as the

Debtors' accountants, auditors and tax advisors.

2.      The Committee has requested certain information pertaining to the Debtors'

payment to KPMG of a $200,000 prepetition retainer as set forth in Committee counsel's letter to

counsel for KPMG dated March 3, 2001, a copy of which is annexed as Exhibit 1 and

incorporated herein by this reference.

3.      Also, as set forth in Exhibit 1, the Committee has requested that certain protective

language be inserted in KPMG's retention order.

4.      The Committee is informed and believes that KPMG has agreed to produce the

information requested prior to entry of the KPMG retention order, as well as the insertion of the

protective language in the KPMG retention order.

69

5.      In addition to the foregoing, as a condition to KPMG's retention by the Debtors,

the Committee requests that KPMG actively cooperate in the Committee's investigation of the

Debtors' financial demise by promptly producing all of the following documents relating to

OMC and the other Debtors as a condition to KPMG's retention:

i.      Work papers;

ii.     Management letters and the company's responses;

iii.    Internal memoranda;

iv.     Risk analyses;

v.      Correspondence;

vi.     Notes of meetings with the audit committee;

vii.    Agendas of meetings with the audit committee; and

viii.   Any documents related to control risks.

WHEREFORE, the Committee requests the entry of an order providing it with all of the

aforesaid relief in connection with KPMG's retention and such other and supplemental relief

may be appropriate under the circumstances.

Respectfully submitted,

The Official Committee of Unsecured Creditors
of Outboard Marine Corporation and Its Related
Debtor Entities

Dated: March 6, 2001                    By: _____
                                            One of its attorneys

Steven B. Towbin (#2848546)
Peter J. Roberts (#6239025)
Kathleen H. Klaus (#6211316)
D'Ancona & Pflaum LLC
111 E. Wacker Dr., #2800
Chicago, IL 60601
(312) 602-2000



EXHIBIT

___/___

# D'ANCONA
**ATTORNEYS**

March 3, 2001

**Steven B. Towbin**

(312) 602-2107
Fax: (312) 602-3107
stowbin@dancona.com
http://www.dancona.com

<u>VIA E-MAIL</u>

Keith J. Shapiro
Greenberg Traurig
227 West Monroe Street
35th Floor
Chicago, IL 60606

Dear Keith:

As indicated when we spoke last week, the Committee would like to understand
the circumstances surrounding the payment of a $200,000 prepetition retainer to KPMG
for "accrued but unbilled" time. Specifically, the Committee requests copies of KPMG's
prepetition invoices for the 120 day period preceding the case, all documents (including
e-mails) which relate to payment of the $200,000 retainer, an explanation as to how the
retainer was transmitted (via wire transfer, check, etc.), how it was applied and the
balance, if any, remaining as of the petition date.

Also, as you know, the Committee must, in the proper exercise of its fiduciary
duty, reserve any and all claims the estate may have with respect to KPMG. Thus, the
retention order, if entered, should contain the following language or a suitable alternative.

> The Committee has not yet begun its investigation of
> potential claims or causes of action that may be made or
> brought against any of the debtor's professionals, officers,
> directors or third parties. The entry of this order and the
> retention of KPMG by OMC is without prejudice to any legal
> or factual position that OMC, the Committee or any trustee or
> examiner may take with respect to KPMG, or any defense,
> claim or cause of action that OMC, the Committee or any
> trustee or examiner may make or assert against KPMG.

Given KPMG's anxiousness to obtain approval of its retention, I am surprised that
I have not yet received the material we discussed last Tuesday evening regarding the
prepetition retainer payment. I also mentioned the material we wanted to your colleague



**DANCONA**
**ATTORNEYS**

Keith J. Shapiro
Page 2
March 3, 2001

who appeared at last Wednesday's hearing (February 28, 2001).  In any event, please get
me the requested material as soon as possible so the Committee can make an informed
decision on the debtor's pending application to retain KPMG and approve the retainer
arrangement.

Best regards,

Steven B. Towbin

SBT/jb

cc:    Mark A. McDermott
       Eric W. Kaup
       Kathryn Marie Gleason
       OMC Creditors' Committee





E O D  APR 1 9 2001

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re:  Outboard Marine Corporation, et al. | ) ) ) ) ) | Chapter 11 Case No. 00-37405 Hon. Erwin I. Katz |
| Debtors. |  |  |

## ORDER PURSUANT TO 11 U.S.C. §§ 327(a) and 328(a)
## AUTHORIZING THE RETENTION AND EMPLOYMENT
## OF KPMG LLP AS ACCOUNTANTS, AUDITORS AND
## TAX ADVISORS TO THE DEBTORS AS OF DECEMBER 22, 2000

Upon the application of Outboard Marine Corporation, *et al*, Inc., as debtor and debtor-in-

possession (the "Debtors"), dated February 23, 2001 (the "Application"), for entry of an order,

pursuant to §§ 327(a), 328 and 1107(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-

1330, as amended (the "Bankruptcy Code"), Rules 2014(a) and 2016 and of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the

Northern District of Illinois (the "Local Bankruptcy Rules") authorizing the retention and

employment of KPMG LLP as accountants, auditor, and tax advisors to the Debtors, and upon

the Affidavit of Douglas H. Ruud (the "Ruud Affidavit"), sworn to on February 13, 2001 and

the Supplemental Affidavit of Douglas H. Ruud, sworn to on February 9, 2001 (the

"Supplemental Ruud Affidavit"); and the Court being satisfied based on the representations

made in the Application and the Ruud Affidavit and the Supplemental Ruud Affidavit that such

accountants, auditors, and tax advisors represent no interest adverse to the Debtors' estate with

850

respect to the matters upon which they are to be engaged, that they are disinterested persons as

that term is defined under § 101(14) of the Bankruptcy Code, as modified by § 1107(b) of the

Bankruptcy Code, that their employment is necessary and in the best interests of the Debtors'

estate; and it appearing that the Official Committee of Unsecured Creditors appointed in this case

(the "Committee") has not yet begun its investigation of potential claims or causes of action that

may be made or brought against any of the Debtors' professionals, officers, directors, or third

parties; and it appearing that proper and adequate notice has been given and that no other or

further notice is necessary; and after due deliberation thereon, and good and sufficient cause

appearing therefore, it is hereby

ORDERED that the Application is granted and approved in all respects; and it is further

ORDERED that, pursuant to §§ 327(a), 328 and 1107(a) of the Bankruptcy Code, Rules

2014(a) and 2016 of the Bankruptcy Rules, and the Local Bankruptcy Rules, the Debtors, as

debtor and debtor-in-possession, are hereby authorized to employ KPMG LLP as its accountants,

auditor and tax advisors, as of the commencement of this case, December 22, 2000, to perform

the services set forth in the Application; and it is further

ORDERED that KPMG LLP shall be compensated in accordance with the procedures set

forth in §§ 328 and 331 of the Bankruptcy Code and such Bankruptcy Rules and Local

Bankruptcy Rules as may then be applicable, from time to time, and such procedures as may be

fixed by order of this court; and it is further

ORDERED that the retainer in the amount of $200,000 that was paid by the Debtors to

KPMG LLP prior to the commencement of the above-captioned cases shall be applied by KPMG

LLP exclusively to (i) compensate KPMG LLP for work performed on behalf of the Debtors

post-petition; and (ii) reimburse KPMG LLP for expenses incurred in connection with work it performed for the Debtors post-petition; and it is further

ORDERED that the entry of this Order and the retention of KPMG LLP by the Debtors is without prejudice to: (a) any legal or factual position that the Debtors, the Committee, or any trustee or examiner may take with respect to any pre-petition conduct of KPMG LLP; or (b) any defense, claim, or cause of action that the Debtors, the Committee, or any trustee or examiner may make or assert against KPMG LLP, including avoidance actions under the Bankruptcy Code in this case, with respect to any pre-petition conduct of KPMG LLP; and it is further

ORDERED that KPMG LLP shall promptly obtain and provide to the Committee all details surrounding any consideration received by KPMG LLP during the ninety days prior to the commencement of this case; and it is further

ORDERED that should there be a determination by final order that KPMG LLP received one or more avoidable preferential transfers under § 547 of the Bankruptcy Code, KPMG LLP shall promptly return same to the Debtors' estates and waive any unsecured claim it has by virtue thereof as a condition of its employment and retention in the above-captioned cases.

ORDERED that KPMG LLP shall, on or before 60 days after the entry of this Order, produce to the Committee the following items, as they relate to the audit performed for the Debtor by KPMG LLP, to the extent such production is permitted by law, and to the extent such items are not subject to KPMG LLP's attorney-client privilege or any other applicable privilege: work papers, management letters and the company's responses, internal memoranda, risk analyses, correspondence, notes of meetings with the audit committee, agendas of meetings with the audit committee, any documents related to control risks. Each party in interest that receives non-public information pursuant to this Order shall confine its use of such information to the

3

above-captioned cases and shall otherwise preserve the confidential and/or proprietary nature of

such information, subject to further order of this Court.

Dated: April ___, 2001

_____
UNITED STATES BANKRUPTCY JUDGE

\17536v08\DJ408!.DOC\4/17/01

4



May 18, 2001

**From: Christopher Cahill**

**To:     Stephen Towbin**

**Re:     Outboard Motor Corporation / Pre-petition Payments to KPMG Over the
          120 Days Prior to the Petition Date**

This booklet contains information concerning payments made by the Debtor to
KPMG LLP pre-petition and receivables charged against the $200,000.00 retainer
extended to KPMG LLP pre-petition (the "Retainer").

**Tab 1.  Open Receivables by Client.**
This document served as a summary of outstanding invoices totaling $220,807.00
as of December 18, 2000, and paid pre-petition by OMC.

**Tab 2.  Retainer Account Status.**
The Retainer was paid by wire transfer on December 22, 2000. Attached are
invoices corresponding to entries on the Retainer Account Status.

**Tab 3.  OMC Billings from 6/13/00 until 12/22/00.**
The summary indicates the invoice number, invoice date, invoice amount, and
"Posted Date." The "Posted Date" is the date KMPG enters the receipt of the check,
which occurs after processing of the check at Mellon Bank. Therefore, it is safe to say
that OMC mailed the check 5 to 10 days prior to the Posted Date, and that the check was
received by Mellon Bank at some point in the interim.

**Tab 4.  Invoices.**
Enclosed are invoices indicating OMC Billings from 6/13/00 until 12/22/00.





# Open Receivables By Client

### Report Run Date: 12/18/00    Data As Of:

| Client ID: | Client Name: | Client Balance: | 0 - 30 | 31 - 60 | 61 - 90 | 91+ |
|---|---|---|---|---|---|---|
| 60000227 | OUTBOARD MARINE CORPORATION | $222,807.80 | $40,000.00 | $36,808.80 | $32,883.00 | $63,116.00 |

| BU: | | BU Balance: | 0 - 30 | 31 - 60 | 61 - 90 | 91+ |
|---|---|---|---|---|---|---|
| US053 | | $222,807.80 | $40,000.00 | $36,808.80 | $32,883.00 | $63,116.00 |

| Engage #: | Description: | Engage Balance: | 0 - 30 | 31 - 60 | 61 - 90 | 91+ | |
|---|---|---|---|---|---|---|---|
| 10292781 | OMC CORPORATE RECOVERY SERVICE | $20,116.80 | $.00 | $.00 | $.00 | $20,116.80 | |
| Bill #: | Bill Date: | Bill Balance: | 0 - 30 | 31 - 60 | 61 - 90 | 91+ | Partial Pmt: |
| 40285382 | 05/17/00 | $20,116.80 | $.00 | $.00 | $.00 | $20,116.80 | $.00 |

| Engage #: | Description: | Engage Balance: | 0 - 30 | 31 - 60 | 61 - 90 | 91+ | |
|---|---|---|---|---|---|---|---|
| 10321683 | 2000 AUDIT | $120,000.00 | $40,000.00 | $40,000.00 | $.00 | $40,000.00 | |
| Bill #: | Bill Date: | Bill Balance: | 0 - 30 | 31 - 60 | 61 - 90 | 91+ | Partial Pmt: |
| 40366030 | 09/05/00 | $40,000.00 | $.00 | $.00 | $.00 | $40,000.00 | $.00 |
| 40417889 | 11/02/00 | $40,000.00 | $.00 | $40,000.00 | $.00 | $.00 | $.00 |
| 40434615 | 12/01/00 | $40,000.00 | $40,000.00 | $.00 | $.00 | $.00 | $.00 |

| Engage #: | Description: | Engage Balance: | 0 - 30 | 31 - 60 | 61 - 90 | 91+ | |
|---|---|---|---|---|---|---|---|
| 10350767 | 5500'S | $7,590.00 | $.00 | $4,590.00 | $.00 | $3,000.00 | |
| Bill #: | Bill Date: | Bill Balance: | 0 - 30 | 31 - 60 | 61 - 90 | 91+ | Partial Pmt: |
| 40337759 | 07/24/00 | $3,000.00 | $.00 | $.00 | $.00 | $3,000.00 | $3,000.00 |
| 40424189 | 11/15/00 | $4,590.00 | $.00 | $4,590.00 | $.00 | $.00 | $.00 |

| Engage #: | Description: | Engage Balance: | 0 - 30 | 31 - 60 | 61 - 90 | 91+ | |
|---|---|---|---|---|---|---|---|
| 10372864 | 2000 BENEFIT PLAN | $1,950.00 | $.00 | $1,950.00 | $.00 | $.00 | |
| Bill #: | Bill Date: | Bill Balance: | 0 - 30 | 31 - 60 | 61 - 90 | 91+ | Partial Pmt: |
| 40423412 | 11/13/00 | $1,950.00 | $.00 | $1,950.00 | $.00 | $.00 | $1,950.00 |



EXHIBIT 1

| Engage #: | Description: | Engage Balance: | 0-30 | 31-60 | 61-90 | 91+ | |
|---|---|---|---|---|---|---|---|
| 10373470 | THS OUTSOURCING - YEAR 2 | $72,211.00 | $.00 | $39,328.00 | $32,883.00 | $.00 | |
| Bill #: | Bill Date: | Bill Balance: | 0-30 | 31-60 | 61-90 | 91+ | Partial Pmt: |
| 40403505 | 10/17/00 | $32,883.00 | $.00 | $.00 | $32,883.00 | $.00 | $.00 |
| 40429229 | 11/17/00 | $39,328.00 | $.00 | $39,328.00 | $.00 | $.00 | $.00 |

| Engage #: | Description: | Engage Balance: | 0-30 | 31-60 | 61-90 | 91+ | |
|---|---|---|---|---|---|---|---|
| 10373471 | THS - SALES & USE | $940.00 | $.00 | $940.00 | $.00 | $.00 | |
| Bill #: | Bill Date: | Bill Balance: | 0-30 | 31-60 | 61-90 | 91+ | Partial Pmt: |
| 40429228 | 11/17/00 | $940.00 | $.00 | $940.00 | $.00 | $.00 | $.00 |

**Outboard Marine Corporation**

**Retainer Account Status**

**March 7, 2001**

| | | |
|---|---|---:|
| Beginning balance at December 22, 2000 | $ | 200,000 |
| Add duplicate payments: | | |
| Invoice No. 40424189 (partial payment) | | 2,000 |
| Invoice No. 40423142 (partial payment) | | 1,950 |
| Invoice No. 40337759 | | 3,000 |
| Less amounts applied thereto: | | |
| Outstanding invoices at 12/22/00: | | |
| Invoice No. 40403422, 10/17/00<br>re: Section 382 Tax Study | | (31,270) |
| Invoice No. 40453111, 12/18/00<br>re: TMS outsourcing per terms of July 12, 1999 engagement letter | | (32,551) |
| Invoice No. HKG 11 20256, 12/19/00<br>re: audit of OMC Hong Kong subsidiary<br>(HK $240,000; exchange rate @ 12/22/00: 1 US$ = 7.79990 HK$) | | (30,770) |
| Unbilled fees and expenses at 12/22/00: | | |
| Fiscal 2000 OMC Annual Audit<br>(refer to 2/14/01 letter to Eric Martinez) | | (78,200) |
| Invoice No. 2001111420, 12/31/00<br>re: audit of OMC Belgium subsidiary<br>(BEF 702,000; exchange rate @ 12/22/00: 1 US$ = 44.06806 BEF) | | (15,930) |
| Balance unapplied | $ | 18,229 |



## OMC Billings from 6/13/00 until 12/22/00

| Invoice # | Invoice Date | Invoice Amount | Posted Date |
|---|---|---|---|
| 40304906 | 6/13/2000 | $41,648.00 | 7/12/2000 |
| 40316357 | 6/19/2000 | $30,417.00 | 8/15/2000 |
| 40324161 | 7/5/2000 | $55,000.00 | 8/2/2000 |
| 40335421 | 7/21/2000 | $40,000.00 | 9/29/2000 |
| 40337759 | 7/24/2000 | $6,500.00 | Partial payment of $3,500 on 8/31/00 |
| 40337759 | 7/24/2000 | $6,500.00 | Partial payment of $900 on 12/22/00 |
| 40340713 | 7/25/2000 | $32,614.00 | 9/22/2000 |
| 40342382 | 7/31/2000 | $16,997.00 | 8/31/2000 |
| 40342628 | 8/1/2000 | $40,000.00 | 8/31/2000 |
| 40346730 | 8/7/2000 | $11,498.00 | 9/6/2000 |
| 40351139 | 8/9/2000 | $49,521.00 | 10/6/2000 |
| 40366030 | 9/5/2000 | $40,000.00 | 1/2/01 Client lost original invoice |
| 40349100 | 9/6/2000 | $8,281.00 | 10/16/2000 |
| 40370013 | 9/13/2000 | $7,425.00 | 10/13/2000 |
| 40371041 | 9/14/2000 | $7,328.00 | 10/30/2000 |
| 40372229 | 9/13/2000 | $33,199.00 | 11/14/2000 |
| 40390362 | 10/2/2000 | $40,000.00 | 11/28/2000 |
| 40403422 | 10/17/2000 | $31,270.00 | Applied against 12/22/00 retainer |
| 40403505 | 10/17/2000 | $32,883.00 | 12/26/00, returned check NSF ✓ |
| 40417889 | 11/2/2000 | $40,000.00 | 1/2/2001 |
| 40423942 | 11/13/2000 | $3,900.00 | Partial payment of $1,950 on 12/6/00 |
| 40423942 | 11/13/2000 | $3,900.00 | Partial payment of $1,950 on 12/22/00 |
| 40424189 | 11/15/2000 | $4,590.00 | 12/27/2000 |
| 40429224 | 11/17/2000 | $40,268.00 | 1/2/2001 |
| 40434615 | 12/1/2000 | $40,000.00 | 1/2/2001 |
| 40453111 | 12/18/2000 | $32,551.00 | Applied against 12/22/00 retainer |
| 40456158 | 12/22/2000 | $200,000.00 | Retainer 1/2/01· |

194.290



EXHIBIT
3

KPMG

Client Copy

October 17, 2000
Invoice: 40403422

PLEASE REMIT TO.

KPMG LLP
DEPT. 0976
P.O. BOX 120001
DALLAS, TX 75313-0976

TIN: 13-5565207

OUTBOARD MARINE CORPORATION
MR. DANIEL TANNER, CONTROLLER
100 SEA HORSE DRIVE
WAUKEGAN, IL 60085

Business Unit   US053   Client Number:  60000227

Project #10343624

Billing for professional services on the 382 Ownership Change Analysis .

| | | |
|---|---|---|
| Scott Moresco | 1 hr @ $600 = | $   600.00 |
| Michael Barton | 2 hrs @ $550 = | $   950.00 |
| Karen Erickson | 10.5 hrs @ $475 = | $ 4,838.00 |
| Charles Simuhs | 79.5 hrs @ $325 = | $21,238.00 |
| Gerard Lucas | 2.5 hrs @ $200 = | $   375.00 |
| Expenses | | $ 3,269.00 |
| Total charges | | $31,270.00 |

Total Due                          $31,270.00



EXHIBIT
4

Please Pay By Invoice and          Payment Due
Enclose Remittance Copy           Upon Receipt

**KPMG**

Client Copy

December 18, 2000
Invoice  40453111

PLEASE REMIT TO:

KPMG LLP
DEPT. 0970
P.O. BOX 120001
DALLAS, TX 75312-0970

TIN  13-5565207

OUTBOARD MARINE CORPORATION
MS. LINDA S. HUNT, DIRECTOR OF TAXES
100 SEA HORSE DRIVE
WAUKEGAN, IL 60085

Business Unit:  US053   Client Number:  60000227

Billing for professional services rendered in connection with the
outsourcing engagement per the terms of our engagement letter.          $32,083.00

Progress billing for professional fees incurred through November 30,
2000 related to the Vertex conversion of Parts & Accessories. (1.5 hour) $ 255.00

Expenses                                                                $   213.00

                                    Total Due              $32,551.00

COPY

Project (s) #10373471
           #10336560
           #10373470

Please Pay By Invoice and          Payment Due
    Enclose Remittance Copy            Upon Receipt

P.04

**OMC Expenses**
**11/01/00 - 11/30/00**

| Employee Name | Total Expense per Employee | Air | Travel Expense | Lodging | Postage & Misc. Costs |
|---|---|---|---|---|---|
| James Mcallister Vogges IV | 0 | | | | |
| Tanesia Foscett | 0 | | | | |
| Sam Kutom | 0 | | | | |
| Mike Pezzetta | 0 | | | | |
| John Scacco | 62 | | 62 | | |
| Chris Pounds | 1 | | 1 | | |
| Larry Keyler | 0 | | | | |
| Mike Special | 55 | | 50 | | 5 |
| Debbie Schwartz | 0 | | | | |
| Scott Blumstein | 0 | | | | |
| Rajendrakumar Patel | 0 | | | | |
| Rodney Delhun | 0 | | | | |
| Rex Wu | 0 | | | | |
| KPMG - Supplies, etc. | 95 | | | | |
| Total | 213.00 | • | 113.00 | • | 5.00 |

Outboard Marine Corporation Asia Limited
35-47 Tsing Yi Road
Tsing Yi Island
NEW TERRITORIES

AHM/11
HKG 11 20256

19 December 2000

Professional services rendered in connection with:

The audit of the company's accounts for the year ending 31 December 2000.

Fee on account                                    $240,000

HKG 11  20256                                    19/12/00

                                                 HK      240,000

Outboard Marine Corporation Asia Limited       123864 001



303 East Wacker Drive
Chicago, IL 60601-6212

February 14, 2001

Mr. Eric Martinez                                           **VIA AIR COURIER**
Senior Vice President of Finance &
    Chief Financial Officer
Outboard Marine Corporation
100 Sea Horse Drive
Waukegan, Illinois 60085-2195

Dear Eric:

As you know, Outboard Marine Corporation (OMC) paid KPMG LLP a retainer of
$200,000 in December of 2000.  The intent of the retainer was to cover unpaid and not
yet invoiced fees and expenses of KPMG LLP and KPMG foreign member firms.  I am
writing to notify you of the use of the retainer to date.

Up to the time when OMC filed for Chapter 11 Bankruptcy protection, KPMG had
unbilled professional services fees and expenses related to the OMC annual audit of
$78,200.  This amount has been applied against the aforementioned retainer.

In addition, amounts for invoices related to both audit and tax services that were issued,
but unpaid, as of the bankruptcy filing, and totaling $111,300, have also been applied
against the aforementioned retainer.

Please do not hesitate to contact me should you have any questions.

Very truly yours,

Douglas H. Ruud
*Partner*

Bcc:   Steve Hajdukovic
       Kellee Rohr

**KPMG**

Bedrijfsrevisoren - Reviseurs d' Entreprises

Bollebergen 2B Bus 12
9052 Gent
Belgium

Tel.: +32 9 241 88 60
Fax: +32 9 241 88 99

| | | | |
|---|---|---|---|
| To Organisation | Stephen Hajdukovic KPMG Chicago | From Department | Patrik Wirix Bedrijfsrevisoren - Reviseurs d' Entreprises |
| Fax | 001 312 665 1689 | Telephone Fax E-Mail | +32 9 241 88 77 +32 9 241 88 99 patrik.wirix@kpmg.be |
| Copy To | Patrick Camu (KPMG Bedrijfsrevisoren) | | |
| Date | January 12, 2001 | Ref. | Page 1 of |
| Subject | OMC Europe VOF (Belgium) | | |

Stephen,

In connection to your e-mail dated January 9, 2001, we would like to clarify the position of KPMG Belgium in respect to the entity mentioned above.

According to Belgian Law, a statutory auditor is appointed for a period of three years and is legally obliged to perform the audit. The only exemption to this when both parties agree to terminate the collaboration AND if a new statutory auditor is appointed to continue the audit.

As a consequence, we are not able to cease our audit work at this time if we do not want to expose ourselves to legal actions. Basicly this means that we will continue our statutory audit work.

At this time, OMC Europe VOF informed us that they are investigating the legal possibilities for the Company. If possible, we would like to receive feedback from you on how the position of the Belgian Company is within the Group.

In respect to outstanding invoices, we have billed the client on December 31, 2000 for an amount of BEF 702.000 in connection with the audit of the financial year ending December 31, 2000 (reference of invoice 2001111420).

If you have any questions, please do not hesitate to contact us.



This fax transmission is strictly confidential and intended solely for the person or organisation to whom it is addressed. If you are not the intended recipient, you must not copy or distribute it or take action in reliance on it. If you have received this fax transmission in error, please notify us and return it to us by post as soon as possible.

**KPMG**

File Copy

September 5, 2000
Invoice: 40366030

OUTBOARD MARINE CORPORATION
MR. DANIEL TANNER
100 SEA HORSE DRIVE
WAUKEGAN, IL 60085

```
PLEASE REMIT TO:

KPMG LLP
DEPT. 0976
PO BOX 120001
DALLAS, TX 75312-0976

TIN: 13-5565207
```

Business Unit  US053   Client Number:  60000227

Progress billing for professional services rendered to Outboard Marine Corporation in connection with the audit of the financial statements as of and for the year ending December 31, 2000.

**Total Due**          **$40,000.00**

Project #10321683

Client Copy

**KPMG**

September 13, 2000
Invoice: 40372229

PLEASE REMIT TO:

KPMG LLP
DEPT 0970
P.O. BOX 120001
DALLAS, TX 753:24070

TIN 13-5565207

OUTBOARD MARINE CORPORATION
MS. LINDA S HUNT, DIRECTOR OF TAXES
100 SEA HORSE DRIVE
WAUKEGAN, IL 60085

Business Unit. US053    Client Number.  60000227

Billing for professional services rendered in connection with the
outsourcing engagement per the terms of our engagement letter.        $32,083.00

Expenses for travel, lodging , and other out-of-pocket expenses.     $ 1,116.00

|  |  |
|---|---|
| Total Fees | $32,083.00 |
| Total Expenses | $1,116.00 |
| Total Due | $33,199.00 |

Project

10536560
10373470

**KPMG**

Client Copy

October 2, 2000
Invoice. 40390362

OUTBOARD MARINE CORPORATION
MR. DANIEL TANNER
100 SEA HORSE DRIVE
WAUKEGAN, IL 60085

```
PLEASE REMIT TO:

KPMG LLP
DEPT. 0978
PO BOX 120001
DALLAS, TX 75312-0978

TIN. 13-5565207
```

Business Unit  US053   Client Number  60000227

Progress billing for professional services rendered to Outboard Marine Corporation in connection with the
audit of the financial statements as of and for the year ending December 31, 2000.

|   |   |
|---|---|
| **Total Due** | $40,000.00 |

Project # 10321683

**KPMG**

Client Copy

September 13, 2000
Invoice. 40370013

PLEASE REMIT TO:

KPMG LLP
DEPT. 0970
P.O. BOX 120001
DALLAS, TX 75312-0970

TIN 13-5565207

OUTBOARD MARINE CORPORATION
MS. LINDA S. HUNT, DIRECTOR OF TAXES
180 SEAHORSE DRIVE
WAUKEGAN, IL 60085

Business Unit: US053   Client Number. 60000227

Professional services rendered and expenses incurred regarding Mexican asset sale.
(Chicago charges only)                                                    $5,600.00

Advice and consultation regarding 1999 Form 8865 filing requirements, including
telephone conversations and correspondence.                               $1,825.00

                              **Total Due**              $7,425.00

Project number 10288500

**kPMG**

Client Copy

September 14, 2000
Invoice 40371041

OUTBOARD MARINE CORPORATION
MS. CAROLNE DAMASK, MANAGER OF HUMAN RESOURCES
180 SEAHORSE DRIVE
WAUKEGAN, IL 60085

PLEASE REMIT TO

KPMG LLP
DEPT 0076
P.O. BOX 130001
DALLAS, TX 75313-0076

TIN 13-5565207

Business Unit  US053   Client Number   60000227

Progress billing for professional services rendered and expenses incurred in connection with the Four Winns
Profit Sharing Plan.

| | |
|---|---:|
| Total Fees | $7,000.00 |
| Total Expenses | $328.00 |
| Total Due | $7,328.00 |

Project #10353164

KPMG

File Copy

December 1, 2000
Invoice: 40434615

PLEASE REMIT TO:

KPMG LLP
DEPT 0970
PO BOX 120001
DALLAS TX 75312-0970

TIN  13-5565207

OUTBOARD MARINE CORPORATION
MR. DANIEL TANNER, CONTROLLER
100 SEA HORSE DRIVE
WAUKEGAN, IL 60085

Business Unit:  US053   Client Number:  60000227

Progress billing for professional services rendered to Outboard Marine Corporation in connection with the
audit of the financial statements as of and for the year ending December 31, 2000.

Total Due                    $40,000.00

Project #10321683

Received 3/ 5/61 71:4uum KPMG LLP
MAR-05-2001  13:02                                    212 909 5687   P.14/22

**KPMG**

File Copy

November 2, 2000
Invoice  40417889

PLEASE REMIT TO:

KPMG LLP
DEPT 0970
P O BOX 1X00)
DALLAS TX 75312-0970

TIN: 13-5565207

OUTBOARD MARINE CORPORATION
MR. DANIEL TANNER, CONTROLLER
100 SEA HORSE DRIVE
WAUKEGAN, IL 60085

Business Unit:  US053   Client Number:  60000227

Progress billing for professional services rendered to Outboard Marine Corporation in connection with the audit of the financial statements as of and for the year ending December 31, 2000.

| | |
|---|---|
| Progress for Audit | $30,000.00 |
| Third Quarter | 10,000.00 |
| **Total Due** | **$40,000.00** |

Project #10321683

Please Pay By Invoice and          Payment Due
Enclose Remittance Copy            Upon Receipt

November 17, 2000
Invoice: 40429224

OUTBOARD MARINE CORPORATION
MS. LINDA S. HUNT, DIRECTOR OF TAXES
100 SEA HORSE DRIVE
WAUKEGAN, IL 60085

PLEASE REMIT TO:

KPMG LLP
DEPT. 0970
P.O. BOX 120001
DALLAS, TX 75312-0970

TIN 13-5565207

Business Unit: US053   Client Number: 60000227

Billing for professional services rendered in connection
with the outsourcing engagement per the terms of our
engagement letter.                                          $32,083.00

Progress billing for professional fees incurred through
October 31, 2000 related to the Vertex conversion of
Parts & Accessories.                                        $ 7,242.00

Expenses                                                    $   943.00

Total Fees          $39,325.00
Total Expenses      $943.00
     Total Due      $40,268.00

Project (s)

10373470
10373471

Please Pay By Invoice and          Payment Due
  Enclose Remittance Copy          Upon Receipt

**OMC Expenses**
**10/01/00 - 10/31/00**

| Employee Name | Total Expense per Employee | Air | Travel Expense | Lodging | Postage & Misc. Costs |
|---|---|---|---|---|---|
| James Mcallister Vogdes IV | 120 | | 120 | | |
| Tanesja Foscatt | 0 | | | | |
| Sam Kutom | 284 | | 284 | | |
| Mike Pazzaria | 0 | | | | |
| John Scacco | 192 | | 192 | | |
| Chris Pounds | 0 | | | | |
| Larry Keyler | 0 | | | | |
| Mike Special | 141 | | 64 | | 77 |
| Debbie Schwartz | 61 | | 61 | | |
| Scott Blumstein | 0 | | | | |
| Rajendrakumar Patel | 0 | | | | |
| Rodney Dothun | 0 | | | | |
| Rex Wu | 0 | | | | |
| KPMG - Supplies, etc. | 145 | | | | 145 |
| **Total** | **943.00** | **-** | **721.00** | **-** | **222.00** |



Client Copy

Date: October 17, 2000
Invoice: 40403505

PLEASE REMIT TO:

KPMG, LLP
DEPT 0970
P.O. BOX 120001
DALLAS, TX 75312-0970

TIN 13-5565207

OUTBOARD MARINE CORPORATION
MS. LINDA HUNT
100 SEA HORSE DRIVE
WAUKEGAN, IL 60085

| Business Unit | US053 | Client Number | 60000227 | Project Number(s): 10373470 |

Billing for professional services rendered in connection with
the outsourcing engagement per the terms of our engagement letter. $32,083.00

Expenses for travel, lodging and other out-of-pocket expenses. 800.00

**Total Due** $32,883.00

Project Number: 10373470

KPMG LLP KPMG LLP - US limited liability partnership
is a member of KPMG International, a Swiss association

Please Pay By Invoice and
Enclose Remittance Copy

Payment Due
Upon Receipt

Received    MAR-05-2001   13:03          KPMG LLP                           212 909 5687   P.20/22

**OMC Expenses**
09/01/00 - 09/30/00

| Employee Name | Total Expense per Employee | Air | Travel Expense | Lodging | Postage & Misc. Costs |
|---|---|---|---|---|---|
| Tanesia Foscatt | 0 | | | | |
| Sam Kutom | 0 | | | | |
| Mike Pezzetta | 0 | | | | |
| John Scacco | 337 | | 337 | | |
| Chris Pounds | 0 | | | | |
| Larry Keyler | 0 | | | | |
| Mike Special | 74 | | 32 | | 42 |
| Debbie Schwartz | 76 | | 36 | | 40 |
| Scott Blumstein | 33 | | 33 | | |
| Rajendrakumar Patel | 8 | | | | 8 |
| Rodney Dolhun | 0 | | | | |
| Wisam Kutom | 232 | | 232 | | |
| Rex Wu | 40 | | | | 40 |
| **Total** | **800.00** | | **670.00** | | **130.00** |



File Copy

November 13, 2000
Invoice 40423412

PLEASE REMIT TO

KPMG LLP
DEPT 0970
P O BOX 130901
DALLAS, TX 75312-0970

TIN 13-5565207

OUTBOARD MARINE CORPORATION
MS. CAROLINE DAMASK, MANAGER OF HUMAN RESOURCES
100 SEA HORSE DRIVE
WAUKEGAN, IL 60085

Business Unit:  US053   Client Number   60000227

Final billing for professional services rendered and expenses incurred in connection with the following plans:

| | |
|---|---|
| Outboard Marines Corporation Employees Retirement Plan | $1,950 |
| Four Winns Profit Sharing Plan | 975 |
| Outboard Marine Corporation Savings Plan | 975 |
| **Total Due** | **$3,900.00** |

Project #10353164

Please Pay By Invoice and       Payment Due
Enclose Remittance Copy          Upon Receipt

Client Copy

**kPMG**

July 24, 2000
Invoice. 40337759

OUTBOARD MARINE CORPORATION
MS. CAROLINE DAMASK
100 SEA HORSE DRIVE
WAUKEGAN, IL 60085

PLEASE REMIT TO:

KPMG LLP
DEPT. 0970
PO BOX 130001
DALLAS, TX 75312-0970

TIN: 13-5565207

Business Unit: US053   Client Number: 60000227

Progress billing for services rendered in connection with preparation of Form 5500, Annual
Return/Employee Benefit Plan, for the following plans:

- Outboard Marine Corporation Employees Pension Plan (9-30-99)

- Outboard Marine Corporation Employees Retirement Plan (9-30-99)

- Outboard Marine Corporation Defined Benefit Master Trust (9-30-99)

- Four Winns, Inc. Employee Benefit Plan (9-30-99)

- Outboard Marine Corporation Transition Pay Plan (9-30-99)

- Outboard Marine Corporation Group Life and Total Disability Insurance Plan (10-31-99)

**Total Due**                               **$6,500.00**

Project: 10350767

Please Pay By Invoice and          Payment Due
Enclose Remittance Copy            Upon Receipt



File Copy

November 14, 2000
Invoice 40424189

Ms. Caroline Damask
Outboard Marine Corporation
100 Sea Horse Drive
Waukegan, Illinois 60085

PLEASE REMIT TO:

KPMG LLP
DEPT. 0970
P.O. Box 120001
DALLAS, TX 75312-0970

TIN: 13-5565207

Business Unit: 05053 Client Number 80000227 Project 10330767

Final bill for services rendered in connection with the preparation of Forms 5500 Annual
Return/Report of Employee Benefit Plan, for the following:

- Outboard Marine Corporation Employees Pension Plan – 9/30/99 (001) FINAL
- Outboard Marine Corporation Employees Retirement Plan – 9/30/99 (002)
- Outboard Marine Corporation Employees Retirement Plan 10/1/99 – 12/31/99 (002)
- Outboard Marine Corporation Defined Benefit Master Trust – 9/30/99
- Outboard Marine Corporation Transition Pay Plan – 9/30/99 (520)
- Four Winns, Inc. Employee Benefit Plan – 9/30/99 (506)
- Outboard Marine Corporation Savings Plan – 12/31/99 (003)
- Outboard Marine Corporation Welfare Benefit Plan – 12/31/99 (507)
- Four Winns, Inc. Profit Sharing Plan & Trust – 10/1/99 – 12/31/99 (003)
- Outboard Marine Corporation Group Life and Total Disability Insurance Plan – 10/31/99 (505)
- Outboard Marine Corporation Voluntary All Risk Group Accident Plan – 2/29/00 (506)
- Outboard Marine Corporation Employees Retirement Plan – 9/30/99 (002) AMENDED

Total Due $4,590

KPMG LLP. KPMG LLP, a U.S. limited liability partnership,
a member of KPMG International, a Swiss association.

Please Pay By Invoice and
Enclose Remittance Copy

Payment Due
Upon Receipt

• Received:  MAR-05-2001 13:02  KPMG LLP  212 909 5687  P.12/22

**KPMG**

Date: May 17, 2000
Billing Number: 40285382
Bill Amount: $20,116.00

Billed to:

Andrew Hines
Executive Vice-President & Chief Financial Officer
Outboard Marine Corporation
100 Sea-Horse Drive
Waukegan, IL 600852-2195

Remit payment to: KPMG LLP
Dept. 6978
P.O. Box 120001
Dallas, TX 75312-0978

*Please include the remittance copy of the invoice with payment or write the billing number on the face of the check to ensure proper credit.*

| | | |
|---|---|---|
| **To Our Fees:** | $ | 16,223 |
| For services rendered in accordance with the engagement letter dated December 13, 1999. | | |
| Plus out-of-pocket expenses for travel, lodging and administrative costs | | 3,893. |

*Payment due within 30 days of date of invoice*

| **Total Bill Amount** | $ | **20,116** |
|---|---|---|

Date: May 17, 2000
Billing Number: 40285382
Bill Amount: $20,116.00

T.I.N. 13-55

KPMG LLP, KPMG LLP, a US limited liability partnership, is
a member of KPMG International, a Swiss association



(ATTACHMENT D)

# OUTBOARD MARINE CORPORATION
## PAYMENTS MADE TO KPMG DURING PREFERENCE PERIOD (SEPTEMBER 23, 2000 - DECEMBER 21, 2000)

| TRANSACTION | CHECK NUMBER | INVOICE NUMBER | INVOICE DATE | INVOICE AMOUNT | AMOUNT PAID | CLEARED BANK DATE | DAYS FOR INVOICE TO CLEAR BANK |
|---|---|---|---|---|---|---|---|
| **1. Audit/Tax Fees** | | | | | | | |
| **FY2000** | | | | | | | |
| 12/31/00 F/S AUDIT | 142335 | 40335421 | 21-Jul-00 | 40,000.00 | 40,000.00 | 02-Oct-00 | 73 |
| 12/31/00 F/S AUDIT | 153552 | 40390362 | 02-Oct-00 | 40,000.00 | 40,000.00 | 29-Nov-00 | 58 |
| PROFESSIONAL TAX SERVICES | 140943 | 40340713 | 25-Jul-00 | 32,614.00 | 32,614.00 | 25-Sep-00 | 62 |
| Total | | | | 112,614.00 | 112,614.00 | | |
| | | | | | | | |
| **2. Other Fees** | | | | | | | |
| OUTSOURCING ENGAGEMENT PER ENGAGEMENT LETTER+ ADDT'L SERVICE | 143747 | 40351139 | 09-Aug-00 | 49,521.00 | 49,521.00 | 11-Oct-00 | 63 |
| SOFTWARE INTEGRATION & CONSULTING CHARGES (1) | 145033 | 40367408 | 05-Sep-00 | 24,980.00 | 24,980.00 | 17-Oct-00 | 42 |
| MEXICAN ASSET SALE AND 1999 FORM 5665 FILING | 145034 | 40370013 | 13-Sep-00 | 7,425.00 | 7,425.00 | 16-Oct-00 | 33 |
| STOCK COMPENSATION RESEARCH ISSUES | 146140 | 40349100 | 06-Sep-00 | 8,261.00 | 8,261.00 | 18-Oct-00 | 42 |
| FOUR WINNS PROFIT SHARING PLAN | 149246 | 40371041 | 14-Sep-00 | 7,328.00 | 7,328.00 | 31-Oct-00 | 47 |
| OUTSOURCING ENGAGEMENT PER ENGAGEMENT LETTER | 150806 | 40372229 | 13-Sep-00 | 33,199.00 | 33,199.00 | 15-Nov-00 | 63 |
| Total | | | | 130,714.00 | 130,714.00 | | 54 |
| | | | | | | | |
| **3. Grand Total** | | | | 243,328.00 | 243,328.00 | | |

(1) Included in OMC files but not in the KPMG-prepared packet.

DRAFT
PRINTED: 08/20/2001 8:43 AM
FILE: kpmg analysis   WORKSHEET: Detail



**BANK ≡ ONE.**

**ACCOUNT STATEMENT**

Account Number: 1034198
Statement Inquiries Telephone: (312) 732-2100

ATTACHMENT A

## OUTBOARD MARINE CORP

| | | |
|---|---|---|
| 12/22/2000 | 0000000001222000014 | 467,167.33 DR |

DR: OUTBOARD MARINE CORP
FOR: OSN=G1QH052C002588
SRF=00756
ISN=    SET
BNF=TRANZACT SYSTEMS LTD /AC- 400015214
OBI=B O OMC
VIA: FO FED REF# 002588 MTS# 000000 FST MDWST MOLINE

| | | |
|---|---|---|
| 12/22/2000 | 0000000001222000015 | 422,807.00 DR |

DR: OUTBOARD MARINE CORP
FOR: OSN=G1QH052C002610
BNF=K P M G /AC- 0013629
OBI=REF OUTBOARD MARINE-OUTSTANDING RETAINER
VIA: FO FED REF# 002610 MTS# 000000 MELLON PIT

| | | |
|---|---|---|
| 12/22/2000 | 0000000001222000016 | 11,880.04 DR |

DR: OUTBOARD MARINE CORP
FOR: OSN=G1QH051C002908
BNF=KIRK E. BREWER /AC- 0850194804
OBI=INV. OMC62000
VIA: FO FED REF# 002908 MTS# 000000 WELLS FARGO TX

| | | |
|---|---|---|
| 12/22/2000 | 0000000001222000017 | 75,000.00 CR |

MSG: SRF=3571713100
OSN=B1Q8024C005302
ISN=G1QG721R002855
OBI=OBI: REFUND OF RETAINER ORG: D/30060143 BNF: D/10-34198 OUTBOARD MARIN
E CORPORATION CONCENTRATION ACCOUNT
SBK=CITIBANK NA NEW YORK NY
ORG=SKADDEN ARPS, SLATE MEAGHER & FLON NEW YORK, NY 10036
CR: OUTBOARD MARINE CORP
VIA: FI FED REF# 002855 MTS# 000000 CITIBANK NYC

| | | |
|---|---|---|
| 12/22/2000 | 0000000000122200X018 | 14,850.00 DR |

DR: OUTBOARD MARINE CORP
FOR: OSN=G1QH052C004138
BNF=DAVID AND ALICE WHITE DBA RELIABLE /AC- 1413036604
OBI=SECURITY SERVICES
INV NO 1403 REF OMC
VIA: FO FED REF# 004138 MTS# 000000 CENTURA ROCKY MT

| | | |
|---|---|---|
| 12/22/2000 | 0000000000724865866 | 214,642.56 CR |

ZBA CREDIT - MASTER ACCOUNT    000000005505496

| | | |
|---|---|---|
| 12/22/2000 | 0000000000000007254 | 983.69 DR |

CD DEBIT - ORIG  ACCOUNT    000000000928994

# Exhibit G

7.12   Consultation with Advisors. The Management Committee and the Administrative Committee may employ one or more persons to render advice with regard to any responsibility either may have under the Plan. They may consult with counsel, actuaries, accountants, physicians, or other advisors (who may be counsel, actuaries, accountants, physicians or other advisors for the Company) and may also from time to time utilize the services of employees and agents of any Employer in the discharge of their responsibilities.

7.13   Investment Policy.

(a)   The Management Committee shall from time to time determine an investment policy to carry out the objectives of the Plan with which the funding policy of the Retirement Fund shall be appropriately coordinated. The investment policy shall be communicated from time to time to any Trustee, insurance carriers, Investment Managers, or others having any responsibility for management and control of the assets of the Plan or a specific portion thereof.

(b)   Subject to paragraph (c) below, the Trustee and insurance carriers shall have exclusive authority and discretion to manage and control the assets of the Retirement Fund, pursuant to an investment policy coordinated with the funding policy and method of the Plan, as determined by the Management Committee.

(c)   The Management Committee may, pursuant to the terms of any Trust, appoint one or more Investment Managers to manage any assets of the Trust pursuant to an investment policy coordinated with the funding policy and method of the Plan as determined by the Management Committee.

(d)   The term "Investment Manager" shall mean: W a registered investment adviser under the Investment Advisers Act of 1940; (ii) a bank, as defined in the Investment Advisers Act of 1940; or (iii) an insurance company qualified under the laws of more than one state to manage, acquire and dispose of plan assets.

7.14   Delegation of Authority by the Management Committee and the Administrative Committee. The Management Committee and the Administrative Committee may designate in writing other employees of an Employer to carry out a specified part or parts of either's staff responsibilities hereunder. Any designation involving fiduciary responsibility must be accepted by the designated person who shall acknowledge in writing that he is a fiduciary with respect to the Plan.

7.15   Compensation and Expenses.

(a)   A member of either Committee shall serve without compensation for services as such if he is receiving full-time pay from the Employer as an Employee. Any other member of a Committee may receive compensation for services as a member from the Company and not from the Plan. Any member of a Committee may receive reimbursement by the Company of expenses properly and actually incurred.

CH: 1061585v1                              47

(b)    All expenses of the Committees to the extent not paid by the Company shall be paid by the Trustee from the Trust Fund.  Such expenses shall include any expenses incident to the functioning of the Committees, including, but not limited to, fees of actuaries, accountants, counsel and other specialists and other costs of administering the Plan.

7.16    Non-Enlargement of Employee Rights.  Nothing contained in the Plan shall be deemed to give any Employee the right to be retained in the service of the Employers or to interfere with the right of any Employer to discharge or retire any Employee at any time.

7.17    Notice of Address.  Each person entitled to benefits from the Retirement Fund must file with the Administrative Committee, in writing, his post office address and each change of post office address. Any communication, statement, or notice addressed to such a person at his latest reported post office address will be binding upon him "for all purposes of the Plan and neither the Administrative Committee nor any Employer or Trustee or insurance company shall be obliged to search for, or ascertain his whereabouts.

7.18    Application for Benefits.  Any election, revocation of an election or application for benefits pursuant to the Plan shall not be effective unless it is made on such form, if any, as the Administrative Committee may prescribe for such purpose; the form is signed by the Participant and, if required under Section 4, by the Participant's spouse; and the form is filed with the Administrative Committee, as follows:

(a)    Any person who believes that he is entitled to receive a benefit under the Plan, including a benefit other than that initially determined by the Administrative Committee, must file an application for benefits with the Administrative Committee at least 30 days prior to his Annuity Starting Date.

(b)    The Administrative Committee shall within 90 days after the receipt of an application either allow or deny the application in writing.  A denial of benefits shall be written in a manner calculated to be understood by the claimant and shall include:

(i)    the specific reason or reasons for the denial;

(ii)    specific reference to pertinent Plan provisions on which the denial is based;

(iii)    a description of any additional material or information necessary for the applicant to perfect his claim and an explanation of why such material or information is necessary; and

(iv)    an explanation of the Plan's claim review procedure.

7.19    Claim Review Procedure.

(a)    An individual whose application is denied (or his duly authorized representative) may within 60 days after receipt of denial of his application: