FILED
UNITED STATES BANKRUPTCY
NORTHERN DISTRICT OF
MAY 28 2002
KENNETH S. GARDNER,
PS REP. - KS

E O D   MAY 2 9 2002

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 00 B 37405 |
| | ) | (Jointly Administered) |
| OUTBOARD MARINE CORPORATION, | ) | Chapter 7 |
| et al., | ) | |
| Debtors. | ) | Hon. Ronald Barliant |

**TRUSTEE'S REPLY IN SUPPORT OF HIS OBJECTION TO KPMG LLP'S
FIRST AND FINAL APPLICATION FOR COMPENSATION AND EXPENSES
INCURRED DURING THE PERIOD BEGINNING DECEMBER 22, 2000
AND ENDING JULY 31, 2001**

In response to the factual and legal arguments raised by the Trustee in his Objection to KPMG's Application, KPMG offers an anemic defense of its misrepresentations and billing irregularities.[1] KPMG made no valid explanation of its failure to disclose the full extent of its actual and potential claims by and against the debtor or its defective time entries. Accordingly, the Application should be denied outright and KPMG ordered to disgorge the $666,135 it received during the preference period.

A. **KPMG Did Not Disclose Its Conflicts To The Court Or The Committee Prior To Its Retention.**

KPMG's Response to the Trustee's Objection ("Response") distorts the record concerning the circumstances of KPMG's retention. The relevant facts are these. Unbeknownst to the Committee, the court or anyone else other than OMC and KPMG, OMC paid KPMG $666,135 during the period September 23, 2000 through December 22, 2000, including a wire transfer of $422,807 sent on the Petition Date. The only payment that was disclosed to the court or the Committee *prior to* KPMG's retention was a "retainer" of $200,000, an arbitrary carve-out

---

[1] The Trustee adopts the defined terms used in his objection.

of the $422,807 wired on December 22, 2000. Both KPMG's initial and amended applications for employment and supporting affidavits indicated that KPMG intended to apply this $200,000 "retainer" to "unpaid and not yet invoiced prepetition fees" and to apply "[a]ny remaining or unapplied amount of the retainer" to its court-approved post-petition fees. *See e.g.* February 23, 2002 Amended Application for an Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) Authorizing the Retention and Employment of KPMG LLP as Accountants, Auditors and Tax Advisors to the Debtors as of December 22, 2002 at ¶ 21, a copy of which is attached hereto as Exhibit A. The Committee naturally objected to the Debtors' efforts at allowing KPMG to apply a "retainer" to prepetition invoices. *See* Limited Objection of the Official Committee of Unsecured Creditors to Debtors' Amended Application to Employ KPMG LLP, a copy of which is attached to the Trustee's Objection as Exhibit B. The parties negotiated the Committee's objection, and the order allowing KPMG's retention indicated that the $200,000 "retainer" would be applied to postpetition services. *See* April 18, 2001 Retention Order, a copy of which is attached to the Trustee's Objection as Exhibit C at p. 2.

Thus, although KPMG states in its response that "KPMG did, in fact, disclose each of the prepetition payments to this Court, and directly to D'Ancona & Pflaum, as counsel to the Committee," (Response at p. 7) these disclosures occurred *after* KPMG was retained as a "disinterested" professional. KPMG attempts to justify its lack of candor by stating that it is "absurd to argue that a professional is disqualified because it received a payment from a debtor within" the preference period. *See* Response at pp. 2. The Trustee's position is hardly absurd:

> Under Section 101(14), a 'disinterested person' must be a person who 'is not a creditor." The Code defines the term 'creditor' as meaning any 'entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor,' 11 U.S.C. § 101(10)(A), and the commencement of each of the debtor's chapter 11 cases constituted an order for relief. See 11 U.S.C. § 301. These provisions,

- 2 -

602526 v1 - 102528/000

> taken together, unambiguously forbid a debtor in possession from retaining a prepetition creditor to assist it in the execution of its Title 11 duties. See, e.g., *In re Eagle-Picher Indus., Inc.*, 999 F.2d 969, 972 (6th Cir.1993); *In re Middleton Arms, Ltd. Partnership*, 934 F.2d 723, 725 (6th Cir.1991); *In re Pierce*, 809 F.2d 1356, 1362-63 (8th Cir.1987); *In re Hub Business Forms, Inc.*, 146 B.R. 315, 320 (Bankr.D.Mass.1992); *In re Patterson*, 53 B.R. 366, 371-73 (Bankr.D.Neb.1985).

*United States v. PriceWaterhouse*, 19 F.3d 138, 141 (3rd Cir. 1994). *See, also, In re First Jersey Securities, Inc.*, 180 F.3d 504, 509 (3rd Cir. 1999) (preferential transfer creates actual conflict of interest requiring disqualification of professional).

KPMG is not permitted to sit as judge on OMC's estate's potential preference claims and decide that that payments made within the 90 days of OMC's bankruptcy did not need to be disclosed because they were not preferences. It was required to make a full disclosure of all relevant contacts so that the court, the United States Trustee's Office and other parties can review the situation and determine whether KPMG was sufficiently disinterested or risk having its retention order denied and its request for fees rejected.

Moreover, while KPMG agreed to waive any claim it may have as a result of having to disgorge preferential transfers, KPMG has not waived the $181,771 prepetiton claim created when KPMG "unapplied" the $200,000 "retainer" applied on March 7, 2001 to "unpaid and not yet invoiced prepetition fees." *See* Trustee's Objection at Exhibit D. KPMG cannot have it both ways: if the application of the $200,000 to prepetition debt was only "provisional" as of the date of KPMG's retention, [2] then KPMG had a claim of $181,771 against the estate that it failed to disclose and has not waived. If, on the other hand, the application of the $200,000 to unpaid and invoiced services had actually occurred (as KMPG intended in its post-petition disclosure to the

---

[2] KPMG's claim here lacks credibility. On May 18, 2001 (one month after KPMG's retention), KPMG informed the Committee that the status of the account showed that only $18,229 was available for postpetition fees because the rest had been applied. There was no indication that the payments were "provisional".

- 3 -

Committee), then KPMG should have disclosed the fact that only $18,000 of the "retainer" was available for postpetition services.

Bankruptcy Rule 2014(a) requires an applicant to disclose under oath "all of the person's connections with the debtor" so that the court can fairly evaluate a § 327(a) application and the propriety of the proposed representation. KPMG was not entitled to "pick and chose which connections are irrelevant or trivial." *In re EWC, Inc.*, 138 B.R. 276, 280 (Bankr. W.D. Okla. 1992). KPMG did not make a meaningful disclosure of its contacts with OMC, especially as it related to a potential $466,175 preference payments and a $188,175 claim. Given the extensive negotiations that surrounding the conflict that was disclosed, it is likely that, had the court, the United States Trustee's Office and the Committee been fully informed of all of these payments and claims, KPMG would not have been retained. KPMG's lack of candor disqualifies it from receiving any payment from OMC's estate *United States v. Gellene*, 182 F.3d 578, 588 (7th Cir. 1999) (citations omitted); *Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045 (9th Cir. 1997); *Neben & Starrett, Inc. v. Chartwell Financial Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 882 (9th Cir. 1995).

      **B.**    **KPMG's Application Should Be Denied For Failing To Satisfy 11 U.S.C. § 330.**

KPMG urges the court to draw "reasonable inferences" from the documents supporting its Application, *i.e.* not to accept KPMG's own time entries at face value. *See* Response at p. 12. The only "reasonable inference" from the Application is that KPMG is looking to be paid for work that either was not performed or was not necessary.

For example, in response to the Trustee's objection that KPMG Manager John Scacco (at $315 per hour) and KPMG Tax Managing Director James "Mike" Pezzella (at $550 per hour) submitted time entries that were identical *in every respect* for 71.5 hours stretching over two

months, KPMG attempts to put the blame for this unusual coincidence on counsel for the Committee by indicating that the two-day, eight hour meeting in which Mr. Scacco billed for a meeting with himself was "caused" by the Committee's objection to KPMG's effort to apply the $200,000 "retainer" to prepetition services. *See* Affidavit of J. M. Pezzella, attached to KPMG's Response, at ¶ 8. The Committee's objection did not "cause" Mr. Scacco to copy Mr. Pezzella's time entries. Moreover, it is utterly incredible that a Manager and a Managing Director performed the *exact* same work on the *exact* same days over a two month period; that Messrs. Scacco and Pezzella both spent three hours on February 21, 2001 reviewing "hours and dollars on engagement" and two hours the next day reviewing "request regarding application of advance payment"; or that it took both gentlemen six hours on February 26, 2001 to discuss Canadian returns with Linda Hunt and arrange for the delivery of those returns. *See* Section of KPMG's Fee Application, a copy of which is attached hereto as Exhibit B. Even Mr. Pezzella's affidavit does not swear to the authenticity of these time entries.

KPMG is likewise disingenuous in response to the Trustee's objection to the time allegedly spent completing sales tax returns months after OMC stopped operating. "Sale tax filings are necessarily filed after assets are sold," Mr. Pezzella opines. *See* Pezzella Affidavit at ¶ 5. Mr. Pezella fails to explain why KPMG completed sales tax returns for several states for the month of June 2001, when all of OMC's operating assets were sold on March 7, 2001 or why KPMG allegedly performed this work after instructed by the debtor in possession that the returns were not necessary.

If the court is inclined to consider awarding KPMG any fees for the work performed on behalf of OMC's chapter 11 estate, the Trustee respectfully asks that the court hold an evidentiary hearing, so the Trustee can both question the KPMG employees about the work

- 5 -

allegedly performed and present evidence that much of the work was not necessary and not directed by the debtor in possession.

### C. KPMG Should Not Be Reimbursed For Its Expenses.

KPMG is also seeking as "expenses" the legal fees it incurred in "resolving" the objections to KPMG's retention and in opposing the Trustee's Rule 2004 subpoena. The request is absurd.

As an initial matter, as set forth above, the Committee's objection to KPMG's retention was limited to KPMG's application of a $200,000 "retainer" to prepetition obligations. This was not a frivolous objection. In fact, KPMG's retention was conditioned on KPMG's agreement *not* to use the $200,000 for prepetition obligations. Thus, the Committee's objection to KPMG's retention was in effect sustained, not overruled. The Debtor filed KPMG's Application and OMC's creditors have already paid for those legal fees. The only fees at issue were those incurred in connection with addressing KPMG's efforts at applying its "retainer" to prepetition debt and KPMG's disinterestedness. Asking OMC's creditors to pay KPMG's attorneys for their efforts in addressing these issues would reward KPMG's demonstrated untenable conduct and chill creditors' ability to question whether a professional should be retained in the first place.

As for its fees in connection with responding to the Trustee's subpoena, KPMG was ordered to produce documents in response to the subpoena. KPMG is asking to be rewarded for its own discovery abuse and for refusing to produce the information ordered produced as a condition for its retention. Nothing in any of KPMG's authority supports this audacious request and it should be denied outright.

- 6 -

602526 v1 - 102528/000

### D. Conclusion.

KPMG forfeited any right to payment for services it alleges it performed on behalf of OMC's chapter 11 estate when KPMG failed to disclose the full extent of its financial relationship with OMC. It would have the court believe that any omission made was immaterial and inadvertent, but the creditors of OMC have the right to expect that the professionals retained on behalf of the estate will protect the rights of the creditors, and not the professionals themselves. Accordingly, KPMG's Application should be denied in its entirety and KPMG ordered to disgorge the $666,135 paid to it during the preference period.

Dated: May 28, 2002

Respectfully submitted,

Alex D. Moglia, not individually, but as chapter 7 trustee for the Outboard Marine Corporation and its related debtor entities

By: _____
One of its attorneys

Steven B. Towbin (#2848546)
Kathleen H. Klaus (#6211316)
D'Ancona & Pflaum LLC
111 East Wacker Drive
Suite 2800
Chicago, Illinois 60601
(312) 602-2000

- 7 -

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: Outboard Marine Corporation, et. al. <br><br> Debtors. | Chapter 11 Case No. 00-37405 <br> Hon. Erwin I. Katz |

AMENDED APPLICATION FOR ORDER PURSUANT TO 11 U.S.C. §§ 327(a) and 328(a) AUTHORIZING THE RETENTION AND EMPLOYMENT OF KPMG LLP AS ACCOUNTANTS, AUDITORS AND TAX ADVISORS TO THE DEBTORS AS OF DECEMBER 22, 2000

**TO THE HONORABLE U.S. BANKRUPTCY JUDGE:**

Outboard Marine Corporation, *et al.*, as debtors and debtors-in-possession (the "**Debtors**"), submits this application (the "**Application**") for an order pursuant to §§ 327(a), 328 and 1107(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Local Bankruptcy Rules for the Northern District of Illinois (the "**Local Bankruptcy Rules**") authorizing the retention and employment of KPMG LLP, the United States member firm of KPMG International (a Swiss association) ("**KPMG**") as accountants, auditors and tax advisors

2

to the Debtors. In support of this Application, the Debtors rely upon the affidavit of Douglas H. Ruud (the "**Ruud Affidavit**") attached hereto as Exhibit A and respectfully represents as follows:

## Background

1. On December 22, 2000 (the "**Petition Date**"), the Debtors filed with this court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for relief sought herein is § 327 of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules. Venue of the Debtors' chapter 11 cases and this Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

3. By this Application, the Debtors request authorization to retain and employ KPMG LLP as its accountants, auditors and tax advisors in this chapter 11 case. Specifically, the Debtors respectfully requests entry of an order pursuant to section 327(a) of the Bankruptcy Code authorizing KPMG LLP to perform accounting, auditing, and tax advisory services that will be necessary during its chapter 11 case as more fully described below.

### Services to be Rendered

4. The Debtors anticipate that KPMG LLP may render the following services in this case:

- (1) Audits of the annual financial statements of the Debtors as may be required from time to time and assistance in the filing of the Debtors' financial statements and disclosure documents required by the Securities and Exchange Commission;

- (2) Reviews of the quarterly financial statements of the Debtors as may be required from time to time, and assistance in the filing of Quarterly Reports on Form 10-Q with the Securities and Exchange Commission;

- (3) Audits of the financial statements of employee benefit plans sponsored by Debtors as required by Department of Labor regulations;

- (4) Audits of the financial statements of subsidiaries, divisions or businesses, including businesses to be divested, of Debtors as requested by Debtors;

- (5) Research, analysis, and advice with regard to a variety of audit, accounting, tax planning, and regulatory compliance issues;

- (6) Assistance to the Debtors in conducting various internal data systems, financial, and operational internal audits as requested by the Debtors;

- (7) Preparation or review of any tax returns and other tax compliance filings as may be required in the various jurisdictions in which the Debtors operate;

- (8) Advice and assistance related to the tax and other filing requirements of employee benefit plans sponsored by Debtors as required by Department of Labor regulations.

- (9) Advice and assistance to the Debtors regarding tax planning

4

issues, including assistance in estimating net operating loss carryforwards;

(10) Assistance in developing and implementing tax reduction strategies arising from the Debtors' specific request or KPMG LLP's identification of possible tax planning opportunities;

(11) Advice and assistance on the tax consequences of any proposed plans of reorganization and in the preparation of any Internal Revenue Service ("IRS") ruling requests regarding the future tax consequences of alternative reorganization structures;

(12) Assistance required regarding existing and future IRS, state and/or local tax examinations;

(13) Assistance in the preparation of various forms, reports, schedules, and statements required by the Court, the Office of the United States Trustee, and other regulatory agencies; and

(14) Other tax advice and assistance as may be requested from time to time.

5. The Debtors have filed retained Houlihan Lokey Howard & Zukin ("**Houlihan Lokey**") as their investment banker and Development Strategies, Inc. ("**DSI**") as their restructuring advisor. The services to be provided by KPMG LLP will not be duplicative of those provided by Houlihan Lokey and DSI, and KPMG LLP will coordinate any services performed at the Debtors' request with the services of Houlihan Lokey, DSI or any other financial advisors and counsel, as appropriate, to avoid duplication of effort.

5

6. Subject to this Court's approval of the Application, KPMG LLP is willing to serve as the Debtors' accountants, auditors and tax advisors and to perform the services described above.

### Qualifications of Professionals

7. KPMG LLP is a firm of independent public accountants as defined under the Code of Professional Conduct of the American Institute of Certified Public Accountants.

8. The Debtors have selected KPMG LLP as its accountants, auditors and tax advisors because of the firm's diverse experience and extensive knowledge in the fields of accounting, auditing, taxation and bankruptcy.

9. Since the spring of 1999, KPMG LLP has served and continues to serve as accountants, auditors and tax advisors to the Debtors. By virtue of its prior engagement, KPMG LLP is familiar with the books, records, financial information and other data maintained by the Debtors and is well qualified to continue to provide accounting, auditing and tax advisory services to the Debtors. As such, retaining KPMG LLP is the most efficient and cost effective manner in which to obtain the requisite services.

10. In addition, the Debtors need assistance in collecting, analyzing and presenting accounting, financial and other information in relation to the restructuring and chapter 11 proceedings. KPMG LLP has considerable experience with rendering

6

such services to debtors and other parties in numerous chapter 11 cases. As such, KPMG LLP is well qualified to perform the work required in this case.

### Disinterestedness of Professionals

11. To the best of the Debtors' knowledge, KPMG LLP does not hold or represent an interest adverse to the estate that would impair KPMG LLP's ability to objectively perform professional services for the Debtors, in accordance with section 327 of the Bankruptcy Code.

12. To the best of the Debtors' knowledge, KPMG LLP is a "disinterested person" as that term is defined in 11 U.S.C. § 101(14) as modified by section 1107(b) of the Bankruptcy Code.

13. To the best of the Debtors' knowledge, except as set forth in accordance with Rules 2014 and 5002 of the Bankruptcy Rules at Exhibit A in the Ruud Affidavit and Supplemental Affidavit, (1) KPMG LLP has no connections with the creditors, any other party in interest, or their respective attorneys; and (2) the KPMG LLP partners and professionals working on this matter are not relatives of the United States Trustee of the Northern District of Illinois or of any known employee in the office thereof, or any United States Bankruptcy Judge of the Northern District of Illinois.

14. KPMG LLP has not provided, and will not provide, any professional services to any of the creditors, other parties-in-interest, or their attorneys with regard to any matter related to this chapter 11 case.

### Professional Compensation

15. KPMG LLP's requested compensation for professional services rendered to the Debtors will be based upon the prior agreed upon amounts contained in the Engagement Letters and attached as Exhibit B of the Ruud Affidavit. The Debtors have also agreed to compensate KPMG LLP at normal and customary hourly rates for professional services rendered in the event that cost overruns exceed the agreed to amounts set forth in the Engagement Letters.

16. KPMG LLP, in the normal course of business, revises its hourly rates and KPMG LLP requests that the rates listed below be revised to the hourly rates that will be in effect at such time in the event of cost overruns. The customary hourly rates for accounting, auditing, and tax advisory services to be rendered by KPMG LLP and applicable herein are as follows:

| Accounting, Auditing and Tax Advisory: | |
|---|---|
| Partners and Directors | $375 - $600 |
| Senior Managers/Managers | $250 - $500 |
| Senior and Staff Accountants | $125 - $300 |
| Para-professionals | $85 - $105 |

17. The rates included in this Application are KPMG LLP's normal and customary rates for accounting, auditing, and tax advisory services.

8

18. KPMG LLP will also seek reimbursement for necessary expenses incurred, which shall include travel, photocopying, delivery service, postage, vendor charges and other out-of-pocket expenses incurred in providing professional services.

19. KPMG LLP intends to apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. KPMG LLP has agreed to accept as compensation such sums as may be allowed by the Court pursuant to 11 U.S.C. §§ 330 and 331. KPMG LLP understands that interim and final fee awards are subject to approval by this Court.

20. According to the Debtors' books and records for the year prior to the Petition Date, KPMG LLP was paid approximately $1,100,000 for accounting, auditing, and tax advisory services. KPMG LLP is not a creditor of the Debtors' estate.

21. KPMG LLP has received a retainer of $200,000 for unpaid and not yet invoiced pre-petition fees of KPMG LLP and KPMG foreign member firms. Any remaining or unapplied amount of the retainer shall be held by KPMG LLP, and will be used towards any Court approved post-petition fees.

9

## Notice

22.    Notice of this Application has been given to (i) the Office of the United States Trustee for the Northern District of Illinois, (ii) counsel for The Official Committee Of Unsecured Creditors, and (iii) any other parties requesting notice. The Debtors submit that, given the nature of the relief requested, no other or further notice of the relief requested is necessary.

23.    No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter the order (i) granting this Application, (ii) authorizing the Debtors to retain and employ KPMG LLP as its accountants, auditors and tax advisors to perform the services set forth above as of December 22, 2000, and (iii) granting the Debtors such other and further relief as is just and proper.

Dated: Chicago, Illinois
February 23, 2001

OUTBOARD MARINE CORPORATION, et al.,

_____
David S. Kurtz (ARDC No. 03126561)
Mark A. McDermott (ARDC No. 06209460)
Eric W. Kaup (ARDC No. 6229548)
SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM (ILLINOIS)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606-1285
Tel: (312) 407-0700

Attorneys for Debtors and
 Debtors-in-Possession