FILED
UNITED STATES BANKRUPTCY CO
NORTHERN DISTRICT OF ILLINO
JUN 11 2002
KENNETH S. GARDNER, CL
PS REP. - MJ

E O D JUN 1 3 2002

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | Case No. 00 B 37405 |
| ) | (Jointly Administered) |
| OUTBOARD MARINE CORPORATION, ) | Chapter 7 |
| et al., ) | |
| Debtors. ) | Hon. Ronald Barliant |

**TRUSTEE'S REPLY IN SUPPORT OF HIS OBJECTION TO KPMG LLP'S FIRST AND FINAL APPLICATION FOR COMPENSATION AND EXPENSES INCURRED DURING THE PERIOD BEGINNING DECEMBER 22, 2000 AND ENDING JULY 31, 2001**

In response to the factual and legal arguments raised by the Trustee in his Objection to KPMG's Application, KPMG offers an anemic defense of its misrepresentations and billing irregularities.[1] KPMG made no valid explanation of its failure to disclose the full extent of its actual and potential claims by and against the debtor or its defective time entries. Accordingly, the Application should be denied outright and KPMG ordered to disgorge the $666,135 it received during the preference period.

### A. KPMG Did Not Disclose Its Conflicts To The Court Or The Committee Prior To Its Retention.

KPMG's Response to the Trustee's Objection ("Response") distorts the record concerning the circumstances of KPMG's retention. The relevant facts are these. Unbeknownst to the Committee, the court or anyone else other than OMC and KPMG, OMC paid KPMG $666,135 during the period September 23, 2000 through December 22, 2000, including a wire transfer of $422,807 sent on the Petition Date. The only payment that was disclosed to the court or the Committee *prior to* KPMG's retention was a "retainer" of $200,000, an arbitrary carve-out

---

[1] The Trustee adopts the defined terms used in his objection.

of the $422,807 wired on December 22, 2000. Both KPMG's initial and amended applications for employment and supporting affidavits indicated that KPMG intended to apply this $200,000 "retainer" to "unpaid and not yet invoiced prepetition fees" and to apply "[a]ny remaining or unapplied amount of the retainer" to its court-approved post-petition fees. *See e.g.* February 23, 2002 Amended Application for an Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) Authorizing the Retention and Employment of KPMG LLP as Accountants, Auditors and Tax Advisors to the Debtors as of December 22, 2002 at ¶ 21, a copy of which is attached hereto as Exhibit A. The Committee naturally objected to the Debtors' efforts at allowing KPMG to apply a "retainer" to prepetition invoices. *See* Limited Objection of the Official Committee of Unsecured Creditors to Debtors' Amended Application to Employ KPMG LLP, a copy of which is attached to the Trustee's Objection as Exhibit B. The parties negotiated the Committee's objection, and the order allowing KPMG's retention indicated that the $200,000 "retainer" would be applied to postpetition services. *See* April 18, 2001 Retention Order, a copy of which is attached to the Trustee's Objection as Exhibit C at p. 2.

Thus, although KPMG states in its response that "KPMG did, in fact, disclose each of the prepetition payments to this Court, and directly to D'Ancona & Pflaum, as counsel to the Committee," (Response at p. 7) these disclosures occurred *after* KPMG was retained as a "disinterested" professional. KPMG attempts to justify its lack of candor by stating that it is "absurd to argue that a professional is disqualified because it received a payment from a debtor within" the preference period. *See* Response at pp. 2. The Trustee's position is hardly absurd:

> Under Section 101(14), a 'disinterested person' must be a person who 'is not a creditor." The Code defines the term 'creditor' as meaning any 'entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor,' 11 U.S.C. § 101(10)(A), and the commencement of each of the debtor's chapter 11 cases constituted an order for relief. See 11 U.S.C. § 301. These provisions,

- 2 -

> taken together, unambiguously forbid a debtor in possession from retaining a prepetition creditor to assist it in the execution of its Title 11 duties. See, e.g., *In re Eagle-Picher Indus., Inc.*, 999 F.2d 969, 972 (6th Cir.1993); *In re Middleton Arms, Ltd. Partnership*, 934 F.2d 723, 725 (6th Cir.1991); *In re Pierce*, 809 F.2d 1356, 1362-63 (8th Cir.1987); *In re Hub Business Forms, Inc.*, 146 B.R. 315, 320 (Bankr.D.Mass.1992); *In re Patterson*, 53 B.R. 366, 371-73 (Bankr.D.Neb.1985).

*United States v. PriceWaterhouse*, 19 F.3d 138, 141 (3rd Cir. 1994). *See, also, In re First Jersey Securities, Inc.*, 180 F.3d 504, 509 (3rd Cir. 1999) (preferential transfer creates actual conflict of interest requiring disqualification of professional).

KPMG is not permitted to sit as judge on OMC's estate's potential preference claims and decide that that payments made within the 90 days of OMC's bankruptcy did not need to be disclosed because they were not preferences. It was required to make a full disclosure of all relevant contacts so that the court, the United States Trustee's Office and other parties can review the situation and determine whether KPMG was sufficiently disinterested or risk having its retention order denied and its request for fees rejected.

Moreover, while KPMG agreed to waive any claim it may have as a result of having to disgorge preferential transfers, KPMG has not waived the $181,771 prepetiton claim created when KPMG "unapplied" the $200,000 "retainer" applied on March 7, 2001 to "unpaid and not yet invoiced prepetition fees." *See* Trustee's Objection at Exhibit D. KPMG cannot have it both ways: if the application of the $200,000 to prepetition debt was only "provisional" as of the date of KPMG's retention,[2] then KPMG had a claim of $181,771 against the estate that it failed to disclose and has not waived. If, on the other hand, the application of the $200,000 to unpaid and invoiced services had actually occurred (as KMPG intended in its post-petition disclosure to the

---

[2] KPMG's claim here lacks credibility. On May 18, 2001 (one month after KPMG's retention), KPMG informed the Committee that the status of the account showed that only $18,229 was available for postpetition fees because the rest had been applied. There was no indication that the payments were "provisional".

Committee), then KPMG should have disclosed the fact that only $18,000 of the "retainer" was available for postpetition services.

Bankruptcy Rule 2014(a) requires an applicant to disclose under oath "all of the person's connections with the debtor" so that the court can fairly evaluate a § 327(a) application and the propriety of the proposed representation. KPMG was not entitled to "pick and chose which connections are irrelevant or trivial." *In re EWC, Inc.*, 138 B.R. 276, 280 (Bankr. W.D. Okla. 1992). KPMG did not make a meaningful disclosure of its contacts with OMC, especially as it related to a potential $466,175 preference payments and a $188,175 claim. Given the extensive negotiations that surrounding the conflict that was disclosed, it is likely that, had the court, the United States Trustee's Office and the Committee been fully informed of all of these payments and claims, KPMG would not have been retained. KPMG's lack of candor disqualifies it from receiving any payment from OMC's estate *United States v. Gellene*, 182 F.3d 578, 588 (7th Cir. 1999) (citations omitted); *Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045 (9th Cir. 1997); *Neben & Starrett, Inc. v. Chartwell Financial Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 882 (9th Cir. 1995).

### B. KPMG's Application Should Be Denied For Failing To Satisfy 11 U.S.C. § 330.

KPMG urges the court to draw "reasonable inferences" from the documents supporting its Application, *i.e.* not to accept KPMG's own time entries at face value. *See* Response at p. 12. The only "reasonable inference" from the Application is that KPMG is looking to be paid for work that either was not performed or was not necessary.

For example, in response to the Trustee's objection that KPMG Manager John Scacco (at $315 per hour) and KPMG Tax Managing Director James "Mike" Pezzella (at $550 per hour) submitted time entries that were identical *in every respect* for 71.5 hours stretching over two

months, KPMG attempts to put the blame for this unusual coincidence on counsel for the Committee by indicating that the two-day, eight hour meeting in which Mr. Scacco billed for a meeting with himself was "caused" by the Committee's objection to KPMG's effort to apply the $200,000 "retainer" to prepetition services. *See* Affidavit of J. M. Pezzella, attached to KPMG's Response, at ¶ 8. The Committee's objection did not "cause" Mr. Scacco to copy Mr. Pezzella's time entries. Moreover, it is utterly incredible that a Manager and a Managing Director performed the *exact* same work on the *exact* same days over a two month period; that Messrs. Scacco and Pezzella both spent three hours on February 21, 2001 reviewing "hours and dollars on engagement" and two hours the next day reviewing "request regarding application of advance payment"; or that it took both gentlemen six hours on February 26, 2001 to discuss Canadian returns with Linda Hunt and arrange for the delivery of those returns. *See* Section of KPMG's Fee Application, a copy of which is attached hereto as Exhibit B. Even Mr. Pezzella's affidavit does not swear to the authenticity of these time entries.

KPMG is likewise disingenuous in response to the Trustee's objection to the time allegedly spent completing sales tax returns months after OMC stopped operating. "Sale tax filings are necessarily filed after assets are sold," Mr. Pezzella opines. *See* Pezzella Affidavit at ¶ 5. Mr. Pezella fails to explain why KPMG completed sales tax returns for several states for the month of June 2001, when all of OMC's operating assets were sold on March 7, 2001 or why KPMG allegedly performed this work after instructed by the debtor in possession that the returns were not necessary.

If the court is inclined to consider awarding KPMG any fees for the work performed on behalf of OMC's chapter 11 estate, the Trustee respectfully asks that the court hold an evidentiary hearing, so the Trustee can both question the KPMG employees about the work

- 5 -

allegedly performed and present evidence that much of the work was not necessary and not directed by the debtor in possession.

### C.  KPMG Should Not Be Reimbursed For Its Expenses.

KPMG is also seeking as "expenses" the legal fees it incurred in "resolving" the objections to KPMG's retention and in opposing the Trustee's Rule 2004 subpoena. The request is absurd.

As an initial matter, as set forth above, the Committee's objection to KPMG's retention was limited to KPMG's application of a $200,000 "retainer" to prepetition obligations. This was not a frivolous objection. In fact, KPMG's retention was conditioned on KPMG's agreement *not* to use the $200,000 for prepetition obligations. Thus, the Committee's objection to KPMG's retention was in effect sustained, not overruled. The Debtor filed KPMG's Application and OMC's creditors have already paid for those legal fees. The only fees at issue were those incurred in connection with addressing KPMG's efforts at applying its "retainer" to prepetition debt and KPMG's disinterestedness. Asking OMC's creditors to pay KPMG's attorneys for their efforts in addressing these issues would reward KPMG's demonstrated untenable conduct and chill creditors' ability to question whether a professional should be retained in the first place.

As for its fees in connection with responding to the Trustee's subpoena, KPMG was ordered to produce documents in response to the subpoena. KPMG is asking to be rewarded for its own discovery abuse and for refusing to produce the information ordered produced as a condition for its retention. Nothing in any of KPMG's authority supports this audacious request and it should be denied outright.

### D.    Conclusion.

KPMG forfeited any right to payment for services it alleges it performed on behalf of OMC's chapter 11 estate when KPMG failed to disclose the full extent of its financial relationship with OMC. It would have the court believe that any omission made was immaterial and inadvertent, but the creditors of OMC have the right to expect that the professionals retained on behalf of the estate will protect the rights of the creditors, and not the professionals themselves. Accordingly, KPMG's Application should be denied in its entirety and KPMG ordered to disgorge the $666,135 paid to it during the preference period.

Dated: June 11, 2002

Respectfully submitted,

Alex D. Moglia, not individually, but as chapter 7 trustee for the Outboard Marine Corporation and its related debtor entities

By: _____
One of its attorneys

Steven B. Towbin (#2848546)
Kathleen H. Klaus (#6211316)
D'Ancona & Pflaum LLC
111 East Wacker Drive
Suite 2800
Chicago, Illinois 60601
(312) 602-2000